1   BOIES, SCHILLER & FLEXNER LLP
    Jonathan D. Schiller (*pro hac vice* to be submitted)
2   jschiller@bsfllp.com
    William S. Ohlemeyer (admitted *pro hac vice*)
3   wohlemeyer@bsfllp.com
    Jonathan Sherman (admitted *pro hac vice*)
4   jsherman@bsfllp.com
    575 Lexington Avenue
5   New York, NY 10022
    Telephone:  212-446-2300
6   Facsimile:   212-446-2350

7
    David L. Zifkin (SBN 232845)
8   dzifkin@bsfllp.com
    401 Wilshire Boulevard, Suite 805
9   Santa Monica, CA 90401
    Telephone:  310-752-2400
10  Facsimile:   310-752-2490

11  Attorneys for Defendants *Herbalife International of America, Inc., Herbalife International, Inc., and Herbalife Ltd.*

12

13                 UNITED STATES DISTRICT COURT

14               CENTRAL DISTRICT OF CALIFORNIA

15

16  DANA BOSTICK, a California citizen on       Case No.  13-cv-02488 BRO (RZx)
    behalf of himself and all others similarly
17  situated, and on behalf of the general      **DEFENDANTS' NOTICE OF**
    public,                                     **MOTION AND MOTION TO**
18                                              **DISMISS THE COMPLAINT**
                        Plaintiff,              **PURSUANT TO FED. R. CIV. P.**
19                                              **8, 9(b) AND 12(b)(6)**
              v.
20
    HERBALIFE INTERNATIONAL OF
21  AMERICA, INC., a Nevada Corporation,
    HERBALIFE INTERNATIONAL, INC.,
22  a Nevada Corporation, HERBALIFE,            Hon. Beverly Reid O'Connell
    LTD, a Cayman Islands Corporation,
23                                              **Date: July 1, 2013**
                                                **Time: 1:30pm**
24                      Defendants.

25

26

27

28

## **<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF FACTS ................................................................................... 4

ARGUMENT ..................................................................................................... 5

I.   Releveant Legal Standards for Motion to Dismiss ................................... 6

II.  The Endless Chain Claim Must Be Dismissed ........................................ 7

   A.   The Complaint Does Not Plead Plausible Facts—Much Less Ones
        Satisfying Rule 9(b)—Alleging That Herbalife Operates an Endless
        Chain Scheme. .................................................................................. 8

      1.   Bostick's Own Representations and Allegations Establish That
           He Understood Herbalife's Sales Focus and that Significant
           Commissions Income Was Unlikely: the Antithesis of a Pyramid
           Scheme. ...................................................................................... 10

      2.   Bostick Concedes That Herbalife Does Not Require an Initial
           Investment: The Threshold Determinant of a Pyramid Scheme. .......... 11

      3.   Bostick's Complaint Establishes That Herbalife's Commission
           Payments Are Related to Product Sales to Ultimate Users: Thus It
           Is Not a Pyramid Scheme. ............................................................ 14

   B.   Bostick Has No Right to Rescission under California Law ...................... 18

III. The Court Should Dismiss Bostick's Unfair Competition Law Claim for
     Failure to State a Claim. ...................................................................... 19

IV.  The Court Should Dismiss Bostick's False Advertising Law Claim for
     Failure to State a Claim. ...................................................................... 22

V.   The RICO Claims Must Be Dismissed ................................................... 23

   A.   The PSRLA's RICO Amendment Bars Bostick's RICO Claims. ............. 23

   B.   Bostick's §1962(a) Claim Fails Because the Complaint Does Not
        Allege the Requisite Injury Caused by "Investment or Use of
        Income." .......................................................................................... 24

CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

### CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)............................................................4, 6, 13

*Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321 (3d Cir. 1999)...............................................................................................24

*Baytree Capital Associates, LLC v. Quan*, 2008 WL 4447647 (C.D. Cal. Sept. 29, 2008) ...........................................................................25

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)...........................................................6

*Brittingham v. Mobil Corp.*, 943 F.2d 297 (3d Cir. 1991) .......................................25

*Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Ass'n*, 60 Cal. App. 4th 1053 (1st Dist. 1998) ...........................................................10

*Commerce Redevelopment Agency v. Am. Home Prods., Inc.*, 1993 WL 13005326 (C.D. Cal. Mar. 26, 1993)......................................................21

*Cullen v. Netflix, Inc.*, 2013 WL 140103 (N.D. Cal. Jan. 10, 2013) ......................22

*Das v. WMC Mortgage Corp.*, 831 F. Supp. 2d 1147 (N.D. Cal. 2011)................19

*Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012) ...........20, 21, 22

*Fisher v. Pennsylvania Life Co.*, 69 Cal. App. 3d 506 (2d Dist. 1977) .................21

*Freedom Newspapers, Inc. v. Orange Cnty. Employees Ret. Sys.*, 6 Cal. 4th 821 (1993) ...........................................................................16

*Herbalife International of America, Inc. v. Ford*, CV 07-02529 (C.D. Cal. Aug. 25, 2009) ...........................................................................12

*Howard v. Am. Online Inc.*, 208 F.3d 741 (9th Cir. 2000)...............................23, 24

*In re Amway Corp.*, 93 F.T.C. 618 (1979) ..................................................13, 14, 16

*In re City Equities Anaheim, Ltd.*, 22 F.3d 954 (9th Cir. 1994)..............................21

*In re County of Orange*, 31 F. Supp. 2d 768 (C.D. Cal. 1998) ..............................16

*In re Koscot Interplanetary Inc.*, 86 F.T.C. 1106 (1975) ................................passim

*Johnson v. Lucent Technologies Inc.*, 653 F.3d 1000 (9th Cir. 2011) ...................25

*Joshua Tree Townsite Co. v. Joshua Tree Land Co.*, 100 Cal. App. 2d 590 (4th Dist. 1950)...........................................................................19

*Metz v. United Counties Bancorp*, 61 F. Supp. 2d 364 (D.N.J. 1999) ...................24

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268 (2d Cir. 2011)...........................................................................................24

*Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012)............................................4

NOTICE OF MOTION AND MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429 (9th Cir. 1992) .................................................................................... 25

*Papenfus v. Webb Prods. Co.*, 24 Cal. App. 2d 559 (4th Dist. 1938) ................... 18

*Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir. 1998) ........................................... 7

*People v. Frederick*, 142 Cal. App. 4th 400 (2d Dist. 2006) ................................ 23

*People v. Herbalife International, Inc.*, No. 92767 (Cal. Super. Ct. Santa Cruz Cty. Oct. 15, 1986) ........................................................ 9, 16

*Reddy v. Litton Indus., Inc.*, 912 F.2d 291 (9th Cir. 1990) ................................ 25

*S.E.C. v. Zandford*, 535 U.S. 813 (2002) ......................................................... 23

*Sateriale v. R. J. Reynolds Tobacco.*, 697 F.3d 777 (9th Cir. 2012) ............... 20, 23

*SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946) .................................................. 23

*Steckman v. Hart Brewing*, 143 F.3d 1293 (9th Cir. 1998) ............................. 6, 20

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ..................................... 7, 23

*Trujillo v. Santa Clara Cnty.*, 775 F.2d 1359 (9th Cir. 1985) ............................... 9

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003). ............................ 6

*Wagh v. Metris Direct, Inc.*, 363 F.3d 821 (9th Cir. 2003) ................................ 25

*Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466 (2d Dist. 2006) ........................... 23

*Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776 (9th Cir. 1996) ..................... passim

*Weisbuch v. County of Los Angeles*, 119 F.3d 778 (9th Cir. 1997) ..................... 3, 6

*Westways World Travel v. AMR Corp.*, 182 F. Supp. 2d 952 (C.D. Cal. 2001) ............................................................................................ 25

*Whole Living, Inc. v. Tolman*, 344 F. Supp. 2d 739 (D. Utah 2004) ..................... 16

### STATUTES

18 U.S.C. § 1962 ................................................................................. 24, 25

18 U.S.C. § 1964 ...................................................................................... 23

Cal. Bus. & Prof. Code § 17200. .............................................................. 9, 19

Cal. Bus. & Prof. Code § 17204 ................................................................... 20

Cal. Bus. & Prof. Code § 17500 ................................................................... 22

Cal. Bus. & Prof. Code § 17535 ................................................................... 22

Cal. Civil Code § 1689.2 ...................................................................... 3, 8, 18

Cal. Civil Code § 1691 .............................................................................. 18

ii       NOTICE OF MOTION AND MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Cal. Penal Code § 327 .................................................................................passim

H.R. Rep. No. 104-369 (1995) ...............................................................................23

Pub. L. No. 104–67, § 107, 109 Stat 737 (1995)....................................................23

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on July 1, at 1:30 p.m., in Courtroom 14 of this Court, located at 312 North Spring Street, Los Angeles, California 90012, Defendants Herbalife International of America, Inc., Herbalife International, Inc., and Herbalife Ltd. will and hereby move the Court for an order dismissing Plaintiff's Complaint.

This Motion is made pursuant to Rules 8, 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on May 24, 2013.

The Motion will be based upon this Notice, the Memorandum of Points and Authorities in Support of the Motion, the May 30, 2013 Declaration of David L. Zifkin and exhibits thereto, all other pleadings and papers filed in this action, and such further evidence and argument as may be presented at the hearing of this matter.


DATED:  May 30, 2013            BOIES, SCHILLER & FLEXNER LLP


                                 /s/ William S. Ohlemeyer
                                William S. Ohlemeyer

                                Attorneys for Defendants Herbalife International
                                of America, Inc., Herbalife International, Inc. and
                                Herbalife Ltd.

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Herbalife International of America, Inc., Herbalife International, Inc. and Herbalife Ltd. ("Herbalife" or "Defendants") submit this Memorandum of Points and Authorities in support of their motion to dismiss Plaintiff Dana Bostick's ("Bostick" or "Plaintiff") Class Action Complaint dated April 8, 2013 (the "Complaint").

## PRELIMINARY STATEMENT

The Complaint fails to state a claim and must be dismissed with prejudice. Not only do the allegations fail under well-established Ninth Circuit law but the documents attached to, or referred to, in the Complaint contradict and disprove Bostick's allegations.  In light of those documents—which Bostick understandably would prefer the Court not see but which he cannot evade—repleading would be futile.

The gravamen of the Complaint is that because Bostick has been unable to exploit Herbalife's legitimate multi-level marketing program—the risks and potential rewards of which were fully disclosed to him—it must be an illegal "endless chain" or "pyramid scheme."  All of Bostick's allegations of wrongdoing rise and fall on the very first two paragraphs of his Complaint:  "Herbalife told Dana Bostick" that if he put in "the time, effort, and commitment," he could "make money" as an Herbalife Distributor; but, in fact, "Bostick did not make money as promised" because Herbalife "systematically rewards recruiting over retail sales." As Bostick himself alleges, a pyramid scheme is considered fraudulent because "the futility of the plan is not apparent to the consumer participant.'"  (Compl. ¶ 20.)

Everything Bostick needed to know about Herbalife, and of which he now complains, was "apparent to the consumer participant" at the time he became an Herbalife Distributor—the challenges of making money as an Herbalife Distributor, what it takes to generate income (whether selling to the general public or via commissions on sales), the different discounts available to the different levels of Distributors (which he complains had pernicious effects on his ability to compete)

1  and, most importantly, Herbalife's consistent statement that it does not promise

2  success.  All of this is contained in the very documents appended to the Complaint

3  (and, occasionally, conceded in the allegations of the Complaint itself, *e.g.*, ¶ 161).

4  The documents Bostick attached to his Complaint also show precisely how he could

5  "make money"—the very result he claims in the first sentence of his second

6  paragraph he could not achieve—as well as make "apparent" how difficult doing so

7  could be.

8      In order to become an Herbalife Distributor, and in contrast to the allegations

9  of his Complaint, Bostick "represent[ed], warrant[ed], and agree[d]" that he was

10  "not relying upon any representations as to the financial results [he] might achieve"

11  by distributing Herbalife products, and that he "[was] aware that the only required

12  purchase to become, succeed, or advance as an Herbalife Independent Distributor is

13  the [Mini International Business Pack] Mini-IBP," which costs $57.75.  (Compl.

14  Ex. I § 3.)  Bostick also "represent[ed], warrant[ed] and agree[d]" that he would

15  "review the Statement of Average Gross Compensation of U.S. Supervisors and the

16  Policy Statement on Business Methods both of which are contained in the Mini

17  IBP… and are available on www.MyHerbalife.com or upon request" from

18  Herbalife.  (*Id.*)  As the statement of average compensation makes clear, only a

19  small fraction of Herbalife Distributors generate commissions on sales based on the

20  sales made by other Distributors.  (*E.g.*, Compl. Ex. A at 1.)  In fact, and as Bostick

21  should have seen before he chose to become a Distributor—as his Complaint's own

22  exhibits show—only one out of four Distributors qualify for additional

23  compensation based on sales generated by Herbalife Distributors they sponsor

24  directly or indirectly.  Those same documents also show that the annual gross

25  compensation paid to such individuals averaged $2900 in the year Bostick chose to

26  become an Herbalife Distributor; the median compensation level of $741 was

27  disclosed to him without ambiguity in Exhibit A of Bostick's own Complaint.

28      Bostick cannot, and does not, allege that Herbalife's marketing program

shares the characteristics that have been found in virtually every pyramid scheme identified in cases published in the past forty years:  There is no allegation that Herbalife requires Distributors to purchase any amount of Herbalife products as an entrance fee; it doesn't.  (Compl. Ex. C at 58 "Rule 2-A".)  There is no allegation that Herbalife required Bostick to purchase or keep minimum amounts of inventory; it didn't (*id.*), and, in fact, the very document annexed as Exhibit H to the Complaint cautions Distributors "not to order more than you can reasonably consume and sell."  (Compl. Ex. H at 19.)  There is no allegation, other than a few conclusory assertions, that Herbalife inflates the prices at which its Distributors sell products; it does not, as Bostick himself grudgingly concedes elsewhere in the Complaint.  (Compl. ¶ 180.)

In other words, Bostick claims he was the victim of a business that required him to buy nothing, offered him a discount on products he chose to purchase, allowed him to return unused and unsold products for a full refund, and made it clear to him that only a small percentage of individuals similarly situated could expect to—as is true—generate significant income as a result of their relationship with Herbalife.  This lawsuit must be dismissed not simply because it fails under the law on which it relies, but also because Bostick's central allegations are belied by both (i) the very documents he attaches—and distorts—in the Complaint's allegations and (ii) the documents to which the Complaint refers but which Bostick tactically omits from its attachments.  Taken together, the documents make clear that Bostick has "pled [him]self out of court."  *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quotation omitted).  The pleadings and the documents he has attached to the Complaint (and those that he omits) contradict his claim(s) and demonstrate that he has not plead an actionable claim under the "endless chain scheme" prohibition under section 1689.2 of the California Civil Code (which references section 327 of the California Penal Code), unfair competition/false advertising statutes, or RICO.

## STATEMENT OF FACTS[1]

The Complaint alleges that Bostick became an Herbalife Distributor on April 6, 2012 by signing an online Agreement of Distributorship.  (Compl. ¶ 50 & Ex. I.)  In this two-page agreement,[2] Bostick represented and warranted that he was "not relying upon any representations as to the financial results I might achieve," that he was "aware that the only required purchase to become, succeed or advance as an Herbalife Independent Distributor is the $57.75 Mini-IBP," and that he had "received and reviewed the Statement of Average Gross Compensation of U.S. Supervisors and the Policy Statement on Business Methods."  (*Id.* Ex. I at 1-2.)  Bostick further acknowledged that "I have the right to resell to Herbalife unused and resalable produces purchased from Herbalife and unused and resalable portions of the IBP" and agreed that "I may not order product primarily to qualify to earn compensation, as opposed to purchases for my own consumption and amounts I consider reasonable to service my customers."  (*Id.* Ex. I at 2.)

Bostick gave up on his distributorship once he discovered that he was unable to resell the Herbalife products he purchased by merely relying on a website to do his work for him.[3]  (*Id.* ¶ 54.)  Rather than return the purchased products to Herbalife for a full refund, as he concedes he could have done,[4] Bostick sued.

Bostick acknowledges that "[w]hen making statements about their wealth and the potential wealth for new recruits," Herbalife and independent Distributors would "routinely" include a disclosure:  "Incomes applicable to the individual (or example) depicted and not average.  For average financial performance data, see the

---

[1] The allegations in the Complaint are treated as true solely for purposes of this motion to dismiss.  *Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702, 1705 (2012).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[2] *See* Ex. C at 38-39, showing the printed version of the Agreement of Distributorship.
[3] The Complaint does not specify when in the course of his *eight separate orders over more than three months* he made this discovery.  (*See id.* ¶¶ 52, 54.)
[4] Compl. at 48 n.6, Ex. C at 65.

Statement of Average Gross Compensation of U.S. Supervisors at Herbalife.com and MyHerbalife.com." (*Id.* ¶¶ 158, 161.) Bostick contends, however, that the Statement of Average Gross Compensation of U.S. Supervisors misleads potential Distributors by using a "cherry-picked data set" comprised of higher-earning Distributors referred to (and openly defined) as "Active Leaders." (*Id.* ¶¶ 162-63.)

Bostick also claims that his Herbalife distributorship was "doomed from the start" because Herbalife's business is purportedly an illegal endless chain scheme based on a compensation structure that "systematically rewards recruiting of new participants over retail sales." (*Id.* ¶ 2.) Bostick alleges that Herbalife operates an endless chain scheme because Distributors are pressured to make large initial investments in order to succeed (*id.* ¶¶ 189-93) and because recruiting commissions are derived from the products' suggested retail price ("SRP") when purchased by Distributors, rather than the price obtained upon sale to the ultimate consumer (*id.* ¶¶ 68, 182). Bostick claims that he thought it was necessary to "pay for his position" by making a large order of Herbalife products, believing that this purchase would entitle him to vault to "supervisor" status within Herbalife's business structure and thereby earn greater compensation. (*Id.* ¶ 53.)

But, as we show throughout, Bostick attaches a large number of documents to the Complaint and refers to even more. Those documents contradict—and overcome—the conclusory allegations of the Complaint.

## <u>ARGUMENT</u>

As Bostick himself alleges, pyramid schemes are "inherently fraudulent by nature because the futility of the plan is not apparent to the participant." (Compl. ¶ 20.) Accordingly, an endless chain perpetuates itself because the participants do not realize that most "are doomed to failure." (Compl. ¶ 18.) Bostick's Complaint is built on conclusory allegations concerning Herbalife that this Court is not required to accept as true because they are contradicted by documents referred to in the Complaint. *E.g.*, *Steckman v. Hart Brewing*, 143 F.3d 1293, 1295-96 (9th Cir.

1998).  The documents attached to the Complaint tell a far different story than the conclusory allegations Bostick makes that Herbalife Distributors are "doomed to failure," and they surely make the reality of Herbalife "apparent to the participant." When taken into account, these documents show that Herbalife lacks the indicia associated with pyramid schemes.  Rather, Bostick's own documents show Herbalife to be an established, product-focused direct selling company that provides a statement of average annual earnings to its Distributors up front, which offers to buy back the inventory of Distributors who wish to terminate their relationship with Herbalife, and which has a cluster of rules designed—in direct contrast to the conclusions of the Complaint—to reward sales, not recruiting.  Accordingly, under well-established Ninth Circuit law, the Complaint must be dismissed.  *Steckman*, 143 F.3d at 1295; *Weishbuch* 119 F.3d at 783 n.1 ("[A] plaintiff may plead herself out of court.  If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other expensively obtained evidence on summary judgment establishes the identical facts.") (citation and internal quotation omitted).

## I.     RELEEVANT LEGAL STANDARDS FOR MOTION TO DISMISS.

A Complaint will be dismissed on a Rule 12(b)(6) motion unless it contains "enough facts to state a claim to relief that is plausible on its face"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (2009).  This means that Bostick must plead *facts* showing "more than a sheer possibility that [Herbalife] has acted unlawfully. . . .  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citations and quotations omitted).  Moreover, Bostick's claims must be pled with particularity under Rule 9(b) because the gravamen of the Complaint is that Herbalife operates by fraud.  *E.g.*, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

On this motion, the Court may properly consider the Complaint, its exhibits and any documents not attached to the Complaint but otherwise incorporated by reference.  This includes materials such as International Business Pack ("IBP") materials and Herbalife's marketing policies, which are referenced repeatedly in Bostick's Complaint and integral to his claims.  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) ("[I]n order to prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based, a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned.") (quotations omitted); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (on a motion to dismiss, it was appropriate for the court to consider an insurance plan not explicitly referenced in the complaint, but the terms of which were essential to the complaint).  Thus, Bostick cannot avoid dismissal by tactically omitting from the Complaint or its exhibits materials such as Herbalife's present revisions to marketing policies that went into effect in August of 2012 (May 30, 2013 Declaration of David L. Zifkin ("Zifkin Decl.") Ex. A), which were expressly incorporated into his contract with Herbalife (Compl. Ex. I § 4)[5] and which, as discussed below, directly contradict the allegations in his Complaint.

## II.    THE ENDLESS CHAIN CLAIM MUST BE DISMISSED.

For the reasons explained below, Bostick's first cause of action must be dismissed because (i) he fails to plead facts sufficient to show that Herbalife is an endless chain scheme and (ii) the allegations in the Complaint preclude his entitlement to rescission, his only requested relief.

---

[5] Additionally, Bostick represented and warranted in his Agreement of Distributorship that he "reviewed thoroughly" the Sales and Marketing Plan (Compl. Ex. I § 3(a)), including the notice that "…Herbalife may post updates of this Rule, updated disclaimers, and updated Average Gross Compensation of U.S. Supervisors at MyHerbalife.com.  Distributors are required to visit the website and review these advisories or Rule changes with care" (*id.* Ex. C at 74).

**A. The Complaint Does Not Plead Plausible Facts—Much Less Ones Satisfying Rule 9(b)—Alleging That Herbalife Operates an Endless Chain Scheme.**

Bostick's Complaint does not plead facts sufficient to show that Herbalife operates as an endless chain or pyramid scheme under California Penal Code section 327,[6] as is required to state a civil claim under California Civil Code section 1689.2.  There is no dispute that this question is determined by reference to the FTC's *Koscot* standard, as adopted by the Ninth Circuit.[7]  *Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776, 781-82 (9th Cir. 1996).  Under *Koscot*, a pyramid scheme "[is] characterized by the payment by participants of money to the company in return for which they receive (1) the right to sell a product and (2) the right to receive in return for recruiting other participants into the program rewards that are unrelated to the sale of product to ultimate users."  *In re Koscot Interplanetary Inc.*, 86 F.T.C. 1106, 1181 (1975).

In an attempt to shoehorn Herbalife into the *Koscot* and *Omnitrition* framework, Bostick's Complaint is filled with conclusory allegations that he was misled by Herbalife with "promises" that he would make money and become a "rags-to-riches" success (*e.g.*, Compl. ¶¶ 2, 254) when in fact he was allegedly "doomed from the start" because Herbalife "systematically rewards recruiting over retail sales" (*id.* ¶ 2).  Such conclusory allegations (insufficient under both Rule 8 and Rule 9(b)) are belied by Bostick's own Complaint and the documents referenced and incorporated therein,[8] in addition to IBP documents and marketing

---

[6] "Every person who contrives, prepares, sets up, proposes, or operates any endless chain is guilty of a public offense ….  As used in this section, an "endless chain" means any scheme for the disposal or distribution of property whereby a participant pays a valuable consideration for the chance to receive compensation for introducing one or more additional persons into participation in the scheme or for the chance to receive compensation when a person introduced by the participant introduces a new participant. …"  Cal. Penal Code § 327, in pertinent part.

[7] In *Omnitrition*, the Ninth Circuit found California's endless chain statute, Penal Code § 327, to be "equivalent, if not identical" to the *Koscot* test.  79 F.3d at 787.

[8] Such documents consist of, *inter alia*, Bostick's contract with Herbalife (Ex. I) and selected documents that Bostick received in his IBP (Compl. Exs. C, G, and H), including a version of Herbalife's marketing policies that was superseded shortly after Bostick became a Distributor.  (*See* Zifkin Decl. Ex. A.)  This Court may (and should) take account of these documents on this motion.  *See supra* § I.

1    policy updates that Bostick intentionally withheld from the Court.[9]

2         While the Complaint goes into great and unnecessary detail regarding

3    Herbalife's marketing plan in an attempt to manufacture the appearance of factual

4    issues (Compl. ¶¶ 58-131), Bostick fails to acknowledge that California's Attorney

5    General has previously scrutinized Herbalife's compliance with the state's anti-

6    pyramiding and unfair competition statutes—the very statutes on which Bostick

7    bases his Complaint.  As disclosed in the Herbalife 10-Ks on which Bostick

8    repeatedly relies and references (Compl. ¶¶ 84, 102, 106), in 1986, Herbalife and

9    the Attorney General consented to the entry of a Final Judgment and Permanent

10   Injunction against Herbalife that settled the section 327 and 17200 claims then

11   pending against it.  Notably, this consent order allowed Herbalife to continue to pay

12   commissions and determine Distributor rank based on "retail sales," which were

13   defined to include:

14        A sale of defendants' product(s) in any of the following situations: (1)

15        to persons who are not part of defendant's marketing program or

16        distribution system; or, (2) to persons who are not buying to become

17        part of defendants' marketing program or distribution system; or, (3)

18        to persons who, although desirous of becoming or who are a part of

19        defendants' marketing plan or distribution system are buying for their

20        own personal or family use.

21   *People v. Herbalife Int'l, Inc.*, No. 92767, at 11 (Cal. Super. Ct. Santa Cruz Cty.

22   Oct. 15, 1986).  Bostick's attempts to re-litigate issues finally adjudicated long

23   before he became a Distributor should be rejected.  *Trujillo v. Santa Clara Cnty.*,

24   775 F.2d 1359, 1367 (9th Cir. 1985) ("[W]hen statutory authority to sue has been

25   given specifically to a public entity, a judgment in such a suit is res judicata as to all

26   those for whose benefit it is prosecuted.") (quotations omitted); *Citizens for Open*

27   _____

28   [9] In a misleading attempt to shift focus away from Herbalife's dedication to product
     sales, Bostick includes in the exhibits to his Complaint IBP handbooks 1, 2, and 4
     (Ex. G, H, and C) but omits Book 2, entitled "Using & Retailing Your Products."
     (*See* Compl. ¶ 49.)

*Access to Sand & Tide, Inc. v. Seadrift Ass'n*, 60 Cal. App. 4th 1053, 1065 (1st Dist. 1998) ("A judgment entered by consent or stipulation is as conclusive a bar as a judgment rendered after trial.") (quotation and citation omitted).

Bostick fails to state a claim because his Complaint and the documents referenced therein and available to this Court for review establish that (i) Bostick was well-informed (and, indeed, represented and warranted) that most Distributors do not achieve Sales Leader status, and even of those that do, most make only modest, if any, income from commissions; (ii) Herbalife does not require any initial investment for the right to sell products or receive commissions—the threshold test under *Koscot*; and (iii) that Herbalife's payments of commissions are based on sales to ultimate users in accordance with the law.

> **1.    Bostick's Own Representations and Allegations Establish That He Understood Herbalife's Sales Focus and that Significant Commissions Income Was Unlikely: the Antithesis of a Pyramid Scheme.**

Bostick knew that he was not guaranteed success as an Herbalife Distributor and that most of even Herbalife's most successful leaders made only modest amounts of commission income.  Nonetheless, to paint Herbalife as a self-advertised get-rich-quick scheme, Bostick's Complaint makes reference to various literature and videos from Herbalife and entities not associated with it, which he claims contain "misrepresentations about the income that a recruit or a distributor can realize by becoming a distributor."  (Compl. ¶ 277.)  Bostick concludes that "grand overstatements regarding distributors' potential earnings… are part of a pattern and practice" by Herbalife to mislead prospective Distributors.  (*Id*. ¶ 277.)

Bostick does not allege that he viewed all of the Herbalife and third-party materials mentioned in the Complaint (*e.g*., *id*. ¶¶ 151-157), much less that he relied on them (reasonably or not) or believed that he was likely to make significant income by becoming an Herbalife Distributor.  Rather, he alleges that after viewing certain third party materials attached in Exhibit E, in addition to Herbalife's website

and other unspecified websites, he believed Herbalife would be a business "where he *could* earn both monthly income and residual income." (*Id.* ¶ 48. (emphasis added).)  No reasonable potential Distributor could have so relied on these materials, and Bostick's claims that he did are belied by his own contractual agreement and the allegations in his Complaint (*e.g.*, *id.* ¶ 48).

After viewing Exhibit E, Bostick ordered an IBP from Herbalife.  (*Id.* ¶¶ 48-49.)  Bostick concedes that he reviewed the IBP and the documents therein, including the contents of Exhibit C.  (*Id.* ¶ 49.)  Such documents included a Statement of Average Gross Compensation of U.S. Supervisors (the "2010 Statement"), which states that (i) only approximately one in four Distributors will qualify for Supervisor (which is necessary to receive royalties and bonuses for downline sales), (ii) only 37% of Supervisors are active (meeting a minimum volume threshold), and (iii) the average active Supervisor is paid only $812 in commissions annually.  (*Id.* Ex. C at 17.)  Thus, Bostick knew that even the top Herbalife Distributors, on average, earn only a modest amount of income.

### 2.  Bostick Concedes That Herbalife Does Not Require an Initial Investment: The Threshold Determinant of a Pyramid Scheme.

Bostick's endless chain scheme claim must be dismissed because the allegations of the Complaint establish that Herbalife does not require an initial investment of money to participate—the threshold requirement under *Koscot*.  Bostick concedes that the only payment required of a Distributor to join Herbalife is the $57.75 (refundable) cost of the mini IBP.  (Compl. ¶¶ 34, 189.)  *Bostick further concedes that the price of the IBP does not constitute "a payment or initial disbursement by a new participant for the right to sell products and the right to receive rewards."* (*Id.* ¶¶ 188-89 (emphasis added)).  Bostick further acknowledges that he entered into a contract with Herbalife (*id.* ¶ 50) in which he represented and agreed that he had received and "reviewed thoroughly" the marketing plan and rules contained in the IBP and was aware that no purchase other than the IBP was

NOTICE OF MOTION AND MOTION TO DISMISS

1  required "to become, succeed or advance as an Herbalife Independent Distributor."

2  (*Id*. Ex. I at §§ 3(a), 3(c).)

3       Bostick further concedes—as he must in light of Herbalife's marketing

4  plan—that a Distributor can become a supervisor (which is required to earn certain

5  types of commissions) "without purchasing or reselling any Herbalife products."

6  (*Id*. ¶ 91.)  This concession is fatal to Bostick's attempts to rely on *Omnitrition*.  In

7  *Omnitrition*, the Ninth Circuit, reversing a grant of summary judgment in favor of

8  the marketer, stated that the fact that supervisors had to make large purchases of

9  inventory precluded a finding as a matter of law that Omnitrition did not operate as

10  a pyramid scheme:

11         *To become a supervisor, a participant **must** pay a substantial amount*

12         *of money to Omnitrition in the form of large monthly product orders.*

13         *… In exchange for these purchases, the supervisor receives the right*

14         *to sell the products and earn compensation based on product orders*

15         *made the supervisor's recruits.  The "payment of money" element of a*

16         *pyramid scheme can be met where the participant is **required** to*

17         *purchase "non returnable" inventory in order to receive the full*

18         *benefits of the program*."

19  79 F.3d at 782 (emphasis added).  Bostick similarly misapprehends this Court's

20  decision in *Herbalife International of America, Inc. v. Ford*, CV 07-02529 (C.D.

21  Cal. Aug. 25, 2009) as requiring a contrary result.  (Compl. ¶ 92.)  In *Ford*, the

22  Court held that "a genuine issue as to whether Herbalife distributors must pay

23  Herbalife to become supervisors—a threshold requirement under the *Koscot*

24  analysis—precludes the Court from granting summary judgment for either side on

25  the endless-chain-scheme claim."  *Id*. at 16.  Here, by contrast to both cases,

26  Bostick has conceded that no payments are required.

27       To be sure, Bostick alleges that Herbalife encourages Distributors to make

28  large, initial inventory purchases.  But, here again, Bostick's concessions doom the

1  Complaint.  Mere encouragement is not enough to meet the first part of the *Koscot*

2  test concerning a required purchase.  Bostick (as discussed above) concedes that an

3  investment is not ***required*** to advance to supervisor.[10]  (Compl. ¶ 91.)  The FTC has

4  noted that, as with a traditional chain letter, pyramid schemes (including that at

5  issue in *Koscot*) typically require recruits to "pay a large sum of money," which is

6  then used to reward the recruiters via new recruiting.  *In re Amway Corp.*, 93 F.T.C.

7  618, 715-16 (1979).  Bostick's Complaint ***acknowledges*** that no inventory

8  purchases are required and the incorporated marketing policy makes clear that no

9  headhunting fees are paid.  (Compl. Ex. C. at 58 (sponsor may not collect "any

10  markup or profit" on sale of IBP.").)

11      Bostick's conclusory assertions that Herbalife "encourages" the overpurchase

12  of inventory or so-called "inventory loading" are belied by what he omits from his

13  Complaint: numerous statements by Herbalife that show just the opposite.   He

14  selectively quotes from Herbalife's "Building Your Business" handbook to imply

15  that Distributors are encouraged to purchase and maintain inventory.  (*Id.* ¶¶ 191-

16  92.)  But he leaves out Herbalife's express warnings:  Distributors should "***be***

17  ***careful not to order more than you can reasonably consume or sell***."  (*Id.* Ex. H.

18  at 19; emphasis added).  And the Complaint conveniently omits from its slew of

19  exhibits Herbalife's Policy Statement on Expenditures by New Distributors, which

20  was issued by Herbalife while Bostick was a Distributor and which has been

21  included in the IBP as part of Herbalife's Sales & Marketing Plan and Business

22  Rules handbook since August 2012, shortly after Bostick became a Distributor.

23

24  ─────────────
[10] Bostick's allegations that *he* failed to earn retail profit with the base 25%

25  discount cannot support the weight of his claim that success is impossible for entry-level Distributors.  Herbalife's "Your Business Basics" (as annexed to Exhibit G of Bostick's complaint and which Bostick represented to have reviewed thoroughly)

26  highlights the importance of personal relationships to the direct selling industry and suggests that a Distributor initially market products to people that the Distributor

27  already has a personal relationship with, while also providing suggestions on "ways to talk" to others that the Distributor "do[esn't] necessarily know."  (Compl. Ex. G

28  at 13-15.)  Bostick's personal business failure is more plausibly related to his disregard of this advice (by pursuing only impersonal online sales) and does not satisfy his pleading burden.  *Iqbal*, 556 U.S. at 678 (2009).

1   This advisory expressly counsels Distributors against purchasing large starting

2   inventories, over committing, and taking on debt.  (Zifkin Decl. Ex. A at 53; *see*

3   *supra* § I.)

4        Further, only "non returnable" inventory can be considered a "payment of

5   money" sufficient to satisfy *Koscot's* threshold requirement.  *Omnitrition*, 79 F.3d

6   at 782 (*citing Amway*, 93 F.T.C. 618, 715-16).  By contrast, as explained below, it

7   is undisputed that Herbalife offers a yearlong return period on inventory purchases.

8   Thus, even were the Court to find that Bostick has adequately alleged the existence

9   of inventory loading—which he has not—it would still be insufficient to state an

10  endless chain claim because it constitutes only one of the two required elements of

11  the *Koscot* test.

12        **3.    Bostick's Complaint Establishes That Herbalife's**
13            **Commission Payments Are Related to Product Sales to**
              **Ultimate Users: Thus It Is Not a Pyramid Scheme.**

14        Cutting through the Complaint's rhetoric, Bostick's main theory is that

15  Herbalife's payments of commissions are unrelated to the sale of products to

16  ultimate users.  For this point, his Complaint relies extensively on *Omnitrition*.

17  (*See, e.g.*, Compl. ¶¶ 187, 193, 196-97, 203.)  But, in fact, the documents attached

18  to the Complaint (and the Complaint itself) show that Herbalife's sales and

19  marketing structure contains the very characteristics found missing in *Omnitrition*.

20        First, Bostick misconstrues *Omnitrition* in arguing, without more, that

21  allegations that a multi-level marketer calculates commission payments based on

22  the SRP of downline Distributor purchases is sufficient to satisfy the *Koscot* test for

23  identifying a pyramid scheme.  (*E.g.*, Compl. ¶ 193.)  *Omnitrition* reversed a grant

24  of summary judgment for a multi-level-marketer because, on the record before it,

25  whether the marketer required an initial purchase of product was a question of fact.

26  In so ruling, the Court was particularly influenced by the "recruitment focus" of

27  that firm's marketing program.  79 F.3d at 782.  The court noted that the "promise

28  of lucrative rewards for recruiting others tends to induce participants to focus on the

recruitment side of the business at the expense of their retail marketing efforts." *Id.* Of course, as discussed above (*see* section (I)(A)(1)), that does not characterize Herbalife. The Complaint's own documents show that Herbalife makes clear that even active Distributors are likely to earn, at most, only modest commissions income.

Second, Bostick misconstrues *Omnitrition* by arguing that Herbalife's payment of commissions based on a Distributor's purchase of products for his own consumption satisfies the *Koscot* test for identifying a pyramid scheme. (Compl. ¶¶ 196-97). In *Omnitrition*, in holding that fact questions required a trial to determine whether the marketer was a pyramid scheme, the Ninth Circuit expressed concern that Omnitrition did not treat its distributor-consumers the same as its non-distributor consumers because distributor-consumers were not afforded a satisfaction guarantee. 79 F.3d at 783 n.5. This is not the case here, where it is beyond dispute that Herbalife has offered, since August 2012, a satisfaction guarantee to both Distributor and non-Distributor consumers of its products. (Zifkin Decl. Ex. A at 23.)

The *Omnitrition* court's concern that distributor consumers were not "ultimate users" under *Koscot* was fundamentally tied to the facts of *Omnitrition* and its plan's "recruitment focus." Any broader interpretation of that decision—for example, one in which sales to distributors for their own consumption may not be counted as a sale to "ultimate users"—would mean that no multi-level marketing firm could ever survive section 327 scrutiny. This is a sweeping result the legislature could not possibly have intended. The statute is specific and clear, and its very specificity demonstrates that if the legislature had intended to outlaw all multi-level marketing firms (all of which, by definition, sell to some distributors for the purpose of consumption), it would have said so. Cal. Penal Code § 327 ("an 'endless chain' means any scheme … whereby a participant pays a valuable consideration ***for the chance to receive compensation for introducing one or more***

*additional persons into participation in the scheme* or for the chance to receive compensation when a person introduced by the participant introduces a new participant.").[11]  The Complaint does not allege that Herbalife Distributors are paid for locating new Distributors.  Further—a factor not present in *Omnitrition* — reading the statute to mean that sales to Distributors do not "count" as legitimate sales would gut the Attorney General's approval of Herbalife's business model under this very statute,  *People v. Herbalife, supra,* and would not show the Attorney General the proper level of deference, especially as it concerns a state criminal statute.  *See Freedom Newspapers, Inc. v. Orange Cnty. Employees Ret. Sys.*, 6 Cal. 4th 821, 829 (1993) ("While the Attorney General's views do not bind us, they are entitled to considerable weight.") (citations omitted); *accord In re County of Orange*, 31 F. Supp. 2d 768 (C.D. Cal. 1998).  Other courts have similarly declined to read *Omnitrition* too broadly.[12]

Herbalife's business and marketing/business model are utterly unlike the "recruitment-focused" plan in *Omnitrition*.  Herbalife's business marketing policies are geared to incentivize product sales and not the mere purchase of products for advancement or commissions.  Herbalife prohibits Distributors from purchasing inventory for purposes of generating commissions, cautions Distributors not to purchase more inventory than they can sell or consume, and offers to buy-back unsold inventory if a Distributor chooses to exit the business.  All of this is

---

[11] The Attorney General of California's current guidance on endless chain schemes recognizes the legitimacy of distributor purchases for personal use. Ca. DOJ, OAG "Pyramid Schemes" [http://oag.ca.gov/consumers/general/pyramid_schemes] ("The difference between a pyramid scheme and a legitimate multi level marketing plan is that in the latter, money is only made through the eventual retail sale of a product to an end user.  It is unlawful if Mr. Washington and Mr. Jefferson obtain commissions by selling the cosmetics to another distributor, who is buying the cosmetics *not for their personal use*, but merely to recruit others into joining the scheme.") (emphasis added).

[12] *E.g., Whole Living, Inc. v. Tolman*, 344 F. Supp. 2d 739, 745 (D. Utah 2004) ("Defendants misread the relevant case law.  A structure that allows commissions on downline purchases by other distributors does not, by itself, render a multi-level marketing scheme an illegal pyramid. If it did, the Amway Plan would have been an illegal pyramid scheme because its distributors received commissions on purchases by their downline distributors.") (*citing Amway*, 93 F.T.C. at 20 n.24).

NOTICE OF MOTION AND MOTION TO DISMISS

1    demonstrated in the documents appended to Bostick's Complaint.

2        In becoming an Herbalife Distributor, Bostick (like all Herbalife

3    Distributors) agreed not to "order product primarily to qualify to earn

4    compensation, as opposed to purchases for my own consumption and amounts I

5    consider reasonable to service my customers." (Compl. Ex. I § 7(d).)  Bostick

6    further represented that he had thoroughly reviewed Herbalife's rules (*id.* § 3),

7    which provide that "[t]he purchase of products primarily as an attempt to qualify for

8    advancement in the Marketing Plan is not permitted." (*Id.* Ex. C. at 71, Rule 18-A.)

9    Bostick's Complaint acknowledges that he violated these rules by purchasing a

10   large amount of products solely for advancement (*id.* ¶ 53), and, remarkably,

11   Bostick now seeks legal redress precisely because his breach of contract did not net

12   the benefit for which he had hoped.

13       That Herbalife cautioned against purchasing more than a Distributor could

14   sell or consume is not surprising, because, as Bostick's Complaint acknowledges,

15   Herbalife's rules obligated it to buy back unused, unsold inventory purchased by an

16   exiting Distributor within the past twelve months. (*Id.* ¶ 209.)  Further, the rules

17   provide that any commissions paid to a recruiter for inventory returned by a

18   downline Distributor are clawed back by Herbalife. (*Id.* Ex. C at 65 "Rule 11-D.")

19   Thus, Herbalife precludes an upline Distributor from profiting from any inventory

20   that a resigning downline cannot retail and takes away any incentive for an upline

21   to encourage his recruits to inventory-load at the expense of building a sustainable

22   and lasting retail business.  Herbalife's twelve-month buy-back policy provides,

23   moreover, substantially greater time in which to return purchased inventory than the

24   3-month policy at issue in *Omnitrition*. 79 F.3d at 783-84.

25       Bostick's attacks on the sufficiency of Herbalife's buy-back policy—of

26   which he never sought to avail himself—fail.  First, Bostick alleges that Herbalife

27   previously imposed a 10% restocking fee, but acknowledges that Herbalife

28   eliminated this fee in mid-2012 (only a few months after Bostick became a

1    Distributor).  (Compl. ¶¶ 209, 211.)  Second, Bostick alleges that Herbalife did not

2    refund its processing and handling fee (*id.* ¶ 209), but fails to note that the same

3    rules that eliminated the restocking fee also made this fee refundable.  (Zifkin Decl.

4    Ex. A at 65-66 "Rule 10-D").

5          In short, the Complaint, its exhibits and the documents incorporated therein

6    show that Herbalife's policies pass the *Koscot* test and *Omnitrition*'s gloss on

7    *Koscot* by tying commissions to sales to ultimate users, whether those be

8    consumers outside of the network or personal-consumption by Distributors who

9    joined Herbalife to avail themselves of wholesale purchasing discounts.

10   Accordingly, Bostick's first claim for relief must be dismissed because he does not

11   allege an endless chain scheme.

12      **B.  <u>Bostick Has No Right to Rescission under California Law.</u>**

13         Under applicable California law, Bostick is not entitled to rescission of his

14   contracts with Herbalife, which is the sole remedy for his endless chain claim (other

15   than reasonable attorney's fees).  Cal. Civ. Code § 1689.2; Compl. ¶ 231 (seeking

16   only rescission).  Claims for rescission under California law are governed by

17   California Civil Code § 1691, which requires the party seeking rescission to:  (1)

18   give prompt notice of rescission to his counterparty, and (2) restore to the

19   counterparty everything of value he received under the relevant contract.  Bostick

20   has fulfilled neither of these statutory requirements and is therefore not entitled to

21   the remedy he seeks under Section 1689.2.

22         Bostick could easily have complied with the statute by terminating his

23   distributorship and availing himself of Herbalife's year-long buy-back policy.

24   Instead he brought litigation without notice.  Rescission is therefore an inequitable

25   remedy.[13]  *Papenfus v. Webb Prods. Co.*, 24 Cal. App. 2d 559, 563 (4th Dist. 1938)

26   ("It is a general rule that a rescission will not be enforced where it would be

27

28   _____
     [13] That Bostick alleges a basis for rescission sounding in fraud is no excuse.
     *Barnette v. Wells Fargo Nevada Nat. Bank of San Francisco*, 270 U.S. 438, 444
     (1926).

1   inequitable to do so.").  He should not be permitted to obtain through a court's

2   equitable powers that which he could have obtained for himself without the aid of

3   the court.[14]

4        In any event, the Complaint concedes that Bostick has rendered himself

5   incapable of effecting rescission under § 1691 because he alleges that he self-

6   consumed or gave away whatever products he was not able to sell "at or around his

7   purchase cost."  (Compl. ¶ 55.)  Under California law, "[r]escission is not allowable

8   where the party demanding it cannot or does not restore the other party to the

9   condition he would have been in but for the contract."  *Joshua Tree Townsite Co. v.*

10  *Joshua Tree Land Co.*, 100 Cal. App. 2d 590, 596 (4th Dist. 1950); *Das v. WMC*

11  *Mortgage Corp.*, 831 F. Supp. 2d 1147, 1162 (N.D. Cal. 2011) (dismissing claim

12  for rescission because "to state a valid claim for rescission, Plaintiffs must at least

13  allege that they have offered to tender to support a claim for equitable rescission

14  under section 1691").  Bostick is not permitted to dispose of products he purchased

15  from Herbalife and then seek rescission, which by definition requires tendering

16  back the benefits he received under the contract.

## III.   THE COURT SHOULD DISMISS BOSTICK'S UNFAIR COMPETITION LAW CLAIM FOR FAILURE TO STATE A CLAIM.

19       Bostick's claim under California Business and Professions Code sections

20  17200, *et seq.* (the "UCL" claim) must also be dismissed.  Bostick supports his

21  UCL claim with four allegations, all which fail for the same reasons that his endless

22  chain scheme allegations fail:  Herbalife operates a legal direct-selling business

23  (entirely consistent with the Attorney General's interpretation of the law) and

24  Bostick has no basis for asserting that Herbalife made any promises—whether

25  supporting an alleged endless chain scheme or not—that Distributors would achieve

26

27  _____
    [14] Rescission is an equitable remedy.  It would be particularly inequitable to order it
28  here where (i) Herbalife has relied for nearly three decades on the court-ordered
    consent decree with the Attorney General, the state official responsible for
    enforcing section 327; and (ii) Bostick knew about that reliance via Herbalife's
    public filings.

1    specific levels of success.

2         The claims also fail for two additional reasons: (i) no reasonable consumer

3    would be misled by the alleged misrepresentations and (ii) Bostick does not allege

4    reliance because, as is true throughout the Complaint, the documents attached to the

5    Complaint continuously contradict his conclusory assertions of reliance.  *See, e.g.*,

6    Compl. ¶ 259; *Steckman*, 143 F.3d at 1295-96 ("[W]e are not required to accept as

7    true conclusory allegations which are contradicted by documents referred to in the

8    complaint.").

9         Under the UCL, a business practice is fraudulent only if the public is likely to

10   be deceived, judged by the effect the practice would have on a reasonable

11   consumer.  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012)

12   (affirming dismissal of UCL and False Advertising Law claims in light of "other

13   restrictions apply" disclaimer in the allegedly misleading advertisement).  To

14   establish standing to bring a UCL claim, a plaintiff must demonstrate reliance: *i.e.*,

15   that he suffered injury as a result of the fraudulent practice at issue.  Cal. Bus. &

16   Prof. Code § 17204 ("Actions for relief pursuant to this chapter shall be prosecuted

17   exclusively . . . by a person who has suffered injury in fact and has lost money or

18   property as a result of the unfair competition."); *Sateriale v. R. J. Reynolds*

19   *Tobacco.*, 697 F.3d 777, 793 (9th Cir. 2012) ("Because the plaintiffs' UCL claim

20   sounds in fraud, they are required to prove actual reliance on the allegedly

21   deceptive or misleading statements, and that the misrepresentation was an

22   immediate cause of their injury-producing conduct.") (citations and quotation

23   omitted).  As an initial matter, Bostick's Complaint fails to allege that he even

24   viewed most of the materials mentioned in the Complaint, much less that he relied

25   on them in deciding to join Herbalife or purchase products, or that such reliance

26   caused his harm.  This is insufficient to state a claim under *Sateriale*.  Even if he

27   viewed these materials, however, Bostick cannot show that he, or a reasonable

28   consumer, relied on the statements he claims are misleading.  Bostick concedes that

Herbalife and third-party materials alike "routinely refer the readers or viewers …
to the Herbalife Statement of Average Gross Compensation of U.S. Supervisors"
and that they routinely state: "incomes applicable to the individual (or example)
depicted are not average."  (Compl. ¶ 158.)  The 2010 Statement itself provides
that:

> The figures stated above are not a guarantee nor are they a projection
> of a typical Distributor's earnings or profits. Like any other
> independent business, the achievement *or failure* of a Distributor
> depends upon his or her skill set, commitment and desire to succeed.

(*Id.* Ex. C. at 17 (emphasis added).)  In light of such disclaimers and the data in the
average income statements, "no reasonable consumer could have believed" that
success was guaranteed, or (as with most business ventures) even likely.  *Davis*,
691 F.3d at 1162.

Further, in his contract with Herbalife—which Bostick agrees "constitutes
the entire agreement"—Bostick represents, warrants, and agrees that he has
"received and reviewed thoroughly the contents of a previously unopened Herbalife
IBP," that he is "not relying upon any representations as the financial results [he]
might achieve," and that he has "received and reviewed the Statement of Average
Gross Compensation of U.S. Supervisors."  (Compl. Ex. I at 1-3.)  These
admissions are fatal to Bostick's claims that he was lured into Herbalife with
promises of riches.  *E.g.*, *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 958 (9th
Cir. 1994) (no reasonable reliance where party in its contract "expressly and
unambiguously admitted that it was not relying on any inducements not contained
therein."); *Commerce Redevelopment Agency v. Am. Home Prods., Inc.*, 1993 WL
13005326, at *14 (C.D. Cal. Mar. 26, 1993) ("Agency's representation that it relied
solely upon its own investigation is binding under California law."); *Fisher v.
Pennsylvania Life Co.*, 69 Cal. App. 3d 506, 511 (2d Dist. 1977) (Because plaintiff,
in a contract, "agreed that he had not relied on the representations on which he now

1    seeks recovery, he cannot now claim otherwise.").

2          Bostick's UCL claim should be dismissed.

3    **IV.   THE COURT SHOULD DISMISS BOSTICK'S FALSE**

4    **       ADVERTISING LAW CLAIM FOR FAILURE TO STATE A CLAIM.**

5          Bostick alleges the following three false advertising practices by Herbalife:

6    (i) that Herbalife failed to disclose to consumers that they would be entering into a

7    pyramid scheme; (ii) that Herbalife misrepresented the compensation that a

8    Distributor would earn; and (iii) that Herbalife misrepresented that shipping and

9    packaging and handling ("P&H") fees were imposed to recover costs, as opposed to

10   being profit generators for Herbalife.  (Compl. ¶ 283.)

11         As with his UCL claim, Bostick fails to state a False Advertising Law

12   ("FAL") claim under California Business and Professions Code section 17500.

13   Bostick's first two allegations fail for the same reasons they fail under section 327

14   and the UCL: there was no pyramid scheme and there were no misrepresentations

15   about compensation.

16         Bostick's third FAL claim fails because Herbalife fully discloses how the

17   shipping and P&H fees are calculated and applied in the IBP—a disclosure that

18   Bostick represented, warranted, and agreed he "received and reviewed thoroughly."

19   (Compl. Ex. I.)  The nature of the charges is made crystal clear in a "frequently

20   asked questions" section of the IBP materials and the included product order form.

21   (*Id.* Ex. C at 31, 40.)  The IBP materials also make clear that the fees are used to

22   recoup the company's "processing, handling *and marketing*" costs (as opposed to

23   mere freight expenditures).  (*Id.* Ex. C at 31 (emphasis added).)  As with his UCL

24   claim, Bostick cannot show that a reasonable consumer would rely on contrary

25   representations (to the extent any exist) and thus be likely to be deceived (as is

26   required to state an FAL claim) or that Bostick so relied to his detriment, a

27   prerequisite for standing.  Cal. Bus. & Prof. Code § 17535; *Davis*, 691 F.3d at

28   1162; *Cullen v. Netflix, Inc.*, 2013 WL 140103, at *4 (N.D. Cal. Jan. 10, 2013)

("Because Plaintiff's claims 'sound in fraud' he must plead with particularity

1  'actual reliance' on the allegedly deceptive, fraudulent, or misleading statements.")

2  (citing *Sateriale*, 697 F.3d at 793).  Accordingly, there is no actionable injury

3  alleged.  *E.g.*, *Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 484 (2d Dist. 2006)

4  ("In light of Staples' clear disclosure of the actual price it would charge its

5  customers for declared value coverage prior to any purchase, the trial court properly

6  concluded any ambiguity in the order form as to whether the amount charged

7  includes a "surcharge" or profit for Staples was not misleading or deceptive.").

8  ## V.       THE RICO CLAIMS MUST BE DISMISSED.

9  ### A. The PSRLA's RICO Amendment Bars Bostick's RICO Claims.

10       Section 107 of the PSLRA amended 18 U.S.C. § 1964(c) of the RICO

11  statute[15] to provide that "no person may rely upon any conduct that would have

12  been actionable as fraud in the purchase or sale of securities to establish a [RICO

13  violation].  *See* Pub. L. No. 104–67, § 107, 109 Stat 737, 758 (1995).[16]  As

14  amended, § 1964(c) bars RICO claims based on alleged "fraud in connection with

15  the sale of securities."  *Swartz v. KPMG LLP*, 476 F.3d 756, 761 (9th Cir. 2007);

16  *accord S.E.C. v. Zandford*, 535 U.S. 813, 822 (2002).  Under California law,

17  investments in a pyramid scheme constitute an "investment contract" under state

18  securities laws.  *People v. Frederick*, 142 Cal. App. 4th 400, 413 (2d Dist. 2006);

19  *see also SEC v. W.J. Howey Co.*, 328 U.S. 293, at 298 (1946) (expressly adopting

20  state courts' definition of "investment contract" under state 'blue sky' securities

21  laws to define "securities" under federal securities law).  Thus the Ninth Circuit, in

22

23  [15] To state a claim under RICO, Bostick must plead sufficiently at least two RICO predicate acts.  *Howard v. Am. Online Inc.*, 208 F.3d 741, 746 (9th Cir. 2000).  The Complaint purports to allege nine RICO predicate acts to support its Second, Third, and Fourth Claims for Relief (the "RICO Claims"), but every one of these allegations turns upon Bostick's failed allegations that Herbalife operates a pyramid scheme.  Accordingly, the RICO Claims should be dismissed for the independent reason that Bostick alleges no viable predicate acts.

24

25

26  [16] Congress intended not simply "to eliminate securities fraud as a predicate offense in a civil RICO action," but also to prevent a plaintiff from "pleading other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud."  H.R. Rep. No. 104-369, at 47 (1995) (affirming dismissal of a RICO claim predicated upon conduct that could give rise to "securities fraud claims . . . by a plaintiff with proper standing").

27

28

*Omnitrition*, 79 F.3d at 784, declared "[w]e hold that operation of a pyramid scheme violates 10b-5's prohibition against engaging in an 'act, practice or course of business which operates as a fraud or deceit upon any person.'" *Accord Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 330 (3d Cir. 1999) ("conduct undertaken to keep a securities fraud Ponzi scheme alive is conduct undertaken in connection with the purchase and sale of securities.").

The PSLRA's RICO amendment therefore proscribes asserting RICO claims based upon conduct said to be in furtherance of a pyramid scheme. The Complaint here alleges a scheme actionable as securities fraud by asserting, in every single one of its predicate acts, the existence of an "illegal Pyramid," some including "material misrepresentations." (*See, e.g.*, Compl. ¶ 236 ("Herbalife Enterprise" existed "to operate an illegal pyramid scheme.").

That Bostick does not himself plead a securities claim is of no moment. Bostick's RICO Claims are barred whether or not he brings—or even has standing to bring—a securities fraud claim. *See Howard*, 208 F.3d at 749 (rejecting argument that the PSLRA RICO bar does not apply with plaintiffs that lack standing to bring a securities fraud claim); *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 277 (2d Cir. 2011) ("We conclude that section 107 of the PSLRA bars civil RICO claims alleging predicate acts of securities fraud, even where a plaintiff cannot itself pursue a securities fraud action against the defendant."); *Metz v. United Counties Bancorp*, 61 F. Supp. 2d 364, 370-71 (D.N.J. 1999) (PSLRA RICO amendment barred employees' claims that they were misled about their post-merger employee benefits because the statements at issue were actionable by *investors* as securities fraud, even though most of the employees were not investors and had no standing to bring securities fraud claims themselves).

**B. Bostick's §1962(a) Claim Fails Because the Complaint Does Not Allege the Requisite Injury Caused by "Investment or Use of Income."**

Congress intended § 1962(a) to provide a remedy for those injured by money

laundering and similar investments of racketeering proceeds.  *Brittingham v. Mobil Corp.*, 943 F.2d 297, 303 (3d Cir. 1991); *cf. Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 437 (9th Cir. 1992).  "[A] plaintiff seeking civil damages for a violation of section 1962(a) must allege facts tending to show that he or she was injured by the use or investment of racketeering income."  *Nugget*, 981 F.2d at 437; *Baytree Capital Assocs., LLC v. Quan*, 2008 WL 4447647 (C.D. Cal. Sept. 29, 2008) (dismissing section 1962(a) claims where the plaintiff "failed to allege any separate 'investment injury.'").  To plead a claim under § 1962(a), Bostick must "state facts which amount to an injury to [Bostick] arising from Defendants' use or investment of racketeering income, as opposed to injury from the predicate racketeering acts themselves."  *Westways World Travel v. AMR Corp.*, 182 F. Supp. 2d 952, 961 (C.D. Cal. 2001).

The Complaint does not meet this standard.  Bostick alleges that "Bostick and the class were injured by the reinvestment of the racketeering income into the Herbalife Enterprise."  (Compl. ¶ 244.)  But the Ninth Circuit has expressly rejected Bostick's "reinvestment" allegations as the basis for a § 1962(a) claim.  *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 829 (9th Cir. 2003) ("the acquisition and reinvestment of the proceeds of racketeering activity in the general affairs of an enterprise does not qualify as investment injury") (citations and quotations omitted).

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court dismiss the Complaint in its entirety, with prejudice.[17]

---

[17] *Johnson v. Lucent Technologies Inc.*, 653 F.3d 1000, 1012 (9th Cir. 2011) (affirming dismissal with prejudice, holding "[w]e fail to see how [plaintiff] could have amended his pleadings to cure their deficiencies without contradicting the factual allegations in his complaint. Leave to amend would have therefore been futile."); *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990) (same).

1

DATED:  May 30, 2013          BOIES, SCHILLER & FLEXNER LLP

2

3

 /s/ William S. Ohlemeyer

4

William S. Ohlemeyer

5

Attorneys for Defendants Herbalife International
of America, Inc., Herbalife International, Inc. and
Herbalife Ltd.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28