BOIES, SCHILLER & FLEXNER LLP
Jonathan D. Schiller (*pro hac vice* to be submitted)
jschiller@bsfllp.com
William S. Ohlemeyer (admitted *pro hac vice*)
wohlemeyer@bsfllp.com
Jonathan Sherman (admitted *pro hac vice*)
jsherman@bsfllp.com
575 Lexington Avenue
New York, NY 10022
Telephone:   212-446-2300
Facsimile:   212-446-2350

David L. Zifkin (SBN 232845)
dzifkin@bsfllp.com
401 Wilshire Boulevard, Suite 805
Santa Monica, CA 90401
Telephone:   310-752-2400
Facsimile:   310-752-2490

Attorneys for Defendants *Herbalife International of America, Inc., Herbalife International, Inc., and Herbalife Ltd.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA BOSTICK, a California citizen on behalf of himself and all others similarly situated, and on behalf of the general public,<br><br>Plaintiff,<br><br>v.<br><br>HERBALIFE INTERNATIONAL OF AMERICA, INC., a Nevada Corporation, HERBALIFE INTERNATIONAL, INC., a Nevada Corporation, HERBALIFE, LTD., a Cayman Islands Corporation,<br><br>Defendants. | Case No.  13-cv-02488 BRO (RZx)<br><br>**DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 8, 9(b) AND 12(b)(6)**<br><br>Hon. Beverly Reid O'Connell<br><br>**Date: July 29, 2013**<br>**Time: 1:30pm** |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT ....................................................................................................... 2

I.   IN LIGHT OF BOSTICK'S CONCESSION IN HIS OPPOSITION
     BRIEF, THIS COURT HAS NO SUBJECT MATTER JURISDICTION
     AND SHOULD DISMISS THE COMPLAINT IN ITS ENTIRETY. ............... 2

     A.  Bostick's RICO Claims—His Only Alleged Basis for Federal
         Jurisdiction—Are Foreclosed By Controlling Law and Cannot
         Provide a Basis for Supplemental Jurisdiction. ............................... 3

     B.  The Court Should Decline To Exercise Supplemental Jurisdiction
         Even If It Has The Power to Retain the State Law Claims. ........................ 7

II.  THE ENDLESS CHAIN CLAIM MUST BE DISMISSED ............................. 9

     A.  The January 2013 Statement of Average Gross Compensation Does
         Not Rescue Bostick's Section 327 Claim that Herbalife Is an Endless
         Chain. ................................................................................................ 9

     B.  Bostick's Complaint Both Explicitly Concedes and Factually
         Demonstrates that Herbalife Does Not Require a Participant to Pay
         "Valuable Consideration" for the Chance to Receive Compensation
         for Recruiting. ................................................................................ 11

         1.  Bostick's Complaint Concedes that Herbalife Does Not Require
             Participants to Pay "Valuable Consideration" Under Section 327. ....... 12

         2.  The Complaint Does Not Allege That Herbalife Pays Its
             Participants "Compensation for Introducing One or More
             Additional Persons into Participation in the Scheme." ......................... 14

     C.  Bostick Is Not Entitled to the Statutory Remedy for His Endless
         Chain Claim:  Rescission. .............................................................. 18

III. BOSTICK'S UCL CLAIM MUST BE DISMISSED. ..................................... 19

     A.  The Compensation Statement and Other Advertising Materials
         Provided to Bostick Were Accurate and Cannot Support His UCL
         Claim. .............................................................................................. 21

     B.  Bostick's Specific Contractual Acknowledgements Preclude
         Reasonable Reliance as a Matter of Law. ....................................... 23

IV.  BOSTICK'S FALSE ADVERTISING CLAIM MUST BE DISMISSED ....... 24

CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

CASES

*Applied Elastomerics, Inc. v. Z-Man Fishing Products*, 2006 WL 3251732 (N.D. Cal. Nov. 8, 2006) ........................................................ 24

*Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) ............................................. 7

*Azizi v. American Government*, 2010 WL 1329431 (C.D. Cal. Mar. 31, 2010) ................................................................................................. 3

*Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988) .................... 7

*Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Association*, 60 Cal. App. 4th 1053 (1st Dist. 1998) ............................................... 16

*Cook v. Peter Kiewit Sons Co.*, 775 F.2d 1030 (9th Cir. 1985) ................. 3

*Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012) ........ 24

*Do v. Bank of America Corp.*, 2012 WL 1094451 (N.D. Cal. Mar. 29, 2012) ................................................................................................... 8

*Feinstein v. Tran*, 2011 WL 5150873 (C.D. Cal. Sept. 22, 2011) *report and recommendation adopted*, 2011 WL 5117711 (C.D. Cal. Oct. 27, 2011) ............................................................................................. 7

*Ford v. Hotwire, Inc.*, 2007 WL 6235779 (N.D. Cal. Nov. 19, 2007) ..... 25

*Freedom Newspapers, Inc. v. Orange County Employees Retirement System*, 6 Cal. 4th 821 (1993) .............................................................. 16

*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) ................................ 22

*Grauberger v. St. Francis Hospital*, 169 F. Supp. 2d 1172 (N.D. Cal. 2001) ..................................................................................................... 8

*Hairston v. South Beach Beverage Co., Inc.*, 2012 WL 1893818 (C.D. Cal. May 18, 2012) .............................................................................. 22

*Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802 (9th Cir. 2001) ..................................................................................................... 3

*Hinesley v. Oakshade Town Ctr.*, 135 Cal. App. 4th 289 (3d Dist. 2005) ................................................................................................... 23

*In re City Equities Anaheim, Ltd.*, 22 F.3d 954 (9th Cir. 1994) ............. 23

*In re County of Orange*, 31 F. Supp. 2d 768 (C.D. Cal. 1998) .............. 16

*In re Koscot Interplanetary Inc.*, 86 F.T.C. 1106 (1975) ................ passim

*Janda v. T-Mobile*, 2009 WL 667206 (N.D. Cal. Mar. 13, 2009), *aff'd*

378 Fed. Appx. 705 (9th Cir. 2010) .................................................... 25

*Kerner v. Mendez*, 2009 WL 2424298 (N.D. Cal. Aug. 6, 2009) ........................... 7

*Levering & Garrigues Co. v. Morrin*, 289 U.S. 103 (1933) ................................ 4, 5

*Lindquist v. Chapman*, 2007 WL 1232058 (N.D. Cal. Apr. 26, 2007) .................... 6

*Mathews v. Kidder, Peabody & Co., Inc.*, 161 F.3d 156 (3d Cir. 1998).................. 6

*Molski v. Kahn Winery*, 381 F. Supp. 2d 1209 (C.D. Cal. 2005)............................ 8

*Multi Denominational Ministry of Cannabis & Rastafari, Inc. v. Gonzales*, 474 F. Supp. 2d 1133 (N.D. Cal. 2007) *aff'd sub nom.* 365 Fed. App'x 817 (9th Cir. 2010) ......................................................... 8

*O'Connor v. State of Nevada*, 27 F.3d 357 (9th Cir. 1994) ..................................... 7

*Omni Home Financing, Inc. v. Hartford Life & Annuity Insurance Co.*, 2008 WL 1925248 (S.D. Cal Apr. 29, 2008) ........................................... 24

*PDTC Owners Association v. Coachella Valley County Water Dist.*, 443 F. Supp. 338 (C.D. Cal. 1978)........................................................... 5

*Powers v. Wells Fargo Bank NA*, 439 F.3d 1043 (9th Cir. 2006)................. 4, 6, 15

*Ramos v. U.S. Bank*, 2012 WL 4062499 (S.D. Cal. Sept. 14, 2012) ....................... 8

*Red v. Kraft Foods, Inc.*, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) order entered by 2012 WL 5502359 (C.D. Cal. Oct. 26., 2012)...................... 22

*Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Development Corp.*, 32 Cal. App. 4th 985 (1st Dist. 1995) ....................................... 23

*Rutz v. Education Credit Management Corp.*, 2012 WL 78394 (S.D. Cal. Jan. 9, 2012).......................................................................... 8

*Scott v. Boos*, 215 F.3d 940 (9th Cir. 2000) ........................................................ 6

*Silva v. U.S. Bancorp*, 2011 WL 7096576 (C.D. Cal. Oct. 6, 2011)....................... 19

*Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036 (C.D. Cal. 2008)........................................................................................ 25

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ............................................... 4

*Thomas v. Bank of America Home Loans*, 2012 WL 3029667 (C.D. Cal. July 24, 2012)........................................................................ 8

*Tidwell v. U.S. Department of Labor Office of Workers' Compensation Program*, 2012 WL 4497802 (N.D. Cal. Sept. 28, 2012) ...................... 5

*Webster v. Omnitrition International, Inc.*, 79 F.3d 776 (9th Cir. 1996).........passim

*Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294 (7th Cir. 2003).............5, 6

*Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008) ............................ 22

*Zhang v. Countrywide Home Loans, Inc.*, 2012 WL 1245682 (N.D.
    Cal. Apr. 13, 2012) ................................................................................... 8

STATUTES

18 U.S.C. § 1964 ................................................................................................ 3

28 U.S.C. § 1367 ................................................................................................ 3

Cal. Business and Professions Code § 17200 ................................................ 19, 20

Cal. Civil Code § 1689.2 ................................................................................... 19

Cal. Civil Code § 1692 ...................................................................................... 19

Cal. Penal Code § 327 ................................................................................. passim

Pub. L. No. 104–67, § 107, 109 Stat 737, 758 (1995) ....................................... 4

RULES

Fed. R. Civ. P. 12(b)(1) ................................................................................... 2, 3

Fed. R. Civ. P. 9(b) .......................................................................................... 20

DEFENDANTS' REPLY MEMORANDUM ISO MOTION
TO DISMISS THE COMPLAINT

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Herbalife International of America, Inc., Herbalife International, Inc. and Herbalife Ltd. ("Herbalife" or "Defendants") submit this Reply Memorandum of Points and Authorities in further support of their motion to dismiss Plaintiff Dana Bostick's ("Bostick" or "Plaintiff") Class Action Complaint dated April 8, 2013 (the "Complaint").

## PRELIMINARY STATEMENT

In his Opposition to Herbalife's moving papers, Bostick—in a three-sentence footnote—abandons his federal claims and offers to file an as-yet-unseen amended complaint. Opp. Br. at 9 n.59, 25. Bostick even *joins with Herbalife* to ask the Court to "*grant…Herbalife's Motion* to Dismiss as to [his] RICO claims…" Opp. Br. at 25 (emphasis added). As Herbalife demonstrated in its moving papers, the Complaint must be dismissed for failure to state a claim because Bostick has "pled himself out of court." Bostick's opposition to Herbalife's motion (the "Opposition") extends that principle in a new direction by conceding that this Court does not have jurisdiction over the subject matter of any part of this action.

Bostick invokes this Court's subject matter jurisdiction based on the allegation of one federal question: RICO (Count Nos. 2, 3, and 4, the "RICO Claims"). Compl. ¶ 13 ("Because Bostick asserts claims under [RICO], this Court has jurisdiction over this action under 28 U.S.C. § 1331."). The RICO Claims are the only claims based on federal law asserted in the Complaint. In its moving brief, Herbalife argued that those claims were preempted under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), citing as principal authority a case Bostick pleads expressly in his Complaint, *Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776 (9th Cir. 1996). Bostick, apparently, agrees: by now joining with Herbalife to move to dismiss those very claims on the grounds asserted by Herbalife, he concedes that there is no subject matter jurisdiction. This requires that the entire Complaint be dismissed, including the four state law counts. Bostick

does not even attempt to demonstrate otherwise.[1]

Moreover, and in any event, the Complaint fails to state a claim. Not only do the allegations fail under well-established law, but also the documents attached to, or referred to, in the Complaint contradict and disprove Bostick's allegations.

Bostick signed a two-page contract, fully enforceable despite his attempt to escape the "representation, warranty and acknowledgment" he executed and by which he agreed to the risks of becoming a distributor. Compl. Ex. C at 38-39; Ex. I at 1-4; Opp. Br. at 21-23. The contract acknowledged that Herbalife required Bostick to buy no minimum amount of product, offered him a discount on products he chose to purchase, allowed him to return unused and unsold products for a full refund, and offered a business opportunity that was (and had long been) disclosed, stating that only a small percentage of Distributors could expect to generate significant income. ***No court, in any state, has ever found a company with these features to allege a pyramid scheme; and each of these features is contained in the documents attached to Bostick's Complaint. Bostick cannot dispute any of the documents***. Compl. Ex. C at 2, 8, 17, 65; Ex. I at 2. In light of the allegations of the Complaint and the documents to which they refer and which are incorporated into the Complaint—documents that would control the disposition of a motion to dismiss *any* Complaint—repleading would be futile.

## ARGUMENT

## I.  IN LIGHT OF BOSTICK'S CONCESSION IN HIS OPPOSITION BRIEF, THIS COURT HAS NO SUBJECT MATTER JURISDICTION AND SHOULD DISMISS THE COMPLAINT IN ITS ENTIRETY.

The Court should dismiss the Complaint for two reasons: (i) it *must* do so under Fed. R. Civ. P. 12(b)(1); and (ii) it *should* do so under the doctrine of supplemental jurisdiction as it applies to the context of this case.

---

[1] As we show below, even if the Court were to conclude that it has discretion to retain supplemental jurisdiction over Bostick's state law claims, the Court should decline any invitation to do so.

DEFENDANTS' REPLY MEMORANDUM ISO MOTION
TO DISMISS THE COMPLAINT

### A. **Bostick's RICO Claims—His Only Alleged Basis for Federal Jurisdiction—Are Foreclosed By Controlling Law and Cannot Provide a Basis for Supplemental Jurisdiction.**

On its face, the Complaint fails to allege any plausible basis for original jurisdiction. Under 28 U.S.C. § 1367(a), "in any civil action *of which the district courts have original jurisdiction*, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution" (emphasis added). Original jurisdiction thus is a prerequisite to supplemental jurisdiction. *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001) (holding that the court lacked subject matter jurisdiction to be able to retain supplemental jurisdiction). And "[i]f the district court dismisses all federal claims on the merits, it has discretion under § 1367(c) to adjudicate the remaining claims; *if the court dismisses for lack of subject matter jurisdiction, [however], it has no discretion and must dismiss all claims*." *Id.* (emphasis added).

This Court has no original jurisdiction over Bostick's RICO Claims for two reasons, each of which is an independent and sufficient basis to dismiss the Complaint. First, the RICO Claims are unquestionably barred by the PSLRA and controlling court decisions. The Claims are "insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *See Cook v. Peter Kiewit Sons Co.*, 775 F.2d 1030, 1035-36 (9th Cir. 1985) (affirming dismissal under the substantiality doctrine where the federal law claims were "wholly frivolous, insubstantial and groundless" and "thus outside this court's subject matter jurisdiction.") (internal citations omitted); *Azizi v. Am. Gov't*, 2010 WL 1329431, at *1 (C.D. Cal. Mar. 31, 2010) ("The manifest insubstantiality" of the complaint deprived the Court of subject matter jurisdiction). Second, the PSLRA amendment to RICO's jurisdictional statute (18 U.S.C. § 1964) deprives this Court of jurisdiction to hear Bostick's RICO Claims and requires dismissal under Rule 12(b)(1). *See Powers v. Wells*

DEFENDANTS' REPLY MEMORANDUM ISO MOTION TO DISMISS THE COMPLAINT

1  *Fargo Bank NA*, 439 F.3d 1043, 1044-45 (9th Cir. 2006) (affirming dismissal of

2  claims under Rule 12(b)(1) based on PSLRA RICO Amendment); Pub. L. No. 104–

3  67, § 107, 109 Stat 737, 758 (1995).

4        Bostick concedes that his RICO Claims are barred by the PSLRA.  Opp. Br.

5  at 9, 25.  Despite his unambiguous assertion of federal question jurisdiction as his

6  sole basis for subject matter jurisdiction in this Court, he makes no attempt to

7  defend (or even acknowledge) the effect that an amended complaint will have on

8  the basis for subject matter jurisdiction set forth in the Complaint.  Bostick's

9  concession "leave[s] no room for the inference that the questions sought to be

10  raised [by the RICO claims] can be the subject of controversy." *Levering &*

11  *Garrigues Co. v. Morrin*, 289 U.S. 103, 105 (1933) (holding that the court lacked

12  subject matter jurisdiction over an antitrust claim that did not implicate interstate

13  commerce).  The claims therefore fail to raise a federal question.  As Herbalife

14  showed in its moving papers (at 23-24), Bostick's pyramid scheme allegations,

15  although false, allege conduct that could be actionable as securities fraud.[2]  In

16  *Omnitrition*, on which Bostick relies and cites repeatedly by name in the

17  Complaint, the Ninth Circuit held "that operation of a pyramid scheme violates

18  10b-5's prohibition against engaging in an 'act, practice or course of business

19  which operates as a fraud or deceit upon any person.'"  79 F.3d 776, 784 (9th Cir.

20  1996); Compl. ¶¶ 16-20; 187, 193, 196-97, 203, 206 (discussing *Omnitrition*).  The

21  PSLRA in turn bars Bostick's RICO Claims because the claims, as asserted in the

22  Complaint, are based on conduct in furtherance of a purported pyramid scheme.

23  *See Swartz v. KPMG LLP*, 476 F.3d 756, 761 (9th Cir. 2007) (holding that RICO

24

25  [2] Bostick asserts that Herbalife "conceded" or "admi[tted]" that his allegations are
sufficient to allege a 10b-5 violation.  Opp. Br. at 9 n.59.  This is false.  Rather,
26  Herbalife simply accepted as true—as it was required to do—the allegations of the
Complaint for purposes of this Motion only.  There are no concessions to be
27  preserved.  Indeed, by dropping his RICO Claims, Bostick now apparently
concedes that the Claims allege conduct that could be actionable as fraud in
28  connection with the purchase or sale of securities, although, as we pointed out in
our moving papers, *not necessarily by Bostick*.  Mov. Br. at 24.

DEFENDANTS' REPLY MEMORANDUM ISO MOTION
TO DISMISS THE COMPLAINT

1    claims were barred by the PSLRA).

2    Bostick's RICO Claims are precisely the kind of contrived federal question

3    that courts refuse to allow as the foundation for the exercise of supplemental

4    jurisdiction over state law claims.  For example, the Supreme Court has affirmed

5    dismissal of an antitrust claim on jurisdictional grounds because the alleged

6    conspiracy had only an "incidental" effect on interstate commerce and the supposed

7    "federal question presented was plainly unsubstantial, since it had, prior to the

8    filing of the bill, been foreclosed by the two previous decisions last named, and was

9    no longer the subject of controversy." *Levering*, 289 U.S. at 108.  Likewise, a court

10   recently dismissed for lack of subject matter jurisdiction a claim under the Federal

11   Employees' Compensation Act where the statute—similar to the PSLRA's RICO

12   bar—expressly prohibited the claims raised in the Complaint.  *See Tidwell v. U.S.*

13   *Dep't of Labor Office of Workers' Compensation Program*, 2012 WL 4497802

14   (N.D. Cal. Sept. 28, 2012); *see also PDTC Owners Ass'n v. Coachella Valley*

15   *County Water Dist.*, 443 F. Supp. 338, 341 (C.D. Cal. 1978) (dismissing, for lack of

16   jurisdiction, takings claim foreclosed by prior case law).

17   In light of Bostick's concession in his opposition brief, *Williams v. Aztar*

18   *Indiana Gaming Corp.*, 351 F.3d 294, 299 (7th Cir. 2003), is particularly

19   instructive.  There, the court held that the lower court lacked subject matter

20   jurisdiction because the plaintiff's "RICO theory is *so* feeble, so transparent an

21   attempt to move a state-law dispute to federal court that it does not arise under

22   federal law at all." *Id*. at 299 (emphasis in original; quotations omitted).  The court

23   for that reason found that there was no jurisdictional basis upon which to retain

24   supplemental jurisdiction over the state law claims. *Id*. at 300.  The court stated

25   that the plaintiff "all but conceded that he lacked a good faith basis for bringing the

26   RICO claim (the court specifically noted that [plaintiff] was not appealing the

27   district court's resolution of that issue)." *Id*. at 300.

28   Bostick has run from his RICO Claims faster than did the plaintiff in

5

*Aztar*—going so far as to join with Herbalife (Opp. Br. at 25) to request the affirmative relief of dismissal.  Bostick's actions could hardly make it clearer that following the PSLRA's amendment to RICO, "[t]he conduct alleged in the [complaint] is simply not an activity which RICO was designed to deter," and thus the Court lacks subject-matter jurisdiction over this matter.  *Lindquist v. Chapman*, 2007 WL 1232058, at *4 (N.D. Cal. Apr. 26, 2007) (quotations omitted) (dismissing RICO claims for lack of subject-matter jurisdiction without leave to amend) *aff'd*, 263 Fed. App'x 559 (9th Cir. 2008) ("The district court correctly dismissed appellant's action for lack of subject-matter jurisdiction because appellant's only federal claim failed to state a [RICO] claim pursuant to 18 U.S.C. § 1962(a).").

This Court lacks original jurisdiction over the RICO Claims for a second reason:  dismissal of RICO claims pursuant to the PSLRA itself constitutes a dismissal for lack of subject matter jurisdiction.  In *Powers v. Wells Fargo Bank NA*, 439 F.3d 1043, 1044 (9th Cir. 2006), the court affirmed the district court's holding that "it did not have jurisdiction to consider the RICO claim" arising out of a Ponzi scheme because of the PSLRA preempted the claim.  And in *Scott v. Boos*, the Ninth Circuit observed that "the RICO amendment on its face changes a federal jurisdictional statute." 215 F.3d 940, 945 (9th Cir. 2000).[3]  As the Supreme Court has held—and as is true with respect to PSLRA preemption—if "the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue" of whether dismissal for failure to satisfy the requirement affects the court's subject matter jurisdiction.  *Arbaugh v. Y&H Corp.*, 546 U.S.

---

[3] The Ninth Circuit in *Scott* also cited approvingly the Third Circuit's decision in *Mathews v. Kidder, Peabody & Co., Inc.*, which noted that "[t]he RICO amendment . . . does not simply allocate jurisdiction among fora, determining where a claim might be brought; *rather, it destroys jurisdiction where it previously existed; it thus speaks not just to the power of a particular court but to the substantive rights of the parties as well*."  *Scott*, 215 F.3d at 945 (quoting *Mathews v. Kidder, Peabody & Co., Inc.*, 161 F.3d 156, 166 (3d Cir. 1998)) (emphasis added).

DEFENDANTS' REPLY MEMORANDUM ISO MOTION
TO DISMISS THE COMPLAINT

500, 502 (2006).  Thus, even if Bostick's RICO Claims were not foreclosed by law (and they are), the Court would nevertheless lack a jurisdictional basis for retaining supplemental jurisdiction over the state law claims.  The Complaint must be dismissed.

### B.  The Court Should Decline To Exercise Supplemental Jurisdiction Even If It Has The Power to Retain the State Law Claims.

Nor should the Court retain supplemental jurisdiction over Bostick's state law claims if it concludes that it has the power to do so.  The applicable standard is well known: When exercising discretion to retain supplemental jurisdiction over state law claims after all federal claims have been dismissed, courts consider "whether declining jurisdiction comports with the underlying objective of most sensibly accommodating the values of economy, convenience, fairness, and comity." *O'Connor v. State of Nev.*, 27 F.3d 357, 363 (9th Cir. 1994) (citations and quotations omitted); *see Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").  Among the factors a court will consider in deciding whether to grant supplemental jurisdiction over state law claims are:  (1) whether discovery has commenced;[4] (2) whether plaintiffs would be inconvenienced or prejudiced in refiling in state court;[5] and (3) whether deciding the pendent claims would require the court to decide

---

[4] *See Kerner v. Mendez*, 2009 WL 2424298, at *1 (N.D. Cal. Aug. 6, 2009) (declining to exercise supplemental jurisdiction over state law claims remaining after the court dismissed all federal law claims where "[t]he parties have not yet appeared for an initial case conference, and no discovery has occurred to date.").
[5] *See Feinstein v. Tran*, 2011 WL 5150873, at *5 (C.D. Cal. Sept. 22, 2011) *report and recommendation adopted*, 2011 WL 5117711 (C.D. Cal. Oct. 27, 2011) (dismissing the only federal claim in the case, the court declined to exercise supplemental jurisdiction over the remaining state law claim because having to re-file that claim in state court would not prejudice the plaintiff where the claim remained timely).

DEFENDANTS' REPLY MEMORANDUM ISO MOTION TO DISMISS THE COMPLAINT

1   novel or difficult questions of state law.[6]  All these factors cut against asserting
2   supplemental jurisdiction here.

3       This motion was the first substantive document filed in this case after the
4   Complaint.  There has been no discovery.  Bostick would not be prejudiced by
5   filing his state law claims in state court.  And should the Court disagree that the
6   Complaint fails to state a claim, the legal issues raised on the merits here may
7   require novel interpretations of state law with implications for many businesses[7]
8   operating in California.  Of particular import:  Bostick has asked this Court to
9   depart from the California Attorney General's interpretation and application of the
10  state law it is charged with enforcing.  Bostick's allegations, if accepted, likely raise
11  novel California legal issues that are better left to the California state courts to
12  resolve.[8]

13      The only conceivable reason for this Court to assert supplemental jurisdiction
14  is that the Complaint alleges a violation of a federal statute, RICO.  Bostick has
15  now acknowledged that his RICO claims are preempted by well-established law.

16
17  [6] *See Grauberger v. St. Francis Hosp.*, 169 F. Supp. 2d 1172, 1180 (N.D. Cal.
    2001) ("First, plaintiff's RICO claim provided the only basis for federal jurisdiction
18  over the state law claims set forth in the complaint. Now that the RICO claim must
    be dismissed, it is appropriate to decline jurisdiction over the remaining state law
19  claims. Second, the state law claims raise important issues of state law that have yet
    to be definitively addressed by a state appellate court, and are more appropriately
20  resolved by the state courts."); *Molski v. Kahn Winery*, 381 F. Supp. 2d 1209, 1211
    (C.D. Cal. 2005) (declining to exercise supplemental jurisdiction over "state law
21  claims [that] raise[d] novel issues of state law").
    [7] Unlike Herbalife, many are private and thus not subject to federal disclosure rules.
22  [8] Courts routinely decline to retain supplemental jurisdiction over state law claims
    after all federal claims are dismissed under circumstances similar to here.  *See
23  Grauberger*, 169 F. Supp. 2d at 1180*; Multi Denominational Ministry of Cannabis
    & Rastafari, Inc. v. Gonzales*, 474 F. Supp. 2d 1133, 1147-48 (N.D. Cal. 2007)
24  *aff'd sub nom.* 365 Fed. App'x 817 (9th Cir. 2010) (declining to exercise
    supplemental jurisdiction over state law claims after federal claims were
25  dismissed); *Ramos v. U.S. Bank*, 2012 WL 4062499, at *2 (S.D. Cal. Sept. 14,
    2012) (same); *Thomas v. Bank of Am. Home Loans*, 2012 WL 3029667, at *4 (C.D.
26  Cal. July 24, 2012) (same) ("Therefore, because this case is in its early stages and
    because all remaining claims are state-law claims, the Court declines to exercise
27  supplemental jurisdiction."); *Zhang v. Countrywide Home Loans, Inc.*, 2012 WL
    1245682, at *11 (N.D. Cal. Apr. 13, 2012) (same); *Do v. Bank of Am. Corp.*, 2012
28  WL 1094451, at *4 (N.D. Cal. Mar. 29, 2012) (same); *Rutz v. Educ. Credit Mgmt.
    Corp.*, 2012 WL 78394, at *3 (S.D. Cal. Jan. 9, 2012) (same).

8       DEFENDANTS' REPLY MEMORANDUM ISO MOTION
        TO DISMISS THE COMPLAINT

1  This Court should reject Bostick's attempt to premise federal jurisdiction on claims

2  so devoid of merit that Bostick has made no attempt to defend them.

3  **II. THE ENDLESS CHAIN CLAIM MUST BE DISMISSED.**

4          The central premise of the Complaint is that Herbalife promised Bostick that

5  if he invested enough money and recruited enough people, he could sit back and

6  reap rewards.  Herbalife's moving papers demonstrated that this allegation is false

7  because it is contradicted by the Complaint's own allegations and the documents

8  upon which the Complaint relies and to which it refers.  First, the documents on

9  which the Complaint relies make clear that success as a Distributor is far from

10 assured.  Second, the Complaint affirmatively asserts that Herbalife requires no

11 monetary investment to become a Distributor *or* to earn commissions from sales

12 made personally or by the Distributor's downline.  Third, the Complaint establishes

13 that all of Herbalife's compensation payments are related to product sales to

14 ultimate users and not solely for recruiting.  Thus under the language of the

15 Complaint and its attachments, there is no endless chain alleged under Section 327.

16         Ultimately, Bostick does not dispute Herbalife's argument in its moving

17 papers that the Complaint makes allegations that must be taken as true and

18 incorporates numerous documents which are not consistent with his endless chain

19 scheme claim.  Bostick's attempts now to ignore these documents or underplay

20 their significance are futile, whether under the federal law (*Omnitrition*'s

21 application of *Koscot*, relied on throughout the Complaint) or under the text of

22 Section 327 itself.

    **A.  The January 2013 Statement of Average Gross Compensation Does
23      Not Rescue Bostick's Section 327 Claim that Herbalife Is an Endless
        Chain.**
24

25         Bostick responds to this motion by asserting that Herbalife's most recently

26 published "Statement of Average Gross Compensation of U.S. Supervisors" (the

   "Compensation Statement") reveals for the first time that it was supposedly
27
   impossible for him or anyone else to make money as a distributor because
28
   "Herbalife paid nothing to 87.9% of" 2012 Herbalife distributors.  Opp. Br. at 1.

DEFENDANTS' REPLY MEMORANDUM ISO MOTION
                                                             TO DISMISS THE COMPLAINT

The argument is meritless for two reasons.  First, it is contradicted by the 2013 Compensation Statement itself, which states that 73% of distributors "primarily join [Herbalife] to receive a wholesale price on products they and their families enjoy," and these "Distributors benefit from buying Herbalife products at a preferred price for their consumption and that of their families, and for many this is the only benefit they seek."  Compl. Ex. B. at 1.  In other words, of the 88% of Distributors who are unpaid, *a large majority never seek to be paid*:  They buy for themselves. In the same vein, the Compensation Statement states that "[t]he figures below do not include any retail/wholesale profit that a Distributor makes from selling Herbalife's products to others."  *Id.*  It is grossly misleading for Bostick to characterize those distributors who do not earn compensation from Herbalife *directly* as earning nothing whatsoever.  *See id.*; *see also* Ex. C. at 17 (the Compensation Statement Bostick received states: "The amounts above do not include the income Distributors can earn from their retail or wholesale income, so the actual compensation can be somewhat higher, depending upon each Distributor's personal-selling efforts.").

Second, Bostick obfuscates in discussing the Compensation Statements from years before 2013, also attached to his Complaint (*inter alia*, at Exs. A & C).[9]  They demonstrate that 2013 was *not* the first time Herbalife disclosed that 88% of Distributors did not qualify for the particular types of compensation paid directly by Herbalife.  Herbalife made this point in its moving brief, as well; Bostick never mentions it.[10]  Mov. Br. at 11.  But Bostick cannot escape the documents that are

---

[9] Bostick attempts to transform the prior years' Compensation Statements into some sort of unenforceable fine print "buried within the hundreds of pages of the IBP" (Opp. Br. at 4), but this argument is contradicted by the allegation in the Complaint that "[w]hen making statements regarding their wealth and the potential wealth for new recruits, Herbalife and the Beneficiaries and Promoters *routinely* refer the readers or viewers . . . to the Herbalife [Compensation Statement]."  Compl. ¶ 158 (emphasis added).

[10] The prior Compensation Statements stated that approximately 25% of Distributors reach the rank of Supervisor, and of those, approximately 37-46% (depending on the year) earned compensation directly from Herbalife.  Compl. Ex.

1  attached to, or referenced in, his Complaint.  The central premise of his endless

2  chain claim—that he did not have any opportunity to make money—should be

3  rejected as a matter of law.

**B.  Bostick's Complaint Both Explicitly Concedes and Factually Demonstrates that Herbalife Does Not Require a Participant to Pay "Valuable Consideration" for the Chance to Receive Compensation for Recruiting.**

6  Herbalife's moving papers (at 8 n.7) demonstrate that the Complaint fails to

7  allege a *prima facie* showing of a pyramid scheme under *Koscot*, the legal standard

8  Bostick pleads repeatedly (Compl. ¶¶ 16-20) and which the Ninth Circuit in

9  *Omnitrition* stated was "equivalent, if not identical" to Section 327.  79 F.3d at 787;

10  *see* Compl. ¶ 16 (In *Omnitrition*, "the Ninth Circuit adopted the '*Koscot* Test' for

11  determining what constitutes a pyramid scheme.").  In response, Bostick—while at

12  one point conceding that the two standards are the same (Opp. Br at 8-9)—also says

13  the opposite, seeking refuge in a contention that Section 327 imposes a stricter

14  standard (specifically, regarding internal sales) than *Koscot*.[11]

15  Bostick's reading of Section 327 is not supported by the language of the

16  statute.  If anything, Section 327 accommodates business models such as

17  Herbalife's, as discussed below. *Infra* §§ II.B.1, II.B.2.

18  In relevant part, Section 327 reads:

19  "As used in this section, an "endless chain" means any scheme for the

20  disposal or distribution of property whereby a participant pays a

21  valuable consideration for the chance to receive compensation for

22  introducing one or more additional persons into participation in the

23  scheme or for the chance to receive compensation when a person

---

25  C at 17, Ex. A at 1-5.  In other words, at most, 46% of the 25% of Distributors (approximately 12%) who reach the rank of Supervisor earn reportable

26  compensation; *the remaining 88% do not*.  Thus, the 88% of Distributors reported in the 2013 Compensation Statement was no earth-shattering revelation.  It was

27  simple arithmetic.

[11] Not surprisingly, Bostick fails to cite a single case in his Opposition supporting

28  his newfound theory that despite failing under *Koscot*, an endless chain claim succeeds under Section 327.

DEFENDANTS' REPLY MEMORANDUM ISO MOTION
TO DISMISS THE COMPLAINT

introduced by the participant introduces a new participant. Compensation, as used in this section, does not mean or include payment based upon sales made to persons who are not participants in the scheme and who are not purchasing in order to participate in the scheme."

To state a cause of action under Section 327 (as is so under *Koscot*[12]), Bostick was required to plead facts in his Complaint from which could be inferred two things:  (1) Herbalife requires participants to pay "valuable consideration" in exchange for the chance to receive compensation for recruiting, and (2) Herbalife pays its participants "compensation for introducing one or more additional persons into participation in the scheme."  *Id.*  Bostick's Complaint fails to do either of these things.

### 1. Bostick's Complaint Concedes that Herbalife Does Not Require Participants to Pay "Valuable Consideration" Under Section 327.

As shown in Herbalife's moving papers, Bostick's Complaint fails to allege that Herbalife passes the threshold test for a pyramid scheme under both Section 327 and *Koscot* because it does not require its participants to pay "valuable consideration" to make an initial investment in the scheme.  Mov. Br. at 11-14. This element is critical to alleging a pyramid scheme because it is this investment of the participant's own capital that is the mechanism by which the victims' money is transferred to the top of the pyramid.  Bostick concedes in his Complaint that Herbalife lacks this fundamental aspect of any pyramid scheme, and this alone is sufficient grounds for dismissal of Bostick's endless chain claim.  Bostick's Opposition tries to backtrack from these concessions, but to no avail.

*IBP Purchases Are Not "Valuable Consideration*."  In his Complaint,

---

[12] Under *Koscot*, a pyramid scheme "[is] characterized by the payment by participants of money to the company in return for which they receive (1) the right to sell a product *and* (2) the right to receive in return for recruiting other participants into the program rewards that are unrelated to the sale of product to ultimate users."  *In re Koscot Interplanetary Inc.*, 86 F.T.C. 1106, 1181 (1975).

DEFENDANTS' REPLY MEMORANDUM ISO MOTION TO DISMISS THE COMPLAINT

1   Bostick concedes that Herbalife's requirement that a distributor purchase an IBP or
2   mini-IBP "does not constitute" "a payment or initial disbursement by a new
3   participant for the right to sell products and the right to earn rewards, in return for
4   recruiting other participants into the program and which are unrelated to sale of
5   product to the ultimate user."  Compl. ¶¶ 188-189; Mov. Br. at 11-14.  Bostick does
6   not deny this concession in his Opposition, but he claims he did not "concede (as
7   Herbalife claims) that payment for the IBP does not constitute 'valuable
8   consideration' or 'payments of money' as those terms are used in Section 327 and
9   *Koscot*."  Opp. Br. at 9.  In other words, while purchase of an IBP is not, according
10  to Bostick's Opposition, a "payment or initial disbursement," it appears to be a
11  "payment of money" or "valuable consideration."  This is a distinction without a
12  difference and is contradicted by the concession set forth in the Complaint.

13          *Inventory Purchases Are Not "Valuable Consideration*."  Bostick also argues
14  that Herbalife requires that distributors make large initial investments if they hope
15  to succeed at making retail sales, which purportedly makes retail sales impossible
16  for all but those entitled to the largest discount.  Opp. Br. at 10; *accord* Compl. ¶
17  190.  However, the Complaint on its face concedes that it is possible to qualify as
18  Supervisor and receive the highest-level 50% discount "*without purchasing or
19  reselling any Herbalife products*."  Compl. ¶ 91 (emphasis added).  Bostick does
20  argue that the court in *Ford* was unable to conclude that it was possible to qualify
21  as Supervisor without purchasing Herbalife products.  Opp. Br. at 10.  But this case
22  is not *Ford*.  The Complaint here, unlike the complaint in Ford, **concedes** the very
23  point that the *Ford* court believed would be dispositive if it could be determined as
24  a matter of law:  not only is it possible to qualify as Supervisor without purchasing
25  Herbalife products, ***Bostick affirmatively so pleads***.  Compl. ¶ 91.

26          *Herbalife's 10 Customer Rule*.  Bostick alleges that by requiring Supervisors
27  to certify that they made sales to at least ten separate customers, Herbalife's 10
28  customer rule, an anti-pyramiding safeguard, requires "[s]upervisors [to] purchase

DEFENDANTS' REPLY MEMORANDUM ISO MOTION
TO DISMISS THE COMPLAINT

inventory," and in so doing, pay "valuable consideration" for the chance to earn compensation.  Opp. Br. at 10.  This is nonsensical; Bostick cites no legal basis for concluding that every product purchased to sell to a customer constitutes an investment in a pyramid scheme.  Moreover, it is clear from the face of Section 327 that purchase of a product for resale is not payment of "valuable consideration *for the chance to receive compensation for introducing one or more additional persons into participation in the scheme.*"  This is for two reasons.  <u>First</u>, payments made to purchase a product for resale are made for the chance to earn *retail* income, not recruiting income.  <u>Second</u>, compensation earned from sales to consumers is excluded from Section 327's definition of "compensation," and therefore payments made to purchase products for resale are by definition not "for the chance to receive compensation."

*Bostick's Catch-22.*  Finally, Bostick argues that because Herbalife does *not* require distributors to pay money to purchase products in order to advance to Supervisor, Herbalife is an endless chain scheme.  Opp. Br. at 12.  This is absurd: Bostick's theory is that a Distributor who advances to Supervisor without making product purchases "would be advancing solely on recruiting efforts and the purchases of his downline – *i.e.*, 'rewards unrelated to [his or her own] product sales' – the *sin* [sic] *qua non* of a pyramid scheme."  Opp. Br. at 12 (quoting and modifying *Omnitrition*, 79 F.3d at 781).  Bostick's argument misstates governing law, which requires that compensation be related to product sales to ultimate users but – contrary to Bostick's misleading modification of *Omnitrition* – in no way limits such compensation to payments for a distributor's own personal sales. *Omnitrition*, 79 F.3d at 781-82; *Koscot*, 86 F.T.C. at 1181.

**2.      The Complaint Does Not Allege That Herbalife Pays Its Participants "Compensation for Introducing One or More Additional Persons into Participation in the Scheme."**

Herbalife showed in its moving papers that the Complaint and its exhibits establish that Herbalife's compensation is not unrelated to the sales of products to ultimate users.  Mov. Br. at 14-18.  Herbalife explained that its sales and marketing

DEFENDANTS' REPLY MEMORANDUM ISO MOTION TO DISMISS THE COMPLAINT

structure, as alleged in the Complaint, is easily distinguished from the "recruitment-focused" plan before the court in *Omnitrition*. *Id.* at 16.  Furthermore, the moving papers showed that the interpretation of Section 327 advocated by Bostick would effectively outlaw all multi-level marketing firms in California—a result the legislature surely would have mentioned had it been intended. *Id.* at 15-16.

In response, Bostick makes three arguments, none of which has merit.

*Section 327 and Internal Consumption*.  First, Bostick argues that Section 327 categorically bars all compensation based on sales to distributors for their own personal consumption of the product.  Opp. Br. at 12-14.  Bostick's arguments are inconsistent with the text of Section 327,[13] the Attorney General's interpretation and application of the law, and the courts' consistent, decades-old explanation of why pyramid schemes are fraudulent.

Herbalife's system of paying compensation for sales to distributor-consumers is permitted under the plain language Section 327.  As an initial matter, payments from sales to distributor-consumers are not "compensation for introducing one or more additional persons into participation in the scheme" because no greater compensation is earned from the sale than if the consumer had not been recruited as a Distributor.  Additionally, earnings from sales to consumers who become Distributors to receive a discount on products they consume fall within the Section 327's carve-out that provides that a "payment based upon sales made to persons who are not participants in the scheme and who are not purchasing in order to participate in the scheme" is not "compensation" within the meaning of the statute.  Per Section 327, "participants in the scheme" are persons who pay valuable consideration for the chance to receive compensation from recruiting.  Although

---

[13] It is telling that Bostick relies heavily upon legislative history to argue that Section 327 bars compensation for sales to distributor-consumers.  *See* Opp. Br. at 12-13.  But the words of the statute control questions of statutory interpretation, not the legislative history.  *Powers v. Wells Fargo Bank NA*, 439 F.3d 1043, 1045 (9th Cir. 2006) ("legislative history, even when clear, may not overcome or displace the textual mandate of a statute").

DEFENDANTS' REPLY MEMORANDUM ISO MOTION
TO DISMISS THE COMPLAINT

sales to retail customers may be the most obvious candidate to fall within the compensation carve-out, sales to a customer who obtains a discount by becoming a distributor is likewise not a "participant in the scheme" because such distributors are not alleged to pay valuable consideration in exchange for the chance to receive compensation for recruiting.  The Ninth Circuit acknowledged this distinction in *Omnitrition* in holding that "[t]he program is unquestionably *not* a pyramid scheme [under § 327] if only the distributor level is taken into account" because Omnitrition's base-level distributors, like Herbalife Distributors (as conceded in the Complaint), did not pay valuable consideration for the chance to earn recruiting compensation.  *Omnitrition*, 79 F.3d at 782.

　　*There Is No "Herbalife Loophole."*  Reading Section 327 to categorically bar compensation from sales to distributor-consumers is also inconsistent with the Attorney General's interpretation and application of this statute as it pertains to Herbalife.  Mov. Br. at 9, 16; *see Freedom Newspapers, Inc. v. Orange Cnty. Employees Ret. Sys.*, 6 Cal. 4th 821 (1993) ("While the Attorney General's views do not bind us, they are entitled to considerable weight.");[14] *accord In re County of Orange*, 31 F. Supp. 2d 768 (C.D. Cal. 1998).  Bostick asserts that the Attorney General did not grant Herbalife a "loophole" exempting it from Section 327.  Opp. Br. at 14-15.  But Bostick's argument can work only by assuming that *his* interpretation of Section 327 is correct, and Herbalife requires a loophole to operate legally.  The Consent Order between Herbalife and the California Attorney General, which approved of Herbalife's system of compensation for sales to distributor-consumers, was a declaration that Herbalife's compensation system was in

---

[14] The court in *Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Ass'n*, in finding that private plaintiffs' claims were barred by *res judicata* based on claims previously litigated by the California Attorney General emphasized the identity of interests between the Attorney General and members of the public.  60 Cal. App. 4th 1053, 1065 (1st Dist. 1998).  Bostick attempts to distinguish his action from *Seadrift* by arguing that Bostick and distributors have interests distinct from the public. Opp. Br. at 15.  But Bostick does not even attempt to offers a reason for the purported distinction.  There is none.

DEFENDANTS' REPLY MEMORANDUM ISO MOTION
TO DISMISS THE COMPLAINT

1   compliance with Section 327.  Indeed, this is only possible interpretation of the

2   Consent Order if, as Bostick argues, the Attorney General lacks the ability to grant

3   Herbalife a "loophole" exempting it from Section 327.  The sophistry that turns a

4   legal declaration of compliance by the State of California under Section 327 into a

5   "loophole" exempting Herbalife from its supposed *non*compliance with Section 327

6   should be rejected.

7        *Herbalife's Buy-Back Policy*.  Herbalife also explained in its moving papers

8   that Bostick's accusations of inventory loading are implausible in light of

9   Herbalife's rules obligating it to buy back unused, unsold inventory purchased by

10  an existing Distributor within the past twelve months.  Mov. Br. at 17; *see* Compl.

11  ¶ 209 n.6 (acknowledging 12-month buy-back policy).  Bostick's response boils

12  down to two flawed arguments.  <u>First</u>, Bostick argues that the existence of a buy-

13  back policy cannot save an otherwise fraudulent scheme.  Opp. Br. at 16-17.  But

14  the buy-back policy establishes that Herbalife is not an endless chain scheme at all.

15  Bostick's endless chain claim depends upon his assertion that Distributors are being

16  misled into purchasing large quantities of unsellable inventory, which purchases

17  provide the source of funds for the compensation to higher-level distributors.  This

18  entire theory—unsustainable given the documents appended to the Complaint in

19  any event—makes absolutely no sense when set against Herbalife's buy-back

20  policy: a pyramid scheme could not survive for *thirty-one years* on the mere

21  coincidence that countless failed Distributors chose, inexplicably, not to return

22  unwanted inventory.  Yet that is the assumption that Bostick's theory requires this

23  Court to make.  The existence of a buy-back policy was crucial to the decision in

24  *Omnitrition*, in which the court considered as a "payment of money" (or, in the

25  Section 327 context, "valuable consideration") purchases of "'non returnable'

26  inventory." *Omnitrition* 79 F.3d at 782.[15]

27  _____

28  [15] The *Omnitrition* court found "very significant" that Omnitrition's buy-back
    policy was only three months long because this was not long enough to "reduce or
    eliminate the possibility of inventory loading by insuring [sic] that program

DEFENDANTS' REPLY MEMORANDUM ISO MOTION
                                                          TO DISMISS THE COMPLAINT

Second, Bostick speculates as to reasons why Herbalife's buyback policy could not apply to certain purchases. Opp. Br. at 17. These arguments fail because they are contradicted by Bostick's Complaint and the exhibits thereto, and, at the most fundamental level, because they constitute baseless speculation that bears no asserted relationship to the claims or to Bostick himself. Bostick criticizes Herbalife's return policy because "Herbalife 'reserves the right to determine which products and quantities fall within the limits of Herbalife's repurchase of inventory policy.'" Opp. Br. at 17. The Complaint does not allege, however, that Bostick or anyone else was barred from returning inventory under this common-sense limitation. Bostick argues that products purchased from Distributors cannot be returned because Herbalife's return policy says that a Distributor "may return unused products or sales material which are unopened and in resalable condition . . . if the products were purchased from Herbalife within the last 12 months." Opp. Br. at 17; Compl. Ex. C. at 65. Bostick argues that the phrase "if the products were purchased from Herbalife" bars returns of products purchased from distributors, but he does not allege he was unable to return any products and he is moreover taking words out of context. The argument in any event disregards the fact that *all* Herbalife products are initially purchased from Herbalife. Compl. Ex. C. at 65. Finally, Bostick's argument that there was once a 10% restocking fee is irrelevant in this case. The fee undisputedly was waived while Bostick could have returned his purchases. Compl. ¶ 209 n.6.

## C. Bostick Is Not Entitled to the Statutory Remedy for His Endless Chain Claim: Rescission.

As the remedy for the endless chain claim, the Complaint demands the only remedy to which Bostick is statutorily entitled: rescission. Cal. Civ. Code §

---

participants do not find themselves saddled with thousands of dollars worth of unsaleable [sic] products." *Id*. at 784. In contrast, it is plain from the face of Bostick's Complaint that twelve months was long enough for him not only to eliminate the risk of being saddled with unwanted products, but to file a lawsuit seeking recovery of the cost of the products he chose not to return. Compl. ¶ 50 (Bostick signed his distributorship agreement on April 6, 2012), 68 (Bostick filed his Complaint on April 8, 2013).

1  1689.2; Compl. ¶ 231.  Herbalife showed that Bostick is not entitled to rescission

2  under California law because he chose to give away or consume all of the products

3  he has now sued to have refunded.  Mov. Br. at 18-19.  Herbalife also showed that

4  the inequity in permitting Bostick to obtain through a lawsuit the same refund he

5  could have obtained through Herbalife's return policy is a further bar to Bostick's

6  claim for rescission.  *Id.*

7          Bostick fails to respond to Herbalife's equitable argument and it is therefore

8  conceded.  *Silva v. U.S. Bancorp*, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011)

9  ("[T]he Court finds that Plaintiff concedes his . . . claim should be dismissed by

10  failing to address Defendants' arguments in his Opposition.").  In response to

11  Herbalife's argument that Bostick is required to return the products purchased

12  through the contracts he asks the Court to rescind, Bostick makes two arguments.

13  First, he claims that he is excused from his legal obligation to return purchased

14  products to Herbalife because "the transactions between the parties are so

15  complicated an accounting is necessary to determine the parties' respective rights,

16  or when, because of no fault of the rescinding party, restoration cannot be made."

17  Opp. Br. at 18.  However, Bostick offers no reason why either of these supposed

18  excuses would apply to him where the transactions he seeks to rescind were

19  routinely undone through Herbalife's return process, and where restoration was

20  rendered impossible only through Bostick's decision to give away or consume the

21  products.  Second, Bostick contends that even though the sole private remedy

22  provided for in Section 1689.2 is rescission; it is modified by another section of the

23  Civil Code concerning the availability of damages when a plaintiff elects rescission.

24  Opp. Br. at 19 (citing Cal. Civ. Code § 1692). Bostick simply cannot avoid the fact

25  that he did not elect rescission—it is his sole remedy under Section 1689.2—and he

26  cites no legal basis for asserting that Section 1692 silently modifies 1689.2.

27  **III.   BOSTICK'S UCL CLAIM MUST BE DISMISSED.**

28          As set forth in Herbalife's moving brief, Bostick's Section 17200 UCL claim

must be dismissed because the allegations in the Complaint and the documents it incorporates do not show Herbalife's actions to have been unlawful, unfair, or fraudulent.  Mov. Br. at 19-22.  Bostick's claims that Herbalife's business is unlawful or unfair are premised on it operating a pyramid scheme, and fail with his Section 327 claim.  Bostick's only other basis for claiming that Herbalife's activities violate the UCL—that Herbalife made fraudulent representations regarding Bostick's likelihood of succeeding as a distributor—also fails.  His Complaint does not allege such fraud with the requisite particularity required under Rule 9(b).  Further, the very materials that Bostick attaches to his Complaint and the contract he signed wholly contradict his conclusory assertions of reasonable reliance, a necessary element to state a claim.

Bostick's Opposition concedes that "[t]o prevail on a section 17200 fraudulent claim, there must be a showing of actual reliance on the misrepresentation."  Opp. Br. at 23.  Further, Bostick acknowledges "[r]eliance is proved by showing that without the defendant's misrepresentation the plaintiff would not have engaged in the injury-producing conduct."  *Id.*

Bostick's Complaint does not plead such actual, reasonable reliance. Bostick's Opposition largely recites his Complaint allegations but does not overcome his pleading deficiencies.  <u>First</u>, Bostick does not allege that the marketing materials he relied on contained affirmatively false information, and Bostick has acknowledged that the materials contained disclaimers stating that income examples were individual-specific and which expressly directed Bostick to obtain context from Herbalife's Compensation Statement.[16]  Bostick's attempts to attack the Compensation Statement itself (in light of a more detailed statement issued in 2013) fail for largely similar reasons: earlier versions were accurate and did not omit any information that was material to Bostick's decision to join Herbalife.  <u>Second</u>, Bostick does not dispute that, in his contract with Herbalife, he

---

[16] Indeed, his Complaint expressly concedes the point.  Compl. ¶ 158.

DEFENDANTS' REPLY MEMORANDUM ISO MOTION
TO DISMISS THE COMPLAINT

represented, warranted, and agreed that he was not relying on any statements other than those contained in the Compensation Statement.  Bostick's opposition is incorrect that the law will allow him to claim reasonable reliance on the very types of statements he specifically represented were not material to his decision to join Herbalife.

### A. **The Compensation Statement and Other Advertising Materials Provided to Bostick Were Accurate and Cannot Support His UCL Claim.**

Bostick argues that the Compensation Statement he received was deceptive because it "only gave Bostick information about the distributors who made money with Herbalife" (as opposed to discount purchasers and single-level retailers who do not earn commissions) and argues that this precluded him from "fully evaluat[ing] Herbalife's promised opportunity."  Opp. Br. at 22.  This argument is belied by his Complaint, which makes clear that he joined Herbalife with the intention of achieving Sales Leader status, a position that he by his own admission (and in violation of Herbalife's rules) attempted to buy his way into.  Compl. ¶ 53.  Bostick's Complaint alleges that he was told that becoming a Supervisor (also known as a sales leader) is "the gateway to the rest of the marketing plan because Supervisors can begin to get royalties, production bonuses, [etc.]."  Compl. ¶ 47; *accord id.* ¶ 45, 53.  As established in Herbalife's opening papers, Bostick was informed by the Compensation Statement that only a quarter of Herbalife's distributors become sales leaders, and even among active leaders, the majority average no more than modest income from downline sales.  Mov. Br. at 10-11.

Bostick argues that the Compensation Statement he reviewed before becoming a Distributor showed only the highest-earning distributors' compensation, thereby painting a misleadingly rosy picture of his prospects as an Herbalife Distributor and enticing him with promises of riches and success.  Opp. Br. at 22.  The Opposition purports to contrast the allegedly misleading Compensation Statement (Compl. Ex. C at 17) with a more recent statement (Compl. Ex. B), but tellingly, Bostick only cites the figures on the more recent

DEFENDANTS' REPLY MEMORANDUM ISO MOTION TO DISMISS THE COMPLAINT

statement, insinuating that it puts a much less positive gloss on the Herbalife Distributor opportunity.  It does not.  The Compensation Statement Bostick claims to have received stated that the average active Supervisor earned $812 per year. Compl. Ex C at 17.

Bostick devotes a substantial portion of his Opposition's UCL argument to a discussion of *Williams v. Gerber Products Co.*, a case involving deceptive pictures and verbiage on children's fruit juice packaging.  552 F.3d 934 (9th Cir. 2008). The case is distinguishable.  The plaintiff in *Gerber* alleged that the defendant misrepresented its fruit juice as containing fruits that were not in fact included in the product, and the court rejected the defendant's attempt to shield itself behind an ingredients list on the back of the package showing that the missing fruit was in fact not in the product.  Bostick's claims against Herbalife are distinguishable because Bostick does not allege that Herbalife marketing materials were false; rather, the Complaint alleges that they failed to disclose all necessary facts and context to give potential distributors an accurate impression of the Herbalife Distributor opportunity.  Opp. Br. at 22.  Furthermore, whereas the ingredients list on the back of the juice box in *Gerber* contradicted the label on the front, the Disclosure Statements do no such thing and in fact provide whatever missing facts or context might be required to prevent individuals such as Bostick from being misled.  *See Red v. Kraft Foods, Inc.*, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) order entered by 2012 WL 5502359 (C.D. Cal. Oct. 26., 2012) ("[*Gerber*] merely bars a defendant from correcting an affirmative misrepresentation on the front packaging through a back of the box ingredient list.").  *See also Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (dismissing UCL claim that large print in ad for sweepstakes was deceptive because actual terms were "expressly and repeatedly" stated next to large print statements, even though in small print); *Hairston v. S. Beach Beverage Co., Inc.*, 2012 WL 1893818, at *4-*5 (C.D. Cal. May 18, 2012), appeal dismissed (July 12, 2012) (dismissing with prejudice UCL claim alleging

DEFENDANTS' REPLY MEMORANDUM ISO MOTION
TO DISMISS THE COMPLAINT

that use of term 'all natural' on beverage packaging was misleading, and that "to the extent there is any ambiguity, it is clarified by the detailed information contained in the ingredient list, which explains the exact contents.").

## B. **Bostick's Specific Contractual Acknowledgements Preclude Reasonable Reliance as a Matter of Law.**

Herbalife's moving papers established, and Bostick does not now dispute, that in executing his two page agreement with Herbalife, Bostick represented, warranted, and agreed that he "received and [] reviewed thoroughly the contents of a previously unopened Herbalife [IBP]," that he is "not relying upon any representations as to the financial results [he] might achieve," and that he has "received and [] reviewed the Statement of Average Gross Compensation of U.S. Supervisors." Mov. Br. at 21; Compl. Ex. I at 1-2. Bostick argues in his Opposition that he should be relieved of his representations and allowed to pursue his Complaint because "[s]elf-serving disclaimers are not automatically enforceable under California law." Opp. Br. at 23. Bostick's legal conclusion is incorrect, supported by non-binding precedent, and is, indeed, at odds with the Ninth Circuit's decision in *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 958 (9th Cir. 1994) as cited in Herbalife's moving papers.

The legal authority cited in the Opposition consists of one California appellate district's decision, which is at odds with its sister appellate districts (as cited in Herbalife's opening papers) as well as Ninth Circuit and Central District precedent. Opp. Br. at 23, n.139 (citing *Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Dev. Corp.*, 32 Cal. App. 4th 985 (1st Dist. 1995)). Bostick's authority is not controlling, and further, because the contract at issue in that case contained a general disclaimer of reliance, it is readily distinguishable from the facts at issue here, where Bostick represented that he was not relying on a *specific* category of information, namely regarding the financial results that he might achieve.[17] *Omni*

---

[17] Per Bostick's own brief, his only other cited case, *Hinesley v. Oakshade Town Ctr.*, 135 Cal. App. 4th 289 (3d Dist. 2005) supports Herbalife's position that such waivers may be relevant to whether reliance is reasonable. Such was also

1  *Home Financing, Inc. v. Hartford Life & Annuity Ins. Co.*, 2008 WL 1925248, at *5

2  (S.D. Cal Apr. 29, 2008) ("[R]ecent cases distinguishing *Ron Greenspan* have held

3  specific written language directly contradicting alleged oral statements does

4  preclude a showing of reasonable reliance."); *Applied Elastomerics, Inc. v. Z-Man*

5  *Fishing Prods.*, 2006 WL 3251732, at *6 (N.D. Cal. Nov. 8, 2006) (distinguishing

6  the "general disclaimer that no party has relied on any representations of any kind

7  outside of the Agreement" in *Ron Greenspan* from disclaimer "that all

8  representations concerning the patent rights are expressed in the Agreement.").

9  Bostick's claim must be dismissed because he cannot reasonably claim to have

10  relied on the very types of financial representations for which he contractually

11  disclaimed reliance.[18]

12  ## IV.   BOSTICK'S FALSE ADVERTISING CLAIM MUST BE DISMISSED.

13  With the exception of Bostick's claim that Herbalife misrepresented the

14  purpose of the shipping and packaging and handling ("P&H") fees, Bostick's FAL

15  Claims fail for the same reasons as his claims of fraudulent advertising under the

16  UCL, discussed in the preceding section.  *See supra* § III; *accord Davis v. HSBC*

17  *Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) ("For the same reasons

18  that we rejected Davis's FAL claim, we also conclude that the advertisements were

19  not fraudulent under the UCL.").  As for the shipping and P&H fees, the moving

20  papers showed that Herbalife fully discloses how these fees are calculated and

21  applied in the IBP materials attached to Bostick's Complaint (as Exhibit C), which

22  Bostick represented and warranted he "received and [] reviewed thoroughly"

23  (Compl. Ex. I).  Mov. Br. at 22.  Moreover, Bostick does not allege that he relied to

24  acknowledged by the *Omni Home* Court.  2008 WL 1925248, at *5.

25  [18] Bostick's last-ditch argument that this disclaimer would not preclude a showing
of reliance on misleading representations made after executing his contract does not

26  save his claims.  Bostick's Complaint does not allege, much less with the requisite
particularity, what such post-execution misrepresentations were or how they were

27  relevant to Bostick's alleged harms.  Nor does he allege that a basis for concluding
that such reliance could be reasonable in light of his contractual representations,

28  including that "I . . . am aware that the only required purchase to become, succeed
or advance as an Herbalife Independent Distributor is the Mini IBP."

DEFENDANTS' REPLY MEMORANDUM ISO MOTION
TO DISMISS THE COMPLAINT

his detriment on Herbalife's alleged mischaracterization of how it allocates its fees, nor would such reliance be reasonable if it were alleged. *Id*.

Bostick's Opposition counters that the disclosures in the IBP referenced in Herbalife's moving papers are "buried" in the IBP materials that Bostick represented he read thoroughly. Opp. Br. at 25. This is barely a response at all, as Bostick's breach of his representation that he had reviewed the materials is hardly a basis for claiming he was misled. Bostick also questions whether the fees would have been more accurately described if they were called an "Administrative Fees" or "Service Charges." *Id*. However, Bostick can articulate no legal basis for why Herbalife has any duty to publicly disclose how it allocates income from its fees,[19] much less why Bostick's proposed descriptors would have helped Herbalife avoid this claim, divorced as it is from any reasonable basis in law or fact.

## CONCLUSION

For the reasons stated above and in Defendants' moving papers, Defendants respectfully request that the Court dismiss the Complaint in its entirety, with prejudice.

DATED: July 15, 2013          BOIES, SCHILLER & FLEXNER LLP

                              /s/ William S. Ohlemeyer
                              William S. Ohlemeyer

                              Attorneys for Defendants
                              Herbalife International of America, Inc.,
                              Herbalife International, Inc. and Herbalife Ltd.

---

[19] *Janda v. T-Mobile,* 2009 WL 667206, at *5-*9 (N.D. Cal. Mar. 13, 2009), *aff'd* 378 Fed. Appx. 705 (9th Cir. 2010) (dismissing plaintiff's UCL claim because it was undisputed that T-Mobile disclosed the imposition of general, non-itemized "taxes and surcharges" on its customers); *Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1047-48 (C.D. Cal. 2008) (dismissing plaintiff's claim because defendant's failure to disclose the nature of and basis for an "Administrative Fee" did not violate the "fraudulent conduct" prong of the UCL); *Ford v. Hotwire, Inc.*, 2007 WL 6235779, at *4 (N.D. Cal. Nov. 19, 2007) (dismissing plaintiff's claims under FAL and the "fraudulent conduct" prong of the UCL where Hotwire's characterization as "special" of a resort fee that was, in fact, mandatory was not misleading because the mandatory nature of the fee was readily available public information disclosed on the resort's website).

DEFENDANTS' REPLY MEMORANDUM ISO MOTION
                                                              TO DISMISS THE COMPLAINT