LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02488-BRO | Date | October 11, 2013 |
|---|---|---|---|
| Title | Dana Bostick v. Herbalife International of America Inc et al | | |

| Present: The Honorable | BEVERLY REID O'CONNELL, United States District Judge | |
|---|---|---|
| Renee A. Fisher | Not Present | N/A |
| Deputy Clerk | Court Reporter | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Not Present | Not Present | |

**Proceedings:**      (IN CHAMBERS)

**ORDER RE MOTION TO DISMISS [22]**

Plaintiff Dana Bostick seeks to represent a putative class against Defendants Herbalife International of America, Inc; Herbalife International, Inc.; and Herbalife, LTD (collectively "Herbalife" or "Defendants"). Plaintiff alleges that Defendants: (1) violated California's Endless Chain Scheme Law, Cal. Penal Code § 327; (2) violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 ; (3) violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500; and (4) committed multiple violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*.[1]  Presently before the Court is Defendants' Motion to Dismiss.  (Dkt. 22.)  For the following reasons, the Court **DENIES** Defendants' Motion.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff Dana Bostick, an individual residing in California, seeks to represent a putative class of individuals injured by joining an alleged pyramid scheme run by Herbalife.  (Compl. ¶¶ 4, 5.)  An individual may become a vendor of Herbalife products, known as a distributor, if they purchase an Herbalife International Business Pack for $95.95 or a mini International Business Pack for $57.75. (*Id*. ¶ 34.)

Herbalife is a multi-level distribution system, which relies on individual distributors to market, promote, and distribute Herbalife products.  (*Id*. ¶ 32.)  Herbalife

---

[1] Plaintiff concedes that his second, third, and fourth causes of action, alleging RICO violations, should be dismissed. (Opp'n at 9, 25.)  Accordingly, the Court will not consider those causes of action and dismisses them.

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02488-BRO | Date | October 11, 2013 |
|---|---|---|---|
| Title | **Dana Bostick v. Herbalife International of America Inc et al** | | |

recruits potential distributors by promising chances for immediate, daily profit while providing an opportunity to take charge of one's life by being one's own boss. (*Id.* ¶ 35–37.)  Herbalife promotes itself through a magazine titled "*Live The Good Life! Herbalife*" as well as testimonial videos recounting individual success stories. (*Id.* ¶¶ 49, 139.)

Herbalife is comprised of a hierarchy of distributors, with the various levels determining eligibility for discounted Herbalife products and other benefits.  (*See id.* ¶¶ 58–131).  This hierarchy is comprised of eleven levels of distributors, starting from the Distributor rank and ending at the Founder's Circle rank. (*Id.* ¶ 58.)  If a distributor recruits another Herbalife distributor, the recruit becomes a junior or "downline" distributor. (*Id.* ¶ 60.)  "Upline" distributors earn bonuses when downline distributors make purchases. (*Id.*)  All new distributors join a line of sponsorship that is traced upline to the highest level of the Herbalife hierarchy.  (*Id.* ¶ 59.)  Distributors may return products purchased from Herbalife within twelve months of the purchase date.  (*Id.* ¶ 209.)  However, a distributor may not return a product purchased from an upline Supervisor.  (*Id.* ¶ 210.)

In order for a Distributor to move up to higher ranks within the hierarchy, he must accumulate a certain amount of "Volume" in a specific time period. (*Id.* ¶ 62.)  Volume is calculated by the number of Volume Points a distributor amasses, which is based on a ratio between products and their monetary value. (*Id.* ¶ 63.)  A distributor can earn Volume Points if a downline distributor purchases Herbalife products, or if the distributor personally orders products.  (*Id.* ¶ 65.)  When a distributor personally purchases the product, they amass Personally Purchased Volume Points.  (*Id.*)

Distributors, as the lowest rung of the Herbalife hierarchy, earn a 25% discount from the retail price of goods. (*Id.* ¶ 67.)  For every one dollar that a Distributor spends on Herbalife products, $0.64 goes upline.  (*Id.* ¶ 69.)  The fifth rung in the hierarchy, Supervisor, classifies a distributor as a Sales Leader, and allows them to purchase Herbalife products at a 50% discount.  (*Id.* ¶ 98.)  Although there are a number of ways to become a Supervisor, a distributor can become a Supervisor without personally purchasing or reselling any Herbalife products. (*Id.* ¶ 91.)

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02488-BRO | Date | October 11, 2013 |
|---|---|---|---|
| Title | **Dana Bostick v. Herbalife International of America Inc et al** | | |

A Supervisor receives an additional benefit by becoming eligible for "Royalty Overrides," a commission from other downline Supervisors. (*Id.* ¶¶ 101, 102.) However, to qualify for Roylaty Overrides, a Supervisor must comply with both the "10-Retail Customer Rule" and the "70% Rule." (*Id.* ¶ 104.) Under these rules, a Supervisor must personally sell to at least ten separate retail customers, and at least 70% of the total value of Herbalife products that the Supervisor purchases must be sold or consumed within that month. (*Id.* ¶ 104.)

On April 6, 2012, Plaintiff became an Herbalife Distributor. (*Id.* ¶ 50.) Over a four month period, Plaintiff placed 8 total orders for Herbalife products. (*Id.* ¶ 52.)[2] Although Plaintiff worked hard, he recruited only one person—his lifelong friend. (*Id.* ¶ 51.) Plaintiff's attempts to sell the products he purchased to wholesalers were unsuccessful because he had to sell at nearly full retail value to make a profit—an unappealing rate compared to prices offered by higher upline distributors. (*Id.* ¶ 54.)

Plaintiff contends that he cannot make a profit because Herbalife's system of graduated discounts means those getting Herbalife products at a 25% discount must compete with those getting products at a 50% discount. (*Id.* ¶ 183.) Further, the Herbalife structure systematically rewards recruiting other distributors over retail sales. (*Id.* ¶ 2.)

Dissatisfied with Herbalife's structure and misrepresentations regarding the chance to generate meaningful income, Plaintiffs filed his Complaint on April 8, 2013. (Dkt. 1.) Presently before the Court is Defendants' Motion to Dismiss. (Dkt. 22.)

## II. LEGAL STANDARD

A complaint may be dismissed for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual

---

[2] Plaintiff placed these orders on April 6, 2012; April 26, 2012; May 21, 2012; June 18, 2012; June 19, 2012; June 22, 2012; June 27, 2012; and July 20, 2012. (*Id.* ¶ 52.)

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02488-BRO | Date | October 11, 2013 |
|---|---|---|---|
| Title | Dana Bostick v. Herbalife International of America Inc et al | | |

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusion, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal quotation marks and ellipsis omitted).

To determine whether a complaint states a claim sufficient to withstand dismissal, a court considers the contents of the complaint and its attached exhibits, documents incorporated into the complaint by reference, and matters properly subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-34 (2007); *Lee b. City of Los Angeles*, 250 F.3d 668, 668 (9th Cir. 2001). The court must accept as true all factual allegations contained in the complaint. That principle, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Where a motion to dismiss is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

## IV. ANALYSIS

The Court will first examine whether it retains subject matter jurisdiction following the dismissal of the RICO causes of action, which were pleaded as the original basis for subject matter jurisdiction. The Court will then examine the sufficiency of Plaintiff's allegations as to the first cause of action for a violation of California's Endless Chain Scheme Law, the fourth cause of action for a violation of California's UCL, and the fifth cause of action for a violation of California's FAL.

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02488-BRO | Date | October 11, 2013 |
|---|---|---|---|
| Title | **Dana Bostick v. Herbalife International of America Inc et al** | | |

A. Subject Matter Jurisdiction

After the dismissal of the RICO claims, Defendants contend that the Complaint must be dismissed for lack of subject matter jurisdiction. On the other hand, Plaintiffs contend that after the dismissal of the federal question causes of action, the Court still has subject matter jurisdiction based on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

Federal courts have a continual *sua sponte* duty to examine their subject matter jurisdiction. *See United Investors Life Ins. Co. v. Waddell & Reed, Inc.*, 360 F.3d 960, 966–67 (9th Cir. 2004). Section 1332(d)(9)(C) provides that a district court shall not have original jurisdiction when a class action solely involves a claim that "relat[es] to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1993 (15 U.S.C. 77b(a)(1))." 28 U.S.C. § 1332(d)(9)(C). "If a complaint contains a claim implicating one of CAFA's exceptions, *but also involves other non-excepted claims*, the case should remain in federal court." *Tuttle v. Sky Bell Asset Mgmt., LLC*, 2011 U.S. Dist. LEXIS 7466, *14 (N.D. Cal. Jan. 21, 2011) (emphasis in original) (citing to *Anwar v. Fairfield Greenwich Ltd.*, 676 F. Supp. 2d 285, 293 (S.D.N.Y. Dec. 23, 2009)). Investments in a pyramid scheme are investment contracts, and therefore classified as securities under federal securities law. *Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776, 784 (9th Cir. 1996) (citing to *S.E.C. v. Glenn W. Turner Enters., Inc.*, 474 F.2d 476, 482 (9th Cir.), *cert. denied,* 414 U.S. 821, 38 L. Ed. 2d 53, 94 S. Ct. 117 (1973)).

Here, Defendants allege that Plaintiff's only remaining claims arise out of a security interest. While it is true that, under *Omnitrition*, Plaintiff's Herbalife purchases are classifiable as securities, Plaintiff's fourth and fifth causes of actions allege violations of California's UCL and FAL laws. These causes of action assert violations based on false and misleading advertising. (Compl. ¶¶ 274, 282.) Therefore, the Complaint's allegations are not solely based on investments into a pyramid scheme which must be considered security interests, but rather contain claims which do not fall under the Section 1332(d)(9)(C) exception. Thus, Plaintiff does not *solely* sue under the 1933 Securities Act and the Court has jurisdiction under CAFA. Accordingly, this Court retains subject matter jurisdiction as established by the factual allegations of the Complaint, and may proceed to the merits of Defendants' motion.

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02488-BRO | Date | October 11, 2013 |
|---|---|---|---|
| Title | **Dana Bostick v. Herbalife International of America Inc et al** | | |

  B.  First Cause of Action: Endless Chain Scheme

  Defendants contend that Plaintiff's Endless Chain Scheme claim should be dismissed because: (1) Plaintiffs fail to state a claim and (2) Plaintiffs' only requested relief, rescission, is precluded.

    1.  Failure to State a Claim

  Pyramid schemes are considered inherently fraudulent, because they must eventually collapse. *See, e.g., S.E.C. v. International Loan Network, Inc.*, 968 F.2d 1304, 1308-09 (D.C. Cir. 1992). "Like chain letters, pyramid schemes may make money for those at the top of the chain or pyramid, but must end up disappointing those at the bottom who can find no recruits." *Omnitrition*, 79 F.3d at 781 (citing *In re Koscot Interplanetary, Inc.*, 86 F.T.C. 1106, 1181 (1975), *aff'd mem. sub nom, Turner v. F.T.C.*, 580 F.2d 701 (D.C. Cir. 1978)). The *Koscot* Court applied the Federal Trade Commission test in determining what constitutes a pyramid scheme. *Omnitrition*, 79 F.3d at 781. The *Koscot* test specifies that a pyramid scheme is "characterized by the payment of participants of money to the company in return for which they receive the right to (1) sell a product and (2) receive in return for recruiting other participants into the program rewards which are unrelated to sale of the product to ultimate users." *Koscot*, 86 F.T.C. at 1181. The Ninth Circuit has adopted the *Koscot* test in determining the existence of a pyramid scheme. *Omnitrition*, 79 F.3d at 782.

  Plaintiffs allege that Herbalife has violated Section 327 of the California Penal Code, which defines an endless chain scheme as:

> [A]ny scheme for the disposal or distribution of property whereby a participant pays a valuable consideration for the chance to receive compensation for introducing one or more additional persons into participation in the scheme or for the chance to receive compensation when a person introduced by the participant introduces a new participant. Compensation, as used in this section, does not mean or include payment

Case 2:13-cv-02488-BRO-RZ   Document 40   Filed 10/11/13   Page 7 of 12   Page ID #:775

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02488-BRO | Date | October 11, 2013 |
|---|---|---|---|
| Title | **Dana Bostick v. Herbalife International of America Inc et al** | | |

based upon sales made to persons who are not participants in the scheme and who are not purchasing in order to participate in the scheme.

Cal. Penal Code § 327. The Ninth circuit has determined that the test for section 327 is nearly identical to the *Koscot* test. *Omnitrition,* 79 F.3d at 787 ("This definition is equivalent, if not identical, to the Koscot test.")

     A party may rebut allegations of a pyramid scheme by showing that its policies prevent inventory loading and encourage retail sales. *See in re Amway Corp.*, 93 F.T.C. 618, 715–16 (1979). However, the existence of rules patterned after *Amway* is not sufficient; there must be evidence that the "safeguards are enforced and actually serve to deter inventory loading and encourage retail sales." *Omnitrition,* 79 F.3d at 782-83.

     The Court will first examine whether the Complaint alleges facts sufficient to satisfy the *Koscot* test, then whether Defendants' distribution rules, which have been modeled after *Amway*, are enforced and effective.

          a.    *Koscot* Test

               i.    Distributors Pay Money for the Right to Sell Herbalife Products.

     The first element of the *Koscot* test requires a showing that participants pay money for the right to sell products. *Koscot*, 86 F.T.C. at 1181. Plaintiff alleges that the only investment necessary to become a Distributor is $95.55 for an International Business Pack, or $57.75 for a mini International Business Pack. (Compl. ¶ 189.) Plaintiff further admits that this fee does not constitute an investment inventory under *Amway*. (*Id*.) However, Plaintiff alleges that the discounted rate on purchases that is available to Supervisors requires an investment beyond the purchase of an International Business Pack. (*Id.* ¶ 190.) Despite this, Plaintiff admits that one can become a Supervisor without purchasing or reselling any Herbalife products. (*Id.* ¶ 91.)

     Both parties interpret the following passage from *Omnitrition* as being dispositive in their favor as to the first *Koscot* element:

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02488-BRO | Date | October 11, 2013 |
|---|---|---|---|
| Title | **Dana Bostick v. Herbalife International of America Inc et al** | | |

> To become a supervisor, a participant must pay a substantial amount of money to Omnitrition in the form of large monthly product orders. The "payment of money" element of a pyramid scheme can be met where the participant is required to purchase "non returnable" inventory in order to receive the full benefits of the program. In exchange for these purchases, the supervisor receives the right to sell the products and earn compensation based on product orders made by the supervisor's recruits. This compensation is facially "unrelated to the sale of the product to ultimate users" because it is paid based on the suggested retail price of the amount *ordered* from Omnitrition, rather than based on *actual sales* to consumers.

79 F.3d at 782 (internal citations omitted) (emphasis in original).

      Here, Plaintiff's concession that purchasing an International Business Pack is not an investment inventory does not mean that Plaintiff cannot use this payment to satisfy the first element of the *Koscot* test. Rather, this payment of money satisfies both the "significant consideration" language of Penal Code § 327 and the "payments of money" language of *Koscot*— absent this payment an individual may not become a distributor within the Herbalife hierarchy.

      Further, similar to *Omnitrition*, distributors in the Herbalife hierarchy can purchase large inventories of goods in order to more fully receive the benefits of the program, such as increased discounts on future purchases. Although Defendants rely heavily on Plaintiffs' concession that distributors need not purchase any inventory in order to become a supervisor, the existence of such a policy, or distributors who may have attained the rank of supervisor despite not having purchased inventory, does not negate Plaintiff's satisfaction of the first element of the *Koscot* test. *See United States v. Gold Unlimited, Inc.*, 177 F.3d 472, 481–82 (6th Cir. 1999) (noting that the actual effect of a pyramid scheme's policies has far more weight than their mere existence.). Plaintiff has adequately alleged, for purposes of a motion to dismiss, that distributors pay money for the right to sell Herbalife products.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02488-BRO | Date | October 11, 2013 |
|---|---|---|---|
| Title | **Dana Bostick v. Herbalife International of America Inc et al** | | |

                        ii.        Distributors Pay Money for the Right to Receive Recruiting Awards Unrelated to User Sales.

The second element of the *Koscot* test requires a showing that participants pay money to receive recruiting rewards which are unrelated to the sale of products to ultimate users. *Koscot*, 86 F.T.C. at 1181. Plaintiff alleges that he attempted to "pay for his position" as a supervisor in order to access Royalty Overrides which maximize profits from downline distributor sales. (Compl. ¶ 251, 101–02 .)

There is no question that the Herbalife scheme allows for several recruiting rewards. Rather, the issue is whether a distributor is considered an ultimate user, such sales from supervisors to distributors would result in benefits which are unrelated to sales to ultimate users. The *Koscot* court explained the reason behind the ultimate user requirement was that "[t]he promise of lucrative rewards for recruiting others tends to induce participants to focus on the recruitment side of the business at the expense of their retail marketing efforts, making it unlikely that meaningful opportunities for retail sales will occur." *Koscot*, 86 F.T.C. at 1181.

The considerable discounts and advantages offered to supervisors presents the same risk of a recruitment focus present in *Omnitrition*. *See Omnitrition*, 79 F.3d at 782. Although Defendants contend that distributors should be classified as ultimate users, *Omnitrition* points out that "[i]f *Koscot* is to have any teeth, [a sale for a distributor's personal use] cannot satisfy the requirement that sales be to 'ultimate users' of a product." *Id.* at 783. Therefore, downline distributors are not ultimate users for purposes of the second element of the *Koscot* test.[3] Accordingly, Plaintiff has adequately alleged that supervisors pay money to receive recruitment rewards which are unrelated to the sale of products to ultimate users.

---

[3] *Whole Living, Inc. v. Tolman*, held that a holistic food and health products company did not have a marketing plan resulting in an illegal pyramid scheme. 344 F. Supp. 2d 739, 745 (D. Utah 2004). Distinct from this case, the defendant charged each distributor the same price for products. Ultimately, the district court found this did not lead to a recruitment focus where compensation was "derived primarily from the introduction of other persons into the sales device or plan rather than from the sale of goods, services, or other property." *Id*. at 747.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02488-BRO | Date | October 11, 2013 |
|---|---|---|---|
| Title | **Dana Bostick v. Herbalife International of America Inc et al** | | |

        b.      *Amway* Defense

     Defendants contend that even if Plaintiffs have adequately alleged that Herbalife is an endless chain scheme, Herbalife has various safeguards in place, which are patterned after *Amway* and necessitate the dismissal of this action. Herbalife defends its business model by pointing out Plaintiff's concessions regarding the 10-Retail Customer Rule, 70% Rule, and return policy. (Compl. ¶ 104, 209.) These rules require supervisors who want to qualify for advantageous Royalty Overrides to personally make ten retail sales each month, and either sell or consume seventy percent of the total volume of Herbalife products purchased each month. (*Id.* ¶ 104.) The rules also permit a distributor to return any products purchased from Herbalife within the last 12 months, contingent on resignation as an Herbalife distributor. (*Id.* ¶ 209.)

     In *Amway*, based on a finding that a similar set of safeguards were both enforced and effective in preventing inventory loading, the court concluded that there was no pyramid scheme. The *Omnitrition* court cautioned that where a distribution plan meets the Koscot definition of a pyramid scheme, "the existence and enforcement of rules like Amway's" must be substantiated as effectively deterring inventory loading and encouraging retail sales. 79 F.3d at 783. The *Omnitrition* court declined to grant summary judgment because "the crucial evidence of the actual *effectiveness* of its anti-pyramiding distribution rules is missing." *Id*. at 784 (emphasis in original). Here, not only is Defendant asserting this defense at the motion to dismiss stage, but Plaintiff has affirmatively alleged that these safeguards are in fact ineffective. (Compl. ¶196–97). Therefore, dismissal based on Herbalife's alleged anti-pyramiding safeguards is inappropriate at this stage in the litigation.

        2.      <u>Rescission</u>

     The only remedy which Plaintiff seeks for his Endless Chain Scheme claim is rescission. Defendants contend that Plaintiff is not entitled to rescission because he has failed to comply with the statutory requirements to effect a rescission.

     "A participant in an endless chain scheme, as defined in Section 327 of the Penal Code, may rescind the contract upon which the scheme is based, and may recover all

Case 2:13-cv-02488-BRO-RZ Document 40 Filed 10/11/13 Page 11 of 12 Page ID #:779

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-02488-BRO** | Date | October 11, 2013 |
|---|---|---|---|
| Title | **Dana Bostick v. Herbalife International of America Inc et al** | | |

consideration paid pursuant to the scheme, less any amounts paid or consideration provided to the participant pursuant to the scheme." Cal. Civ. Code § 1689.2. However, in order to effect a rescission, the party must "(a) give notice of rescission to the party as to whom he rescinds; and (b) restore to the other party everything of value which he has received from him under the contract . . ." Cal Civ. Code. §1691. Section 1691 goes on to provide: "When notice of rescission has not otherwise been given or an offer to restore the benefits received under the contract has not otherwise been made, the service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice or offer or both." *Id*.

Here, Plaintiff sold or otherwise gave away his Herbalife products. (Compl. ¶ 55.) Thus, even if this suit satisfied rescission's notice requirement, Plaintiff cannot return the Herbalife products that he purchased. Defendants correctly point out that, under California law, "[r]escission is not allowable where the party demanding it cannot or does not restore the other party to the condition he would have been in but for the contract." *Joshua Tree Townsite Co. v. Joshua Tree Land Co.*, 224 P.2d 85, 90 (Cal. Ct. App. 1950). However, Plaintiff can still return the International Business Pack that he purchased. (Compl. Ex. C.) Therefore, if Plaintiff prevails in this action, he will be entitled to $95.95 in rescission, and the first cause of action cannot be dismissed on the ground that no remedy is available.

C.     Fourth[4] and Fifth Causes of Action

Plaintiff's fourth cause of action asserts violations of California's UCL, which prohibits unfair competition, including unlawful, unfair, and fraudulent business acts or practices. Cal. Bus. & Prof. Code §§ 17200 *et seq*. Section 17200 borrows violations from other laws by making them independently actionable as unfair competitive practices. *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003). Therefore, if Defendants' business model violates Penal Code § 327, it is also actionable under Section 17200. *Omnitrition*, 79 F.3d at 788.

---

[4] Plaintiffs' Complaint erroneously labels two causes of action as "Fourth Claim For Relief." Because the other fourth cause of action concerns RICO violations that Plaintiffs intend to dismiss, the Court will refer to the unfair and deceptive practices claim as the fourth cause of action.

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-02488-BRO | Date | October 11, 2013 |
|---|---|---|---|
| Title | Dana Bostick v. Herbalife International of America Inc et al | | |

Plaintiff's fifth cause of action asserts violations of California's FAL, which makes it unlawful for anyone to use false or misleading statements for marketing purposes. Cal. Bus. & Prof. Code §§ 17500 *et seq*. "The operation and promotion of an Endless Chain scheme within the meaning of Penal Code § 327 is an inherently deceptive marketing practice, actionable under § 17500." *Omnitrition*, 79 F.3d at 788.

Accordingly, because the Court previously concluded that Plaintiff adequately pleaded a violation of Penal Code § 327, Defendants' Motion to Dismiss the fourth and fifth causes of action is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | rf |