# EXHIBIT A

# EXHIBIT A

Philip D. Dracht (SBN 219044)
 pdracht@fabianlaw.com
Scott M. Petersen (*pro hac vice*)
 spetersen@fabianlaw.com
Jason W. Hardin (*pro hac vice*)
 jhardin@fabianlaw.com
Fabian & Clendenin
215 South State Street, Suite 1200
Salt Lake City, UT 84151-0210
Telephone: (801) 531-8900

Thomas G. Foley, Jr., SBN 65812
 tfoley@foleybezek.com
Justin P, Karczag, SBN 223764
 jkarczag@foleybezek.com
Foley Bezek Behle & Curtis, LLP
15 West Carrillo Street
Santa Barbara, CA 93101
Telephone: (805) 962-9495

Attorneys for Plaintiffs Dana Bostick,
Anita Vasko, Judi Trotter, Beverly Molnar,
and Chester Cote

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DANA BOSTICK, a California resident; ANITA VASKO, a Pennsylvania resident; JUDI TROTTER, a Washington resident; BEVERLY MOLNAR, a Pennsylvania resident; CHESTER COTE, a Vermont resident, on behalf of themselves and all others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>vs.<br><br>HERBALIFE INTERNATIONAL OF AMERICA, INC., a Nevada Corporation; HERBALIFE INTERNATIONAL, INC., a Nevada corporation; and HERBALIFE, LTD., a Cayman Island Corporation,<br><br>Defendants. | CASE NO. 2:13-cv-02488-BRO-RZ<br><br><br><br>**DECLARATION OF THE HONORABLE JAMES LARSON (RET.) IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br><br>Assigned to Hon. Beverly Reid O'Connell |

I, the Honorable James Larson (Ret.) hereby declare as follows:

1.      I submit this Declaration in support of the proposed settlement of the claims in the matter of *Bostick, et al., vs. Herbalife International of America, Inc., et al.* I make this declaration based on personal knowledge, except where otherwise indicated, and I am competent to testify to the matters set forth herein.

2.      My background includes fourteen years as a United States Magistrate Judge for the District Court for the Northern District of California. I served a term as Chief Magistrate Judge for approximately five years. As a Magistrate Judge I handled various assignments which encompassed virtually the entire spectrum of federal civil law, including numerous class actions. Also, as part of my duties, I conducted numerous settlement conferences involving the same range of cases.

3.      Currently I am associated with JAMS. I serve as a mediator, arbitrator, and special master in a variety of cases, including class actions. Within the last year I served as special master in the matter of *Pokorny v. Quikstar,* in which I adjudicated hardship claims as part of the settlement of that matter. The Defendant, Quikstar, was the successor entity of Amway. Some of the claims in that matter were similar to those in the instant case.

4.      In June of 2014, I was contacted by Thomas Foley, one of Plaintiffs' counsel in this matter. As a result, Plaintiffs' counsel proposed to hire me to conduct an independent neutral evaluation of the range of reasonable value of the Plaintiffs' case.

5.      We scheduled a hearing date for July 1, 2014. All counsel for Plaintiffs appeared on that date. The proceeding was conducted pursuant to the normal JAMS arrangement for confidentiality. Counsel for Defendants did not participate.

6.      Prior to the hearing I was provided with a number of materials, which I have also reviewed in the course of preparing this declaration. Included are a Confidential Mediation Statement Regarding Class Certification, a Confidential Case Evaluation Statement, Plaintiffs' Mediation Brief on Liability, the Court's

Order regarding the Motion to Dismiss, and several cases involving pyramid schemes and class certification.

7.  On July 1, I met with Plaintiffs' counsel for approximately four hours. My practice is to begin with a number of questions which have occurred to me as a result of reading the underlying papers and briefs. In this case I focused on four subjects: class certification, liability, damages, and defenses. Class certification is always questionable, given the significant number of cases recently handed down in this area by the Appellate Courts, primarily the Supreme Court. In any case, such as this one, the large number of Plaintiffs creates problems with respect to all of the factors in Rule 23(b), including standing, predominance, damages, and manageability.

8.  The case also presented issues regarding liability. The first cause of action, based on California Penal Code §327, which penalizes "endless chain" or pyramid schemes not only involves a difficult burden of proof for the Plaintiffs, but stiff resistance by the Defendants. The issue of damages was also problematic. Plaintiffs had a number of theories, some of which were relatively theoretical and difficult to prove.

9.  In terms of defenses, the company claimed that it essentially operated as a buyers' club. It claimed that individuals joined in order to have better access to the company's products at discount prices. In addition, the company claimed that it abided by the Amway Factors in structuring its enterprise.

10.  At the July 1 session, counsel were very well prepared, open to candid discussion, and responsive to my questions.

11.  Following our discussion, I offered my observations and tentative conclusions regarding the four topics listed above, and what I believed was a reasonable settlement range. I have been provided with a copy of the proposed settlement agreement. Ultimately I suggested a settlement range which turned out to be consistent with the proposed settlement agreement. We did not discuss those

DECLARATION OF THE HONORABLE JAMES LARSON (RET.) IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT          Exhibit A

1  aspects of the case dealing with proposed changes in business methods or corporate

2  reforms. I focused on the strengths and weaknesses of both sides.  Obviously

3  settlement of any class action involves deep discounts from a starting valuation.

4       12.    Accordingly, and based on my somewhat limited participation in the

5  negotiations, I can attest to Plaintiffs' counsels' diligence, preparation, skills of

6  presentation, legal expertise, and objective consideration of all of the relevant

7  factors pertaining to the risks of this litigation.

8       I declare under penalty of perjury under the laws of the United States of

9  America that the foregoing is true and that I executed this declaration on October

10  31, 2014, in San Francisco, California.

11

12  _____

13                          Hon. James Larson (Ret.)

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF THE HONORABLE JAMES LARSON (RET.) IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT

Exhibit A

Phillip D. Dracht (SBN 219044)
    pdracht@fabianlaw.com
Scott M. Petersen (*pro hac vice*)
    spetersen@fabianlaw.com
Jason W. Hardin (*pro hac vice*)
    jhardin@fabianlaw.com
Fabian & Clendenin
215 South State Street, Suite 1200
Salt Lake City, UT 84151-0210
Telephone: (801) 531-8900

Thomas G. Foley, Jr., SBN 65812
    tfoley@foleybezek.com
Justin P, Karczag, SBN 223764
    jkarczag@foleybezek.com
Foley Bezek Behle & Curtis, LLP
15 West Carrillo Street
Santa Barbara, CA 93101
Telephone: (805) 962-9495

Attorneys for Plaintiffs Dana Bostick,
Anita Vasko, Judi Trotter, Beverly Molnar,
and Chester Cote

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DANA BOSTICK, a California resident; ANITA VASKO, a Pennsylvania resident; JUDI TROTTER, a Washington resident; BEVERLY MOLNAR, a Pennsylvania resident; CHESTER COTE, a Vermont resident, on behalf of themselves and all others similarly situated, and on behalf of the general public,<br><br>          Plaintiffs,<br><br>          vs.<br><br>HERBALIFE INTERNATIONAL OF AMERICA, INC., a Nevada Corporation; HERBALIFE INTERNATIONAL, INC., a Nevada corporation; and HERBALIFE, LTD., a Cayman Island Corporation,<br><br>          Defendants. | CASE NO. 2:13-cv-02488-BRO-RZ<br><br>**DECLARATION OF PLAINTIFF DANA BOSTICK**<br><br>Assigned to Hon. Beverly Reid O'Connell |

Exhibit B

I, Dana Bostick, hereby declare as follows:

1.      I submit this Declaration in my capacity as the named-plaintiff in the matter *Dana Bostick, et al. v. Herbalife International of America, Inc., et al.*, Case No. 2:13-cv-02488-BRO-RZ. Except where otherwise indicated, I make this declaration based on personal knowledge and I am competent to testify to the matters set forth herein.

2.      I joined Herbalife as a distributor in April 2012.  When I signed up for Herbalife I initially purchased products to test – so that I would know what I was selling. I liked the products, thought they were of high quality, and in fact using the products, I lost a significant amount of weight. I believed that with such quality products, I could sell them.

3.      In June of 2012 I purchased additional products with the hope of obtaining, along with my downline, the status of Supervisor. Unfortunately, my downline was not able to make the purchase of products and I only obtained the status of "Qualified Producer." I left Herbalife in April 2013, and do not intend on rejoining.

4.      Throughout my Herbalife distributorship, I spent thousands of dollars on Herbalife product, most of which was for resale and some of which was for my personal consumption.  I understand that under the settlement allocation I would be able to make a claim for the lesser of 50% of the amount I paid Herbalife for product or my actual losses.  And that this claim can be reduced if the total of all claims exceed the funds available to pay them.  I approve of this system of allocation because it is tied to the money that I and the class members actually spent in purchasing product (but which we could not sell for a profit).

5.      While I understand that I and the class members will be releasing any claims that we may have against Herbalife for its role with third parties who operated lead generators, websites, and coaching, we are not releasing any claims against any of those third-parties. I understand that this release was the result of a

negotiated compromise that recognizes the strengths and weaknesses of those claims as against Herbalife and that the proposed allocation is centered on payments to Herbalife, losses associated with product purchases, and the pursuit of retail sales.

6.     I understand that class certification is not certain in this case.  And that if the class is not certified, consistent with the lack of lawsuits filed against Herbalife before and after this lawsuit was filed, the claims of many absent class members who have been injured because of their Herbalife distributorships may lapse.  As a class representative, this prospect is an important factor in supporting settlement at this stage.

7.     When I got involved with Herbalife, I reviewed the "Statement of Average Gross Compensation" and I thought that I could make money as an Herbalife distributor.  I later found out that the Statement of Average Gross Compensation that I reviewed did not disclose a majority of Herbalife distributors – most of whom earned nothing in payments from Herbalife.  I wanted to bring this lawsuit so that a court would make Herbalife stop its selective disclosures and provide people who are seeking a business opportunity full disclosure of the information relating to that opportunity.  Through the settlement agreement, Herbalife agrees to do this for at least three years after the Court enters the order granting final approval of the settlement agreement (and it has done so the past two years). This is a very important provision for me as I personally would not have signed up with Herbalife had I been given full disclosure of the information relating to the opportunity.

8.     Another provision of the settlement agreement that is important to me is the prohibition against members selling leads to other members or purchasing leads from any source.  I was a lead – that's how I got involved with Herbalife.  I became one when I responded to an internet advertisement.  And I purchased leads from third parties.  It is my experience and opinion that a focus on leads distracted me and other Herbalife distributors from focusing on retail sales.  A prohibition on

Exhibit B

1  lead selling addresses that concern.

2       9.    I became involved with this lawsuit because I want to see justice served

3  and because I did not think the Herbalife business opportunity was fair. I am willing

4  to stand up to Herbalife and say, on behalf of other distributors, that what Herbalife

5  did to people was wrong.  I think that the corporate policies that this settlement

6  mandates will help make Herbalife better for present and future

7  distributors/members.

8       10.   I think the settlement is good for the class.  I have been involved in this

9  litigation since March 2013, including the investigation phase that took place before

10  the complaint was filed.  I am concerned that it will take several more years to

11  litigate the case if the settlement is not approved, and I would rather see the injured

12  class members get compensated now and that these corporate policies are

13  implemented and required now.

14      11.   I understand the responsibilities of a Class Representative and I have

15  fulfilled, and I continue to fulfill, my duties to the class. The class's legal team has

16  kept in contact with me since the beginning, and they have kept me informed

17  throughout the case regarding the status and strategy of litigation, mediation, and

18  settlement.  I feel like I have been kept apprised of what was going on and what is

19  going on in this case.  I took time off of work to be involved with this case and the

20  entire litigation process.  I have met with the legal team at my house on multiple

21  occasions as part of the process of responding to discovery requests, both electronic

22  and otherwise, and have spent countless hours with them assisting with the

23  development of the factual record and complaint, communicating with other

24  Herbalife distributors, discussing the legal developments of the case and exploring

25  the actual and potential claims that we have brought against Herbalife.  I have spent

26  many hours with them responding to discovery requests and supplementing those

27  responses, preparing for deposition and having my deposition be taken by Herbalife.

28  For my deposition preparation, I gave up a home inspections for that day, which

represented a real loss to my limited income.  I did this so I would be prepared for
my deposition.  During negotiations, I also spoke with my attorneys several times to
give them my thoughts on the negotiations and to assist as needed.  I regularly
volunteered to be present if they needed or wanted me present for any case related
involvement, whether it was a simple phone conference, a meeting, a litigation-
related event, or a mediation session.

      12.    I was not promised any amount of money to serve as a Class
Representative or to approve any settlement.  My approval of the settlement is based
on my view that it is in the best interest of the class.

      I declare under penalty of perjury under the laws of the United States of
America that the foregoing is true and that I executed this declaration on October
29, 2014, in North Hollywood, California.

Dana Bostick

5

DECLARATION OF DANA BOSTICK

Exhibit B

# EXHIBIT C

# EXHIBIT C

Philip D. Dracht (SBN 219044)
 pdracht@fabianlaw.com
Scott M. Petersen (*pro hac vice*)
 spetersen@fabianlaw.com
Jason W. Hardin (*pro hac vice*)
 jhardin@fabianlaw.com
Fabian & Clendenin
215 South State Street, Suite 1200
Salt Lake City, UT 84151-0210
Telephone: (801) 531-8900

Thomas G. Foley, Jr., SBN 65812
 tfoley@foleybezek.com
Justin P, Karczag, SBN 223764
 jkarczag@foleybezek.com
Foley Bezek Behle & Curtis, LLP
15 West Carrillo Street
Santa Barbara, CA 93101
Telephone: (805) 962-9495

Attorneys for Plaintiffs Dana Bostick,
Anita Vasko, Judi Trotter, Beverly Molnar,
and Chester Cote

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DANA BOSTICK, a California resident; ANITA VASKO, a Pennsylvania resident; JUDI TROTTER, a Washington resident; BEVERLY MOLNAR, a Pennsylvania resident; CHESTER COTE, a Vermont resident, on behalf of themselves and all others similarly situated, and on behalf of the general public,<br><br>        Plaintiffs,<br><br>        vs.<br><br>HERBALIFE INTERNATIONAL OF AMERICA, INC., a Nevada Corporation; HERBALIFE INTERNATIONAL, INC., a Nevada corporation; and HERBALIFE, LTD., a Cayman Island Corporation,<br><br>        Defendants. | CASE NO. 2:13-cv-02488-BRO-RZ<br><br><br>**DECLARATION OF PLAINTIFF ANITA VASKO**<br><br><br>Assigned to Hon. Beverly Reid O'Connell |

Exhibit C

I, Anita Vasko, hereby declare as follows:

1.      I submit this Declaration in my capacity as the named-plaintiff in the matter *Dana Bostick, et al. v. Herbalife International of America, Inc., et al.*, Case No. 2:13-cv-02488-BRO-RZ. Except where otherwise indicated, I make this declaration based on personal knowledge and I am competent to testify to the matters set forth herein.

2.      I joined Herbalife as a distributor in 2012 after going to a "nutrition club" operated by another Herbalife distributor. When I signed up for Herbalife I was looking for a job. I "trained" at the nutrition club in late 2012 and in early 2013, I subleased a prime commercial location in West Chester, Pennsylvania to operate my own nutrition club. I purchased thousands of dollars' worth of Herbalife product to qualify for Supervisor and to use in the operation of my nutrition club. I still have product that I was unable to return under the 1-year return policy because I purchased it over 1-year before I wanted to return it.

3.      I understand that under the settlement I will be able to return product that I still have for a refund and that this product return claim can be reduced if the total of all claims by class members exceed the funds available to pay them.

4.      In addition to the product return component, I understand that under the settlement allocation I would be able to make a claim for the lesser of 50% of the amount I paid Herbalife for product or my actual losses, whichever is less. And that this claim can be reduced if the total of all claims exceed the funds available to pay them. I approve of this system of allocation because it is tied to the money that I and the class members actually spent in purchasing product (but which we could not sell for a profit) and reward those who actively tried to retail products, I approve of the allocation.

5.      I understand that class certification is not certain in this case.  And that if the class is not certified, consistent with the lack of lawsuits filed against Herbalife before and after this lawsuit was filed, the claims of many absent class

Exhibit C

DECLARATION OF ANITA VASKO

1   members who have been injured because of their Herbalife distributorships may

2   lapse.  As a class representative, this prospect is an important factor in supporting

3   settlement at this stage.

4        6.     When I got involved with Herbalife, I reviewed the "Statement of

5   Average Gross Compensation" at that time and I thought that I could make money

6   as an Herbalife distributor. I later found out that the Statement of Average Gross

7   Compensation that I reviewed did not disclose a majority of Herbalife distributors –

8   most of whom earned nothing in payments from Herbalife. I wanted to join this

9   lawsuit because I felt like I was tricked because the statement I looked at only gave

10   me half the story.

11        7.     I think the settlement is good for the class. I am concerned that it will

12   take several more years to litigate the case if the settlement is not approved, and I

13   would rather see the injured class members get compensated now and that these

14   changes in polices are required now.

15        8.     I became involved with this lawsuit because I want to see justice

16   served. I am willing to stand up to Herbalife and say, on behalf of other distributors,

17   that what Herbalife did to people was wrong.  I think that the corporate policies that

18   this settlement mandates will help make Herbalife better for present and future

19   distributors/members.

20        9.     I understand the responsibilities of a Class Representative and I have

21   fulfilled, and I continue to fulfill, my duties to the class. The class's legal team has

22   kept in contact with me since I joined the case, and they have kept me informed

23   throughout the case regarding the status and strategy of litigation, mediation, and

24   settlement. I took time off of work to be involved with this case and the entire

25   litigation process. I have worked with the legal team as part of the process of

26   assisting with their understanding of my claims, discussing the legal developments

27   of the case and exploring the actual and potential claims that we have brought

28   against Herbalife. I have spent many hours with them responding to discovery

Exhibit C

1   requests and supplementing those responses, preparing for deposition and having
2   my deposition be taken by Herbalife. For my deposition preparation and deposition,
3   I flew from Pennsylvania to Los Angeles, which took three days. While I was
4   concerned about leaving my husband and two sons alone during this time, it was
5   important to me that I be prepared to be deposed on behalf of myself and the class. It
6   was important to me to tell my story. During negotiations, I also spoke with my
7   attorneys to give them my thoughts on the negotiations and to assist as needed. I
8   regularly volunteered to be present if they needed or wanted me present for any case
9   related involvement, whether it was a simple phone conference, a meeting, a
10  litigation-related event, or a mediation session. I have vigorously represented the
11  Class's interests pursuant to my fiduciary duties to the Class I represent.

12          10.    I was not promised any amount of money to serve as a Class
13  Representative or to approve any settlement. My approval of the settlement is based
14  on my view that it is in the best interest of the class.

15          I declare under penalty of perjury under the laws of the United States of
16  America that the foregoing is true and that I executed this declaration on October
17  29 2014, in West Chester, Pennsylvania.

18
19                                                      Anita Vasko
20
21
22
23
24
25
26
27
28

Exhibit C

# EXHIBIT D

# EXHIBIT D

Philip D. Dracht (SBN 219044)
 pdracht@fabianlaw.com
Scott M. Petersen (*pro hac vice*)
 spetersen@fabianlaw.com
Jason W. Hardin (*pro hac vice*)
 jhardin@fabianlaw.com
Fabian & Clendenin
215 South State Street, Suite 1200
Salt Lake City, UT 84151-0210
Telephone: (801) 531-8900

Thomas G. Foley, Jr., SBN 65812
 tfoley@foleybezek.com
Justin P, Karczag, SBN 223764
 jkarczag@foleybezek.com
Foley Bezek Behle & Curtis, LLP
15 West Carrillo Street
Santa Barbara, CA 93101
Telephone: (805) 962-9495

Attorneys for Plaintiffs Dana Bostick,
Anita Vasko, Judi Trotter, Beverly Molnar,
and Chester Cote

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DANA BOSTICK, a California resident; ANITA VASKO, a Pennsylvania resident; JUDI TROTTER, a Washington resident; BEVERLY MOLNAR, a Pennsylvania resident; CHESTER COTE, a Vermont resident, on behalf of themselves and all others similarly situated, and on behalf of the general public, | CASE NO. 2:13-cv-02488-BRO-RZ |
| Plaintiffs, | |
| vs. | **DECLARATION OF PLAINTIFF CHESTER COTE** |
| HERBALIFE INTERNATIONAL OF AMERICA, INC., a Nevada Corporation; HERBALIFE INTERNATIONAL, INC., a Nevada corporation; and HERBALIFE, LTD., a Cayman Island Corporation, | Assigned to Hon. Beverly Reid O'Connell |
| Defendants. | |

Exhibit D

1    I, CHESTER COTE, hereby declare as follows:

2    1.    I submit this Declaration in my capacity as the named-plaintiff in the

3    matter *Dana Bostick, et al. v. Herbalife International of America, Inc., et al.*, Case

4    No. 2:13-cv-02488-BRO-RZ. Except where otherwise indicated, I make this

5    declaration based on personal knowledge and I am competent to testify to the

6    matters set forth herein.

7    2.    I joined Herbalife as a distributor in 2009. I was unemployed at the

8    time and needed a business opportunity. I purchased enough Herbalife products so

9    that I became a supervisor. I found it incredibly difficult to sell product and to

10   recruit others in my downline.

11   3.    I still have product that I would like to return. I understand that under

12   the settlement that I will be able to return product that I still have for a refund and

13   that this product return claim can be reduced if the total of all claims by class

14   members exceed the funds available to pay them.

15   4.    I understand that under the settlement allocation I will be able to make

16   a claim for the lesser of 50% of the amount I paid Herbalife for product or my actual

17   losses. And that this claim can be reduced if the total of all claims exceed the funds

18   available to pay them. I approve of this system of allocation because it is tied to the

19   money that I and the class members spent in purchasing product (but which we

20   could not sell for profit).

21   5.    While I understand that I and the class members will be releasing any

22   claims that we may have against Herbalife for its role with third parties who

23   operated lead generators, websites, and coaching, we are not releasing any claims

24   against any of those third-parties. I understand that this release was the result of a

25   negotiated compromise that recognizes the strengths and weaknesses of those claims

26   as against Herbalife and that the proposed allocation is centered on payments to

27   Herbalife, losses associated with product purchases, and the pursuit of retail sales.

28   6.    I understand that class certification is not certain in this case.  And that

if the class is not certified, consistent with the lack of lawsuits filed against Herbalife before and after this lawsuit was filed, the claims of many absent class members who have been injured because of their Herbalife distributorships may lapse.  As a class representative, this prospect is an important factor in supporting settlement at this stage.

7.    When I got involved with Herbalife, I reviewed the "Statement of Average Gross Compensation" at that time and I thought that I could make money as an Herbalife distributor. I later found out that the Statement of Average Gross Compensation that I reviewed did not disclose a majority of Herbalife distributors – most of whom earned nothing in payments from Herbalife. This made me incredibly upset – it was wrong. Through the settlement agreement, Herbalife has agreed to give its more full disclosure. This is a very important provision for me as I would not have signed up with Herbalife had I been given full disclosure.

8.    Another provision of the settlement agreement that is important to me is the prohibition against members selling leads to other members or purchasing leads from any source. I was a lead. And I purchased leads from third parties.  It is my experience and opinion that a focus on leads distracted me and other Herbalife distributors from focusing on retail sales.  A prohibition on lead selling addresses that concern.

9.    I think the settlement is good for the class. I have been involved in this litigation since January 2014, including the investigation phase that took place before the First Amended Complaint was filed. When I first learned of this lawsuit I wanted to become involved. But I am concerned that it will take several more years to litigate the case if the settlement is not approved, and I would rather see the injured class members get compensated now and that these reforms are required now.

10.    I became involved with this lawsuit because I want to see justice served and that people like me have the opportunity to recoup some of their losses

DECLARATION OF CHESTER COTE

1  associated with their Herbalife distributorships. I am willing to stand up to Herbalife

2  and say, on behalf of other distributors, that what Herbalife did to people was

3  wrong. I think that the corporate policies that this settlement mandates will help

4  make Herbalife better for present and future distributors/members.

5      11.    I understand the responsibilities of a Class Representative and I have

6  fulfilled, and I continue to fulfill, my duties to the class. The class's legal team has

7  kept in contact with me since I joined the lawsuit, and they have kept me informed

8  throughout the case regarding the status and strategy of litigation, mediation, and

9  settlement. I feel like I have been kept apprised of what was going on. I have spent

10  many hours with the legal team responding to discovery requests, preparing for

11  deposition, and having my deposition be taken by Herbalife. For my deposition

12  preparation, I flew from Connecticut to Los Angeles, which took two days and

13  required a red-eye flight. During negotiations, I also spoke with my attorneys to give

14  them my thoughts on the negotiations and to assist as needed. I regularly

15  volunteered to be present if they needed or wanted me present for any case related

16  involvement. I have vigorously represented the class's interests pursuant to my

17  fiduciary duties to the class I represent.

18      12.    I was not promised any amount of money to serve as a class

19  representative or to approve any settlement. My approval of the settlement is based

20  on my view that it is in the best interest of the class.

21      I declare under penalty of perjury under the laws of the United States of

22  America that the foregoing is true and that I executed this declaration on October

23  30, 2014, in _Bellows Falls_____, Vermont.

24

25

26                                    CHESTER COTE

27

28

# EXHIBIT E

# EXHIBIT E

Philip D. Dracht (SBN 219044)
    pdracht@fabianlaw.com
Scott M. Petersen (*pro hac vice*)
    spetersen@fabianlaw.com
Jason W. Hardin (*pro hac vice*)
    jhardin@fabianlaw.com
Fabian & Clendenin
215 South State Street, Suite 1200
Salt Lake City, UT 84151-0210
Telephone: (801) 531-8900

Thomas G. Foley, Jr., SBN 65812
    tfoley@foleybezek.com
Justin P, Karczag, SBN 223764
    jkarczag@foleybezek.com
Foley Bezek Behle & Curtis, LLP
15 West Carrillo Street
Santa Barbara, CA 93101
Telephone: (805) 962-9495

Attorneys for Plaintiffs Dana Bostick,
Anita Vasko, Judi Trotter, Beverly Molnar,
and Chester Cote

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DANA BOSTICK, a California resident; ANITA VASKO, a Pennsylvania resident; JUDI TROTTER, a Washington resident; BEVERLY MOLNAR, a Pennsylvania resident; CHESTER COTE, a Vermont resident, on behalf of themselves and all others similarly situated, and on behalf of the general public, | CASE NO. 2:13-cv-02488-BRO-RZ |
| Plaintiffs, | |
| vs. | **DECLARATION OF PLAINTIFF JUDI TROTTER** |
| HERBALIFE INTERNATIONAL OF AMERICA, INC., a Nevada Corporation; HERBALIFE INTERNATIONAL, INC., a Nevada corporation; and HERBALIFE, LTD., a Cayman Island Corporation, | Assigned to Hon. Beverly Reid O'Connell |
| Defendants. | |

Exhibit E

1    I, JUDI TROTTER, hereby declare as follows:

2    1.    I submit this Declaration in my capacity as the named-plaintiff in the

3    matter *Dana Bostick, et al. v. Herbalife International of America, Inc., et al.*, Case

4    No. 2:13-cv-02488-BRO-RZ. Except where otherwise indicated, I make this

5    declaration based on personal knowledge and I am competent to testify to the

6    matters set forth herein.

7    2.    I joined Herbalife as a distributor in 2012.  I was looking for a way to

8    earn some extra money.  I made an initial one-time purchase to qualify as a

9    Supervisor.

10    3.    I support the settlement agreement and I hope that it is approved.  I

11    understand that under the settlement allocation, that I will be able to make a claim

12    for the lesser of 50% of the amount I paid Herbalife for product or my actual losses,

13    whichever is less.  And that this claim can be reduced if the total of all claims

14    exceed the funds available to pay them.  I approve of this system of allocation

15    because it is tied to the money that I and the class members spent in purchasing

16    product (but which we could not sell for profit).  I understand that I cannot count

17    any product returned to Herbalife as a "loss" under this claim. As the proposed

18    system of allocating the settlement amounts seeks to reward those who actively tried

19    to retail products, I approve of the allocation.

20    4.    While I understand that I and the class members will be releasing any

21    claims that we may have against Herbalife for its role with third parties who

22    operated lead generators, websites, and coaching, we are not releasing any claims

23    against any of those third-parties. I understand that this release was the result of a

24    negotiated compromise that recognizes the strengths and weaknesses of those claims

25    as against Herbalife and that the proposed allocation is centered on payments to

26    Herbalife, losses associated with product purchases, and the pursuit of retail sales.

27    5.    I understand that class certification is not certain in this case.  And that

28    if the class is not certified, consistent with the lack of lawsuits filed against

Exhibit E

2

Herbalife before and after this lawsuit was filed, the claims of many absent class members who have been injured because of their Herbalife distributorships may lapse.  As a class representative, this prospect is an important factor in supporting settlement at this stage.

6.     When I got involved with Herbalife, I reviewed the "Statement of Average Gross Compensation" at that time and I thought that I could make money as an Herbalife distributor.  I later found out that the Statement of Average Gross Compensation that I reviewed did not disclose a majority of Herbalife distributors – most of whom earned nothing in payments from Herbalife.  It is important for me that the settlement agreement makes Herbalife disclose the payments to all of its distributors/members.

7.     Another provision of the settlement agreement that is important to me is the prohibition against members selling leads to other members or purchasing leads from any source.  I was a lead – that's how I got involved with Herbalife.  I became one when I responded to an internet advertisement.  And I purchased leads from third parties.  It is my experience and opinion that a focus on leads distracted me and other Herbalife distributors from focusing on retail sales.  A prohibition on lead selling addresses that concern.

8.     I think the settlement is good for the class. I am concerned that it will take several more years to litigate the case if the settlement is not approved, and I would rather see the injured class members get compensated now and that these corporate policies are required now.

9.     I became involved with this lawsuit because I want to see justice served and because I did not think the Herbalife business opportunity was fair. I am willing to stand up to Herbalife and say, on behalf of other distributors, that what Herbalife did to people was wrong.  I think that the corporate policies that this settlement mandates will help make Herbalife better for present and future distributors/members.

Exhibit E

DECLARATION OF JUDI TROTTER

10.     I understand the responsibilities of a Class Representative and I have fulfilled, and I continue to fulfill, my duties to the class.  The class's legal team has kept in contact with me since I joined the lawsuit, and they have kept me informed throughout the case regarding the status and strategy of litigation, mediation, and settlement.  I feel like I have been kept apprised of what was going on and what is going on in this case.  I have worked with the legal team as part of the process of responding to discovery requests, both electronic and otherwise, and have spent countless hours with them assisting with the development of the factual record and complaint, discussing the legal developments of the case and exploring the actual and potential claims that we have brought against Herbalife.  I have spent many hours with them responding to discovery requests and supplementing those responses, preparing for deposition and having my deposition be taken by Herbalife.  For my deposition preparation, I flew from Seattle to Los Angeles, which took three days.  While I was concerned about traveling and leaving my family, it was important to me that I be prepared to be deposed on behalf of myself and the class.  During negotiations, I also spoke with my attorneys on the phone and in person to give them my thoughts on the negotiations and to assist as needed.  I regularly volunteered to be present if they needed or wanted me present for any case related involvement, whether it was a simple phone conference, a meeting, a litigation-related event, or a mediation session. I have vigorously represented the Class's interests pursuant to my fiduciary duties to the Class I represent.

11.     I was not promised any amount of money to serve as a Class Representative or to approve any settlement.  My approval of the settlement is based on my view that it is in the best interest of the class.

Exhibit E

4

DECLARATION OF JUDI TROTTER

1      I declare under penalty of perjury under the laws of the United States of

2 America that the foregoing is true and that I executed this declaration on October

3 30, 2014, in Seattle, Washington.

4

5

6                                              JUDI TROTTER

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

Exhibit E

# EXHIBIT F

# EXHIBIT F

1   Philip D. Dracht (SBN 219044)
     pdracht@fabianlaw.com
2   Scott M. Petersen (*pro hac vice*)
     spetersen@fabianlaw.com
3   Jason W. Hardin (*pro hac vice*)
     jhardin@fabianlaw.com
4   Fabian & Clendenin
     215 South State Street, Suite 1200
5   Salt Lake City, UT 84151-0210
     Telephone: (801) 531-8900

6

7   Thomas G. Foley, Jr., SBN 65812
     tfoley@foleybezek.com
8   Justin P, Karczag, SBN 223764
     jkarczag@foleybezek.com
9   Foley Bezek Behle & Curtis, LLP
     15 West Carrillo Street
10  Santa Barbara, CA 93101
     Telephone: (805) 962-9495

11  Attorneys for Plaintiffs Dana Bostick,
    Anita Vasko, Judi Trotter, Beverly Molnar,
12  and Chester Cote

13              UNITED STATES DISTRICT COURT

14      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

15

16  DANA BOSTICK, a California          CASE NO. 2:13-cv-02488-BRO-RZ
    resident; ANITA VASKO,
17  a Pennsylvania resident; JUDI
    TROTTER, a Washington resident;
18  BEVERLY MOLNAR, a Pennsylvania
    resident; CHESTER COTE, a Vermont
19  resident, on behalf of themselves and all   **DECLARATION OF PLAINTIFF**
    others similarly situated, and on behalf    **BEVERLY MOLNAR**
20  of the general public,

21              Plaintiffs,

22         vs.                                Assigned to Hon. Beverly Reid
                                              O'Connell
23  HERBALIFE INTERNATIONAL OF
    AMERICA, INC., a Nevada
24  Corporation; HERBALIFE
    INTERNATIONAL, INC., a Nevada
25  corporation; and HERBALIFE, LTD.,
    a Cayman Island Corporation,
26
               Defendants.
27

28
                                                        Exhibit F

                    DECLARATION OF BEVERLY MOLNAR

I, Beverly Molnar, hereby declare as follows:

1. I submit this Declaration in my capacity as the named-plaintiff in the matter *Dana Bostick, et al. v. Herbalife International of America, Inc., et al.*, Case No. 2:13-cv-02488-BRO-RZ. Except where otherwise indicated, I make this declaration based on personal knowledge and I am competent to testify to the matters set forth herein.

2. I joined Herbalife as a distributor in 2011 – I came in as a lead through "Online Business Systems." I purchased enough Herbalife products so that I became a supervisor. I was pursuing a business opportunity but found it difficult to sell product and to recruit others in my downline.

3. Of the thousands of dollars' worth of product that I purchased from Herbalife, I still have some at my home. I understand that under the settlement I will be able to return product that I still have for a refund and that this product return claim can be reduced if the total of all claims by class members exceed the funds available to pay them.

4. In addition to the product return component, I understand that under the settlement allocation I will be able to make a claim for the lesser of 50% of the amount I paid Herbalife for product or my actual losses. And that this claim can be reduced if the total of all claims exceed the funds available to pay them. I approve of this system of allocation because it is tied to the money that I and the class members spent in purchasing product (but which we could not sell for profit).

5. While I understand that I and the class members will be releasing any claims that we may have against Herbalife for its role with third parties who operated lead generators, websites, and coaching, we are not releasing any claims against any of those third-parties. I understand that this release was the result of a negotiated compromise that recognizes the strengths and weaknesses of those claims as against Herbalife and that the proposed allocation is centered on payments to Herbalife, losses associated with product purchases, and the pursuit of retail sales.

Exhibit F

6.      I understand that class certification is not certain in this case. And that if the class is not certified, consistent with the lack of lawsuits filed against Herbalife before and after this lawsuit was filed, the claims of many absent class members who have been injured because of their Herbalife distributorships may lapse. As a class representative, this prospect is an important factor in supporting settlement at this stage.

7.      When I got involved with Herbalife, I reviewed the "Statement of Average Gross Compensation" at that time and I thought that I could make money as an Herbalife distributor. I later found out that the Statement of Average Gross Compensation that I reviewed did not disclose a majority of Herbalife distributors – most of whom earned nothing in payments from Herbalife. I wanted to bring this lawsuit so that a court would make Herbalife stop its selective disclosures and provide people who are seeking a business opportunity full disclosure of the information relating to that opportunity. Through the settlement agreement, Herbalife agrees to do this for three years after the Court enters the order granting final approval of the settlement agreement. This is a very important provision for me as I would have not signed up with Herbalife had I been given full disclosure of the information relating to the opportunity.

8.      Another provision of the settlement agreement that is important to me is the prohibition against members selling leads to other members or purchasing leads from any source. I was a lead – that's how I got involved with Herbalife. I became one when I responded to a radio advertisement. And I purchased leads from third parties. It is my experience and opinion that a focus on leads distracted me and other Herbalife distributors from focusing on retail sales. A prohibition on lead selling addresses that concern.

9.      I think the settlement is good for the class. I have been involved in this litigation since February 2014, including the investigation phase that took place before the First Amended Complaint was filed. I am concerned that it will take

Exhibit F

DECLARATION OF BEVERLY MOLNAR

several more years to litigate the case if the settlement is not approved, and I would rather see the injured class members get compensated now and that these corporate policies are implemented and required now.

10.    I became involved with this lawsuit because I want to see justice served. I am willing to stand up to Herbalife and say, on behalf of other distributors, that what Herbalife did to people is wrong. I think that the corporate policies that this settlement mandates will help make Herbalife better for present and future distributors/members.

11.    I understand the responsibilities of a Class Representative and I have fulfilled, and I continue to fulfill, my duties to the class. The class's legal team has kept in contact with me since the beginning, and they have kept me informed throughout the case regarding the status and strategy of litigation, mediation, and settlement. I have spent many hours pulling relevant documents. Because I have a fear of flying, I was unable to fly to Los Angeles without being accompanied by a family member, but I was willing to drive to Herbalife's lawyers' offices in New York or Washington D.C. to have my deposition be taken. I have vigorously represented the Class's interests pursuant to my fiduciary duties to the Class I represent.

12.    I was not promised any amount of money to serve as a Class Representative or to approve any settlement. My approval of the settlement is based on my view that it is in the best interest of the class.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and that I executed this declaration on October 30, 2014, in _____Pittsburgh_____, Pennsylvania.

Beverly Molnar

Exhibit F

4

DECLARATION OF BEVERLY MOLNAR