Jonathan D. Schiller (*pro hac vice*)
    jschiller@bsfllp.com
Joseph F. Kroetsch (*pro hac vice*)
    jkroetsch@bsfllp.com
Boies, Schiller & Flexner LLP
575 Lexington Avenue
New York, NY  10022
Telephone:  (212) 446-2300
Facsimile:  (212) 446-2350


A. Howard Matz, SBN 55892
    ahm@birdmarella.com
Mitchell A. Kamin, SBN 202788
    mak@birdmarella.com
Mark T. Drooks, SBN 123561
    mtd@birdmarella.com
Gopi K. Panchapakesan, SBN 279586
    gkp@birdmarella.com
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California  90067-2561
Telephone:  (310) 201-2100
Facsimile:  (310) 201-2110

Attorneys for Defendants Herbalife
International of America, Inc.; Herbalife
International, Inc.; and Herbalife, Ltd.

Scott M. Petersen (*pro hac vice*)
    spetersen@fabianlaw.com
Jason W. Hardin (*pro hac vice*)
    jhardin@fabianlaw.com
Philip D. Dracht, SBN 219044
    pdracht@fabianlaw.com
Fabian & Clendenin
215 South State Street, Suite 1200
Salt Lake City, UT  84151-0210
Telephone: (801) 531-8900


Thomas G. Foley, Jr., SBN 65812
    tfoley@foleybezek.com
Justin P, Karczag, SBN 223764
    jkarczag@foleybezek.com
Foley Bezek Behle & Curtis, LLP
15 West Carrillo Street
Santa Barbara, CA  93101
Telephone: (805) 962-9495

Attorneys for Plaintiffs Dana Bostick,
Anita Vasko, Judi Trotter, Beverly
Molnar, and Chester Cote

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DANA BOSTICK, a California resident; ANITA VASKO, a Pennsylvania resident; JUDI TROTTER, a Washington resident; BEVERLY MOLNAR, a Pennsylvania resident; CHESTER COTE, a Vermont resident, on behalf of themselves and all others similarly situated, and on behalf of the general public,<br><br>        Plaintiffs,<br><br>    vs.<br><br>HERBALIFE INTERNATIONAL OF AMERICA, INC., a Nevada | CASE NO. 2:13-cv-02488-BRO-RZ<br><br><br>**DECLARATION OF THE MEDIATOR, HON. DANIEL H. WEINSTEIN (RET.) IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND MOTION FOR APPROVAL OF ATTORNEYS' FEES AND EXPENSES** |

3122193.1

1 Corporation; HERBALIFE
   INTERNATIONAL, INC., a Nevada
2 corporation; and HERBALIFE, LTD.,
   a Cayman Island Corporation,
3
                    Defendants.
4

Assigned to Hon. Beverly Reid
O'Connell

5      I, The Honorable Daniel H. Weinstein (Ret.), hereby declare as follows:

6      1.      I submit this Declaration in my capacity as the mediator of the

7 proposed Settlement of the claims in the matter *Dana Bostick, et al. v. Herbalife*

8 *International of America, Inc., et al.*, Case No. 2:13-cv-02488-BRO-RZ. Except

9 where otherwise indicated, I make this declaration based on personal knowledge and

10 I am competent to testify to the matters set forth herein.

11     2.      All of the parties, entities, and individuals who were represented at the

12 mediation sessions or who participated in the negotiations executed a

13 Confidentiality Agreement indicating that the mediation process was to be

14 considered settlement negotiations for the purpose of all state and federal rules

15 protecting disclosures made during such process from later discovery and/or use as

16 evidence. The parties further agreed that the Confidentiality Agreement extends to

17 all present and future civil, judicial, quasi-judicial, arbitral, administrative or other

18 proceedings. Nothing in my declaration divulges any privileged information.

19 Further, the filing of this declaration does not constitute the waiver of any such

20 confidentiality.

21     3.      As discussed below, I am very strongly of the view that the Settlement

22 of this action, reached at the end of an extended mediation process and contentious

23 litigation, represents a well-reasoned and sound resolution of this complex and

24 highly uncertain litigation.

25     4.      I set forth below my background to provide context for the comments

26 that follow, and to demonstrate that my perspective on the settlement is rooted in

27 significant experience in the resolution of complex litigation.

28     5.      From 1982 through 1988, I served as a Judge of the Superior Court of

1   the State of California, County of San Francisco. I also served as an Associate
2   Justice Pro Tem of the California Supreme Court and of the First District Court of
3   Appeal.

4        6.        Since retiring from the bench, I have been a full-time mediator. Over
5   the past twenty years, I have presided over the mediation of countless disputes,
6   including many of the most complex multi-party disputes throughout the United
7   States. For example, I have mediated dozens of federal securities class actions
8   involving public companies such as Lehman Brothers, Enron, Homestore, Qwest,
9   Adelphia, New Century, Broadcom, Marsh & McLennan, and other major New
10  York Stock Exchange and NASDAQ corporations. I have mediated and helped
11  resolve securities class actions and other litigation concerning residential mortgage
12  backed-securities brought to market by Lehman Brothers, Goldman Sachs, and
13  others. I have also mediated a host of other types of class actions, including the IPO
14  Allocation case, antitrust actions, ERISA matters, intellectual property disputes,
15  environmental litigation, litigation with bankruptcy aspects and litigation brought by
16  borrowers, credit card customers, insurance purchasers, and air crash victims. Many
17  of the cases involve complex fact patterns and legal issues and hundreds of millions
18  or billions of dollars in claimed damages. They often include numerous plaintiffs
19  and plaintiffs' counsel, numerous defendants (issuers, directors, officers,
20  professional firms, etc.) and defense counsel, and numerous insurance carriers and
21  their counsel. Over the last ten years, I have mediated cases with an aggregate
22  settlement value of many billions of dollars.

23       7.        I have worked closely with the principal attorneys on both sides of this
24  case. I am very familiar with the evidence, legal claims, and the range of potential
25  damages and defenses. I received and reviewed voluminous written submissions and
26  heard oral presentations by the parties. With the assistance of counsel I designed and
27  conducted a thorough mediation process, and communicated frequently with the
28  parties in connection with the parties' approximately eight-month period of

1  negotiations while the litigation continued. Based on my familiarity with this case

2  and the parties, I can say that the work and zeal that the parties' sophisticated and

3  able counsel put into this process was significant. The Settlement was achieved only

4  after aggressive and extensive arm's-length negotiations.

5       8.    As detailed below, I oversaw much of the settlement negotiations in

6  this case. I am informed and believe that, on December 9, 2013, the Court entered

7  an order directing the parties to participate in private mediation by February 23,

8  2015, pursuant to Civil Local Rule 26-1 and Federal Rule of Civil Procedure 26(f).

9       9.    On February 6, 2014, following the parties' agreement to select me as

10  the Mediator, the parties began a three-step mediation process. Throughout this

11  mediation process, I was assisted by Cathy Yanni, another mediator who regularly

12  works with me in mediating complex matters.  I conducted additional sessions on

13  March 7, 2014, April 4, 2014, April 25, 2014, and June 18, 2014. My colleague,

14  Cathy Yanni, conducted an additional session on August 11, 2014, for which I was

15  available by telephone.

16       10.    Throughout these difficult settlement negotiations the parties submitted

17  and exchanged mediation statements and voluminous case-related materials. The

18  parties then submitted reply mediation statements, supplemental statements, and

19  additional materials to me prior to each session. Throughout the mediation process

20  there were numerous, and often lengthy, conference calls and numerous

21  communications between me and the parties collectively and between only me and

22  either Plaintiffs' or Defendants' counsel. Altogether, the parties have conducted

23  more than 100 hours of mediation sessions, meetings and telephone conferences to

24  discuss and negotiate whether settlement was possible, to discuss and negotiate both

25  the broad outlines and the details of the Settlement.

26       11.    Throughout the settlement process, there were strong positions taken by

27  the parties that would have taken years to litigate with uncertain results, potentially

28  adding extraordinary additional costs to all of the parties. All class actions involve

1  complexities; however, this case involved a number of particularly difficult facets
2  for the mediator. There were numerous complex and disputed issues that were
3  raised by the Plaintiffs and from the outset of the mediation, Defendants vigorously
4  contested the legal and factual allegations and signaled their intent to challenge the
5  complaint and class certification at every stage of the litigation.

6      12.    As the parties continued discovery and the settlement discussions
7  intensified, I communicated with the parties on a regular basis during the spring and
8  summer of 2014. Notwithstanding the complicated dynamics of the case, the
9  negotiations culminated in a substantial settlement between the parties in July 2014
10 as to the monetary terms, with the defendants agreeing to create a settlement fund of
11 $15 million and fund up to $2.5 million in product refunds, subject to satisfaction of
12 certain conditions and negotiation of a stipulation of settlement. This figure is in a
13 range that I believe reasonably reflects the parties' factual, legal, and damages
14 positions.

15     13.    Thereafter, the parties continued to negotiate for approximately three
16 months to resolve allocation and administration of the monetary terms and non-
17 monetary issues, such as the scope of the release and corporate reforms. It is my
18 understanding based on my observations of the mediation sessions and discussions
19 with counsel for Plaintiffs, that the case was not "settled" until they had agreement
20 on non-monetary issues -- until then, litigation remained open and the settlement
21 was uncertain.

22     14.    I have analyzed the allocation and administration of the monetary terms
23 of the settlement and believe that the method of allocation reasonably reflects the
24 claims brought by Plaintiffs and the class, the injuries alleged by Plaintiffs and the
25 class, and the parties' factual, legal, and damages positions. I have analyzed the
26 non-monetary terms of the settlement and believe that the agreement secured by
27 counsel for the Class as to the nature and duration of these corporate practices is
28 significant and valuable to the Class and future consumers.

1        15.    In light of the sophisticated factual and legal issues involved and the

2    significant time needed to litigate this case, I view the total settlement as a reflection

3    of the parties' evaluation of the litigation risks and the benefits of avoiding years of

4    potential uncertainty from litigation that would likely ensue absent a settlement,

5        16.    As the mediator for the case, I observed first-hand that this was a hard-

6    fought negotiation resulting in a significant recovery for the class and an equitable

7    settlement for all concerned. The advocacy on both sides of the case was

8    outstanding. I believe that the class could not have obtained such a significant

9    settlement without the efforts of named plaintiffs and class counsel. Counsels were

10   fully prepared and well-informed on the law and facts of this case and were able to

11   address directly several complex and difficult litigation and damages issues. All

12   counsel displayed the highest level of professionalism in carrying out their duties on

13   behalf of their respective clients.

14       17.    Counsel for plaintiffs' legal work in this case was creative, persistent,

15   of the highest professional quality, and most importantly, very effective for the

16   class. This case was characterized by the expertise with which counsel for the class

17   handled the complex issues presented and their un-ending efforts to leave no stone

18   unturned to maximize the class's recovery, both monetary and non-monetary.

19       18.    Based on my experience as a mediator, my specific experience

20   overseeing the negotiation process in this case, my knowledge of this matter, all of

21   the materials provided to me, the extensive efforts of skillful advocacy and arm's

22   length bargaining of counsel, and the litigation risks, I believe that the total

23   monetary and non-monetary recovery proposed for the class through the settlement

24   is fair, reasonable, and adequate. This Court, of course, will make its own

25   determination as to the fairness of the settlement under applicable legal standards.

26   From a mediator's perspective, however, I can say that it represents a meaningful

27   consideration to class members, with due recognition of the complexity of the facts

28   and legal contentions at issue, the risks presented to both sides, and the threat of

1 | continued protracted litigation and likely appeals. As such, I unreservedly and
2 | respectfully recommend that it be approved by this Court.

3 |     I declare under penalty of perjury under the laws of the United States of
4 | America that the foregoing is true and that I executed this declaration on October
5 | 29, 2014, in New York, NY , ~~California~~.

7 |                          Hon. Daniel H. Weinstein (Ret.)

---

7

DECLARATION OF THE MEDIATOR, HON. DANIEL H. WEINSTEIN (RET.)