1  Counsel is listed on the following page

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

10

11  DANA BOSTICK, *et al.*,                    CASE NO. 2:13-cv-02488-BRO-RZ

12            Plaintiffs,                      **STIPULATION OF SETTLEMENT**

13        vs.                                  Assigned to Hon. Beverly Reid
                                               O'Connell
14  HERBALIFE INTERNATIONAL OF
    AMERICA, INC., *et al.*,
15
              Defendants.
16

17

18

19

20

21

22

23

24

25

26

27

28

Jonathan D. Schiller (*pro hac vice*)
   jschiller@bsfllp.com
Joseph F. Kroetsch (*pro hac vice*)
   jkroetsch@bsfllp.com
(Other Attorneys Listed Below)
Boies, Schiller & Flexner LLP
575 Lexington Avenue
New York, NY  10022
Telephone:  (212) 446-2300
Facsimile:  (212) 446-2350

Scott M. Petersen (*pro hac vice*)
   spetersen@fabianlaw.com
Jason W. Hardin (*pro hac vice*)
   jhardin@fabianlaw.com
Philip D. Dracht, SBN 219044
   pdracht@fabianlaw.com
Fabian & Clendenin
215 South State Street, Suite 1200
Salt Lake City, UT  84151-0210
Telephone: (801) 531-8900

A. Howard Matz, SBN 55892
   ahm@birdmarella.com
Mitchell A. Kamin, SBN 202788
   mak@birdmarella.com
Mark T. Drooks, SBN 123561
   mtd@birdmarella.com
Gopi K. Panchapakesan, SBN 279586
   gkp@birdmarella.com
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California  90067-2561
Telephone:  (310) 201-2100
Facsimile:  (310) 201-2110

Thomas G. Foley, Jr., SBN 65812
   tfoley@foleybezek.com
Justin P, Karczag, SBN 223764
   jkarczag@foleybezek.com
Foley Bezek Behle & Curtis, LLP
15 West Carrillo Street
Santa Barbara, CA  93101
Telephone: (805) 962-9495

*Attorneys for Defendants Herbalife International of America, Inc.; Herbalife International, Inc.; and Herbalife Ltd.*

*Attorneys for Plaintiffs Dana Bostick, Anita Vasko, Judi Trotter, Beverly Molnar, and Chester Cote*

This Stipulation of Settlement and attached exhibits (the "Settlement Agreement") dated as of October 31, 2014, is made by and among the following Settling Parties: on the one hand, Plaintiffs Dana Bostick, Anita Vasko, Judi Trotter, Beverly Molnar, and Chester Cote on behalf of themselves, and on behalf of each of the Settlement Class Members (as defined herein), by and through Plaintiffs' Counsel; and on the other, Defendants Herbalife International of America, Inc., Herbalife International, Inc., and Herbalife Ltd. (collectively, "Herbalife"), by and through their counsel.  This Settlement Agreement is intended by the Settling Parties to resolve, discharge and settle the Released Claims (as defined herein), upon and subject to the terms and conditions of this Settlement Agreement.

## 1.    DEFINITIONS

In addition to the foregoing defined terms, the following terms shall have the meanings as set forth below:

1.1    "Action" means the action filed in the United States District Court for the Central District of California entitled *Dana Bostick, et al. v. Herbalife International of America, Inc., et al*., Case No. 2:13-cv-02488-BRO-RZ, including all pleadings on file in that action.

1.2    "Authorized Claimant" means a Class Member who submits a timely and valid Claim Form to the Claims Administrator or is otherwise authorized to receive benefits under this Settlement Agreement.

1.3    "Claims Administrator" means KCC LLC, who shall be subject to and comply with this Settlement Agreement and the terms of the Claims Protocol attached hereto as Exhibit 3.

1.4    "Plaintiffs' Counsel" means the law firms Fabian & Clendenin, P.C. and Foley Bezek Behle & Curtis, LLP.

1.5    "Class Period" means the period beginning April 1, 2009, through and including the date the Preliminary Approval Order is entered.

1.6    "Court" means the United States District Court for the Central District

1    of California.

2        1.7        "Effective Date" means the first date after which all of the following

3    events and conditions have been met or have occurred:

4            1.7.1        The Settlement Agreement is executed and delivered by/to

5    all Parties and approved by the Court;

6            1.7.2        Entry of the Final Judgment and Order Approving Settlement

7    ("Final Judgment");

8            1.7.3        The Final Judgment becomes "Final."  "Final" means the

9    occurrence of any of the following: (a) final affirmance on an appeal of the Final

10   Judgment, the expiration of the time for a petition for review of the Final Judgment

11   and, if the petition is granted, final affirmance of the Final Judgment following

12   review pursuant to that grant; (b) final dismissal of any appeal from the Final

13   Judgment or the final dismissal of any proceeding to review the Final Judgment; or

14   (c) if no appeal is filed, the expiration of the time for the filing or noticing of any

15   appeal from the Court's Final Judgment.  If the Final Judgment is set aside,

16   materially modified, vacated or reversed by the Court or by an appellate court, and

17   is not fully reinstated on further appeal, then the Final Judgment does not become

18   "Final" and the Effective Date cannot occur.

19           1.7.4        Plaintiffs and Herbalife shall have the option to elect to

20   waive the failure, in whole or in part, of any of the conditions set forth in

21   Subsections 1.7.1-1.7.3.  If Plaintiffs or Herbalife elects to waive the failure, in

22   whole or in part, of such condition, Plaintiffs or Herbalife shall file a written notice

23   of waiver with the Court within ten (10) days after they become aware of the failure

24   of such condition.  If Plaintiffs or Herbalife waive the failure, in whole or in part, of

25   any condition in Subsections 1.7.1-1.7.3, then the Effective Date will occur without

26   satisfaction of that condition.

27       1.8        "Escrow Agent" means KCC LLC.

28       1.9        "Notice" means the notice provided for in Section 7 and substantially

in the form attached hereto as Exhibit 1.

1.10    "Person" means an Herbalife member or distributor in his or her individual capacity; any corporation, limited liability company, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, or any business or legal entity through which he or she has conducted or conducts an Herbalife distributorship; and their spouses, heirs, predecessors, successors, representatives, alter egos, or assigns.

1.11    "Preliminary Approval Order" means the order to be entered by the Court, preliminarily approving the Settlement Agreement, certifying the Settlement Class for settlement purposes only, approving the Notice of Proposed Settlement, approving the Summary Notice, and setting the Settlement Hearing, as provided for in Section 7.

1.12    "Settlement Agreement" means this Stipulation of Settlement, including all attached exhibits.

1.13    "Settlement Class" means all persons who are or were Herbalife members or distributors in the United States at any time during the Class Period.

1.13.1    Excluded from the Settlement Class are the Defendants, their employees, family members, and any member who has been a member of Herbalife's President's Team, Founder's Circle, Chairman's Club, Millionaire Team, or GET Team.

1.13.2    Also excluded from the Rule 23(b)(3) class are all Herbalife members or distributors who have agreed to be subject to the arbitration provisions of the Arbitration Agreement for Disputes Between Members and Herbalife contained in the Member Application Agreement revised during or after September 2013.

1.14    "Settlement Class Member" means a Person who fits within the definition of the Settlement Class and who has not validly and timely requested exclusion from the Settlement Class, as provided in Section 10.

1      1.15    "Settlement Hearing" means the hearing to determine whether this

2  Settlement Agreement should be finally approved by the Court, as provided for in

3  Section 7.

4      1.16    "Settling Parties" means Herbalife and each of the Plaintiffs on behalf

5  of themselves and each of the Settlement Class Members.

6      1.17    "Summary Notice" means the written notice provided for in Section 7

7  and substantially in the form attached hereto as Exhibit 2.

8      1.18    The word "or" means and/or.

9      1.19    The plural includes the singular and vice-versa.

10  **2.      LITIGATION BACKGROUND**

11      2.1    <u>Original Complaint</u>. On April 8, 2013, Plaintiff Dana Bostick, on

12  behalf of himself and a putative class of "others similarly situated," filed this Action

13  in the United States District Court for the Central District California, naming as

14  defendants Herbalife International of America, Inc.; Herbalife International, Inc.;

15  and Herbalife Ltd., alleging the following claims for relief: (1) violations of

16  California's endless chain scheme law under California Penal Code Section 327 and

17  California Civil Code Section 1689.2; (2) violations of the Racketeer Influenced and

18  Corrupt Organizations Act ("RICO") (18 U.S.C. §§ 1962(a), (c), and (d)); (3) unfair

19  and deceptive business practices under California Business and Professions Code

20  Section 17200, *et seq*.; and (4) false advertising under California Business and

21  Professions Code Section 17500, *et seq*. The complaint sought, among other things,

22  damages for the financial losses incurred by Bostick and the class; general,

23  compensatory, and exemplary damages; restitution and disgorgement; temporary

24  and permanent injunctive relief; costs; reasonable attorneys' fees; pre- and post-

25  judgment interest; and other damages the Court may deem just and proper.

26      2.2    <u>Motion to Dismiss</u>. On May 30, 2013, Defendants moved to dismiss

27  the complaint.  (Dkt. No. 22.).  On October 11, 2013, the Court denied Defendants'

28  motion to dismiss.  (Dkt. No. 40).

2.3 <u>First Amended Complaint</u>. On July 2, 2014, the Court granted the parties' Stipulation to File First Amended Complaint. (Dkt. No. 76). The First Amended Complaint, filed on July 7, 2014, added Anita Vasko, Judi Trotter, Beverly Molnar, and Chester Cote as plaintiffs. (Dkt. No. 78). The First Amended Complaint also removed Plaintiffs' RICO causes of action. On August 15, 2014, the parties sought a 63 day extension of certain case management deadlines and Defendants' time to respond to Plaintiffs' First Amended Complaint. (Dkt. No. 82). The Court granted this stipulation on August 20, 2014. (Dkt. No. 83).

**3. BENEFITS OF THE SETTLEMENT**

3.1 <u>Diligence of Plaintiffs' Counsel</u>. Plaintiffs are represented by experienced counsel who have conducted discovery, both formal and informal, as well as investigation prior to and throughout the prosecution of the Action. The discovery and investigation have included (i) review of over 148,000 pages of internal Herbalife documents; (ii) depositions of Herbalife pursuant to Federal Rule of Civil Procedure 30(b)(6); (iii) analysis of several gigabytes of confidential Herbalife database productions; (iv) review of documents provided by former Herbalife members or distributors and other persons with relevant information; (v) review of written discovery responses provided by Herbalife through the discovery process; (vi) review of Herbalife's public materials and other publicly available documents; (vii) interviews with former Herbalife members or distributors; (viii) consultation with experts; (ix) research of the applicable law with respect to the claims asserted in the complaints and the potential defenses thereto. Joint Declaration of Thomas J. Foley, Jr. and Scott M. Petersen, dated October 31, 2014, filed concurrently herewith, details such diligence.

3.2 <u>Benefits to Settlement Class</u>. Plaintiffs' Counsel have analyzed the benefits to be obtained under the terms of the proposed Settlement and have considered the costs, risks, and delays associated with the continued prosecution of the Action and likely appeals, as well as the merits of the defenses asserted by

Herbalife.  Plaintiffs' Counsel believe that, in consideration of all of the circumstances and after prolonged, serious, and contentious arms-length negotiations in mediation with Herbalife, the proposed Settlement is fair, reasonable, adequate and in the best interests of the Settlement Class.  In making these statements and submitting a declaration filed concurrently herewith, Plaintiffs' Counsel are not making any admission of fact or law in regard to liability, fault allocation, or damages with respect to the Action.

3.3     <u>Benefits to Herbalife</u>. Herbalife has concluded that it is in its best interests that the Action be settled on the terms embodied in the Settlement Agreement.  Herbalife reached that conclusion after: (1) analyzing the factual and legal issues in the Action and considering the uncertainty of litigation; (2) determining that further conduct of the Action through trial and any possible appeals would be protracted and expensive; and (3) considering the benefits of permitting Herbalife to conduct its business unhampered by the distractions of continued litigation.

**NOW, THEREFORE, IT IS HEREBY AGREED** by and between the parties, through their respective counsel, that the Action and the Released Claims be finally and fully settled, compromised and released, and the Action shall be dismissed on the merits with prejudice, on the terms set forth herein, as between Plaintiffs and the Settlement Class Members on the one hand, and Herbalife on the other.

**4.     MONETARY RELIEF AND PRODUCT RETURN**

4.1     <u>Monetary Fund</u>.  Herbalife shall establish a non-reversionary "Settlement Fund" in the amount of $15,000,000.00.  This amount shall be deposited into an escrow account within ten (10) business days after the Court issues the Preliminary Approval Order.  The Settlement Fund shall be applied: (a) first, to pay the costs of notice and settlement administration, (b) second, to pay Plaintiffs' Counsel's attorneys' fees and expenses and any plaintiff service awards

1   in the amount awarded by the Court, (c) third, after exhausting the Product Return

2   Fund, no more than $2,500,000 of the Settlement Fund may be applied to pay

3   Settlement Class Members who submit a valid claim for a product return, and (d)

4   fourth to pay Settlement Class Members who submit a valid claim for a cash award

5   (this final amount is the "Net Settlement Fund").  The Court shall oversee the

6   distribution of any amounts remaining in the Net Settlement Fund pursuant to the *cy*

7   *pres* doctrine to Consumer Federation of America, or such organization(s) as the

8   parties may jointly propose and the Court approves.  To the extent interest is earned

9   on amounts held in escrow, it shall accrue and be payable to Herbalife, less

10  applicable taxes.  The Escrow Agent, on behalf of the Settlement Class, shall be

11  responsible for all administrative, accounting, and tax compliance activities in

12  connection with this escrow account and shall comply with the provisions of the

13  escrow agreement and the Claims Protocol attached as Exhibit 3.

14        4.2   Product Return Fund.  In addition to the Settlement Fund described in

15  Subsection 5.1, Herbalife shall commit resources to funding a reversionary "Product

16  Return Fund" in the amount of $2,500,000.00.  The Product Return Fund shall be

17  applied to pay Settlement Class Members who submit a valid claim for a product

18  return. The costs of return shipping for product returns shall be borne by the Product

19  Return Fund.  The sum of the Product Return Fund plus the portion of the

20  Settlement Fund available for product returns as set forth in Section 5.1(c) above

21  shall be the "Net Product Return Fund."  The product return fund shall be

22  administered by Herbalife; to the extent the Product Return Fund is not fully

23  expended as set forth in Section 5.3 below, the remainder shall be returned to

24  Herbalife.

25        4.3   Product Return Claimants.  Settlement Class Members may submit

26  claims to return unused and unopened products (excluding International Business

27  Packs ["IBPs"] and mini-IBPs) that were purchased more than one year prior to the

28  deadline for submitting claims forms.  In exchange, Settlement Class Members shall

1  receive a Return Payment from the Net Product Return Fund.  Settlement Class

2  Members submitting claims to return products are "Product Return Claimants."

3         4.3.1    In their claim forms, Product Return Claimants shall identify

4  the (1) SKU of the product(s) to be returned, (2) estimated purchase date of the

5  product(s) to be returned, and (3) actual amount paid for each returned product (the

6  "Product Return Amount").  If the Product Return Claimant is unable to provide the

7  actual amount paid, the Product Return Claimant shall so certify and shall provide

8  an estimated payment.  Assuming all other information is properly provided to the

9  Claims Administrator, the Claims Administrator shall calculate the Return Payment

10  as the lesser of the Product Return Claimant's estimated payment or 50% of

11  Herbalife's Suggested Retail Price for the product(s) on the purchase date.

12         4.3.2    Following the deadline for submitting claim forms, the

13  Settlement Administrator's website shall provide Product Return Claimants with

14  notice of the amount of the proposed payment (the "Return Payment").  If the total

15  Return Payment exceeds the Net Product Return Fund, the Return Payment for each

16  Product Return Claimant shall be subject to pro rata diminution.  Beginning within

17  ten (10) business days following the Settlement Administrator's online posting of

18  notice of the Return Payment and continuing for sixty (60) days thereafter, Product

19  Return Claimants shall be permitted to return the products identified in their claim

20  forms in exchange for a Return Payment.

21         4.3.3    Herbalife shall use its current product return process to

22  retrieve or collect the product for which Product Return Claimants properly submit

23  claims, with no additional cost to the Product Return Claimants.  Should any

24  product be returned by means of shipping (whether through Herbalife's product

25  return process or otherwise), any shipping costs shall be paid by the Net Product

26  Return Fund.

27         4.4    Business Opportunity Claimants.  Settlement Class Members may

28  submit claims for a cash award, as described below.  Settlement Class Members

1  submitting claims for a cash award are "Business Opportunity Claimants."

2      4.4.1      Qualified Products.  Amounts to be paid to Business

3  Opportunity Claimants out of the Net Settlement Fund shall be derived from

4  information submitted to the Claims Administrator by the Business Opportunity

5  Claimants and the price paid for Qualified Products identified through the claims

6  process.  A "Qualified Product" shall consist of an Herbalife product purchased by

7  the Business Opportunity Claimant directly from Herbalife for which the Business

8  Opportunity Claimant certifies the following:

9          (a)     The product was purchased for resale purposes during the Class

10                 Period;

11         (b)     The product was purchased from within the United States and

12                 shipped directly to the Claimant at a location in the United

13                 States;

14         (c)     The product was not sold for at least the cost of purchase; and

15         (d)     The product was not returned to Herbalife through Herbalife's

16                 buyback program, Herbalife's satisfaction guarantee, or as part

17                 of the Product Return program provided in this settlement.

18     4.4.2      Business Opportunity Claimants shall also certify under

19  penalty of perjury: (a) that they joined Herbalife primarily to pursue a business

20  opportunity and not primarily for self-consumption; (b) that in total, they lost money

21  on Herbalife products pursuing the Herbalife business opportunity; (c) that they

22  have never been GET Team or higher level members; and (d) the Claimant's best,

23  good faith estimate of his or her total loss from Qualified Product sales.

24     4.4.3      The Claims Administrator, using purchase data supplied by

25  Herbalife, shall compare the Business Opportunity Claimant's estimated total loss

26  from Qualified Product sales to the price paid by that claimant for the claimant's

27  aggregate Qualified Products.

28     4.4.4      The Claims Administrator, using purchase data supplied by

Herbalife, shall determine for each Business Opportunity Claimant whether during any Claims Year during the Class Period the claimant paid Herbalife at least $750 to purchase products (the "Minimum Purchase Amount").  A Claims Year shall be defined as any twelve-month period beginning on the later of: (i) the first day of the month in which the Business Opportunity Claimant became an Herbalife member or distributor, or (ii) the beginning of the Class Period.  A Business Opportunity Claimant who purchased at least the Minimum Purchase Amount shall be entitled to a Pro Rata Award (defined in Subsection 4.4.5).  All other Claimants shall be "Flat Rate Claimants" entitled to "Flat Rate Awards" (defined in Subsection 4.4.6).

4.4.5    Pro Rata Awards.  Business Opportunity Claimants submitting valid claims shall be entitled to a payment equal to the lesser of 100% of the estimated total loss from Qualified Product sales or 50% of the price paid by that claimant for the claimant's aggregate Qualified Products.

(a)    If the aggregate payment for Pro Rata Awards due to Business Opportunity Claimants exceeds the Net Settlement Fund less the aggregate Flat Rate Awards described below in Subsection 4.4.6, payments shall be subject to pro rata diminution.  If the aggregate payment for Pro Rata Awards is less than 75% of the Net Settlement Fund less the aggregate Flat Rate Awards described below in Subsection 4.4.6, either party may move the Court to increase payments to Business Opportunity Claimants receiving a Pro Rata Award up to the lesser of (i) 75% of the price paid by that claimant for the claimant's aggregate Qualified Products; or (ii) the total Net Settlement Fund.

4.4.6    Flat Rate Award.  Flat Rate Claimants submitting valid claims shall receive a payment of $20 to be paid from the Net Settlement Fund (the "Flat Rate Award").  If the aggregate Flat Rate Award for all Flat Rate Claimants exceeds $3 million, Flat Rate Awards shall be subject to pro rata diminution.  If the

1  aggregate Flat Rate Award is less than $3 million, then the difference shall remain

2  in the Net Settlement Fund and be available for Pro Rata Awards.

3      4.5    Claim Forms. Claim Forms (for both Product Return and Business

4  Opportunity claims) shall be available from the Claims Administrator, as set forth in

5  the Notice to the Settlement Class.  Completed Claims Forms shall be due to the

6  Claims Administrator no later than 90 days after a date to be mutually agreed upon

7  by the parties upon preliminary approval of the Settlement Agreement.

8      4.6    Opt-Out Forms.  Class Members may submit an Opt-Out Form or

9  letter to the Claims Administrator prior to the Claims Deadline asking to be

10  excluded from the monetary portion of the settlement.  If a Class Member submits

11  both a Claims Form and an Opt-Out Form, the Claims Administrator shall disregard

12  the Opt-Out Form.

13      4.7    The claims process shall employ standard anti-fraud measures to be

14  implemented by the Claims Administrator.  These measures may include comparing

15  data provided by Settlement Class Members with information otherwise available to

16  Herbalife.

17      4.8    No Disbursement of Direct Relief Before Effective Date. The Escrow

18  Agent and the Claims Administrator shall not disburse any portion of the Net

19  Settlement Fund or the Net Product Return Fund before the Effective Date, except

20  as provided for in the Settlement Agreement.

21      4.9    Privacy. The Claims Administrator shall take reasonable measures to

22  the extent permitted by law to assert and to protect the privacy rights of Settlement

23  Class Members, including by maintaining the confidentiality and security of and

24  preventing the unauthorized access or acquisition of any financial or personal

25  information submitted in connection with any claim for benefits pursuant to this

26  Settlement Agreement.  In the event of any unauthorized access to or acquisition of

27  personal information concerning any Settlement Class Member as a direct result of

28  the intentional or negligent acts or omissions of Claims Administrator, the Claims

Administrator shall be responsible for complying with any privacy, data security, or breach notification obligations under state or federal law, and will be solely responsible for directly providing notice to state agencies, affected Settlement Class Members, and/or other persons or entities.

4.10    <u>Taxes on Escrow Account</u>. The Settlement Fund and Product Return Fund shall constitute a qualified settlement fund within the meaning of Treasury Regulations Sections 1.468B-1 through 1.468B-5, 26 C.F.R. §§ 1.468B-1 through 1.468B-5 (1992).  The Settling Parties shall treat the Settlement Fund and Product Return Fund as qualified settlement funds for all reporting purposes under the federal tax laws. For the purpose of Section 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent.  The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund and Product Return Fund (including, without limitation, the returns described in Treas. Reg.  Section 1.468B-2(k)).  Such returns shall be consistent with this Subsection and in all events shall reflect that all taxes (including any interest or penalties) on the income earned by the Settlement Fund and Product Return Fund shall be paid out of the income earned by the Settlement Fund and the Product Return Fund. Taxes and tax expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and paid without prior order from the Court.  The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from the income earned by the Settlement Fund and the Product Return Fund any funds necessary to pay such taxes, including the establishment of adequate reserves for any taxes and tax expenses (as well as any amounts that may be required to be withheld under Treas. Reg. Section 1.468B-2(1)(2)).  The Escrow Agent shall maintain accurate records of all expenditures made pursuant to this Subsection, and shall provide the records upon request to Plaintiffs' Counsel and Herbalife's counsel.  None of the Settling Parties,

or any of their counsel, shall have any responsibility for the payment of taxes described in this Subsection.  The parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Subsection.

4.11    Discretion of Claims Administrator. The Claims Administrator, who shall be jointly proposed by Herbalife and Plaintiffs' Counsel and approved by the Court, shall have discretion to make equitable decisions to carry out the intent of the Settlement Agreement.

4.12    Continuing Jurisdiction Over Direct Relief. The Settlement Fund and Product Return Fund shall be within the control and jurisdiction of the Court, *custodia legis*, until such time as they are distributed pursuant to this Settlement Agreement.

**5.          CORPORATE POLICIES**

5.1.1    All corporate policies set forth in this Section 6 shall be continued for no less than three years from the date the Court issues final approval of the Settlement Agreement.

5.1.2    At least in part as a result of the filing of the lawsuit, Herbalife implemented, instituted, or continued to maintain, as the case may be, the following corporate policies identified in Subsections 5.1.3-5.1.15.

5.1.3    Herbalife shall not simultaneously and separately charge its members a "Packaging & Handling" fee (or similar fee) and an "Order Shipping Charge" (or similar fee) as was done during the Class Period up until Herbalife adopted its Simplified Pricing Structure, when the two charges were combined into a single "Shipping & Handling" charge.

5.1.4    Herbalife shall not define "Distributor" in its Glossary of Terms as "Everyone who purchases an Official Herbalife Member Pack (HMP) and submits to Herbalife a valid and complete Membership Application and whose Application has been accepted by Herbalife."

1    5.1.5    Herbalife shall continue to discourage members from

2 incurring debt to pursue the Herbalife business opportunity, consistent with Rule

3 1.1.2 of Herbalife's Member Rules of Conduct.

4    5.1.6    Herbalife shall continue to pay shipping charges for the

5 return of products to Herbalife in connection with inventory repurchases, consistent

6 with Rule 2.5.3 of Herbalife's Member Rules of Conduct.

7    5.1.7    Herbalife shall continue to maintain procedures for the

8 enforcement of its rules, including but not limited to continuing to maintain a

9 member compliance department to enforce its policies, procedures and member

10 rules.  Herbalife shall continue to revise and supplement such policies, procedures

11 and member rules as deemed necessary by Herbalife in the exercise of reasonable

12 business judgment.

13    5.1.8    Herbalife shall maintain its rule prohibiting members from

14 selling leads to other members or purchasing leads from any source, consistent with

15 Rule 3.3.2 of Herbalife's Member Rules of Conduct.

16    5.1.9    Herbalife shall continue to prohibit members from requiring

17 a person to buy product (other than a Mini or Full Member Pack) as a condition to

18 becoming an Herbalife member or distributor.

19    5.1.10    Herbalife shall maintain its rule that before signing a lease or

20 opening a Nutrition Club in a non-residential location, the member must have been

21 an Herbalife member for at least 90 days and receive mandatory Nutrition Club

22 operator training, consistent with Rule 8.4.1 of Herbalife's Member Rules of

23 Conduct.

24    5.1.11    Herbalife shall include its Statement of Average Gross

25 Compensation ("SAGC") as part of its member application either incorporated as

26 part of that application, attached thereto, or otherwise prominently located and

27 accessible.

28    5.1.12    Herbalife shall require that new members acknowledge

14

reviewing the SAGC when signing a new Herbalife Membership Application and Agreement (the "Membership Agreement").  Herbalife shall continue to include and/or link to the SAGC with the Membership Agreement.

        5.1.13    Herbalife shall continue disclosing in its SAGC the total number and percentage of all members who do not receive any compensation payment directly from Herbalife.

        5.1.14    Herbalife shall clarify in its Sales & Marketing Plan that upon qualifying as a Supervisor, a member shall have at least twelve (12) months during which to requalify as a Supervisor.

        5.1.15    Herbalife shall amend the hardcopy Membership Agreement as follows: (a) the term "Compensation Statement" shall be expressly defined as "Statement of Average Gross Compensation Paid by Herbalife;" and (b) the second sentence of paragraph 2 of box B in version 42 of the Membership Agreement shall read:  "I hereby represent, warrant and agree that I am not relying upon and that I will not rely upon any other written or oral information or representations about the financial results I might achieve."  Herbalife reserves the right to modify its Membership Agreement and other documents provided that such modifications are not materially inconsistent with the amendments provided in this Subsection.

## 6.    ENTRY OF PRELIMINARY APPROVAL ORDER, NOTICE TO THE SETTLEMENT CLASS, AND ENTRY OF FINAL JUDGMENT

    6.1    <u>Motion for Preliminary Approval</u>. Promptly upon execution of this Settlement, the Settling Parties shall submit this Settlement Agreement together with its exhibits and shall jointly apply to the Court (in a joint filing if the parties agree or, if they do not, in separate filings) for entry of the Preliminary Approval Order, which includes provisions that, among other things, will:

        6.1.1    Preliminarily approve the Settlement Agreement as being reasonable and the product of good faith negotiations;

        6.1.2    Certify for settlement purposes only the Settlement Class

1    under Rule 23 of the Federal Rules of Civil Procedure;

2             6.1.3      Approve the Claim Form substantially in the form attached

3    as Exhibit 4, and approve KCC LLC as the Claims Administrator, or as otherwise

4    proposed by the parties or selected by the Court;

5             6.1.4      Approve the Opt-Out Form substantially in the form attached

6    as Exhibit 5;

7             6.1.5      Approve the Notice substantially in the form attached as

8    Exhibit 1 and the Summary Notice substantially in the form attached as Exhibit 2;

9             6.1.6      Order that the Summary Notice be disseminated in the

10   manner set forth in the Notice Program attached as Exhibit 6 and in accordance with

11   the Preliminary Approval Order;

12            6.1.7      Provide that any person falling within the definition of the

13   Settlement Class who desires to be excluded from the Settlement Class must request

14   exclusion by submitting a timely and valid exclusion request, in compliance with the

15   instructions in the Notice of Proposed Settlement, to the Claims Administrator not

16   later than thirty (30) days before the Settlement Hearing;

17            6.1.8      Provide that persons falling within the definition of the

18   Settlement Class who do not file valid and timely requests for exclusion will be: (i)

19   bound by the Final Judgment dismissing the Action on the merits and with

20   prejudice; and (ii) permanently barred and enjoined from commencing, prosecuting

21   or participating in the recovery in any direct or representative action, or any action

22   in any other capacity, asserting or relating to any of the Released Claims, in the

23   manner described in Section 8;

24            6.1.9      Find that the notice to be given in accordance with the

25   Preliminary Approval Order (including the contents of the Notice and Summary

26   Notice and the proposed means for effecting notice to persons falling within the

27   definition of the Settlement Class) constitutes the best notice practicable under the

28   circumstances and constitutes valid, due, and sufficient notice to all members of the

Settlement Class, complying fully with the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United States, and any other applicable law;

6.1.10    Order that notice to persons falling within the definition of the Settlement Class shall be structured to be as efficient as possible and to make maximum use of notice by e-mail and other electronic means and that such notice shall be undertaken by the Claims Administrator;

6.1.11    Schedule a Settlement Hearing to consider and determine whether the Settlement proposed under the terms of this Settlement Agreement should be finally approved as fair, reasonable, and adequate, and whether the Final Judgment approving the Settlement Agreement and resolving the Action should be entered, and to consider the request for an award of attorney's fees and reimbursement of expenses;

6.1.12    Provide that the hearing on this Settlement Agreement and any request for an award of attorneys' fees and reimbursement of expenses may, from time-to time and without further notice to the Settlement Class, be continued or adjourned by order of the Court;

6.1.13    Provide that objections by any Settlement Class Member to (i) the proposed Settlement, (ii) entry of Final Judgment, (iii) entry of an order approving the Settlement Agreement, or (iv) any proposed award of attorneys' fees and reimbursement of expenses to Plaintiffs' Counsel shall be heard and any papers submitted in support of said objections shall be considered by the Court at the Settlement Hearing only if, no later than thirty (30) days before the Settlement Hearing, such objector files with the Claims Administrator a written notice of his, her, or its intention to appear and states the basis for the objections;

6.1.14    Provide that, on the Effective Date, all Settlement Class Members, whether or not they file a Claim Form or sign a release, shall be barred from asserting any Released Claims against any of the Released Parties, and each

17

and all Settlement Class Members shall conclusively be deemed to have released and forever discharged any and all such Released Claims as against all of the Released Parties, in the manner described in Section 8.

       6.2    <u>Cooperation</u>. Herbalife shall cooperate in providing to the Claims Administrator information such as names, addresses, and e-mail addresses for the notice and settlement administration process, which shall be provided to the Claims Administrator pursuant to a confidentiality agreement.

       6.3    <u>Motion for Final Judgment</u>. If, after the Settlement Hearing scheduled by the Court in the Preliminary Approval Order, the Court approves the Settlement Agreement, then counsel for the Settling Parties shall request that the Court enter Final Judgment.

## 7.    NO ADMISSION OF FAULT, LIABILITY, OR WRONGDOING

       7.1    <u>The Settlement is Not an Acknowledgement of Liability or Wrongdoing</u>. Herbalife enters into this Settlement Agreement without in any way acknowledging any fault, liability, or wrongdoing of any kind.  Herbalife continues to deny all of the material allegations in the First Amended Complaint and to assert that Plaintiffs' claims are without merit.

       7.2    <u>The Settlement Raises No Inference of Liability or Wrongdoing</u>. Neither this Settlement Agreement, nor any of the negotiations or proceedings connected with them, nor any other action taken to carry out this Settlement Agreement by any of the Settling Parties shall be construed as, or shall be used as, or shall raise any presumption or inference of, an admission or concession by or against or respecting Herbalife of the truth of any of the allegations in the Complaint or First Amended Complaint, or of any liability, fault or wrongdoing.

       7.3    <u>The Settlement is Not Evidence of Liability or Wrongdoing</u>. Neither this Settlement Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with them shall be offered as evidence or received in evidence in any pending or future civil, criminal, or administrative

1  action or be used to create any inference or presumption of liability or an admission

2  of any kind by Herbalife, except as may be necessary to enforce the terms of this

3  Settlement Agreement.

4  **8.      RELEASE**

5          8.1      As of the Effective Date and in consideration of this Settlement

6  Agreement and the benefits extended to the Class, Herbalife International of

7  America, Inc.; Herbalife International, Inc.; and Herbalife Ltd. (collectively,

8  "Herbalife") and each of their present and former, direct and indirect, subsidiaries,

9  parents, affiliates, unincorporated entities, divisions, groups, officers, directors,

10  shareholders, partners, partnerships, joint ventures, employees, agents, servants,

11  assignees, successors, insurers, indemnitees, attorneys, transferees, and/or

12  representatives (collectively, the "Released Parties") shall be released and forever

13  discharged by the Class Representatives, for themselves and as the representatives

14  of each Settlement Class Member; each Settlement Class Member on behalf of

15  himself or herself; and their respective present and former, direct and indirect,

16  subsidiaries, parents, affiliates, unincorporated entities, divisions, groups, officers,

17  directors, shareholders, partners, partnerships, joint ventures, employees, agents,

18  servants, assignees, successors, insurers, indemnitees, attorneys, transferees, and/or

19  representatives (collectively, the "Releasing Parties") from all claims, demands,

20  rights, liabilities, suits, or causes of action, known or unknown, as of the Effective

21  Date that (1) were or could have been asserted in the complaints filed in this Action

22  against Herbalife, or (2) are based upon, arise out of, or reasonably relate to: (i) the

23  purchase or sale or offer of sale of any Herbalife product, including the IBP and

24  Mini-IBP, during the Class Period; (ii) any packaging and handling or shipping

25  charges paid in connection with purchase or sale or offer of sale of any Herbalife

26  product during the Class Period; (iii) the Herbalife Membership Application and

27  Agreement, including any materials attached thereto and/or referenced therein,

28  including the Statement of Average Gross Compensation; (iv) any actual, potential,

or attempted recruitment of any Herbalife member or distributor during the Class Period; (v) any allegation that, during the Class Period, Herbalife engaged in any acts of unfair competition; false and/or misleading advertising; or operated any type of illegal, pyramid, endless chain, or fraudulent scheme; and (vi) any of the facts, schemes, transactions, events, matters, occurrences, acts, disclosures, statements, misrepresentations, omissions, or failures to act that have been or could have been alleged or asserted in the Action (collectively, the "Released Claims"); provided, however, that the Released Claims do not include claims arising out of (1) the purchase or sale of Herbalife's common stock, publicly traded on the New York Stock Exchange under the ticker symbol, "HLF;" (2) federal, state, or local government statues, rules, regulations or ordinances over which a federal, state, or local government agency or similar authority retains sole jurisdiction and for which there is no private right of action accruing to the Settlement Class Members, either collectively or individually; (3) the calculation of bonuses or payments for the sale of Herbalife products owed by Herbalife to any Settlement Class Member, to the extent such bonuses or payments are not related to any Qualified Products; or (4) any allegation that an Herbalife product was defective.

       8.2     The Released Claims include any unknown claims that reasonably could have arisen out of the same facts alleged in the Action that the Settlement Class Members do not know or suspect to exist in their favor at the time of the release, which, if known by them, might have affected their settlement with, and release of, the Released Parties or might have affected their decision not to object to this Settlement.  With respect to the Released Claims only, the Settlement Class Members stipulate and agree that, upon the Effective Date, the Settlement Class Members shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

8.3     The Settlement Class Members may hereafter discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the Released Claims, but upon the Effective Date, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever settled and released any and all of the Released Claims, whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, for damages, injunctive relief, rescission, disgorgement, or restitution or any other right, remedy, or relief of every nature and description whatsoever, whether based on federal, state, local, statutory or common law or any other law, rule, or regulation, including the law of any jurisdiction outside the United States, that were brought or could have been brought in the complaints in this Action without regard to the subsequent discovery or existence of such different or additional facts.

8.4     Continuing Jurisdiction.  Except for the enforcement of the Final Judgment entered pursuant to this Settlement Agreement, the Releasing Parties shall be barred from prosecuting any proceeding against any of the Released Parties with respect to any Released Claim. The Court shall retain jurisdiction to enforce the Final Judgment, releases, and bars to suits contemplated by this Settlement Agreement. It is further agreed that the Settlement Agreement and the Final Judgment may be pleaded as a complete defense to any proceeding subject to this Section.

**9.     EXCLUSION (OPTING-OUT) FROM THE SETTLEMENT CLASS**

9.1      Any Person falling within the definition of the Settlement Class who does not wish to participate in the Net Settlement Fund or Net Product Return Fund described in Section 5 and be bound by the dismissals and releases provided for in this Settlement Agreement, must request exclusion from the Settlement Class. A request for exclusion must state: (1) the name, address, and telephone number of the Person requesting exclusion and (2) that the person wishes to be excluded from the Settlement Class.  The exclusion request must be sent by mail or e-mail to the Claims Administrator and postmarked or e-mailed on or before the date specified in the Preliminary Order.  The Claims Administrator shall deliver copies of any and all requests for exclusion to Plaintiffs' Counsel and Herbalife's counsel. The Claims Administrator shall make such deliveries on a weekly basis and shall ensure that the final such delivery is received by Plaintiffs' Counsel and Herbalife's counsel at least thirty (30) days before the Settlement Hearing. Plaintiffs' Counsel shall file any and all such requests for exclusion with the Court at or before the Settlement Hearing. All Persons who submit valid and timely requests for exclusion in the manner set forth in this Section shall have no rights under this Settlement Agreement, and shall not share in the distribution of the Net Settlement Fund or Net Product Return Fund. All Persons falling within the definition of the Settlement Class who do not request exclusion in the manner set forth in this Section shall be Settlement Class Members and shall be bound by this Settlement Agreement and the Final Judgment.  Any Person falling within the definition of the Settlement Class who timely requests exclusion shall, upon approval of the Court, be excluded from the class certified pursuant to Fed. R. Civ. Proc. 23(b)(3); each such Person shall remain in the class for purposes of injunctive relief claims, certified pursuant to Fed. R. Civ. Proc. 23(b)(2).

**10.    ATTORNEYS' FEES AND DISBURSEMENT OF EXPENSES**

10.1    <u>Application for Attorneys' Fees and Expenses</u>.  Plaintiffs' Counsel may apply to the Court at the Settlement Hearing for an award of attorneys' fees and

reimbursement of their expenses and costs from the Settlement Fund in an amount to be determined by the Court as a percentage of the entire value of settlement, including monetary and other relief (such as corporate reforms), as a common fund, in accordance with Ninth Circuit Court of Appeals precedent and the pertinent law. Herbalife agrees not to oppose an application by Plaintiff's Counsel for attorneys' fees consistent with fee awards previously approved by the Ninth Circuit Court of Appeals.  Plaintiffs' Counsel anticipates requesting an award of attorneys' fees Plaintiffs' Counsel will file a separate motion with the Court requesting an award of attorney fees, costs to be reimbursed, and any enhancements from the Settlement Fund in an amount consistent with Ninth Circuit precedent.  Plaintiffs and Plaintiffs' Counsel agree that they will not seek to collect any attorneys' fees, expenses, or costs from any source other than the Settlement Fund.  To the extent the Court may award fees to counsel for any class member appearing before the Court in connection with the approval or implementation of this Settlement Agreement, such fees shall be payable solely from the Settlement Fund.

10.2    Payment of Attorneys' Fees and Expenses Award. The attorneys' fees, expenses, and costs approved by the Court to be distributed to Plaintiffs' Counsel shall be paid by the Escrow Agent to Plaintiffs' Counsel from the Settlement Fund, within five (5) business days after the Effective Date.

10.3    Named Plaintiffs' Compensation. The Court may award reasonable incentive compensation to the named Plaintiffs for their service in the case, which shall come from the Settlement Fund.  Any such Court-ordered compensation shall be paid within (5) five business days after the Effective Date. The Released Parties shall have no responsibility for, and no liability whatsoever with respect to, any incentive compensation to any of the named Plaintiffs, except as expressly provided in Subsection 5.1.

10.4    No Effect On Settlement. Any orders or proceedings relating to the application of Plaintiffs' Counsel for an award of attorneys' fees, costs, and

1 expenses shall not operate to terminate or cancel this Settlement Agreement, and

2 shall have no effect on the finality of the Final Judgment to be entered pursuant to

3 this Settlement Agreement.

4       10.5    <u>Released Parties Not Responsible for Payment of Award</u>.  The

5 Released Parties shall have no responsibility for, and no liability whatsoever with

6 respect to, any payment to Plaintiffs' Counsel from the Settlement Fund that may

7 occur, except as expressly provided in Subsection 5.1.

8       10.6    <u>Released Parties Not Responsible for Allocation of Award</u>.  The

9 Released Parties shall have no responsibility for, and no liability whatsoever with

10 respect to, the allocation among Plaintiffs' counsel, and any other Person who may

11 assert some claim thereto, of any award of attorneys' fees, costs, or expenses that

12 the Court may make.

13 **11.    TERMINATION OF SETTLEMENT AGREEMENT**

14       11.1    <u>Conditions Permitting Termination</u>. Herbalife or Plaintiffs may elect

15 to terminate the Settlement Agreement, at their option, in the event that more than

16 five percent (5%) of members of the Settlement Class exclude themselves from the

17 Settlement pursuant to the provisions of Section 10.

18       11.2    <u>Procedure for Termination</u>. In order to terminate this Settlement

19 Agreement pursuant to Subsection 11.1, a party must serve a written notice of

20 termination on the Court and on opposing counsel, by hand delivery or by first class

21 mail. Such written notice must be delivered or postmarked within ten (10) business

22 days after counsel for the party seeking termination of the Settlement Agreement

23 receives from the Claims Administrator the last weekly delivery of copies of

24 requests for exclusion as provided for in Section 10 or within ten (10) business days

25 after the Court grants any additional request for exclusion from the Settlement Class

26 for any reason.

27       11.3    <u>Consequences of Termination</u>. If the Effective Date does not occur or

28 if a party terminates this Settlement Agreement as provided in this Section 11, then

1   this Settlement Agreement shall have no further force or effect and the Settling

2   Parties shall revert to their respective positions as of the date that the Settlement

3   Agreement was executed by Plaintiffs and Herbalife, as though this Settlement

4   Agreement had never been executed.  In that event, within five (5) business days

5   after written notification of such event is sent by Herbalife's counsel or Plaintiffs'

6   Counsel to the Escrow Agent, the Settlement Fund and Product Return Fund, less

7   expenses and any costs which have been disbursed pursuant to Subsections 5.1

8   and/or 5.2, shall be refunded by the Escrow Agent to Herbalife's counsel. In such

9   event, Herbalife shall be entitled to any tax refund owing to the Settlement Fund

10  and/or Product Return Fund.  At the request of Herbalife, the Escrow Agent or its

11  designee shall apply for any such refund and pay the proceeds, after deduction of

12  any fees or expenses incurred in connection with such application(s) for a refund, to

13  Herbalife.

14      11.4    <u>Inadmissible for Purposes of Certifying a Litigation Class</u>. If the

15  Settlement Agreement is terminated pursuant to the provisions set forth in this

16  Section 11 or the Effective Date does not occur for any reason, the parties will not

17  offer this Settlement Agreement, any agreement negotiated between the parties in

18  connection with or regarding the Settlement or the Settlement Agreement, or any

19  motion seeking approval of the Settlement or Settlement Agreement in connection

20  with a motion to certify a litigation class or in any other proceeding in this Action.

21  **12.   OTHER PROVISIONS OF THE SETTLEMENT**

22      12.1    <u>Public Communications</u>. The Settling Parties shall consult concerning

23  separate communications with respect to the Settlement, and shall agree that any

24  other communications regarding the settlement will be consistent with those

25  communications. The Settling Parties and their counsel agree not to disparage each

26  other.

27      12.2    <u>Stay of Proceedings</u>. Upon the execution of this Settlement

28  Agreement, all discovery and other proceedings in the Action shall be stayed until

further order of the Court, except for proceedings that may be necessary to implement the Settlement or comply with or effectuate the terms of this Settlement Agreement.

12.3     Restoration to Status Quo Upon Termination. In the event this Settlement Agreement is not approved by the Court in its present form, or the conditions required for the Settlement Agreement to be consummated do not occur, then the Settling Parties hereto shall be restored to their respective positions as of the date that the Settlement Agreement was executed by Plaintiffs and Herbalife, the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling Parties, and to the extent permitted by law, the Settlement Agreement and associated exhibits shall not be used in any action or proceeding for any purpose and any orders entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated *nunc pro tunc*.

12.4     Best Efforts and Cooperation. The Settling Parties acknowledge that it is their intent to consummate this Settlement Agreement. Accordingly, the Settling Parties agree to cooperate to the extent necessary to effectuate and implement all terms and conditions of the Settlement Agreement and exercise their best efforts to establish the foregoing terms and conditions of the Settlement Agreement. The Settling Parties further agree to cooperate in effecting notice to members of the Settlement Class and in securing the Court's approval of the Settlement.

12.5     Authorization of Counsel. The undersigned counsel represent that they are fully authorized to execute and enter into the terms and conditions of the Settlement Agreement on behalf of their respective clients.

12.6     Entire Agreement. This Settlement Agreement (along with the exhibits thereto) constitutes the entire agreement among the Settling Parties and supersedes any prior agreements or understandings between them. All terms of this Settlement Agreement are contractual and not mere recitals and shall be construed as if drafted by all Settling Parties. The terms of this Settlement Agreement are and

shall be binding upon and inure to the benefit of each of the Settling Parties and Settlement Class Members, their agents, attorneys, employees, heirs, successors, and assigns, and upon all other persons claiming any interest in the subject matter hereto through any of the parties hereto, including any Plaintiff or Settlement Class Member.

12.7    Amendment. This Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all parties hereto or their successors in interest. Amendments and modifications may be made without notice to the Settlement Class, unless notice is required by the Court.

12.8    Execution in Counterparts. This Settlement Agreement may be executed in counterparts or by facsimile, with each counterpart or facsimile signature having the same force and effect as an original. All executed counterparts and each of them shall be deemed to be the one and the same instrument.  Counsel for the parties to this Settlement Agreement shall exchange among themselves original signed counterparts and a complete set of original executed counterparts shall be filed with the Court.

12.9    Jurisdiction. The Court shall have exclusive and continuing jurisdiction over the implementation, interpretation, and execution of the Final Judgment and this Settlement Agreement and all exhibits thereto, with respect to all parties hereto, including all Settlement Class Members.

12.10   Governing Law. The rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the laws of the State of California.

12.11   Headings. The headings and subheadings to this Settlement Agreement have been inserted for convenience only and are not to be considered when construing the provisions of this Settlement Agreement.

1    12.12 <u>Severability</u>. In the event any one or more of the provisions contained

2  in this Settlement Agreement shall for any reason be held to be invalid, illegal, or

3  unenforceable in any respect, such invalidity, illegality, or unenforceability shall not

4  affect any other provision if the Settling Parties all elect to proceed as if such

5  invalid, illegal, or unenforceable provision had never been included in the

6  Agreement.

7    IN WITNESS WHEREOF, each of the Parties hereto has caused the

8  Agreement to be executed on its behalf by its duly authorized counsel of record, all

9  as of the day set forth below.

10

11

12

Dated: October 31, 2014    BOIES, SCHILLER & FLEXNER LLP

13

14

By: _____

15

Jonathan D. Schiller (admitted *pro hac vice*)

16

jschiller@bsfllp.com
Joseph F. Kroetsch (admitted *pro hac vice*)

17

jkroetsch@bsfllp.com
575 Lexington Avenue

18

New York, NY 10022
Telephone: 212-446-2300

19

Facsimile: 212-446-2350

20

David L. Zifkin (SBN 232845)

21

dzifkin@bsfllp.com
401 Wilshire Boulevard, Suite 850

22

Santa Monica, CA 90401
Telephone: 310-752-2400

23

Facsimile: 310-752-2490

24

*Attorneys for Defendants Herbalife International of*

25

*America, Inc., Herbalife*
*International, Inc., and Herbalife Ltd.*

26

27

28

28

STIPULATION OF SETTLEMENT

1
2

Dated: October 31, 2014        BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
                                DROOKS, LINCENBERG & RHOW, P.C.

3
4
5
6
7
8
9
10

By: /s/ Mark T. Drooks[1]
    A. Howard Matz (SBN 55892)
    ahm@birdmarella.com
    Mitchell A. Kamin (SBN 202788)
    mak@birdmarella.com
    Mark T. Drooks (SBN 123561)
    mtd@birdmarella.com
    Gopi K. Panchapakesan (SBN 279586)
    gkp@birdmarella.com
    1875 Century Park East, 23rd Floor
    Los Angeles, California  90067-2561
    Telephone:  (310) 201-2100
    Facsimile:  (310) 201-2110

11
12
13

*Attorneys for Defendants Herbalife International
of America, Inc.; Herbalife International, Inc.;
and Herbalife Ltd.*

14
15

Dated: October 31, 2014        FOLEY BEZEK BEHLE & CURTIS, LLP

16
17
18
19
20
21

By: /s/ Thomas G. Foley, Jr.
    Thomas G. Foley, Jr., SBN 65812
    tfoley@foleybezek.com
    Robert A. Curtis, SBN 203870
    rcurtis@foleybezek.com
    Justin P. Karczag, Esq., SBN 223764
    jkarczag@foleybezek.com.
    15 West Carrillo Street
    Santa Barbara, CA  93101
    Telephone: (805) 962-9495

22
23
24

*Attorneys for Plaintiffs Dana Bostick, Anita
Vasko, Judi Trotter, Beverly Molnar, and Chester
Cote*

25
26
27
28

---

[1] I hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

1

2   Dated: October 31, 2014     FABIAN & CLENDENIN

3

4                                By: /s/ Scott M. Petersen[2]

5                                    Scott M. Petersen (admitted *pro hac vice*)
                                     spetersen@fabianlaw.com
                                     Jason W. Hardin (admitted *pro hac vice*)
6                                    jhardin@fabianlaw.com
                                     Philip D. Dracht (SBN 219044)
7                                    pdracht@fabianlaw.com

8                                    215 South State Street, Suite 1200
                                     Salt Lake City, UT 84151-0210
9                                    Telephone: (801) 531-8900
                                     Facsimile: (801) 596-2814

10                                   *Attorneys for Plaintiffs Dana Bostick, Anita Vasko,*
11                                   *Judi Trotter, Beverly Molnar, and Chester Cote*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   _____

27   [2] I hereby attest that all other signatories listed, and on whose behalf the filing is
28   submitted, concur in the filing's content and have authorized the filing.

30