Philip D. Dracht (SBN 219044)
 pdracht@fabianlaw.com
Scott M. Petersen (*pro hac vice*)
 spetersen@fabianlaw.com
Jason W. Hardin (*pro hac vice*)
 jhardin@fabianlaw.com
Fabian & Clendenin
215 South State Street, Suite 1200
Salt Lake City, UT 84151-0210
Telephone: (801) 531-8900

Thomas G. Foley, Jr., SBN 65812
 tfoley@foleybezek.com
Justin P, Karczag, SBN 223764
 jkarczag@foleybezek.com
Foley Bezek Behle & Curtis, LLP
15 West Carrillo Street
Santa Barbara, CA 93101
Telephone: (805) 962-9495

Attorneys for Plaintiffs Dana Bostick,
Anita Vasko, Judi Trotter,
Beverly Molnar, and Chester Cote

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA BOSTICK, et al. | Case No. 2:13-cv-02488-BRO (RZx) |
| PLAINTIFF, | **DECLARATION OF THOMAS G. FOLEY, JR. IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES** |
| vs. | |
| HERBALIFE INTERNATIONAL OF AMERICA, INC., a Nevada Corporation, HERBALIFE INTERNATIONAL, INC., a Nevada Corporation, HERBALIFE, LTD a Cayman Island Corporation, | Date: May 11, 2015<br>Time: 1:30 p.m.<br>Place: Courtroom<br>Judge: Hon. Beverly Reid O'Connell |
| DEFENDANTS. | |

DECLARATION OF THOMAS G. FOLEY, JR., SUPPORT OF JOINT MOT. FOR PRELIM.
APPROVAL OF SETTLEMENT

I, Thomas G. Foley, Jr. hereby declare as follows:

1.     I am a member in good standing of the bar of this Court, an active member of the State Bar of California, a partner in the law firm of Foley Bezek Behle & Curtis LLP ("FBBC"), and one of the attorneys of record for the Plaintiffs in the above-captioned action.

2.     I respectfully submit this declaration in support of Plaintiffs' motion for an award of attorneys' fees and expenses out of the proceeds of the settlement achieved in this class action brought against Defendants Herbalife, LTD, Herbalife International of America, Inc., and Herbalife International, Inc. (collectively, "Herbalife").

3.     By its Order dated December 2, 2014, the Court appointed Your Declarant, Thomas G. Foley, Jr. of Foley Bezek Behle & Curtis LLP, and Scott Petersen, Jason Hardin and Philip Dracht of Fabian & Clendenin as interim Plaintiffs' Class Counsel. I have acted as co-lead Counsel for Plaintiffs and have personally supervised and directed every aspect of the prosecution and resolution of this litigation on behalf of Plaintiffs and the Class.

4.     My co-Counsel Scott Petersen of Fabian & Clendenin and I jointly filed a declaration dated October 31, 2014 in support of Plaintiff's motion for preliminary approval of the settlement. (Dkt. No. 96) References to that prior Joint Declaration are made in this Supplemental Declaration as "Joint Decl."

5.     In the Joint Decl., I set forth my professional qualifications as an attorney handling complex business litigation cases, and the reasons why I believe and continue to believe that the proposed settlement is in the best interests of the Class.

6.     I have personal knowledge of the matters set forth in this declaration based on my day-to-day participation in the prosecution and settlement of this litigation, and, if called as a witness, could and would testify competently thereto.

## I.     FACTUAL BACKGROUND

7.     In this exceptionally complex multi-level marketing class action, the efforts of Plaintiffs' Counsel spanning almost two years achieved a proposed settlement. As the record in this litigation demonstrates, this was a hotly contested case, which was settled only after legal and factual issues regarding Plaintiffs' claims, and the defenses thereto, were thoroughly investigated. Indeed, Herbalife has denied, and to this day continues to deny, all liability. Herbalife has likewise asserted numerous affirmative defenses that, if successful, would spell the deathknell for this case. At all times, Counsel for Herbalife informed me that they intended to vigorously oppose any motion for class certification. Accordingly, had this case been litigated to a conclusion, there is no question that the outcome would have been uncertain, and Plaintiffs would have faced substantial litigation risks.

8.     In the face of these palpable risks, including the uncertainty of attaining class certification and keeping that certification through trial and proving liability and damages on a class-wide basis, Plaintiffs' Counsel secured a settlement that provides the Class with an upfront cash settlement comprised of a $15 million Monetary Fund, and a $2.5 million Product Repurchase Fund, for a total of $17.5 million, and significant corporate reforms that Herbalife agreed to maintain or implement for three years following the Court's final approval. I respectfully submit that a fee award equal to 30% of both the $15 million cash Monetary Fund and the $2.5 million Product Repurchase Fund, plus reimbursement of Plaintiffs' Counsels' costs and expenses is fair, reasonable and appropriate based on the recovery obtained for the Class, and is in line with numerous fee and cost awards made in other class action cases. The labor of Plaintiffs' Counsel that produced this excellent result for the Class included the following:

- Conducting extensive document discovery involving the review and analysis of over a hundred of thousands of pages of documents that included tens of thousands of pages of highly-technical data

spreadsheets. Notably, many of these documents were obtained only after numerous conferences with Defendants' Counsel as well as preparing and serving on Herbalife a comprehensive discovery motion.

- Taking the deposition of two 30(b)(6) designees put forward by Defendants, and defending the depositions of four of the five Class representatives.

- Consulting with an expert witness economist in federal trade commission matters, Hal J. Singer, Ph.D., to develop damage theories for use in both litigation and in mediation.

- Concurrently with our participation in these litigation efforts, Plaintiffs' Counsel participated in intensive settlement negotiations conducted under the supervision of the Hon. Daniel Weinstein (Ret.), which included multiple in-person meetings with Defendants' Counsel as well as numerous telephone conferences. Because of the complexity of the case, Judge Weinstein suggested that he be assisted by Cathy Yanni, an attorney who exclusively focuses her practice on mediations and arbitrations. Ms. Yanni made herself available by telephone to Counsel for both parties to attempt to move settlement negotiations forward between formal mediation sessions.

9.    On December 2, 2014, the Court entered its order granting preliminary approval of the settlement and directed notice of the settlement to be disseminated to the Class (the "Preliminary Approval Order"). *See* Doc. No. 105.

10.    Pursuant to the Preliminary Approval Order, KCC, LLC, the Court-appointed Claims Administrator, mailed and emailed direct notices to 1,533,339 potential Class members. Dkt. No. 105, ¶ 19. *The notice specifically advised potential Class members that Plaintiffs' Counsel intended to apply to the Court for an award of attorneys' fees equal to 30% of the Settlement Fund and that Plaintiffs' Counsel would seek reimbursement of costs and expenses in an amount*

*approximately $200,000.* Dkt. No. 95-1 (Proposed Class Notice), Dkt. 95-2 (Proposed Summary Notice). Attached as Exhibit A are email notices in English and Spanish that were sent to class members with known email addresses. Attached as Exhibit B are internet notices in English and Spanish. Attached as Exhbit C are notices (in English and Spanish) that were sent out to class members without a working email address. Attached as Exhibit D are claim forms in English and Spanish; *see also* Dkt. No. 95-1 (Proposed Class Notice), Dkt. 95-2 (Proposed Summary Notice)

11.    The deadline to request to be excluded from the Class and the deadline to file objections to the Settlement and the fees and expense application is March 28, 2015. Dkt No. 105, ¶44 (Order). To date, no objections have been filed with respect to any aspect of the settlement, including the request for an award of fees and reimbursement of expenses.

12.    FBBC requires its attorneys and professional support staff to prepare daily time billing records detailing time expended on cases in minimum time increments of one-tenth of an hour. Those time records are compiled monthly by FBBC's billing department, and a summary of all time expended on all cases prepared on a monthly basis. As of March 5, 2015, FBBC attorneys and professional support staff expended 1,783.65 hours. According to the records of my firm, FBBC, and the declaration of Scott Petersen of Fabian & Clendenin, filed concurrently herewith, Plaintiffs' Counsel performed a total of 4,696.1 hours of work in the prosecuting and settlement of this litigation, which resulted in a total attorneys' fee lodestar of $3,076,403.50. Thus, the requested fee award amounts to a multiplier of 1.70 on Plaintiffs' Counsels' reported time. *See* Supplemental Decl. of Scott Petersen dated March 10, 2015 filed concurrently herewith.

## II.    PROCEDURAL HISTORY OF THE LITIGATION

13.    On April 8, 2013, Plaintiff Dana Bostick, on behalf of himself and a putative Class of "others similarly situated," filed this Action naming as Defendants

DECLARATION OF THOMAS G. FOLEY, JR., SUPPORT OF JOINT MOT. FOR PRELIM. APPROVAL OF SETTLEMENT

1    Herbalife International of America, Inc.; Herbalife International, Inc.; and Herbalife
2    Ltd. The Complaint alleged: (1) violations of California's endless chain scheme law
3    under California Penal Code Section 327 and California Civil Code Section 1689.2;
4    (2) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO")
5    (18 U.S.C. §§ 1962(a), (c), and (d)); (3) unfair and deceptive business practices
6    under California Business and Professions Code Section 17200, *et seq.*; and (4) false
7    advertising under California Business and Professions Code Section 17500, *et seq.*
8    Dkt No. 1.

9         14.    On May 30, 2013, Defendants moved to dismiss the complaint on
10   several grounds. Dkt. No. 22. On October 11, 2013, the Court denied Defendants'
11   motion to dismiss. Dkt. No. 40. Defendants answered the complaint on October 29,
12   2014. Dkt. No. 41.

13        15.    The parties exchanged initial disclosures on November 27, 2013. On
14   December 3, 2013, Plaintiffs' Counsel served a Request for Production of
15   Documents with 208 separate requests for production. On December 5, 2013, the
16   Court held a scheduling conference where it ordered that discovery be bifurcated
17   between "class" and "merits" discovery. Docket No. 51. On January 23, 2014,
18   Herbalife responded to the requests, lodging numerous objections and refusing to
19   produce any documents. (Joint Declaration of Thomas G. Foley and Scott M.
20   Petersen filed in Support of the Motion for Preliminary Approval, ¶ 15, Dkt. No. 96
21   ("Joint Decl.").

22        16.    On February 4, 2014, Plaintiffs' Counsel served a meet and confer
23   letter pursuant to L.R. 37-1 regarding the deficient discovery responses. Unable to
24   resolve the discovery dispute through meeting and conferring, on April 7, 2014,
25   Plaintiffs' Counsel served Herbalife with a 94-page [Joint] Stipulation on a Motion
26   to Compel as to the certain requests for production. Following service of that
27   stipulation, Herbalife agreed to meet and confer again with Plaintiffs' Counsel to
28   review their discovery responses, which the parties did the week of April 14, 2014.

1    At that meeting, Plaintiffs' Counsel agreed to narrow certain requests and Herbalife
2    agreed to produce responsive documents. Because of Herbalife's agreement to
3    produce documents relevant to class certification issues in this meet and confer,
4    Plaintiffs' Counsel did not move forward with the motion at that time. Joint Decl.
5    ¶16. The Court entered a stipulated Order Re Confidential Documents on April 23,
6    2014. Dkt. No. 67.

7       17.    After the Court's Order denying the motion to dismiss, Herbalife
8    indicated a willingness to engage in settlement negotiations. Plaintiffs' Counsel
9    responded that in order to engage in meaningful settlement negotiations, it would be
10   necessary for Herbalife to produce merits-related documents so that Counsel could
11   review them and otherwise take them into account in formulating settlement
12   positions.

13      18.    After the Order Re Confidential Documents was entered, Herbalife has
14   produced over 18,500 documents (totaling approximately 148,000 pages) for both
15   mediation purposes and in response to requests for production in litigation. Many of
16   these documents were produced in their native form, such as Excel spreadsheets and
17   PowerPoint presentations. In preparation for briefing class certification, Plaintiffs'
18   Counsel reviewed these documents and databases. Joint Decl. ¶17. A substantial
19   portion of these documents related to the merits of Plaintiffs' claims, well beyond
20   the limitation imposed by the Court to bifurcate class and merits discovery in the
21   scheduling order.

22      19.    As to the production of Herbalife's proprietary data files regarding its
23   U.S. distributors, this production required Plaintiffs' counsel to set up and
24   administer a secure database, which Plaintiffs' counsel did through the retention of a
25   database administration expert. Once that was established, Plaintiffs had, at their
26   keyboards, the ability to generate reports and cull the database for corroborating data
27   relating to distributor identifications, distributor retention, distributor purchases,
28   distributor volume points, and royalty rewards paid by distributors. The production

1    of this amount of data required Plaintiffs' cousel to "dive deep" and conduct a

2    sophisticated "data review" of a type infrequently done in litigation. Typically in

3    litigation it is my experience that defendants produce "end reports"; here Plaintiffs

4    counsel had the underlying data and were required to determine how to utlize and

5    present such data at trial, if necessary.

6         20.    Both parties agreed that early settlement negotiations would not hold

7    up pre-trial discovery because of the deadlines in the Court's Scheduling Order. For

8    that reason, the case moved forward on two separate tracts, a litigation track and a

9    mediation track. Herbalife retained a separate law firm, Morrison & Foerster, to

10   initially represent Defendants in settlement negotiations, together with in house

11   Counsel from Herbalife and one partner from Boies Schiller. Maintaining two

12   separate tracts in the litigation required Plaintiffs' Counsel to devote substantial time

13   to both the litigation tract and the separate settlement tract. Because of that time

14   commitment, both myself, personally, and other attorneys at FBBC were required to

15   spend less time on other matters in the firm, to focus promptly on analyzing the

16   thousands of pages of merits-related internal documents so that we would be

17   prepared to participate in meaningful settlement negotiations.

18        21.    In order to coordinate the efforts of the attorneys at FBBC and Fabian

19   & Clendenin in simultaneously litigating the case and earnestly conducting

20   settlement negotiations, and avoiding duplication of efforts, senior trial counsel from

21   both firms attended weekly telephonic meetings to discuss strategy, allocate work

22   between the two firms, and coordinate ongoing litigation and settlement efforts.

23        22.    In entering into settlement negotiations, Plaintiffs' Counsel closely

24   followed news reports regarding the initiation of investigations of Herbalife by the

25   U. S. Securities & Exchange Commission ("SEC"), the Federal Trade Commission

26   ("FTC") and the Attorneys General of New York and Illinois. At all times Plaintiffs'

27   Counsel insisted that nothing in a final settlement agreement would preclude the

28   SEC, FTC or State Attorneys General from initiating any administrative actions that

DECLARATION OF THOMAS G. FOLEY, JR., SUPPORT OF JOINT MOT. FOR PRELIM.
APPROVAL OF SETTLEMENT

1    they deemed appropriate.

2         23.    Plaintiffs' Counsel also insisted that if class members want to pursue

3    actions against third parties who sold them leads, training, or other tools, they would

4    not be prevented from doing so under the terms of the release.

5         24.    On or about June of 2014, Plaintiffs and Defendants engaged the Hon.

6    Daniel Weinstein, a well-respected former judge of the San Francisco County

7    Superior Court, and highly-experienced settlement mediator, to assist them in

8    exploring a potential negotiated resolution of Plaintiffs' claims asserted against

9    Defendants. To facilitate discussions between formal mediation sessions, at Judge

10   Weinstein's request, the parties agreed to have attorney Cathy Yanni, an

11   experienced mediator serve as a co-mediator with Judge Weinstein. In connection

12   with the mediation, the parties exchanged mediation statements and updates

13   regarding the status of the action.

14        25.    Following five separate and lengthy mediation sessions with Judge

15   Weinstein and Ms. Yanni, conducted in person and by telephone, Plaintiffs and

16   Defendants entered into a binding settlement agreement to settle the case for a one-

17   time payment of $15 million in cash, and $2.5 million in product return. A copy of

18   that settlement agreement was presented to the Court for review and approval in

19   connection with the motion for preliminary approval of the settlement. (Dkt. No.

20   90.)

21        26.    As explained above, prior to agreeing to settle the action, Plaintiffs,

22   through Plaintiffs' Counsel, conducted a thorough investigation of the claims,

23   defenses, and underlying events and transactions that are the subject of the Action.

24   This investigation and Plaintiffs' Counsels' efforts included, among other things: (i)

25   review and analysis of the evidence and applicable law, including the review and

26   analysis of hundreds of thousands of pages of documents produced by Defendants

27   and third parties; (ii) consultation with an expert forensic economist retained by

28   Plaintiffs' Counsel; (iii) taking two FRCP 30(b)(6) depositions of designees

1    identified by Herbalife; and (iv) preparing for and defending the depositions of four

2    of the Class representatives.

3    ## III.   PRELIMINARY APPROVAL OF THE SETTLEMENT

4         27.    As noted above, on December 2, 2014, the Court granted preliminary

5    approval of the settlement. *See* Doc. No. 105. The Court's Preliminary Approval

6    Order: (1) found that the settlement was sufficiently fair, reasonable, and adequate

7    as to warrant providing notice of the settlement to Class members; and (2) appointed

8    KCC to serve as the Claims Administrator. *Id.*

9         28.    The Court set a final settlement approval hearing to be held on May

10   11, 2015, at 1:30 p.m. (the "Settlement Fairness Hearing"). *See* Doc. No. 105.

11   ## IV.   NOTICE OF SETTLEMENT

12        29.    Pursuant to the Preliminary Approval Order, Plaintiffs' Counsel,

13   through the Claims Administrator, implemented a comprehensive notice program.

14   The Herbalife Defendants had maintained a comprehensive database containing the

15   names, email addresses and mailing addresses of potential Class members. That

16   database contained Class members' designation provided to Herbalife as to whether

17   they wanted materials sent to them in English or Spanish.

18        30.    Because email addresses were available for many Class members, the

19   Class members' identification and email addresses were provided by Herbalife to

20   KCC, and notice was given to the members of the Class by email, and if the emails

21   were returned as undeliverable, a follow-up letter was sent to the Class members'

22   last known address by U.S mail. If the Post Office returned the letter, KCC sought to

23   determine the Class Members' new mailing address, and mailed a follow up post

24   card to Class Members informing them of the proposed settlement, and providing

25   information about the website established by the Claims Administrator and how to

26   reach Class Counsel. If a Class member had previously notified Herbalife that they

27   wanted written materials sent to them in Spanish, KCC sent those Class Members'

28   notices in Spanish.

DECLARATION OF THOMAS G. FOLEY, JR., SUPPORT OF JOINT MOT. FOR PRELIM.
APPROVAL OF SETTLEMENT

31. The Claims Administrator emailed or mailed 1,533,399 Notices approved by the Court to potential Class members. The Notice contained, *inter alia*, the following information useful to evaluate the benefits of the settlement to the Class: (1) the amount and nature of the Settlement Fund; (2) the amount of the Product Return Fund, and instructions on how to return unopened Herbalife products to Herbalife for a full refund; (3) the proposed Plan of Allocation; (4) that Plaintiffs' Counsel would apply for an award of attorneys' fees in an amount equal to 30% of the total of the $15 million Monetary Fund and the $2.5 million Product Return Fund, as well as reimbursement of expenses incurred prosecuting this litigation in an amount of approximately $200,000.00; (5) that any Class member could object to the settlement or fee and expense application, or both, or seek exclusion from the Class; (6) a discussion of the background of the settlement; (7) that the deadline for requesting exclusion from the settlement is March 28, 2015; (8) that objections to the settlement or the fee and expense application must be filed no later than March 28, 2015; (9) the date, time and location of the Settlement Fairness Hearing and that Class members have the right to attend and request to be heard; and (10) that the deadline for filing Proofs of Claim was February 3, 2015.

32. Additionally, beginning December 30, 2014, the settlement papers were posted on the Claims Administrator's website established for the administration of this settlement.

33. In addition, the Claims Administrator established a toll-free telephone number for Class Members to call and receive answers to any questions that they may have concerning, among other things, the terms of the settlement and the process for submitting a claim to share in the Settlement Fund.

34. The Notice informed Class Members that if they had questions about the proposed settlement they could call Plaintiffs' Counsel, and provided telephone numbers to reach Class Counsel. Class Counsel have responded to numerous telephone calls from Class members who spoke both English and Spanish, and

DECLARATION OF THOMAS G. FOLEY, JR., SUPPORT OF JOINT MOT. FOR PRELIM. APPROVAL OF SETTLEMENT

1    explained the terms of the settlement, and what is necessary to file a claim.

2    　　　35.　　Class Counsel have continued to assist in the administration of filing

3    of claims as to those individuals who, through no fault of their own because the U.S.

4    mailing address  provided to KCC by Herbalife was not updated, received notice at

5    or after the time to file the claims. Class Counsel negotiated with Counsel for

6    Herbalife to extend the claims period for those individuals provided there was a

7    good faith basis for the class members' failure to timely file.

8    　　　36.　　As of the time of this filing, no Class member has objected to the

9    settlement or the request for attorney's fees and expenses.

10   **V.　　THE FAIRNESS AND REASONABLENESS OF THE**

11   **SETTLEMENT**

12   　　　37.　　Plaintiffs' Counsel firmly believe – based on their investigation and

13   discovery – that Plaintiffs' claims against Defendants have considerable merit, and

14   that Plaintiffs ultimately could prevail at trial. However, Plaintiffs' Counsel also

15   recognize that establishing liability and Class-wide damages would by no means be

16   guaranteed.

17   　　　38.　　In light of the various risks in this litigation and based on their analysis

18   and evaluation of the strengths and weaknesses of the claims asserted, the evidence

19   developed through their investigation and discovery, and the damages that might be

20   proven at trial, it is my considered-professional opinion that the settlement is an

21   excellent result for the Class, is clearly fair, reasonable and adequate to the Class.

22   **VI.　　PLAINTIFFS' COUNSELS' REQUEST FOR ATTORNEYS'**

23   **FEES AND EXPENSES**

24   　　　39.　　As compensation for their efforts, Plaintiffs' Counsel seek an award of

25   attorneys' fees in the amount of 30% of the Settlement Fund and the Product Return

26   Fund, and reimbursement of $212,862.64 in unreimbursed costs and expenses

27   reasonably paid or incurred by Plaintiffs' Counsel in the prosecution and settlement

28   of the litigation.

DECLARATION OF THOMAS G. FOLEY, JR., SUPPORT OF JOINT MOT. FOR PRELIM.
APPROVAL OF SETTLEMENT

40.     The fee request is within the range of fees awarded by courts in the Ninth Circuit, as further detailed and discussed in Plaintiffs' Memorandum in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Expenses, filed concurrently herewith.

### A.     An Excellent Result Was Achieved.

41.     The settlement reached in this case was a significant success for the Class, both procedurally and substantively.

42.     Plaintiffs' Counsel were opposed by a wealthy corporate adversary, represented by highly skilled lawyers at two leading law firms, Boies, Schiller & Flexner LLP and Bird Marella, Boxer, Wolpert, Nessim, Drooks, Lichenberg & Rhow. Achieving a settlement was an incredibly difficult task given the backdrop of publicity surrounding Herbalife and the desire of a defendant to defend itself at any cost and vindicate itself in a court of law.

43.     In addition to the $15 million Monetary Fund and the $2.5 million Product Return Fund, there are significant corporate reforms implemented by Herbalife based on this litigation. Many of the claims for monetary losses by potential Class members relate not to purchases of product directly from Herbalife, but money those Class members invested with third parties to purchase purported sales "leads," for training classes put on by third parties, and for product purchased not from Herbalife directly, but, instead from third parties who established "downlines" which they encouraged prospects to join. Class Counsel, pre-litigation, investigated the business practices of those third parties, but ultimately concluded that it would be very difficult to bring Class claims against these third parties because of the many different representations they made to prospects, establishing reliance by Class members on those different representations and failures to disclose, and concluded that individual actions would be more appropriate to seek recovery from those third parties. The proposed release agreement does not preclude Class members from pursuing claims on either an individual or class basis against

1    these third parties.

2         44.   As an integral part of Plaintiffs' settlement strategy, we insisted that

3    Herbalife implement corporate reforms that would benefit both members who

4    continue as Herbalife distributors, and new prospects who are solicited by third

5    parties to join their "downlines." In the Joint Declaration dated October 31, 2014,

6    Dkt. No. 96, at paragraphs 35 through 41, there is a detailed description of those

7    thirteen specific corporate reforms, which are based, in part, on the filing of this

8    litigation. The Stipulation for Settlement (Dkt. No. 95) at section 5.1.1 requires

9    Herbalife to maintain those corporate reforms for a minimum of three years after the

10   date this Court enters its final Order approving the settlement. Section 5.1.2

11   expressly states that "at least in part" the corporate reforms set forth in subsections

12   5.1.3 through 5.1.15 are a result of the filing of this lawsuit by Class Counsel.

13        45.   While the parties agreed on certain principal terms of the settlement as

14   of August 15, 2014, one of the areas left undone was the nature and extent of

15   corporate reform. For the three months, the parties negotiated over implementing the

16   settlement and the nature and extent of the corporate reform. During this period,

17   there were several instances where Class Counsel threatened to leave the bargaining

18   table and resume litigation in order to obtain the concessions represented in the

19   Stipulation of Settlement. During these times, Class Counsel focused their attention

20   on briefing class certification in the event they needed to file their motion.

21        46.   Class Counsel is not requesting any additional attorneys' fees to be

22   awarded for inducing Herbalife to make those 13 specific corporate reforms, or for

23   monitoring Herbalife's conduct for three years post-settlement to confirm that

24   Herbalife is maintaining those corporate reforms. However, the fact that Class

25   Counsel was able to obtain those meaningful corporate reforms is additional support

26   for the request that the Court award a thirty percent (30%) contingent fee based on

27   the combined $17.5 million potential monetary recovery to the Class.

28        47.   If Class Members chose not to avail themselves of the opportunity to

1    return unopened Herbalife products and exhaust the $2.5 million Product Return
2    Fund, it is perhaps circumstantial evidence to support Herbalife's steadfast legal
3    argument that the majority of its distributors join Herbalife to obtain discounts on
4    the products that they self-consume.

5         48.    Given the inherent risks associated with any trial, let alone a
6    complicated and intensely disputed trial such as would have taken place in this
7    action, the settlement may well exceed the relief the Class could receive as a result
8    of a favorable verdict at trial, let alone an unsuccessful one.

9         49.    The results achieved in this legally and factually-complex case
10   strongly support the requested fee thirty percent (30%) contingent fee and
11   reimbursement of expenses award.

12             **B.    Plaintiffs' Counsel Assumed Substantial Litigation Risks**

13        50.    Plaintiffs' Counsel undertook representation of Plaintiffs on a wholly-
14   contingent basis. Plaintiffs' Counsel knew from the outset that they would likely
15   expend a substantial amount of time and money prosecuting this action, yet receive
16   no compensation if the litigation proved ultimately unsuccessful. Therefore, it is
17   respectfully asserted that the contingent nature of payment of fees and expenses and
18   the risks and complexity of the litigation should be given substantial weight by the
19   Court in considering this application for attorneys' fees and reimbursement of
20   expenses.

21        51.    Prior to and during this action, certain individuals and hedge funds
22   took a very aggressive "short" position on Herbalife's stock, and repeatedly issued
23   press releases to support their positions. The goal of those shortsellers was to drive
24   Herbalife out of business for their own gain. Driving Herbalife out of business is
25   not, in my judgment, in the best interest of the Class as there would be no monetary
26   recovery to the Class, and no opportunity to implement corporate reform.
27   Recognizing a conflict of interest between the billionaires battling over share price
28   and the class of distributors Plaintiffs' counsel represented, Plaintiffs' counsel

DECLARATION OF THOMAS G. FOLEY, JR., SUPPORT OF JOINT MOT. FOR PRELIM.
APPROVAL OF SETTLEMENT

studiously avoided any conflict that could arise from receiving any assistance, particularly financial assistance from those interested parties. I anticipate that objections to the proposed settlement will be filed by attorneys affilliaed with, and potentially funded by, the short sellers. Throughout this litigation and in settlement of this case, Plaintiffs' counsel has sought to represent Herbalife distributors and members who were injured, not aid billionaires fighting over share price.

52.     This case involved numerous sophisticated factual, legal and damages issues.

53.     The case could have been lost on any of a number of legal issues, in which case the Class would not have received any recovery and Plaintiffs' Counsel would not have received any fees at all after expending millions of dollars in  time and $212,862.64 in costs and expenses. Defendants repeatedly indicated that they would be vigerously opposing any motion for class certification and would contest Plaintiffs on every procedural, factual, and legal ground at every step of the litigation.

54.     Finally, even assuming that Plaintiffs were successful in what would have been a lengthy and unpredictable trial, Plaintiffs' Counsel had to consider the risk of difficulty of collection (if Herbalife was found to be in violation of California's Endless Chain law, or put out of business by the efforts of the shortsellers) and that the case would be subject to a lengthy appeal and years of delay, all of which would have been to the detriment of the Class.

### C.     This Case Required Skill and High Quality Work

55.     Plaintiffs' Counsel achieved the significant settlement directly because of the efforts of experienced, skilled attorneys who know how to manage and direct a complicated nationwide class action. This is not a case where Plaintiffs were able to "piggy back" or "bootstrap" on the work of a government agency or others. The SEC announced it was pursuing a securities investigation into Herbalife on January 9, 2013. (New York Post). On April 8, 2013, Plaintiffs filed their original Complaint

charging Herbalife with being an "endless chain" scheme in violation of California's Penal Code §327; there were no allegations in that Complaint that Herbalife was violating any securities laws. The FTC announced its investigation into Herbalife on March 12, 2014. (Bloomberg Business Wire). The Attorney Generals of New York and Illinois announced their own investigations of Herbalife on April 14 and April 17, 2014 respectively. (New York Post and Bloomberg News Wire.) Plaintiffs' Counsel investigated and filed their own case against Herbalife for being an endless chain scheme, sometimes referred to as a "pyramid scheme," approximately one year before the FTC and the New York and Illinois Attorneys General announced their investigations into Herbalife's business practices, which entitles their efforts to significantly greater weight.

56.     If the SEC, the FTC or the New York and Illinois Attorneys General commence administrative or other actions, Class members are not precluded by the terms of the release from participating in any future recoveries by regulatory authorities or the States Attorneys General. (Stipulation for Settlement, Dkt. No. 95, section 8.1.)

57.     As of the date of the filing of this motion for attorneys' fees and costs, to the best of my knowledge, no other class actions have been filed against Herbalife on behalf of Herbalife distributors based on Herbalife allegedly being a pyramid scheme or endless chain scheme. Similarly, the attorneys who have attacked the proposed settlement in the press because it does not compensate Class members for Herbalife product purchased by from their "up-lines" rather than directly from Herbalife, or because the proposed settlement does not provide recovery for expenses paid by Class members to third parties for purported "sales leads", sales training and setting up individual websites to market Herbalife products, have not filed any class actions against those third parties to obtain monetary recoveries for the benefit of Class members.

58.     Class Counsel and counsel for Defendants have engaged in several

substantive meet and confer discussion with Attorneys General for numerous states to confirm that the proposed settlement will not interfere with ongoing investigations by several state Attorneys General, or release claims which could be prosecuted by Attorneys General. The fact that as of the date of the filing of this motion no state Attorney General has filed an objection is not in any way approval by any state Attorney General of the proposed settlement, or an indication that objections may not be filed in the future. However, the interest of numerous State Attorneys General in the terms of the proposed settlement is indicative of the high level of lawyering required by experienced Class Counsel to address those concerns.

**D.    Plaintiffs' Counsel Handled This Case Entirely On a Contingent Fee Basis**

59.    Here, with full knowledge that it would be at least several years before they would receive any compensation for their efforts, and that they would not receive anything at all if the case was lost, Plaintiffs' Counsel undertook this representation, invested millions of dollars of attorney time, and advanced $212,862.64 in expenses. Undertaking this significant complex litigation compelled FBBC to forgo participating in other legal work available to the Firm. The fully contingent nature of this representation is a factor that strongly supports approval of the requested fee.

**E.    The Reaction of the Class to the Requested Fee**

60.    Over 1,500,000 copies of the Notice Packet have been emailed and mailed to potential Class members. The Notice advised Class members that Plaintiffs' Counsel would apply for an award of attorneys' fees from the Monetary Fund and the Product Return Fund in an amount equal to 30% of the amount of the combined funds. As of the time of this filing, no objection to the settlement or request for attorneys' fees expenses has been received.

**F.     The Fee Request Is Also Justified Under the Lodestar/Multiplier Cross-Check Approach**

61.    The two firms representing Plaintiffs' entered into a fee and expense sharing agreement, which is embodied in the retainer agreements with the Plaintiffs. Pursuant to that agreement, fees and expenses were expected to be shared equally between the firms, subject to adjustments depending upon the circumstances set out further in their agreement. The allocation of whatever fees and expenses are awarded by the Court has not yet been determined. Should a dispute arise between Plaintiffs' Counsel in this regard, the matter may be submitted to arbitration as provided in the agreement. The foregoing agreement will be made available for *in camera* inspection by the Court upon request of the Court.

62.    The schedule, attached as Exhibit E, is a summary indicating the amount of time spent by the partners, attorneys and other professional support staff of the FBBC law firm who were involved in this litigation. The schedule was prepared from contemporaneous time records regularly prepared and maintained by my firm.

63.    The hourly rates for the partners, attorneys and professional support staff in my firm included in Exhibit E are the same as the usual customary hourly rates charged for their services in cases where my firm is engaged to be paid by the hour. I have been engaged in the practice of law for 40 years, and my current hourly billing rate paid by clients at my firm is ranges from $600.00-$695.00 per hour. FBBC maintains an hourly practice in addition to contingency work, meaning that by representing the Class, attorneys at FBBC were unable to bill and collect on a monthly basis for their time.

64.    The total number of hours expended by my firm in this litigation from inception through March 5, 2015, not including any time spent on Plaintiffs' motion for an award of attorneys' fees and expenses, is 1,783.65 hours. The total lodestar for my firm is $784,023.00 Should the Court request further supporting documentation

1    for these amounts, my firm will, of course, provide it.

2          65.    As detailed in Exhibit F, my firm has incurred at total of $108,800.64

3    in unreimbursed expenses in connection with the prosecution of this litigation.

4          66.    The expenses incurred in this action by FBBC are reflected on the

5    books and records of my firm. Because of the large volume of documents produced

6    by Herbalife in this litigation, many of which were produced in electronic format, it

7    was necessary for FBBC and its co-Counsel Fabian & Clendenin to retain the

8    services of a vendor to establish a secure website where all documents produced

9    were available and were searchable electronically. By utilizing this vendor, Assist

10   Legal, both FBBC and its co-Counsel Fabian & Clendenin were able to access all

11   the documents remotely 24 hours a day, seven days a week. FBBC's books and

12   records are prepared from expense vouchers, credit card receipts, check records and

13   other materials that represent an accurate recordation of the expenses incurred.

14   Should the Court request further supporting documentation for these amounts of

15   costs requested to be reimbursed, FBBC is prepared to provide it.

16         67.    According to the individual declarations of Thomas G. Foley, Jr. of

17   FBBC and Scott Petersen of Fabian & Clendenin, Plaintiffs' Counsels have

18   collectively dedicated 6,479.9 hours to prosecuting this litigation. Applying

19   Plaintiffs' Counsels' normal current hourly rates, which are consistent with those

20   charged by similarly-skilled firms in their respective geographic areas, to the hours

21   expended in this action yields a total lodestar of $3,076,403.50. Dividing just the

22   lodestar into the $5,250,000 million requested fee award yields a multiplier of 1.70.

23   Plaintiffs' Counsels' firms also have total combined unreimbursed expenses of

24   $212,862.64. These substantial hours and expenses reflect Plaintiffs' Counsels'

25   commitment to the aggressive prosecution of this litigation.

26   / / /

27   / / /

28

DECLARATION OF THOMAS G. FOLEY, JR., SUPPORT OF JOINT MOT. FOR PRELIM.
APPROVAL OF SETTLEMENT

## VII.   PLAINTIFFS' COUNSEL REQUEST FOR REIMBURSEMENT OF EXPENSES

68.     FBBC requests reimbursement of $108,800.64 in expenses that it incurred. The expenses requested are reflected on the business records of FBBC. The expenses noted are, in my opinion, reasonable and were incurred for items necessary to the prosecution of the litigation. The expenses were incurred largely in conjunction with discovery, the services of an expert consultant in forensic economics, mediation and related travel. Additionally, because the expenses were incurred for the benefit of the Class and are of a type generally reimbursed in the marketplace, they should be reimbursed from the common fund prior to the payment of attorneys' fees, in the same manner as an individual client would reimburse Counsels' expenses.

## VIII.  CONCLUSION

69.     Plaintiffs' Counsel respectfully submit that, based on the facts and circumstances of this litigation, the principles of law applicable to their motion, the procedural posture of this litigation, and the risks of continued litigation against the Defendants, the settlements represent an extremely favorable result for the Class and fully justify the requested fees and expenses.

70.     Based on all of these factors, as well as Plaintiffs' Counsels' extensive experience in litigating securities class actions, Plaintiffs' Counsel believe that the Settlement, which provides an excellent recovery to the Class, is far more beneficial than continuing to prosecute the litigation towards an uncertain outcome.

71.     Plaintiffs' Counsel respectfully submit that the Court should grant their application for attorneys' fees in the amount of 30% of the Monetary Fund and the Product Return Fund and, in addition, grant reimbursement of $212,862.64 in reasonable expenses collectively incurred by Plaintiffs' Counsel in prosecuting this litigation.

DECLARATION OF THOMAS G. FOLEY, JR., SUPPORT OF JOINT MOT. FOR PRELIM. APPROVAL OF SETTLEMENT

1    I declare under penalty of perjury under the laws of the United States of

2 America that the foregoing is true and correct.

3    Executed this 10th day of March, 2015, at Santa Barbara, California.

4

5                                   _/s/Thomas G. Foley, Jr._____
                                    Thomas G. Foley, Jr.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF THOMAS G. FOLEY, JR., SUPPORT OF JOINT MOT. FOR PRELIM.
APPROVAL OF SETTLEMENT