A. Howard Matz, SBN 55892
ahm@birdmarella.com
Mitchell A. Kamin, SBN 202788
mak@birdmarella.com
Mark T. Drooks, SBN 123561
mtd@birdmarella.com
Gopi K. Panchapakesan, SBN 279586
gkp@birdmarella.com
Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Jonathan D. Schiller (*pro hac vice*)
jschiller@bsfllp.com
Joseph F. Kroetsch (*pro hac vice*)
jkroetsch@bsfllp.com
Boies, Schiller & Flexner LLP
575 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

David L. Zifkin, SBN 232845
dzifkin@bsfllp.com
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
Telephone: (310) 752-2400
Facsimile: (310) 752-2490

Attorneys for Defendants Herbalife International of America, Inc.; Herbalife International, Inc.; and Herbalife Ltd.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

DANA BOSTICK, a California resident; ANITA VASKO, a Pennsylvania resident; JUDI TROTTER, a Washington resident; BEVERLY MOLNAR, a Pennsylvania resident; CHESTER COTE, a Vermont resident, on behalf of themselves and all others similarly situated, and on behalf of the general public,

Plaintiffs,

vs.

HERBALIFE INTERNATIONAL OF AMERICA, INC., a Nevada Corporation; HERBALIFE INTERNATIONAL, INC., a Nevada corporation; and HERBALIFE LTD., a Cayman Island Corporation,

Defendants.

CASE NO. 2:13-cv-02488-BRO-RZ

**DEFENDANTS' NOTICE OF JOINDER AND JOINDER IN MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**;

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; and**

**DECLARATION OF MARK T. DROOKS**

Date: May 11, 2015
Time: 1:30 p.m.
Crtrm.: 14

Assigned to Hon. Beverly Reid O'Connell

**TO THE CLERK OF THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on May 11, 2015, at 1:30 p.m., or as soon thereafter as this matter may be heard in the above-entitled Court, before the Honorable Beverly Reid O'Connell, United States District Judge for the Central District of California, Western Division, in Courtroom 14, Defendants Herbalife International of America, Inc.; Herbalife International, Inc.; and Herbalife Ltd. (collectively, "Herbalife") will and hereby do join in Plaintiffs' Motion for Final Approval of Class Action Settlement (Dkt. 129, 130).

DATED: April 13, 2015

A. Howard Matz
Mark T. Drooks
Mitchell A. Kamin
Gopi K. Panchapakesan
Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C.

By: */s/ Mark. T. Drooks*
Mark T. Drooks
Attorneys for Defendants Herbalife International of America, Inc.; Herbalife International, Inc.; and Herbalife Ltd.

DATED: April 13, 2015

Jonathan D. Schiller
David L. Zifkin
Joseph F. Kroetsch
BOIES, SCHILLER & FLEXNER LLP.

By: */s/ Jonathan D. Schiller*
Jonathan D. Schiller
Attorneys for Defendants Herbalife International of America, Inc.; Herbalife International, Inc.; and Herbalife Ltd.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1
II. ARGUMENT .......... 3
A. The Monetary Relief Provided by the Settlement is Adequate. .......... 3
1. The rationale behind the monetary relief portion of the settlement is reasonable. .......... 3
2. Plaintiffs were not likely to recover consequential damages. .......... 6
3. Plaintiffs' "shipping and handling" claim lacks merit. .......... 7
4. The experience of the individual objectors confirms the fairness of the settlement. .......... 7
B. The Objections to the Corporate Policy Changes are Meritless. .......... 9
C. The Scope of the Release is Appropriate. .......... 11
III. CONCLUSION .......... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Comcast Corp. v. Behrend*,
133 S.Ct. 1426 (2013) ........................................................................ 7, 8

*Estrada v. RPS, Inc.*,
125 Cal. App. 4th 976 (Cal. Ct. App. 2005)........................................................ 11

*Gonzales v. Countrywide Homes Loans, Inc.*,
2004 WL 1904280 (Cal. Ct. Ap. Aug. 26, 2004) ................................................ 11

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) (Baird, J.) ................................................ 3, 5, 6

*Rebney v. Wells Fargo Bank*,
220 Cal. App. 3d 1117 (Cal. Ct. App. 1990)........................................................ 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The settlement before the Court for final approval directly and effectively addresses the core claims in Plaintiffs' First Amended Complaint ("FAC"). The FAC contends that putative class members purchased Herbalife products they did not want and could not sell, and lost money as a result. The Stipulation of Settlement ("Settlement") permits all Herbalife members to return any products purchased during the Class Period—no questions asked—for a 100% refund, including return shipping[1] ("product return claims"). This provision thus provides the rescission relief Plaintiffs seek in the FAC. Moreover, the Settlement compensates all members for their business losses, even those who do not have products to return, and provides a monetary award of the lesser of 100% of a Class Member's claimed loss or 75%[2] of his or her total purchases during the Class Period ("business opportunity claims").

The settlement fund has proven sufficient to pay for all claims made following a direct notice process. Accordingly, neither the business opportunity cash awards nor the product return payments will be subject to *pro rata* diminution, resulting in full settlement payments to all claimants who have submitted valid claims.[3] Final approval of this settlement is in the best interests of the class, as

---

[1] Because Herbalife's buyback policy permits its members to return products within a year of purchase, claimants who may still do so under this longstanding policy need not and cannot seek to return such products under the Settlement. Dkt. 95 at 9-10 (Settlement).

[2] Plaintiffs' unopposed motion to seek an increase of this percentage from 50% to 75% is pending. Dkt. 125.

[3] The average award for business opportunity claimants (assuming a payout of 75%) is about $1,120 (Declaration of Eric Robin ["Robin Decl."] at 21, attached to Plaintiffs' Motion for Final Approval of Class Action Settlement [Dkt. 130-5]).

evidenced by the claims administrator's details of payouts to claimants:

- Every claimant who filed a business opportunity claim and purchased more than $750 of product from Herbalife during the class period will receive the lesser of 100% of his or her claimed loss or 75% of his or her total purchases during the Class Period (Robin Decl. at ¶ 21);
- Individual awards for business opportunity claims include many five figure awards, with the highest (assuming a payout of 75%) at $98,588.36 (*Id.*);
- More than 1,600 claimants will receive cash awards greater than $1,000, and 324 will receive more than $5,000 (*Id.*);
- Even class members who could not demonstrate any loss and who purchased less than $750 worth of products but nevertheless submitted a business opportunity claim will receive at least $20 (*Id.*); and
- In addition to business opportunity claims, product return claimants will receive up to the full amount paid for whatever products are ultimately returned, regardless of whether they purchased the products from Herbalife.

Not surprisingly, only one (unwithdrawn) substantive objection to this Settlement has been timely filed, on behalf of only 18 of the 1.4 million members of the settlement class.[4] The primary objection wrongly assumes that the settlement funds would be insufficient to satisfy the generous relief provided by the Settlement and complains that the Settlement does not shut down Herbalife. Yet the objection glosses over core issues favoring this Settlement, such as the uncertainty of class certification, the unproven merits of the claims, and the low likelihood that the relief that Objectors now ask for could even be obtained after a trial on the merits. Furthermore, the objection cites no facts or law not considered by the Parties in

---

[4] The "objection" filed by Jeff Lokken is not addressed here because it is not an objection at all. The objection touts the legitimacy of Herbalife's business model and objects to the notion that Herbalife should settle the matter. Dkt. 124. The remaining two objectors have asked to withdraw their objections. Dkt. 115, 116.

arriving at their negotiated settlement.

This Settlement was reached after extensive pre-settlement discovery, but before Plaintiffs demonstrated (or even tested) the feasibility of certifying a class, the viability of their legal theories, their ability to prove any of the allegations in their FAC, or the ability of any individual class member to prove damages. Although Plaintiffs' counsel are necessarily and appropriately circumspect in their discussion of these issues, the parties and the Court must recognize that these factors properly played an important role in the fashioning of this Settlement. Taking these factors into account, coupled with the generous compensation going to claimants, the Settlement is fair, adequate, and reasonable, and should be approved.

## II.

## ARGUMENT

The standard "in determining whether a court should grant final approval to a class action settlement is whether the settlement is fundamentally fair, adequate, and reasonable." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (Baird, J.) (internal quotation marks and citations omitted). Here, the Settlement meets this standard because, *inter alia*, (1) the monetary relief provided by the settlement is adequate, (2) the objections to the corporate policy changes are meritless, and (3) the scope of the release in the Settlement is appropriate.

### A. The Monetary Relief Provided by the Settlement is Adequate.

#### 1. The rationale behind the monetary relief portion of the settlement is reasonable.

A major challenge presented in the settlement of this action was to identify among the members of the putative class those members who have even facially viable claims against Herbalife. Although the class consists of all Herbalife

members during the class period,[5] the FAC does not allege that all of those members suffered injury, and many members lack any factual basis to make a claim. During the course of litigation and settlement negotiations, Herbalife presented substantial evidence that most members joined Herbalife to obtain products for their own consumption rather than to participate in the business opportunity at issue in the litigation. *See* Dkt. 96 at ¶¶ 37, 56-57, 60 (Plaintiffs' Counsels' Joint Declaration in Support of Joint Motion for Preliminary Approval). Moreover, only a small subset of those who joined to earn money could claim to have incurred business losses without bearing at least some of the responsibility for incurring these losses. In other words, very few members who joined Herbalife for the business opportunity had any chance of establishing compensable damages. Nevertheless, Plaintiffs sought a settlement that would be potentially available to the entire class.

The negotiated solution was to offer relief to the entire class, with extraordinarily permissive requirements concerning documentation of actual losses. At the heart of the Settlement is a product return component, which addresses the core allegation that Herbalife induced members to purchase products they did not want and could not sell, thereby causing them to lose money. *See, e.g.*, FAC (Dkt. 78) at ¶¶ 50, 67, 80. Such product purchases were the only way in which money was allegedly transferred from claimants to Herbalife. For product return claims, claimants were required only to provide the product SKU[6] number (which appears on the product itself), the purchase date, the actual purchase price, and if that amount was not known, the estimated purchase price. Dkt. 95-4 at 3-4. For any class member who submitted this information, the Settlement provides a full refund

---

[5] Assuming the Court approves the Parties' stipulation to amend the Settlement to exclude from the class (and the release) Herbalife members who signed an arbitration agreement with Herbalife (Dkt. 127), the Class Period would be truncated to account for the exclusion of such members.

[6] "SKU" stands for "stock-keeping unit."

for whatever product he or she returns, with return shipping included. The Settlement imposes no minimum (or maximum) on the number or value of products that can be returned for a full refund, and the returned products may have been purchased directly from Herbalife or through another Herbalife member.

Where claimants alleged losses but did not have products to return, they faced several proof problems that proved a challenge in negotiating the Settlement. First, because there was no dispute that a significant number of Herbalife members—including the lead Plaintiffs—enjoyed consuming Herbalife products, there was a risk that losses would be claimed on products that had been consumed. *See* Dkt. 96 at ¶¶ 37, 56-57, 60. Second, because members could not prove that they actually did not sell products, there was a risk that losses would be claimed on products that had been sold. Despite these obstacles, for business losses, the Claim Form requests merely that a given claimant certify under penalty of perjury that he or she made purchases of "Qualified Product," which is defined as product: (a) purchased directly from Herbalife on or after April 1, 2009; (b) purchased for resale purposes; (c) purchased within the U.S. and shipped directly to the claimant in the U.S.; (d) not resold for at least a break-even price; and (e) not returned through Herbalife's buyback program. Dkt. 95- 4 at 4-5. The Claim Form then requests that the claimant provide his or her estimated total loss. *Id.* This structure provided an enormous benefit to the class, because absent this Settlement, each class member would have had great difficulty in establishing actual losses.

Herbalife's contention that very few class members would claim any injury has been borne out by the settlement process. The Settlement's $2.5 million product return fund has proven more than sufficient to allow every class member who wants to return unsold product to return every such product for a full refund. Additionally, the $15 million business opportunity settlement fund is sufficient to pay every claimant who purchased more than $750 worth of product from Herbalife during the four-year claims period the lesser of 100% of his or her claimed loss or 75% of his

or her total purchases during the class period. Claimants who purchased less than $750 worth of product are presumptively those most likely to have purchased for self-consumption; yet each such claimant still will receive $20 plus a full refund on any products they return. Dkt. 95 at 9-10. Importantly, *every* claim will be paid out without *pro rata* reduction.

The "flat rate" business opportunity award of $20 for "small claimants" (those claimants who purchased less than $750 in products over the course of the class period) is based on a rational distinction. *Id*. These "small claimants" would have had the most difficulty of any claimants in proving that they purchased Herbalife products for the purpose of pursuing a business opportunity and that they sustained losses as a result. With respect to such members, there is a strong inference of self-consumption or very short-term membership. Because most Herbalife distributors join Herbalife to obtain a discount on products for personal consumption (as opposed to purchases made for business opportunities),[7] the "flat rate" award was the result of negotiations between the parties.

**2. Plaintiffs were not likely to recover consequential damages.**

Although the Objectors would like to have seen a settlement that included recovery of consequential damages for the supposed endless chain scheme claim, that was never on the table from the moment the lawsuit was filed. The Court's decision on the motion to dismiss the endless chain scheme claim noted that the only relief sought—and on which dismissal was denied—was rescission, not damages. Dkt. 40 at 10-11. Moreover, certifying class-wide claims for consequential damages would have been particularly difficult. The lead Plaintiffs' depositions revealed that purported business expenses associated with the running of Plaintiffs' Herbalife distributorships were also used for other purposes unrelated to their distributorships.

---

[7] Even the lead Plaintiffs testified in their depositions that they consumed and enjoyed Herbalife products.

These admissions raise individual factual issues, such as why purchases of non-Herbalife products were made, the uses to which they were put, and the value actually received by the member. Such individualized questions are not susceptible to resolution on a class-wide basis. *See Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1433 (2013) (damages must be "capable of measurement on a classwide basis;" otherwise, questions of "individual damages calculations will inevitably overwhelm questions common to the class."). Accordingly, the parties negotiated a settlement based on payments made to Herbalife. Class members nevertheless retain their rights to pursue claims against third parties. Dkt. 108 at 3 (Section 8.1 of the Settlement as amended).

**3. Plaintiffs' "shipping and handling" claim lacks merit.**

Plaintiffs' "shipping and handling" claim was extremely weak because, *inter alia*, discovery established that Herbalife often lost money on shipping orders and that Herbalife simply did not engage in a practice of overcharging members for shipping. *See* Dkt. 96 at ¶ 36. In any event, the monetary relief provided to claimants includes compensation for this claim, given that awards are tied to purchases and shipping fees were calculated based on purchase amounts.

**4. The experience of the individual objectors confirms the fairness of the settlement.**

Like other claimants, those Objectors who filed claims will do quite well in this Settlement. The estimated losses claimed through the Settlement by Susana Perez, Julio Ulloa, and Eric Rodensky, the three objectors who actually filed claims,[8] will receive substantial payments, without *pro rata* reduction. According to

---

[8] Ten of the eighteen substantive objectors – all represented by the same counsel – claim that they were confused as to whether they could both file a claim and object. Dkt. 121-1 at 3, 7, 19, 24, 27, 32, 39, 51, 63, 67. A notice that confused only ten out of 1.4 million recipients is not defective. Moreover, if these Objectors were interested enough in the Settlement to retain counsel, it is difficult to understand

her declaration, Susana Perez was an Herbalife member for five years. Dkt. 121-1 at 55. She claims to have lost "well over $100,000" during that period, including $86,400 in purchases from Herbalife and $61,240 in rent.[9] *Id.* In her claim form, she claimed a loss of $30,000. Robin Decl. at ¶ 16. Under the terms of the Settlement, Ms. Perez will in fact receive a business opportunity award of $30,000, the full loss she claimed, without any legal fees or costs deducted. *Id.* She also will not have to provide discovery or prove her damages, which effectively would involve an accounting of her business operations over a four-year period. Of course, she retained that option. As Perez contends to have a claim worth "well over $100,000," her counsel—like the Class Notice—presumably advised her that she had the right to opt out and sue individually. She did not do so.

Julio Ulloa claims to have lost "about $50,000" including expenses relating to the running of his Nutrition Club. Dkt. 121-1 at 71. In his claim form, Ulloa estimated his losses at $20,000. Robin Decl. at ¶ 18. His actual purchases from Herbalife during the Class Period amounted to $18,792.38. *Id.* If the Court grants Plaintiffs' unopposed motion to increase the payout from 50% to 75% on the business opportunity claims, he will receive $14,094.29. *Id.* Had he been required to substantiate those losses through continued litigation, it is unlikely that he would have recovered these losses.

At the other end of the financial spectrum, Eric Rodensky claims to have lost "approximately $6,000" during his tenure as an Herbalife member, including expenses relating to the running of his Nutrition Club. Dkt. 121-1 at 59. In his

---

why counsel would have failed to advise them of their right to both file a claim and object. Even if they were not represented by counsel, a phone call or email to the settlement administrator or Plaintiffs' counsel would have eliminated any purported confusion.

[9] According to Herbalife's records, Ms. Perez actually purchased approximately $103,000 worth of product from Herbalife during the relevant period. Robin Decl. at ¶ 16.

claim form, Mr. Rodensky estimated his loss at $3,000. Robin Decl. at ¶ 17. His actual purchases of product from Herbalife during the Class Period were $3,977.73. *Id.* Assuming a payout of 75% on business opportunity claims, he will receive $2,983.30 on the claim he filed. *Id.* This represents nearly 50% of the losses he claims in his declaration and almost 100% of the losses he claimed on his claim form, losses he would have been unlikely to recover through continued litigation.

**B. The Objections to the Corporate Policy Changes are Meritless.**

Herbalife is a multi-billion dollar public company that has been in business since 1980. Despite well-funded, vigorous attacks on its operations, it continues to thrive by selling a quality product that people want to buy through a network of member/distributors. Through extensive discovery, Plaintiffs presumably determined that there was a very low likelihood of success in establishing that Herbalife is a pyramid scheme. Dkt. 96 at ¶¶ 56, 60. Indeed, Objectors' counsel has himself admitted under oath how difficult it would be to prevail on such a claim against Herbalife. Declaration of Mark T. Drooks, Ex. A at 8 ("substantial risks existed both with respect to establishing liability and proving damages, especially in light of the difficulty of proving that a publicly held, multinational corporation with over two billion dollars in annual sales was engaged in an illegal endless chain scheme").

Similarly, purported *amicus* Truth In Advertising ("TINA") has admitted the difficulty in prevailing on a claim that Herbalife is a pyramid scheme:

> We only have to consider the current Herbalife stock market fight in which some pretty smart guys have bet billions on the issue of whether Herbalife is or is not a pyramid scheme to realize that it's a really hard question to answer. This point is worth repeating — the law on what is and is not a pyramid scheme is murky and that's a problem.

https://www.truthinadvertising.org/not-your-grandmas-tupperware-mlms-vs-pyramid-schemes/. TINA's executive director also has admitted it would not be satisfied with *any* corporate policy changes potentially achievable in a settlement:

> [P]yramid schemes cannot be fixed. The bad parts cannot be excised from the rest of the organization. The only remedy for an illegal pyramid scheme is the complete and irreversible destruction of the company. As a result, in those cases where the company does not immediately lie down and die, such accusations of wrongdoing inevitably lead to a long, protracted legal battle that consumes an obscene amount of money and a multitude of man hours.

*Id*. No settlement here would have included an injunction barring Herbalife's business model—companies do not compromise by putting themselves out of business.

The corporate policy changes that Herbalife has instituted are directed at specific areas of its operations at issue in this case, like, for example, continuing to disclose the Statement of Average Gross Compensation (and the percentage of members who do not receive any compensation payment directly from Herbalife) and continuing to pay shipping charges for the return of products to Herbalife. *See* Dkt. 95 at 15-17. Although some of these policies had been put in place before this action was filed, a commitment to keep them in place for three years provides a benefit to class members who remain members of Herbalife.

Notably, ***none*** of the Objectors remains a member of Herbalife with any interest in Herbalife's ongoing business model. For these former members, Herbalife's policy changes will not directly affect them: the substantial monetary relief provided under the Settlement is what matters to them. Objectors lacking any stake in Herbalife's business model should not be permitted to deprive class members who remain active Herbalife members of the benefits of the corporate

policy changes set forth in the Settlement. *See Rebney v. Wells Fargo Bank*, 220 Cal. App. 3d 1117, 1132 (Cal. Ct. App. 1990) (objectors "were not aggrieved by the errors they assert with regard to the expansion of class certification and the fairness of the settlement, and thus they lack standing to assert those errors as a basis for reversal."); *Estrada v. RPS, Inc.*, 125 Cal. App. 4th 976, 985 (Cal. Ct. App. 2005) (applying *Rebney*; "a party cannot assert error that injuriously affected only nonappealing coparties . . . the appellants must show they were, in fact, harmed by the errors asserted."); *Gonzales v. Countrywide Homes Loans, Inc.,* No. B163706, 2004 WL 1904280, at *4 (Cal. Ct. App. Aug. 26, 2004) (Since the [objectors] have not shown that the [purported error] harmed them in any manner, they have no standing on appeal to challenge the notice on that basis.").

**C. The Scope of the Release is Appropriate.**

Objectors are wrong to claim that the release language in the settlement is overbroad. First, the Settlement excludes government agencies and any claims brought by these agencies regarding Herbalife's operations. Dkt. 108 (Amendment to Settlement). Of course, no government agency is a member of the class granting the release under the Settlement, rendering this carve-out in the amended release a conservative precaution.

Second, the parties have, simultaneously with seeking approval, stipulated to amend the Settlement to exclude from the class (and the release) Herbalife members who signed an arbitration agreement with Herbalife. Dkt. 127. That amendment eliminates any release of Herbalife by any member who signed an arbitration clause.

Third, the Release does not prevent Settlement Class Members from suing third parties who sold or otherwise provided leads or other business tools to Herbalife members. Objectors contend that because the Release extends to Herbalife directors, a few of whom currently are or were Herbalife distributors, class members would be precluded from bringing actions against these individuals based on actions taken in their individual capacities, rather than as Herbalife directors.

Whether any class member actually has such a claim is speculative. Objectors do not claim that any one of them has such a claim, or what such a claim would be. In any event, Objectors have not cited any legal basis for contending that a release of a corporation's directors covers claims not arising out of conduct performed in that capacity.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

III.

**CONCLUSION**

For all the foregoing reasons, Herbalife respectfully urges the Court to grant the Motion for Final Approval of Settlement.

DATED: April 13, 2015

Respectfully submitted,

A. Howard Matz
Mark T. Drooks
Mitchell A. Kamin
Gopi K. Panchapakesan
Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C.

By: */s/ Mark. T. Drooks*
Mark T. Drooks
Attorneys for Defendants Herbalife International of America, Inc.; Herbalife International, Inc.; and Herbalife Ltd.

DATED: April 13, 2015

Respectfully submitted,

Jonathan D. Schiller
David L. Zifkin
Joseph F. Kroetsch
BOIES, SCHILLER & FLEXNER LLP.

By: */s/ Jonathan D. Schiller*
Jonathan D. Schiller
Attorneys for Defendants Herbalife International of America, Inc.; Herbalife International, Inc.; and Herbalife Ltd.

**SIGNATURE CERTIFICATION**

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to Jonathan D. Schiller of Boies, Schiller & Flexner LLP, co-counsel for Defendants Herbalife International of America, Inc.; Herbalife International, Inc.; and Herbalife Ltd., and that I have obtained Mr. Schiller's authorization to affix his electronic signature to this document.

DATED: April 13, 2015

Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C.

By: */s/ Mark T. Drooks*
Mark T. Drooks
Attorneys for Defendants Herbalife International of America, Inc.; Herbalife International, Inc.; and Herbalife Ltd.