LINK:

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

| Present: The Honorable | **BEVERLY REID O'CONNELL, United States District Judge** | |
|---|---|---|
| Renee A. Fisher | Not Present | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

| **Proceedings:** | (IN CHAMBERS) **ORDER RE: (1) PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, TO INCREASE THE AWARDS TO BUSINESS OPPORTUNITY CLAIMAINTS, AND FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES [110, 125, 129]; (2) DEFENDANTS' MOTION FOR JOINDER [131]; AND (3) AMICI'S MOTIONS FOR LEAVE TO FILE AMICUS CURIAE BRIEFS [114, 117]** |
|---|---|

## I.    INTRODUCTION

Pending before the Court are six separate motions related to the proposed settlement of this class action.  Plaintiff Dana Bostick, on behalf of himself and a class of others similarly situated (collectively, "Plaintiffs"), have filed a Motion for Final Approval of Class Action Settlement, a Motion to Increase the Awards to Business Opportunity Claimants, and a Motion for Attorneys' Fees and Expenses.[1]  (Dkt. Nos. 110, 125, 129.)  Defendants Herbalife International of America, Inc.; Herbalife International, Inc.; and Herbalife Ltd. (collectively, "Herbalife") have joined the Motion for Final Approval on the basis that the proposed class settlement is fair, adequate, and reasonable.  (Dkt. No. 131.)  Two non-party entities have filed Motions for Leave to file amicus curiae briefs in opposition to the proposed class settlement.  (Dkt. Nos. 114, 117.)

---

[1] The Court will refer to these motions as "Motion for Final Approval," "Motion to Increase Awards," and "Motion for Fees," respectively.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | |

The Court held a final fairness hearing on these matters on May 11, 2015. After considering the papers filed in connection with the instant motions, the arguments advanced at the hearing, and the entirety of the record, the Court finds that the proposed settlement is fair, adequate, and reasonable within the meaning of Federal Rule of Civil Procedure 23(e). Accordingly, Plaintiffs' Motion for Final Approval and Motion to Increase Awards are **GRANTED in full**. The Court also finds that an award of attorneys' fees equal to 28% of the total settlement fund, rather than class counsel's request for 30%, will provide adequate compensation and accordingly **GRANTS in part** Plaintiffs' Motion for Fees. In deciding these motions, the Court has considered Herbalife's joinder and amici's requests for leave. These motions are therefore **GRANTED**.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A. The Instant Dispute and Plaintiffs' Allegations

Plaintiff Dana Bostick ("Mr. Bostick"), an individual residing in California, initiated this lawsuit against Herbalife on behalf of himself and a putative class of individuals injured by what Plaintiffs believe to be a large pyramid scheme, pursuant to which Herbalife systematically rewards recruiting new product distributors over actual retail sales. (First Am. Compl. ("FAC") ¶¶ 3–6.) Plaintiffs bring this action on behalf of all persons who were Herbalife distributors from April 2009 until the present. (FAC ¶ 5.) An individual may become a distributor, or in other words a vendor of Herbalife products, by recruiting an existing product distributor to serve as his or her "sponsor" and purchasing an Herbalife International Business Pack ("IBP") for $95.95 or a mini International Business Pack ("Mini-IBP") for $57.75. (FAC ¶ 30.)

Herbalife is a multi-level marketing and distribution system, which relies on individual distributors to market, promote, sell, and distribute its products. (FAC ¶ 28.) Herbalife recruits potential distributors by promising the chance to earn a "substantial and ongoing income" based upon immediate, daily profit while also providing an opportunity to take charge of one's life by being one's own boss. (FAC ¶¶ 31–33.) Herbalife promotes itself through a magazine titled "*Live The Good Life! Herbalife*," a website, training programs, and videos. (FAC ¶¶ 39–45.)

LINK:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | **CV 13-2488 BRO (SHx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | |

Herbalife is comprised of a hierarchy of distributors, with the various levels determining each participant's eligibility for discounted Herbalife products and other benefits. (*See* FAC ¶¶ 83–151). This hierarchy is comprised of eleven levels of distributors, starting at the Distributor rank and ending at the Founder's Circle rank. (FAC ¶ 83.) All new distributors join a line of sponsorship traced "upline" to the highest level of the Herbalife hierarchy. (FAC ¶ 84.) Junior (or "downline") distributors purchase Herbalife products from "upline" (or more senior) distributors, or from Herbalife directly; Herbalife then pays bonuses to upline distributors based upon purchases by downline distributors. (FAC ¶ 85.) A distributor may move upline and qualify for higher levels of compensation by achieving a certain volume of Herbalife product during a particular time period. (FAC ¶¶ 87, 90.) Volumes are calculated on a monthly basis, and a distributor's volume is based upon his or her own purchases of Herbalife product, as well as the purchases of his or her downstream. (FAC ¶¶ 87–90.)

Distributors, as the lowest rung of the Herbalife hierarchy, may purchase products at a 25% discount from the suggested retail price of goods. (FAC ¶¶ 91–92.) For every one dollar that a distributor spends on Herbalife products, $0.64 goes upline. (FAC ¶ 93.) The fifth rung in the hierarchy, called a supervisor, classifies a distributor as a Sales Leader, and allows an individual to purchase Herbalife products at a 50% discount. (FAC ¶ 119.) There are a number of ways to become a supervisor, (*see* FAC ¶¶ 109–112), and a distributor can do so without personally purchasing or reselling any Herbalife products, (FAC ¶¶ 113–114.)

A supervisor receives an additional benefit by becoming eligible for "Royalty Overrides," which are a commission based upon other downline supervisors' volume. (FAC ¶¶ 122–123.) To qualify for Royalty Overrides, a supervisor must comply with both the "10-Retail Customer Rule" and the "70% Rule." (FAC ¶ 125.) These rules require a supervisor to personally sell Herbalife products to at least ten separate retail customers; additionally, at least 70% of the total value of Herbalife products that the supervisor purchases must be sold or consumed within that month. (FAC ¶ 125.)

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

Distributors may return products purchased from Herbalife within twelve months of the purchase date. (FAC ¶ 231.) To do so, however, a distributor must comply with certain provisions, including resigning and effectively forfeiting his or her downstream. (FAC ¶ 231.a.) Additionally, distributors may not return any products purchased from an upline supervisor. (FAC ¶ 232.)

**B. Mr. Bostick's Participation**

Mr. Bostick became an Herbalife distributor in April 2012. (FAC ¶¶ 6, 38, 46.) Over a four month period, Mr. Bostick placed eight orders for Herbalife products. (FAC ¶ 48.)[2] Although Plaintiff worked hard to build his business, (*see* FAC ¶¶ 47, 49, 50), he recruited only one person—his lifelong friend, (FAC ¶ 47). Mr. Bostick believes his attempts to sell products to wholesalers were unsuccessful because he had to sell at nearly full retail value to make a profit—an unappealing rate compared to prices offered by higher upline distributors and other online sources. (FAC ¶ 50.) Mr. Bostick contends that he cannot make a profit selling Herbalife products because the company's system of graduated discounts means that those participants purchasing Herbalife products at a 25% discount must compete with those purchasing products at a 50% discount. (FAC ¶ 157.) Further, Mr. Bostick believes the Herbalife structure systematically rewards recruiting other distributors over retail sales. (FAC ¶ 3.)

Dissatisfied with Herbalife's structure and misrepresentations regarding the chance to generate meaningful income, Mr. Bostick filed a Complaint on April 8, 2013. (Dkt. No. 1.) On July 7, 2014, Plaintiffs filed the First Amended Complaint.[3] (Dkt. No. 78.) Plaintiffs bring claims under California's Endless Chain Scheme Law, Cal. Penal Code § 327 and Cal. Civ. Code § 1689.2; California's Unfair Competition Law ("UCL), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.* Plaintiffs' first claim under the Endless Chain Scheme Law seeks rescission, restitution, compensatory damages, and consequential

---

[2] Plaintiff placed these orders on April 6, 2012; April 26, 2012; May 21, 2012; June 18, 2012; June 19, 2012; June 22, 2012; June 27, 2012; and July 20, 2012. (FAC ¶ 48.)

[3] The First Amended Complaint adds Anita Vasko ("Ms. Vasko"), Judy Trotter ("Ms. Trotter"), Beverly Molnar ("Ms. Molnar"), and Chester Cote ("Mr. Cote") as named plaintiffs. (*See generally* FAC.)

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

damages for Herbalife's operation of an alleged pyramid scheme.  (FAC ¶¶ 255–58.)
Plaintiffs' UCL claim is predicated upon Herbalife's allegedly fraudulent and misleading
representations regarding the chance of success and product packaging and handling and
freight fees.  (FAC ¶¶ 260–315.)  Plaintiffs seek an injunction prohibiting Herbalife from
continuing to engage in these allegedly unlawful and fraudulent business practices.
Plaintiffs' final claim for violations of the FAL is predicated upon the same allegedly
unlawful and fraudulent practices and seeks similar injunctive relief.  (FAC ¶¶ 316–27.)

### C. The Proceedings Leading to the Settlement Agreement

On December 9, 2013, the Court ordered the parties to attend a mandatory private
mediation session.  (Dkt. No. 52.)  Beginning in February 2014, the parties began a three-
step mediation process involving significant discovery, the exchange of multiple
mediation briefs, and various bilateral discussions regarding the strengths and
weaknesses of Plaintiffs' case.  (*See* Mot. for Preliminary Approval at 5.)[4]  All together,
the parties attended six separate mediation sessions.  (*Id.*)  The parties also engaged in
numerous direct settlement negotiations, including three in-person meetings and various
telephone conferences.  (*Id.*)  These efforts ultimately culminated in the October 31, 2014
joint stipulated Settlement Agreement, for which the parties now seek final approval.

### D. The Terms of the Settlement Agreement

The Settlement Agreement provides two separate forms of class economic relief,
as well as non-monetary relief in the form of thirteen corporate reforms.  The relevant
provisions are set forth in further detail below.  Class members may request exclusion
from the monetary portion of the proposed settlement by submitting a valid opt-out form.

---

[4] A copy of Plaintiffs' Motion for Preliminary Class Action Settlement Approval is available at Docket
No. 94, and the supporting documentation is available at Docket Nos. 95 to 98.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

### 1. The Business Opportunity Settlement Fund

The first form of economic relief consists of a $15 million cash settlement fund to compensate "Business Opportunity Claimants," meaning those individuals who (1) joined Herbalife primarily to pursue a business opportunity (as opposed to joining primarily for personal or family consumption), and (2) lost money in pursuing that opportunity. (S*ee* Settlement Agreement ¶ 4.1.)[5]  The fund is non-reversionary. (*Id.*)  The net settlement fund available for distribution among the Business Opportunity Claimants will be calculated by deducting the class settlement notice and administration costs, class counsel's attorneys' fees and expenses, and the named plaintiffs' service awards. (*Id.*)  Up to an additional $2.5 million may also be deducted if necessary to compensate class members who submit valid claims for product returns.[6] (*Id.*)  In the event any amount of the net settlement fund remains after distributing payments to the Business Opportunity Claimants, the remainder shall be distributed to the Consumer Federation of America under the *cy pres* doctrine. (*Id.*)

Business Opportunity Claimants may submit claims for products they purchased for resale purposes and not for personal consumption and which they did not sell for the cost of purchase or return through either Herbalife's buyback program or the product return fund portion of the settlement detailed below. (*Id.* ¶ 4.4.1.)  To be eligible for a settlement payment, claimants must also certify under penalty of perjury that they: (1) joined Herbalife primarily to pursue a business opportunity; (2) lost money; and (3) never exceeded a certain level in the hierarchy. (*Id.* ¶ 4.4.2.)  Claimants must also certify, to the best of their knowledge, the actual loss they sustained. (*Id.*)

Business opportunity claims will be calculated under one of two methods of payment depending on how much product the claimant purchased from Herbalife. Those claimants who purchased at least $750 worth of product within a claim year[7] will qualify

---

[5] A copy of the Settlement Agreement is available at Docket No. 95.
[6] The Settlement Agreement also provides for a separate product return fund to be exhausted before deducting any portion of the $15 million business opportunity fund. *See infra* Part II.D.2.

[7] A "claim year" is defined as any twelve-month period beginning on the later of the first day a claimant became a distributor or the beginning of the class period. (Settlement Agreement ¶ 4.4.4.)

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
| --- | --- | --- | --- |
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

for a pro rata award.  (*Id.* ¶ 4.4.4.)  Those claimants who did not purchase at least $750 within a claim year will receive a flat rate award.  (*Id.*)

Under the proposed Settlement Agreement, pro rata awards will be equal to the lesser of 100% of the claimant's estimated total loss or 50% of the price the claimant paid for the products.  (*Id.* ¶ 4.4.5.)  The agreement provides, however, that if the sum of all claimed pro rata awards is less than 75% of the net business opportunity fund less the aggregate flat rate awards, either party may move to increase the pro rata awards to 75% of the price each claimant paid for the products.  (*Id.*)  Plaintiffs have requested this increase in connection with their Motion for Final Approval.  (*See* Dkt. No. 125.)

Flat rate claimants are entitled to a $20 award from the net settlement fund. (Settlement Agreement ¶ 4.4.6.)  If the total flat rate awards exceed $3 million, each claimant's payment will be reduced on a pro rata basis.  (*Id.*)  If the total flat rate awards are less than $3 million, the difference will remain in the net business opportunity fund for distribution to the pro rata Business Opportunity Claimants.  (*Id.*)

## 2.  The Product Return Fund

The Settlement Agreement also provides for a separate product return fund of $2.5 million.  (*Id.* ¶ 4.2.)  This fund will compensate class members who submit valid claims for product returns, called "Product Return Claimants.  (*Id.*)  To submit such a claim and be eligible for a payment from the product return fund, a class member must return unopened and unused Herbalife products, excluding IBPs and Mini-IBPs, to the company.  (*Id.* ¶ 4.3.)  The cost of return shipping will be paid by the product return fund. (*Id.* ¶ 4.2.)  Because Herbalife already permits distributors to return unopened and unused products within one year, class members may only submit product return claims for unopened and unused products that were purchased more than one year before the deadline for submitting claims forms.  (*Id.* ¶ 4.3.)  In the event any portion of the product return fund remains after compensating all Product Return Claimants, the remainder shall be returned to Herbalife.  (*Id.* ¶ 4.2.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

To submit a product return claim, a class member must identify: (1) the product SKU; (2) the approximate purchase date; and (3) the actual amount he or she paid for the product, or a certified estimate if the member does not know the actual amount. (*Id.* ¶ 4.3.1.)  Each Product Return Claimant is entitled to the lesser of (1) the actual or estimated amount he or she paid, or (2) 50% of the product's suggested retail price at the time of purchase.  (*Id.*)  If the total value of the Product Return Claimants' claims exceed the sum of the $2.5 million product return fund and the $2.5 million portion of the net business opportunity fund available for product returns, each claimant's award will be reduced on a pro rata basis.  (*Id.* ¶ 4.3.2.)  The claims administrator will post each claimant's estimated return payment on its website so that each Product Return Claimant can see the return to which he or she will be entitled.  (*Id.*)  Claimants must return the products within 60 days to obtain payment.  (*Id.*)

### 3.  Corporate Reforms

In addition to the above economic relief, the Settlement Agreement requires Herbalife to agree to and abide by several corporate reforms.  Herbalife has already implemented some of these reforms in response to the filing of this lawsuit.  (*See id.* ¶ 5.1.2.)  The Settlement Agreement requires Herbalife to maintain and continue thirteen agreed-upon reform policies for three years from the date of final approval.  (*Id.* ¶ 5.1.1.)

These reform policies include all of the following: (1) Herbalife shall not separately charge members a "Packaging & Handling Fee" and an "Order Shipping Charge"; (2) Herbalife shall not define "Distributor" as "Everyone who purchases an Official Herbalife Member Pack (HMP) and submits to Herbalife a valid and complete Membership Application and whose Application has been accepted by Herbalife"; (3) Herbalife shall discourage members from incurring debt to pursue an Herbalife business opportunity; (4) Herbalife shall pay the shipping charges for the return of Herbalife products; (5) Herbalife shall maintain procedures for enforcing its rules, including as by maintaining a member compliance department; (6) Herbalife shall prohibit members from selling leads to other distributors and from purchasing leads from any source; (7) Herbalife shall prohibit members from requiring individuals to buy Herbalife products as a condition to membership; (8) Herbalife shall require members to be active for at least 90 days before opening a nutrition club; (9) Herbalife shall include the Statement of Average Gross Compensation in the membership application; (10) Herbalife shall require

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

new members to acknowledge their review of the Statement of Average Gross Compensation when signing a membership application; (11) Herbalife shall continue to disclose the Statement of Average Gross Compensation, as well as the percentage of members who receive no compensation from Herbalife; (12) Herbalife shall clarify that upon qualifying as a supervisor, members have twelve months to requalify; (13) Herbalife shall amend its membership agreement so that new members must certify they are not relying on representations regarding the financial results they may obtain. (*Id.* ¶¶ 5.1.3–5.1.15.)

### 4. Release of Claims

In exchange for the agreed upon economic and non-economic relief, class members must agree to the following release:

[A]ll claims, demands, rights, liabilities, suits, or causes of action, known or unknown, as of the Effective Date that (1) were or could have been asserted in the complaints filed in this Action against Herbalife, or (2) are based upon, arise out of, or reasonably relate to: (i) the purchase or sale or offer of sale of any Herbalife product, including the IBP and Mini-IBP, during the Class Period; (ii) any packaging and handling or shipping charges paid in connection with purchase or sale or offer of sale of any Herbalife product during the Class Period; (iii) the Herbalife Membership Application and Agreement, including any materials attached thereto and/or referenced therein, including the Statement of Average Gross Compensation; (iv) any actual, potential, or attempted recruitment of any Herbalife member or distributor during the Class Period; (v) any allegation that, during the Class Period, Herbalife engaged in any acts of unfair competition; false and/or misleading advertising; or operated any type of illegal, pyramid, endless chain, or fraudulent scheme; and (vi) any of the facts, schemes, transactions, events, matters, occurrences, acts, disclosures, statements, misrepresentations, omissions, or failures to act that have been or could have been alleged or asserted in the Action (collectively, the "Released Claims").

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | **CV 13-2488 BRO (SHx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | |

(*Id.* ¶ 8.1; *see also* Dkt. No. 108.)[8]  The release does not include claims arising out of the purchase or sale of Herbalife's publicly traded common stock; the calculation of bonuses or payments for the sale of Herbalife products owed to class members; or allegedly defective products.  (*Id.* ¶ 8.1; *see also* Dkt. No. 108.)  The release also does not cover claims related to government agency actions.  (*See* Dkt. No. 108 ¶ 8.5.)  Additionally, the release does not include claims by Herbalife members who agreed to be subject to arbitration in a Membership Application Agreement revised during or after September 2013.  (*See id.* ¶ 8.6; *see also* Dkt. No. 127.)[9]

### E. Notice to the Class Members and the Class Response

The class notice of settlement included six separate components, including direct mail and email notice; a long-form notice available online; a settlement website for filing and checking the status of claims, as well as filing objections; a settlement website posting frequently asked questions and answers; and a telephone help line for class members to discuss questions with class counsel.  (*See* Mot. for Final Approval at 4–5.)

On December 12, 2014, the claims administrator received a list from Herbalife of approximately 1,533,339 class members' names and mailing addresses, as well as a list of email addresses for 1,051,342 of those members.  (Decl. of Eric Robin in Supp. of Mot. for Final Approval ("Robin Notice Decl.") ¶ 4.)  The administrator used the National Change of Address system to update the list of mailing addresses and located new addresses for 188,158 class members.  (*Id.* ¶ 5.)  Of the 1,533,339 class members, only 114 had incomplete or missing mailing or email addresses.  (*Id.* ¶ 6.)

The claims administrator emailed notices to the 1,051,342 class members with known email addresses.  (*Id.* ¶ 8.)  As of January 8, 2015, 70.06% of the emails were

---

[8] Docket No. 108 contains the parties' first stipulation to amend the Settlement Agreement, which the Court has already approved.  (*See* Dkt. Nos. 108, 109.)  The stipulation adds two paragraphs to the section governing the release of claims.  (*See* Dkt. No. 108 ¶¶ 8.5, 8.6.)

[9] Docket No. 127 contains the parties' second stipulation to amend the Settlement Agreement.  Pursuant to the Court's preliminary approval order, which provides that the parties may agree to amend the Settlement Agreement before final approval so long as the amendment does not materially change the terms of the agreement, the Court hereby **GRANTS** the parties' second stipulation.

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

successfully delivered, and 29.94% were undeliverable.  (*Id.*)  Of the 314,786 class
members whose email notices were undeliverable, the claims administrator had valid
physical addresses for 314,711 and accordingly mailed postcard notices to these
individuals.  (*Id.* ¶ 9.)

       The claims administrator also mailed postcard notices to those 481,883 class
members for whom only a mailing address was known.  (*Id.* ¶ 7.)  1,396 notices were
returned with forwarding addresses, and the administrator re-mailed these notices to the
forwarding address.  (*Id.* ¶ 10.)  121,963 notices were returned without a forwarding
address.  (*Id.*)  The claims administrator has located updated mailing addresses for 71,294
of these members and re-mailed the notices to the proper address.  (*Id.*)  The combined
email and postcard notices have reached approximately 92.91% of the class.  (*Id.* ¶ 11.)

       In addition to mailing and emailing class settlement notices, the claims
administrator also established a telephone system to provide information about the
settlement and field requests for notice packets.  (*Id.* ¶ 12.)  The system received 21,291
calls, and the claims administrator has fulfilled all 3,793 requests for notice packets.  (*Id.*)
The settlement website includes links to the notice form, claim form, and Settlement
Agreement, and class members may submit claims online through the website.  (*Id.* ¶ 13.)

       **1.  The Number of Claims**

       The deadline to submit a monetary claim for relief from the business opportunity
fund or product return fund was February 3, 2015.  (*Id.* ¶ 20.)  As of April 13, 2015,
7,238 class members had filed timely claims forms.  (*Id.* ¶ 19.)  The parties agreed to
permit late class members to file late claims through the settlement website until April 30,
2015.  (*Id.* ¶ 20.)  As of May 12, 2015, 7,457 class members submitted timely claims.
(*See* Supplemental Robin Notice Decl. ¶ 4.)

       Every Business Opportunity Claimant who could not demonstrate a loss, as well as
every claimant who purchased less than $750 worth of Herbalife product, will receive a
$20 flat rate payment.  (Robin Notice Decl. ¶ 21.)  Every Business Opportunity Claimant
who could demonstrate a loss and who purchased at least $750 worth of product will
receive the lesser of his or her estimated total loss or 75% of the amount he or she paid
for Herbalife products.  (*Id.*)  Of the Business Opportunity Claimants entitled to a pro rata

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | | |

award, 114 will receive payments greater than $10,000, 329 will receive payments greater than $5,000, and 1,655 will receive payments in excess of $1,000. (Supplemental Robin Notice Decl. ¶ 5.)  The average payout is $1,101.48, and the largest award is $98,588.36.  (*Id.*)

As of April 13, 2015, the total value of the business opportunity awards to be paid from the $15 million business opportunity fund is $7,396,407.90.  (*Id.*)  The total value of the product return awards is $938,280.75.  (*Id.* ¶ 6.)  The claims administrator has notified each class claimant of the value of his or her business opportunity or product return award.  (Robin Notice Decl. ¶ 23.)

### 2.  Requests for Exclusion and Objections

As of April 13, 2015, the claims administrator had received 687 requests for exclusion from the settlement.  (*Id.* ¶ 14, Ex. E.)  The administrator received two objections which were later withdrawn, (*see* Dkt. Nos. 115, 116), as well as eighteen objections which remain, (*see* Robin Notice Decl. ¶ 15).[10]  Of the eighteen remaining objectors, three have filed claims as Business Opportunity Claimants.  The first such objector, Susana Perez ("Ms. Perez"), estimated her total loss to be $30,000; she will receive a pro rata business opportunity award equal to this claimed loss.  (*Id.* ¶ 16.)  The second such objector, Eric Rodensky ("Mr. Rodensky") estimated his loss to be $3,000 and will receive a pro rata award of $2,983.30.  (*Id.* ¶ 17.)  The third such objector, Julio Ulloa ("Mr. Ulloa"), estimated his total loss to be $20,000 and will receive an award of $14,094.29.  (*Id.* ¶ 18.)

### F.  Relevant Procedural History

The Court issued an order granting preliminary approval of the Settlement Agreement on December 2, 2014.  (Dkt. No. 105.)  On April 13, 2015, Plaintiffs filed the instant Motion for Final Approval, (Dkt. No. 129), as well as the Motion to Increase

---

[10] One additional "objection" has been filed by individual Jeff Lokken ("Mr. Lokken").  (*See* Dkt. No. 124.)  Mr. Lokken believes Herbalife's business model is sound and only generally objects to the notion that Herbalife should settle this matter.  Mr. Lokken has not raised any substantive objections to the terms of the proposed Settlement Agreement.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

Awards, (Dkt. No. 125). Herbalife filed a notice of joinder that same day. (Dkt. No. 131.) Previously, two non-parties to this action, Truth In Advertising, Inc. ("TINA.org") and National Consumers League, Inc. ("NCL"), filed Motions for Leave to file amici briefs. (Dkt. Nos. 114, 117.) The eighteen objectors, all of whom are represented by attorney Douglas M. Brooks ("Mr. Brooks"), have filed an opposition to the Motion for Final Approval.[11] (*See* Dkt. Nos. 121, 134.) Class counsel has also filed a Motion for Attorneys' Fees. (Dkt. No. 110.)

The Court held a final fairness hearing on these matters on May 11, 2015. Mr. Brooks, along with nine of the eighteen objectors he represents, attended the hearing. Counsel for TINA.org was also present. The Court questioned and heard oral argument from class counsel for Plaintiffs, Herbalife's counsel, and Mr. Brooks. Counsel for TINA.org submitted on the papers.

## III.  LEGAL STANDARD

There is a strong judicial policy favoring settlement agreements, "particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Nevertheless, when reviewing a proposed class action settlement, district courts "have the responsibility of ensuring fairness to all members of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). This responsibility is especially acute where the parties reach a settlement agreement prior to class certification. *Id.* In such cases, the court's final approval requires ratification of "both the propriety of the certification and the fairness of the settlement." *Id.*

A court's assessment of a proposed class settlement proceeds in two steps. First, the court must determine whether a class properly exists under Federal Rule of Civil Procedure 23. *Id.* Second, the court must consider whether the proposed settlement is fair, adequate, and reasonable to the class. *Id.* at 952–53.

---

[11] These objectors include: Elvia Acosta, Sabas Avila, Miguel Calderon, Felipe Colon, Elizabeth Correa, Maria Cutzal, Juana Estala, Jose G. Garcia, Valentina Leon, Rossina Martinez, Gilberto Melchor Sanchez, Martil Palma Vallecillo, Yader A. Pastran, Susana Perez, Eric Rodensky, Jose Tafoya, Olivia Torres, and Julia Ulloa. (*See* Dkt. No. 134 at 1 n.1.)

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

### A. Class Certification Under Rule 23

A party seeking class certification bears the burden of establishing that the prospective class satisfies Rule 23. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011). Certification under Rule 23 first requires a threshold showing under Rule 23(a). *Id.* Assuming Rule 23(a)'s requirements are met, the party seeking certification must also demonstrate that the proposed class falls into at least one of the categories outlined in Rule 23(b). *See Valentino v. Carter–Wallace*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Under Rule 23(a), the party seeking certification must establish all four of the following: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a). This requires proof that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011). Certification should only be granted if, "after a rigorous analysis," the court determines that the prospective class satisfies the requirements of Rule 23(a). *Wal-Mart Stores*, 131 S. Ct. at 2551 (internal quotation marks omitted).

Under Rule 23(b)(3), class certification is appropriate where (1) common questions "predominate over any questions affecting only individual members," and (2) class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (internal quotation marks omitted). The predominance inquiry "tests whether [the] proposed classes are sufficiently cohesive to warrant adjudication by representation" and "trains on the legal or factual questions that qualify each class member's case as a genuine controversy." *Id.* at 623. The inquiry "focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

A finding of commonality under Rule 23(a)(2) is insufficient by itself to satisfy Rule 23(b)(3). *Id.* ("[The predominance] analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2)."). Nevertheless, predominance does not require that the legal and factual issues be identical across the class. Certification under Rule 23(b)(3) is appropriate where "[a] common nucleus of facts and potential legal remedies dominates [the] litigation." *Id.*

When reviewing a motion for class certification, district courts are generally bound to take the substantive allegations of the complaint as true. *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982) (citing *Blackie v. Barrack*, 524 F.2d 891, 901 n.7 (9th Cir. 1975)). But "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores*, 131 S. Ct. at 2551. Thus, "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Id.* (internal quotation marks omitted) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). Ultimately, district courts have "broad discretion to determine whether a class should be certified." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 810 (9th Cir. 2010).

## B. Final Approval of a Class Action Settlement Under Rule 23(e)

Under Rule 23(e), a district court may not finally approve a class settlement unless the court determines that the "proposed settlement is fundamentally fair, adequate, and reasonable." *Staton*, 327 F.3d at 959 (internal quotation marks omitted). The very circumstances of settlement negotiations raise "incentives for the negotiators to pursue their own self-interest and that of certain class members." *Id.* at 960. Thus, a district court must review a proposed class action settlement not only for actual fraud, overreaching, or collusion, but also with an eye to whether the terms are fair, adequate, and reasonable to the class. *Id.*

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | |

In determining whether a proposed settlement meets the fundamental standard of fairness, adequacy, and reasonableness, a district court may consider the following factors: (1) "the strength of [the] plaintiffs' case"; (2) "the risk, expense, complexity, and likely duration of further litigation"; (3) "the risk of maintaining class action status throughout the trial"; (4) "the amount offered in settlement"; (5) "the extent of discovery completed, and the stage of the proceedings"; (6) "the experience and views of counsel"; (7) "the presence of a governmental participant"; and (8) "the reaction of the class members to the proposed settlement." *Id.* at 959 (internal quotation marks omitted); *see also Hanlon*, 150 F.3d at 1026. "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). A district court's role in evaluating a proposed settlement is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable[,] and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). Accordingly, a district court should neither judge the merits of the claims in dispute, nor compare the proposed settlement "against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* "Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations[,] and rough justice." *Id.* (internal quotation marks omitted).

## C. Attorneys' Fees Under Rule 23(h)

In any certified class action, a district court may award reasonable attorneys' fees and nontaxable costs as authorized by law or the parties' agreement. Fed. R. Civ. P. 23(h). Where, as here, a proposed class action settlement contains a fee provision, the provision is subject to the inquiry into whether the settlement is fair, adequate, and reasonable. *Staton*, 327 F.3d at 963 (explaining that "[t]here is no exception in Rule 23(e) for fees provisions contained in proposed class action settlement agreements"). A district court must "carefully assess" the reasonableness of a fee provision. *Id.* The mere fact that the defendant agrees to pay the fees "does not detract from the need to carefully scrutinize the fee award." *Id.* at 964. This is because the allocation between the class award and the attorneys' fees "is of little or no interest to the defense." *Id.* (internal quotation marks omitted).

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | |

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This doctrine is known as the "common fund" doctrine. As the Supreme Court has explained,

> The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

*Id.* (internal citations omitted). Thus, the common fund doctrine permits a district court to award attorneys' fees from the total monetary fund recovered by the class to ensure that each class member "contributes proportionately to the payment of attorneys' fees." *Staton*, 327 F.3d at 967.

The Supreme Court has set forth three criteria for obtaining an award of attorneys' fees from a common fund. First, the class of persons benefiting from the fund must be "easily identifiable." *Van Gemert*, 444 U.S. at 478–79. Second, the court must be able to accurately trace the benefits from the fund to the class beneficiaries. *Id.* at 479. Finally, the court must be able to shift the fee from the fund to those benefiting from it "with some exactitude." *Id.* Generally, these three criteria are satisfied "when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Id.*

In the Ninth Circuit, a district court presiding over a common fund case may award attorneys' fees based on one of two methods: the lodestar method or the percentage method. *Staton*, 327 F.3d at 967–68; *see also Hanlon*, 150 F.3d at 1029. If the court adopts the lodestar method, it may apply a risk multiplier to increase or decrease the fee award based on various factors, including the risk involved and the length of the proceedings. *Staton*, 327 F.3d at 968. If the court adopts the percentage method, "the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." *Hanlon*, 150 F.3d at 1029.

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

Although a court has discretion to apply either method, "use of the percentage method in common fund cases appears to be dominant." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). In applying the percentage method, the court "must show why [the chosen] percentage and the ultimate award are appropriate based on the facts of the case. *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046 (explaining that the court may not "arbitrarily apply a percentage"). The "benchmark" for percentage method fee awards in the Ninth Circuit is 25% of the common fund. *Hanlon*, 150 F.3d at 1029. Notwithstanding this benchmark, the percentage should be adjusted "when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311.

The ultimate goal under either the lodestar method or the percentage method is to "reasonably compensate counsel for their efforts in creating the common fund." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046 (citing *Paul, Johnson*, 886 F.2d at 271–72). In considering the overall fairness and reasonableness of a fee award, a court should consider the following factors: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden on class counsel; and (5) awards made in similar cases." *Id.* (citing *Vizcaino*, 290 F.3d at 1048–50).

## IV.    DISCUSSION

The Court first considers whether Plaintiffs have satisfied the requirements for class certification under Federal Rule of Civil Procedure 23. Finding that they do, the Court then addresses whether the Settlement Agreement comports with Rule 23(e)'s standard of fairness, reasonableness, and adequacy. In doing so, the Court has considered the arguments advanced by Herbalife in their notice of joinder.[12] (*See* Dkt. No. 131.)

---

[12] As these arguments are essentially identical to those expressed in Plaintiffs' Motion for Final Approval, the Court will cite to Plaintiffs' motion only, unless otherwise indicated.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

The Court has also considered the arguments advanced by TINA.org and NCL in their amici briefs.[13]  (*See* Dkt. Nos. 114, 117.)  Given that the Court finds the Settlement Agreement to be a fair, reasonable, and adequate resolution of this case, the Court will also evaluate Plaintiffs' Motion for Fees.

## A. Whether Class Certification is Appropriate

Where, as here, the parties request class certification for the purpose of settlement, a court must give "undiluted, even heightened attention to [the] class certification requirements."  *See Hanlon*, 150 F.3d 1011, 1019 (9th Cir. 1998) (internal quotation marks omitted) (quoting *Amchem Prods.*, 521 U.S. at 620).  "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."  *Amchem Prods.*, 521 U.S. at 620.  After reviewing the parties' joint Motion for Preliminary Approval[14] and the relevant pleadings, documents, and evidence, the Court concludes that certification is appropriate under Rule 23.

---

[13] Although Plaintiffs object to these briefs on the basis that TINA.org and NCL's participation in these proceedings is neither helpful nor useful, (*see* Dkt. No. 126), the Court finds otherwise.  Many of the objectors' arguments are similar to those expressed in TINA.org and NCL's amici briefs.  (*Compare* Dkt. Nos. 121, 134, *with* Dkt. Nos. 114, 117.)  Indeed, the objectors directly reference and incorporate some of these arguments in their opposition.  To ensure a full, fair, and objective review of the Settlement Agreement, the Court finds it appropriate to consider the full range of concerns raised by the objecting class members, as well as those expressed by non-parties TINA.org and NCL.  *See Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997) ("An amicus brief should normally be allowed when a party is not represented competently or is not represented at all, when the amicus has an interest in some other case that may be affected by the decision in the present case (though not enough affected to entitle the amicus to intervene and become a party in the present case), *or when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide*." (emphasis added)).  Accordingly, TINA.org and NCL's Motions for Leave to file amici briefs are hereby **GRANTED**.

[14] The Motion for Preliminary Approval sets forth the parties' joint arguments regarding the propriety of class certification for purposes of the proposed settlement.  Plaintiffs' Motion for Final Approval expressly incorporates these arguments.  (*See* Mot. for Final Approval at 9.)  The Court will therefore refer to the preliminary approval motion in discussing whether class certification is appropriate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

## 1. Whether Plaintiffs Have Satisfied Rule 23(a)'s Threshold Requirements

As discussed above, Plaintiffs bear the burden of satisfying Rule 23(a)'s four threshold requirements for class certification.  Plaintiffs seek to certify the following class of persons for purposes of settlement: "all persons who are or were Herbalife members or distributors in the United States at any time during the Class Period."  (*See* Mot. for Preliminary Approval at 17; *see also* Settlement Agreement § 1.13.)  The "Class Period" is defined as the period beginning on April 1, 2009 and ending on December 2, 2014, the date the Court preliminarily approved the proposed class settlement.  (*See* Settlement Agreement § 1.5.)  The class does not include "the Defendants, their employees, family members, and any member who has been a member of Herbalife's President's Team, Founder's Circle, Chairman's Club, Millionaire Team, or GET Team," nor does it include "Herbalife members or distributors who have agreed to be subject to the arbitration provisions of the Arbitration Agreement for Disputes Between Members and Herbalife contained in the Member Application Agreement revised during or after September 2013."[15]  (*Id.* §§ 1.13.1, 1.13.2.)  Also excluded are those individuals who fall within the class definition but who timely and validly opt out.  (*Id.* § 1.14.)

### a. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a) (1).  Although the numerosity requirement "is not tied to any fixed numerical threshold" and imposes no absolute limitations, the Ninth Circuit has often found that a class of at least forty members is sufficient.  *See Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010).  At the time the Court preliminarily approved the Settlement Agreement, the parties estimated that the settlement class consists of approximately 1.3 million individuals.  (*See* Mot. for Preliminary Approval at 18–19.)  Based upon Herbalife's records and the notices sent to putative class members, it appears that the class in fact exceeds 1.5 million members and distributors.  (*See* Robin

---

[15] The original Settlement Agreement excluded members who agreed to the arbitration provisions from only the monetary portion of the settlement.  The parties now agree that such members should be excluded from the portion of the settlement providing injunctive relief and have stipulated to an amendment to the Settlement Agreement to reflect the same.  (*See* Dkt. No. 127.)

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

Notice Decl. ¶ 4.)  The class size clearly satisfies Rule 23(a)'s numerosity requirement, as joinder of the approximately 1,532,652[16] class members would be impracticable.

### b. Commonality

To meet the commonality requirement, a plaintiff must demonstrate that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This requires a showing that "the class members 'have suffered the same injury.'"  *Wal-Mart*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co.*, 457 U.S. at 156).  The "same injury" requirement can be misleading.  It does not mean that each class member must suffer the same violation of the law; rather, the class members' claims must share a common contention capable of class-wide resolution.  *Id.*  The commonality requirement under Rule 23(a) is "less rigorous" than the predominance inquiry under Rule 23(b).  *See Hanlon*, 150 F.3d at 1019.  The inquiry "does not turn on the number of common questions, but on their relevance to the factual and legal issues at the core of the purported class' claims."  *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014).  The requirement is met when even a single common question exists, so long as it is "apt to drive the resolution of the litigation."  *Id*; *see also Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Wal-Mart Stores*, 131 S. Ct. at 2551).  Whether a common question will drive the resolution of a case depends on the nature of the underlying legal claim.  *Jimenez*, 765 F.3d at 1165.

Common questions will drive the resolution of Plaintiffs' claim for violations of California's Endless Chain Scheme Law.  The basic inquiry of whether Herbalife's business and marketing model in fact constitutes an endless chain scheme prohibited by Penal Code section 327 is common among all the class members.  This determination depends on other common questions, such as whether Herbalife required members and distributors to pay for the right to sell Herbalife products or receive monetary rewards for recruiting new members.  *See* Cal. Penal Code § 327 ("[A]n 'endless chain' means any scheme for the disposal or distribution of property whereby a participant pays a valuable consideration for the chance to receive compensation for introducing one or more additional persons into participation in the scheme or for the chance to receive

---

[16] The Court arrived at this figure by deducting the 687 individuals who have validly opted out of the settlement from the 1,533,339 individuals to whom the claims administrator directed notice.  (Robin Notice Decl. ¶¶ 4, 14, Ex. E.)

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

compensation when a person introduced by the participant introduces a new participant."). These common questions are sufficient to satisfy Rule 23(a).

Plaintiffs' claims under the UCL and FAL are also likely to generate common answers. These claims depend, for example, upon whether Herbalife's representations regarding the chance of financial success and the legitimacy of membership as a real "business opportunity" constitute unfair or deceptive business practices or false advertising. The resolution of these inquiries may depend upon whether the company's Statements of Average Gross Compensation for the years between 2008 and 2013 in fact contained misrepresentations or omissions, as well as whether the alleged misrepresentations or omissions were material to members' decisions to join Herbalife. These common questions also meet Rule 23(a)'s commonality requirement.

### c.  Typicality

Typicality under Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of those of the class. Fed. R. Civ. P. 23(a)(3). A class representative's claims are typical "if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether [class] members have the same or similar injury [as the named plaintiffs], whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

The named plaintiffs and class representatives include Mr. Bostick, Ms. Vasko, Ms. Trotter, Ms. Molnar, and Mr. Cote. (*See* FAC ¶¶ 1–10.) Each of these individuals purchased IBPs and signed agreements to become Herbalife distributors. (FAC ¶¶ 2, 6–10.) Each of these individuals also relied on Herbalife's representations that if they "put in the time, effort, and commitment," they could make money selling Herbalife products and recruiting others to become Herbalife distributors. (FAC ¶ 1.) And each of these individuals failed because of Herbalife's marketing plan that "systematically rewards recruiting distributors over retail sales of product" and "pays millions to those few at the top in recruiting rewards at the expense of the many at the bottom." (FAC ¶ 3.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

Although the actual experiences of and damages suffered by the named plaintiffs may differ,[17] these disparities do not necessarily defeat typicality.  *See* 7A Fed. Prac. & Proc. Civ. § 1764 (3d ed.) ("In general, the requirement may be satisfied even though varying fact patterns support the claims or defenses of individual class members or there is a disparity in the damages claimed by the representative parties and the other class members.").  Each named plaintiff brings the same three claims for relief as the class, and the basis for the named plaintiffs' claims is the same as the basis for the class's claims— that is, Herbalife's allegedly unlawful marketing plan and deceptive and misleading representations.  Accordingly, their claims are typical of those of the class.

### d.  Adequacy of Representation

Rule 23(a)(4) requires "the representative parties [to] fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy requirement turns on the resolution of two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150 F.3d at 1020.  The examination of potential conflicts of interest is "especially critical" when the parties have settled prior to class certification.  *Id.*  Courts must apply "heightened scrutiny" where the class members may have claims of varying strength.  *Id.*

Plaintiffs' counsel indicate that they "are not aware of any conflicts of interest between the named Plaintiffs and the Settlement Class."  (Mot. for Preliminary Approval at 21.)  Given the identity of issues shared by the class and proposed class representatives, the named plaintiffs' interests are sufficiently aligned with those of the class.  That differences exist with respect to the amount of products purchased by class members and the named plaintiffs (and therefore the value of relief to which each may be entitled) does not suggest a conflict of interest.  *See In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 346 (3d Cir. 2010) (rejecting claim of inadequacy and noting that "varied relief among class members with differing claims in class settlements is not unusual"); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1146 (8th Cir. 1999) ("If the objectors mean to maintain that a conflict of interest requiring subdivision is created when some class members receive more than other class members in a settlement, we

---

[17] For example, Ms. Vasko opened a nutrition club and purchased enough products to become a supervisor, (*see* FAC ¶¶ 52–59), whereas Ms. Trotter purchased leads, (*see* FAC ¶¶ 60–68).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

think that the argument is untenable. It seems to us that almost every settlement will involve different awards for various class members."). Additionally, that some of the named plaintiffs are no longer Herbalife distributors does not create a conflict in this case, as the proposed Settlement Agreement does not distinguish between current and former distributors and awards relief to both. (*See* Settlement Agreement § 1.13 (defining settlement class as "all persons who are or were Herbalife members or distributors" during the class period).)

To fully satisfy the adequacy requirement, Plaintiffs and class counsel must also demonstrate that they vigorously prosecuted this action on the class's behalf. "Although there are no fixed standards by which 'vigor' can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation." *Hanlon*, 150 F.3d at 1021. Here, the named plaintiffs and class counsel conducted extensive discovery and engaged in multiple mediation and negotiation sessions before reaching the proposed Settlement Agreement. The named plaintiffs affirm that they are prepared to fully litigate this case, and that they believe settlement to the most appropriate resolution to ensure full class recovery, as well as immediate compensation and corporate reform. (*See* Joint Decl. in Supp. of Mot. for Preliminary Approval ("Joint Decl.") Exs. B–F.)[18] Additionally, Plaintiffs' counsel invested considerable time in this case and have substantial experience with class action litigation, including pursuing claims involving consumer fraud and violations of the UCL and FAL. (*See id.* ¶¶ 6–10, 15–32.) Like the named plaintiffs, class counsel believe that the proposed settlement represents the best resolution of this case given the inherent risks of trial and the potential viability of Herbalife's factual and legal defenses. (*Id.* ¶¶ 33, 55–63.) The named plaintiffs and class counsel have proceeded throughout this litigation with the class's interests in mind; similarly, they have agreed to the proposed settlement because they believe it will benefit the class more than further litigation. This is sufficient to demonstrate adequacy under Rule 23(a).

## 2. Whether Plaintiffs Have Satisfied Rule 23(b)

The Settlement Agreement affords both non-monetary and monetary relief. Accordingly, Plaintiffs seek class certification under Rule 23(b)(2) and (b)(3). *See Ellis*,

---

[18] A copy of the Joint Declaration is available at Docket No. 96.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

657 F.3d at 987 (indicating that a district court may certify a Rule 23(b)(2) class for injunctive relief and a Rule 23(b)(3) class for damages).  Certification under Rule 23(b)(2) is appropriate when the defendant's alleged misconduct applies to the class as a whole such that injunctive or declaratory relief is appropriate on a class-wide basis.  *See* Fed. R. Civ. P. 23(b)(2).  A class may be certified under Rule 23(b)(3) when the interests of the parties are so aligned that the parties are best served by resolving their differences in a single action.  *See* Fed. R. Civ. P. 23(b)(3).  Certification under Rule 23(b)(3) requires Plaintiffs to meet the predominance and superiority requirements.

### a. Whether Injunctive or Declaratory Relief is Appropriate on a Class-Wide Basis

"Rule 23(b)(2) applies when a single injunction or declaratory judgment would provide relief to each member of the class." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013) (internal quotation marks omitted) (quoting *Wal-Mart Stores*, 131 S. Ct. at 2557).  Plaintiffs request injunctive relief in connection with their endless chain scheme claim to prohibit Herbalife from paying distributors recruiting awards that are unrelated to retail sales to ultimate users.  Plaintiffs also request an appropriate injunction in connection with their UCL and FAL claims prohibiting Herbalife from engaging in further unfair, unlawful, fraudulent, or deceptive business practices.  (*See* FAC Prayer for Relief.)  Given that Herbalife's allegedly unlawful conduct relates to its overall marketing and business structure, each member or distributor has suffered a similar harm, and the requested injunctions would accordingly provide relief to each member of the class.  As the requests "can be satisfied with 'indivisible' equitable relief that benefits all class members at once," certification comports with Rule 23(b)(2).  *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 541 (N.D. Cal. 2012).

Although the eighteen objectors do not formally oppose class certification in connection with the proposed settlement, they do assert that the named plaintiffs lack standing to pursue injunctive relief.  (*See* Dkt. No. 121 at 38–41; *see also* Dkt. No. 134 at 13–16.)  Objectors contend that all of the named plaintiffs are no longer Herbalife distributors and that, accordingly, no named plaintiff has standing to enforce the thirteen proposed corporate reforms.  The facts, however, do not support this contention.  As recently as April 27, 2015, Ms. Molnar affirmed that she currently remains an Herbalife distributor or member.  (*See* Dkt. No. 138-2, ¶ 4.)  Additionally, Ms. Vasko declared on

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

April 25, 2015 that since she joined Herbalife in September 2012, she has "remained continuously" a distributor of Herbalife products. (*See* Dkt. No. 138-1.) Accordingly, the standing objections lack merit, and certification under Rule 23(b)(2) is appropriate.

### b. Whether Common Questions Predominate Over Individualized Inquiries

Predominance under Rule 23(b)(3) regards whether the proposed class is sufficiently cohesive to warrant class treatment. *Hanlon*, 150 F.3d at 1022. Whereas Rule 23(a)'s commonality requirement focuses on the presence of common legal questions, Rule 23(b)(3)'s predominance requirement focuses on the balance between the common and individual issues. *Id.* "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino*, 97 F.3d at 1234. "Whether judicial economy will be served in a particular case turns on close scrutiny of 'the relationship between the common and individual issues.'" *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) (quoting *Hanlon*, 150 F.3d at 1022).

As discussed above in connection with Rule 23(a), the Court finds that common questions exist with respect to each of Plaintiffs' claims. The relevant inquiry under Rule 23(b) is whether these common questions predominate. Plaintiffs' own counsel recognize that the litigation involves certain individual issues. For example, during discovery Herbalife produced surveys indicating that 73% of its distributors joined the company to obtain a discount on products they purchased for personal consumption and not to pursue a business opportunity. (*See* Mot. for Final Approval at 14–15.)

Although the reason why class members chose to become Herbalife distributors may be highly individualized, this does not necessarily mean that the issue will disrupt judicial economy or result in numerous mini-trials. The ultimate issue driving Plaintiffs' endless chain scheme claim is whether distributors paid money for: (1) the right to sell a product and (2) the right to receive rewards for recruiting other distributors, which were unrelated to the sale of products to ultimate users. *See Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776, 781–82 (9th Cir. 1996) (adopting the Federal Trade Commission's standard for determining what constitutes a pyramid scheme). This inquiry may be resolved on a class-wide basis without resorting to an individual inquiry into each member's reason for

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

joining the company.  If the surveys are credible and in fact most distributors joined Herbalife for personal consumption purposes, this finding could undermine Plaintiffs' claim that the company operates as an illegal pyramid scheme, as the distributors could be determined to be the "ultimate users" of products purchased for their own consumption.  *See F.T.C. v. BurnLounge, Inc.*, 753 F.3d 878, 887 (9th Cir. 2014) ("BurnLounge is correct that when participants bought packages in part for internal consumption . . . the participants were the 'ultimate users' of the merchandise and that this internal sale alone does not make BurnLounge a pyramid scheme.").  Nevertheless, the overriding inquiry is whether distributors received rewards "primarily in return for selling the right to participate in the money-making venture"—that is, in return for recruiting new Herbalife distributors.  *See id.* at 887–88.  The resolution of this inquiry does not depend on the reason why a distributor joined Herbalife.  Accordingly, the differences between distributors' motivations do not defeat predominance in this case.

Plaintiffs' counsel also recognize that damages may present an obstacle to predominance and class certification.  (Mot. for Final Approval at 15.)  In connection with their UCL and FAL claims, Plaintiffs seek disgorgement and injunctive relief only.  (*See* FAC ¶¶ 314–15, 324–27.)  Assuming Plaintiffs prevail on these claims, these remedies may be readily fashioned on a class-wide basis and do not require individual proof, as the disgorgement remedy depends upon Herbalife's own profits and the equitable relief depends upon what conduct and representations are found to be unfair, deceptive, false, or otherwise unlawful.

Plaintiffs seek rescission, restitution, and compensatory and consequential damages (where not inconsistent with rescission or restitution) in connection with their claim under the Endless Chain Scheme Law.  (*See* FAC ¶ 258.)  Plaintiffs aver that under the law of the case, class members are limited to rescission as the sole remedy for this claim.  (*See* Mot. for Final Approval at 15–16 (citing Dkt. No. 40 at 10–11.).)  Contrary to Plaintiffs' assertion, however, the Court did not previously hold that rescission is the only available remedy for an endless chain scheme claim.  Rather, in ruling on Herbalife's motion to dismiss the original Complaint, the Court merely noted that the only remedy Mr. Bostick sought was rescission, and the Court then found that he would be entitled to rescission to the extent he could return products he purchased from Herbalife.  (*See* Dkt. No. 40 at 10–11 ("The only remedy which Plaintiff seeks for his

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

Endless Chain Scheme claim is rescission. . . . Plaintiff can still return the International Business Pack that he purchased. . . . Therefore, if Plaintiff prevails in this action, he will be entitled to $95.95 in rescission, and the first cause of action cannot be dismissed on the ground that no remedy is available.").)[19]

California statutory law permits participants in an endless chain scheme to "rescind the contract upon which the scheme is based" and "recover all consideration paid pursuant to the scheme, less any amounts paid or consideration provided to the participant pursuant to the scheme." Cal. Civ. Code § 1689.2. The Court is not aware of any binding authority discussing whether the statute permits the recovery of consequential damages. Assuming Plaintiffs prevailed on their endless chain scheme claim, the Court would have to consider whether they are entitled to consequential damages under section 1689.2. This determination involves a question of law and is clearly capable of class-wide resolution. The Court is mindful that assessing consequential damages could result in numerous individualized inquiries. But given the legal uncertainty as to whether consequential damages are recoverable, the Court does not find the possibility that damages will differ sufficient to swing the balance in favor of individual litigation. Accordingly, the Court finds that sufficient common questions predominate so as to warrant class treatment under Rule 23(b).

### c. Whether A Class Action is the Superior Method of Adjudication

Rule 23(b)(3) also requires a class action to be superior to other methods of adjudication. The superiority inquiry "requires [a] determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. This determination is guided by consideration of four non-exclusive factors listed in Rule 23(b)(3). *See* Fed. R. Civ. P. 23(b)(3)(A–D).

---

[19] Indeed, Herbalife's motion to dismiss argued only that Mr. Bostick was not entitled to rescission in connection with his endless chain scheme claim. (*See* Dkt. No. 22 at 18–19.) Although Mr. Bostick argued in his opposition that he should not be limited to rescission, and that California Civil Code section 1692 permits the recovery of restitution and consequential damages on this claim, (*see* Dkt. No. 27 at 18–19), the Court only addressed the limited argument advanced by Herbalife—that is, whether Mr. Bostick was entitled to rescission.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | |

The first Rule 23(b)(3) factor considers the individual interests at stake. Fed. R. Civ. P. 23(b)(3)(A). Where the individual class members have suffered only slight damages, this factor weighs in favor of finding superiority and certifying a class action. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001). Indeed, in cases with the potential for only small individual recovery, class certification may be the only feasible method of adjudicating a claim. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013). This case involves a large class of over 1.5 million individuals. Many of the individuals stand to recover only small sums of money. The practical unlikelihood that such class members will pursue individual lawsuits against Herbalife weighs in favor of a finding of superiority. Although some putative class members no doubt invested heavily in Herbalife and may be entitled to a large monetary recovery for the company's alleged wrongdoing, these individuals may opt out of the proposed settlement if they believe that an individual lawsuit will better resolve their injury.

The second Rule 23(b)(3) factor considers "the extent and nature of any litigation concerning the controversy already begun by or against class members." Fed. R. Civ. P. 23(b)(3)(B). This factor is intended to ensure judicial economy by reducing the possibility of multiple lawsuits. *Zinser*, 253 F.3d at 1191. Plaintiffs' counsel have indicated that they have no knowledge of any pending state or federal litigation against Herbalife involving the claims released by the proposed settlement. (*See* Mot. for Preliminary Approval at 26.) Plaintiffs' counsel communicated with Herbalife and conducted independent legal research in coming to this conclusion. (*Id.*; *see also* Joint Decl. ¶ 73.) Thus, this factor also favors superiority.

The third and fourth factors under Rule 23(b)(3) are also aimed at efficient litigation. *See Zinser* 253 F.3d at 1191–92. The third factor looks to "the desireability or undesireability of concentrating the litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(C). Given that this Court is familiar with the facts and claims involved in this litigation, this factor favors superiority. The fourth factor considers "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D). Where a district court certifies a class for the purpose of settlement, it is unnecessary to assess this factor. *See Amchem Prods.*, 521 U.S. at 620 (explaining that where the parties seek class certification in connection with a settlement, the court need not inquire whether the case, if tried, would present manageability problems). Accordingly, the final superiority factor carries little weight.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | |

In sum, Plaintiffs have satisfied the requirements for class certification under Rule 23. The proposed class meets the four threshold requirements for certification under Rule 23(a), and sufficient common questions predominate so as to warrant class treatment and ensure that the class action is the superior method of adjudication under Rule 23(b). The Court therefore **GRANTS** Plaintiffs' request for class certification in accordance with the class definition set forth in this Order and the parties' proposed Settlement Agreement.

### B. Plaintiffs' Motion for Final Approval of Class Action Settlement

As detailed above, a district court may only approve a class settlement after a hearing and upon a finding that the settlement is fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). After considering the papers filed in connection with Plaintiffs' Motion for Final Approval, the arguments advanced at the final fairness hearing, and the relevant factors, the Court concludes that the Settlement Agreement comports with Rule 23(e). Accordingly, Plaintiffs' Motion for Final Approval is **GRANTED**.

#### 1. The Strength of Plaintiffs' Case

The first fairness factor considers the strength of the plaintiffs' case. *See Staton*, 327 F.3d at 959. In assessing the strength of the case, a district court need not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice*, 688 F.2d at 625. The Court first considers the strength of Plaintiffs' endless chain scheme claim. The Court then considers Plaintiffs' UCL and FAL claims.

##### a. Endless Chain Scheme Claim

Plaintiffs' primary claim alleges that Herbalife's business and marketing model constitutes an unlawful pyramid scheme in violation of California Penal Code section 327. As indicated above, this claim ultimately depends upon whether distributors paid money for both: (1) the right to sell a product and (2) the right to receive rewards for recruiting other distributors unrelated to the sale of products to ultimate users. *See Omnitrition*, 79 F.3d at 781–82. Herbalife presented survey statistics during discovery estimating that approximately 73% of its members and distributors joined Herbalife

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

primarily for self-consumption purposes and not to pursue a business opportunity.  (*See* Joint Decl. ¶ 56.)  This evidence seriously undermines Plaintiffs' endless chain scheme claim, as it suggests most members did not join "for the chance to receive compensation" for recruiting new members.  *See* Cal. Penal Code § 327.  Although Plaintiffs' counsel question the survey's efficacy, they also reviewed a second survey, which indicated that over half of Herbalife's members joined for self-consumption purposes only.  (*Id.* ¶ 57.) Based on this survey evidence, a reasonable fact finder could conclude Herbalife does not operate as an illegal pyramid scheme.  (*Id.* ¶ 60.)

The eighteen objectors point to additional surveys suggesting that the 73% figure overestimates the number of Herbalife members and distributors who joined to purchase products at a discount rather than to pursue a business opportunity.  (*See* Dkt. No. 121 at 14–17.)  One of these is an industry-wide survey, which found that 29% of former direct sellers began their direct selling career for the purpose of obtaining product discounts. (*Id.* at 15–16.)  Given that this survey is not limited to Herbalife members or distributors, its probative value is minimal.  A second survey conducted by Herbalife in January 2013 found that "most former distributors joined Herbalife to supplement their income."[20]  (*Id.* at 16.)  Although this finding suggests that the risks associated with Plaintiffs' endless chain scheme claim may not be as high as Plaintiffs anticipate, it does not dispel the risks entirely.[21]  The Court is also mindful of its limited role in assessing the merits once the parties have reached a settlement agreement and will not make credibility determinations regarding the persuasiveness of one survey's results over those of another.  Plaintiffs and class counsel weighed the efficacy of the 73% figure and the results of these other surveys in concluding that the endless chain scheme claim presented real litigation risks. (*See* Decl. of Thomas G. Foley in Supp. of Mot. for Final Approval ("Foley Decl.") ¶¶ 5,

---

[20] According to the survey, 44% of Herbalife's members joined to supplement their income, 13% joined to gain a primary source of income, 10% believed their membership could raise their income, and 10% sought self-employment.  Only 17% joined to receive a product discount.

[21] Plaintiffs also contest the efficacy of this survey, as it had only forty-eight respondents, all of whom were supervisors.  (*See* Decl. of Thomas G. Foley in Supp. of Mot. for Final Approval ("Foley Decl.") ¶ 8.)  Plaintiffs note that to become a supervisor, distributors must regularly purchase a specific quantity of Herbalife products.  (*Id.*)  Thus, the respondents were more likely to have joined Herbalife for a business opportunity rather than for personal consumption purposes.  (*Id.*)

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

9 (affirming that class counsel reviewed and considered the surveys referenced by the objectors in connection with the settlement negotiations and found the survey with the 73% figure most credible).)  This suggests that the settlement is fair and not the product of collusion or overreaching.

### b.  UCL and FAL Claims

Significant evidentiary risks accompany Plaintiffs' claims for violations of the UCL and FAL.  One basis for these claims is Plaintiffs' belief that Herbalife's Statements of Average Gross Compensation from April 2009 to February 2013 were deceptive and misleading.  (*See* FAC ¶¶ 19–27, 81, 179–92, 261, 274–79, 318, Ex. A.)  During the course of discovery, Herbalife disclosed evidence that after it adopted a more comprehensive disclosure statement in its marketing materials in February 2013 showing the number of members and distributors who earn no income by participating in the program, the number of members and distributors who joined Herbalife actually increased.  (*See* Mot. for Final Approval at 13.)  This evidence would support Herbalife's argument that the alleged misrepresentations and omissions in the earlier Statements of Average Gross Compensation were not material and did not impact members or distributors' decisions to join Herbalife.[22]

A second basis for Plaintiffs' UCL and FAL claims are the allegedly false, misleading, and deceptive packaging and handling and freight fees charged by Herbalife before April 14, 2013.  (*See* FAC ¶¶ 262, 280–98, 319, 322–23.)  Plaintiffs allege that the 7% packaging and handling fee charged for each product order was based upon the total suggested retail price of the products, which far exceeded the actual packaging and handling fees Herbalife incurred in distributing orders and thereby amounted to a "secret profit generator[]."  (FAC ¶¶ 280–84.)  Plaintiffs also allege that Herbalife represented that the freight fee charged for product orders was a direct pass through charge, when in fact Herbalife paid far less than the fee to ship and deliver its goods.  (FAC ¶¶ 285–98.)

---

[22] The Court is mindful that a claim for fraud under the UCL is distinct from a common law fraud claim, as the relevant inquiry is not whether deception in fact occurred, but whether the public is likely to be deceived.  *See  Searle v. Wyndham Int'l., Inc.*, 102 Cal. App. 4th 1327, 1335 (Cal. Ct. App. 2002) (citing *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 888 (Cal. Ct. App. 1999)).  Nevertheless, the evidence would lend support to Herbalife's argument that its earlier disclosures were not likely to deceive any potential members or distributors.

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|----------|----------------------|------|--------------|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

Plaintiffs maintain that these theories of liability are uncertain, as evidence disclosed during discovery suggested that some distributors successfully resold Herbalife products at the full suggested retail price, including all costs of shipping and handling, such that these distributors suffered no loss from the alleged misrepresentations. (*See* Mot. for Final Approval at 13; *see also* Reply at 8.) Plaintiffs also cite to *Searle v. Wyndam International, Inc.*, 102 Cal. App. 4th 1237 (Cal. Ct. App. 2002), as adverse legal authority which they would have had difficulty overcoming in pursuing these statutory claims. In *Searle*, the California Court of Appeal rejected the notion that a hotel's 17% service charge, which the hotel failed to disclose was paid to its servers, amounted to a fraudulent business practice or false advertising under the UCL or FAL. 102 Cal. App. 4th at 1335. The court reasoned that the hotel's patrons had no right to know how much the hotel pays its servers, and that the hotel had "no obligation to advise consumers about what it does with the revenue it receives from them." *Id.* Although the Court does not agree that *Searle* would necessarily have been dispositive of these claims, its reasoning does suggest that Herbalife members and distributors have no real interest in whether Herbalife in fact profited from packaging and handling or freight fees, so long as the company clearly disclosed the fact and amount of the fees.

The eighteen objectors, however, maintain that these theories of liability are stronger than Plaintiffs estimate. The objectors cite to *Ehret v. Uber Technologies, Inc.*, No. CV 14-00113 EMC, 2014 WL 4640170, at *2 (N.D. Cal. Sept. 17, 2014), as support. *Ehret* involved a UCL claim related to a 20% mandatory "gratuity" charge that Uber represented was paid to the driver when the company allegedly retained a portion of the charge itself. The court distinguished *Searle* on the ground that the hotel in that case "made no representation about the nature of the service charge or where the funds collected would be distributed." *Id.* at 9. In contrast, the plaintiff in *Ehret* alleged that Uber actually misrepresented the purpose of the 20% "gratuity" charge. On that basis, the *Ehret* court found that *Searle* was not controlling. *Id.*

*Ehret* appears more readily analogous here, at least with respect to the freight charge theory of liability, as Plaintiffs allege that "all of Herbalife's disclosures implied a direct pass through of third party FedEx charges." (FAC ¶ 291.) If Herbalife in fact retained a portion of the charge itself, this misrepresentation could be actionable regardless of the California Court of Appeals' statements in *Searles*. Plaintiffs appear to concede as much, but nevertheless believe that the claim could still prove problematic, as

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

Herbalife could argue that it lost money on the freight charges, depending on the weight and distance of the products shipped.  (*See* Reply at 9.)

Plaintiffs' counsel believe the packaging and handling fee theory falls somewhere in between *Searle* and *Ehret*.  They also believe that, to the extent *Searle* does not foreclose the theory entirely, the claim could still present litigation challenges, particularly with respect to calculating restitution damages on a class-wide basis.  To that end, Plaintiffs point to evidence that some Herbalife members and distributors recouped the packaging and handling fee on resale, as well as the reality that the aggregate sums spent by each class member on packaging and handling costs would require individual proof.  (*See* Reply at 10.)

Based on the foregoing, it appears that Plaintiffs and their counsel adequately accounted for the strengths and weaknesses of their case and reasonably projected the potential risks of further litigation.  This suggests that the settlement is fair and reasonable.  Although the objectors assert that the Settlement Agreement unfairly deprives class members of monetary relief for these claims, (*see* Dkt. No. 121 at 24–25), this objection is somewhat misguided.  Business Opportunity Claimants may include the allegedly deceptive packaging and handling fees, as well as freight charges, in their estimated losses, and Product Return Claimants will also receive compensation for these costs.[23]  (*See* Reply at 11; *see also* Settlement Agreement ¶¶ 4.3.1, 4.4.5.)  Accordingly, although there is no separate, independently named fund for compensating class members for allegedly unlawful packaging and handling and freight fees, class members will still recover for these losses.

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

The second factor considers the risk, expense, complexity, and likely duration of further litigation.  "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (2004) (internal quotation marks omitted).  Here, Plaintiffs assert that the litigation burdens are

---

[23] At the hearing on May 11, 2015, class counsel affirmed that these costs and expenses could be recovered in business opportunity and product return awards.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

"monumental." (Mot. for Final Approval at 14.) Both parties have already expended significant time, effort, and resources in conducting discovery and reaching the proposed Settlement Agreement. (*See* Joint Decl. ¶¶ 15–32.) Assuming Plaintiffs prevailed at the class certification and summary judgment stages, a trial on the merits would require even further discovery, and would no doubt prove to be expensive and time-consuming for the parties, the class, and the Court. The likelihood of an appeal of both the class certification order and a judgment on the merits suggests that this matter would not reach a final resolution in the near future. In contrast, the proposed Settlement Agreement affords immediate class relief without the attendant risks and costs of trial. This factor therefore favors approval.

### 3. The Risk of Maintaining Class Action Status Throughout the Trial

The third factor considers the risk of maintaining class action status. In this case, the parties did not litigate the issue of class certification before reaching the Settlement Agreement. Although the Court has found certification to be appropriate for purposes of the proposed settlement, the issue has not been fully and contentiously briefed, as Herbalife agreed not to oppose settlement certification. Nevertheless, Herbalife reserves the right to challenge certification if the Court does not grant final settlement approval. (*See* Mot. for Final Approval at 14; *see also* Decl. of Daniel H. Weinstein in Supp. of Mot. for Preliminary Approval ("Weinstein Decl.") ¶ 11.)

Plaintiffs believe that certification of the proposed class is appropriate and that they would prevail on such a motion if the Court does not approve the proposed settlement. Nevertheless, Plaintiffs recognize that the issue is not certain. To that end, Plaintiffs considered the advice of Judge James Larson, a former magistrate judge with the United States District Court for the Northern District of California. (Decl. of James Larson in Supp. of Mot. for Preliminary Approval ("Larson Decl.") ¶ 2.)[24] Judge Larson conducted an independent neutral evaluation of the range of reasonable values of Plaintiffs' case. (*Id.* ¶¶ 4–7.) With respect to the issue of certification, Judge Larson concluded that the sheer size of the proposed class "creates problems with respect to all of the factors in Rule 23(b), including standing, predominance, damages, and manageability." (*Id.* ¶ 7.)

---

[24] A copy of Judge Larson's declaration is available at Docket No. 96-1.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

Plaintiffs considered at least two potential predominance-defeating issues, including the primary reason why members and distributors joined Herbalife, as well as damages.  Based on the limited briefing on the certification question, the Court does not believe that the disparate motivations of members and distributors necessarily defeats predominance.  But the Court recognizes that the issue of damages would introduce uncertainty and complexity and, upon full briefing, could demonstrate that relief on a class-wide basis is impractical and requires highly individualized inquiries.[25]  Given Herbalife's expressed intent to oppose certification absent settlement, the size of the proposed class, and the uncertainty regarding whether consequential damages could be measured on a class-wide basis, it is far from clear that Plaintiffs would prevail after a full briefing of the certification question.  This factor therefore favors approval.

### 4.  The Amount Offered in Settlement and the Method of Distribution

The fourth factor considers the amount offered in settlement.  In considering the overall fairness of a settlement, a court should view "the complete package taken as a whole, rather than the individual component parts."  *Officers for Justice*, 688 F.2d at 628.  A proposed settlement may be fair, adequate, and reasonable even though greater recovery might be available to the class members at trial.  *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair.").  Further, the Ninth Circuit has long deferred to the parties' private, consensual decisions.  *See Hanlon*, 150 F.3d at 1027.  A district court must also find that a proposed settlement's plan for allocation among the class members is fair and reasonable before granting final approval.  *See Class Plaintiffs*, 955 F.2d at 1284–85.

---

[25] As the Court has noted, it has not yet considered or ruled on whether Plaintiffs are entitled to consequential damages for their endless chain scheme claim.  Assuming such damages are recoverable, it is not clear that the calculation or distribution of such damages is readily susceptible to class treatment.  Plaintiffs concede as much and have not offered any method for measuring such damages on a class-wide basis.  (*See generally* Mot. for Final Approval.)  Although the Ninth Circuit has stated that damages calculations alone cannot defeat certification, *see Leyva*, 716 F.3d at 513,  the Supreme Court has made clear that damages must still be capable of measurement on a class-wide basis to demonstrate predominance under Rule 23(b)(3), *see Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432–33 (2013).

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | |

### a. The Monetary Relief

The Settlement Agreement provides for two separate monetary funds, including $15 million to compensate Business Opportunity Claimants and $2.5 million to reimburse Herbalife members and distributors for unopened and unused products. (*See* Settlement Agreement ¶ 4.) As of May 12, 2015, the aggregate value of the awards to Business Opportunity Claimants is $7,396,407.90. (*See* Supplemental Robin Notice Decl. ¶ 5.) Among those claimants who purchased at least $750 worth of Herbalife products, the average award is $1,101.48; the largest award is $98,588.36. (*Id.*) At least 114 of these claimants will receive payments greater than $10,000, and at least 329 will be entitled to an award of more than $5,000. (*Id.*) Claimants who did not purchase at least $750 in Herbalife products will receive a flat award of $20. (*Id.*)

The objectors contend that the $15 million business opportunity fund will not provide fair or adequate class compensation. (*See* Dkt. No. 121 at 7–24.) They first attack Plaintiffs' estimation of the case's total value, asserting that Plaintiffs have offered no evidence of the potential range of recovery. This objection is somewhat misguided, however, as Plaintiffs have provided declarations from the mediator who helped resolve this case, retired Judge Daniel Weinstein, as well as the independent evaluator, Judge Larson. Both affirm that the proposed settlement represents a reasonable recovery in light of the facts and the parties' claims and defenses. (*See* Weinstein Decl. ¶¶ 3, 12, 14, 18; *see also* Larson Decl. ¶ 11 (noting that the proposed settlement is within the range he suggested).) Although Plaintiffs' failure to provide the Court with other documentary evidence prevents the Court from arriving at its own independent estimate of the value of Plaintiffs' case, the Court does not find this failure to be fatal given the objective third-party evaluations supporting the settlement's fairness and reasonableness.

The objectors also assert that Plaintiffs seriously undervalued the endless chain scheme claim. Using their own methodology, the objectors value this claim between approximately $700 million and $1.2 billion. (*See* Dkt. No. 121 at 14–24.) The methodology, however, assumes that 77% of the class joined Herbalife to pursue a business opportunity and would be entitled to an award as a Business Opportunity Claimant. (*See id.* at 17.) The objectors arrived at the 77% figure based upon three surveys other than the one Plaintiffs relied upon in reaching the proposed settlement, which estimated that only 27% of the class joined Herbalife for purposes other than self-

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

consumption. As noted above, it is not clear to the Court that these surveys are reliable. One is an industry-wide survey of direct sellers, which reveals nothing specific to Herbalife's members or distributors. And another had only forty-eight respondents, all of whom were Herbalife supervisors and therefore likely to have invested in the company for a business purpose. But even assuming the objectors' methodology is sound, it does not take into account the risk that Plaintiffs might not prevail on this claim at trial. Given that Plaintiffs and their counsel considered these other surveys, found them to be incredible, and evaluated the endless chain scheme claim in light of its factual and legal weaknesses, the Court finds the $15 million business opportunity fund sufficient to provide fair and adequate compensation to those class members who suffered harm investing in Herbalife as an entrepreneurial venture.[26]

     Finally, the objectors contend that the settlement fails to adequately compensate class members for losses incurred on packaging and handling and freight fees. (*See* Dkt. No. 121 at 24–28.) They estimate that these losses exceed at least $260 million. (*Id.* at 25.) This estimate is based upon what they believe to be a reasonable markup of 100%. (*Id.*) The Court has already discussed some of the litigation risks associated with this theory of recovery, particularly the fact that discovery revealed many Herbalife members and distributors resold purchased products at the full suggested retail value, thereby recouping the cost of packaging and handling and freight fees. These class members suffered no monetary loss and cannot be included in the estimated value of the claim. Additionally, the Settlement Agreement provides compensation to those Business Opportunity Claimants who in fact lost money investing in Herbalife products, as these claimants are entitled to the lesser of 100% of their estimated total losses (including losses incurred in connection with packaging and handling and freight fees) or 75% of the total value of the products they purchased. And class members submitting claims to the product return fund will be compensated for the costs of packaging and handling and freight fees, as they will receive a full refund for any unused, unopened products they return to Herbalife. Thus, objectors' contention that the settlement unfairly deprives class members of compensation for these losses is somewhat speculative and does not accord with a plain reading of the Settlement Agreement.

---

[26] That each Business Opportunity Claimant will be entitled to the full value of his or her claim and will not be subject to a pro rata deduction supports this conclusion.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

In sum, the Court finds that the monetary component of the proposed Settlement Agreement is sufficient to fairly and adequately compensate the class. Although a larger award is theoretically possible, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624 (internal quotation marks omitted). In light of the risks and expense associated with proceeding to trial, the Settlement Agreement will provide class members with significant and immediate relief.

**b. The Corporate Reforms**

In addition to providing monetary relief, the Settlement Agreement also requires Herbalife to maintain thirteen corporate reforms aimed at ensuring Herbalife does not engage in unfair, deceptive, or misleading business practices for a period of three years. (*See* Settlement Agreement ¶ 5.) The objectors contend that the proposed injunctive relief falls short of that sought in the First Amended Complaint, as the settlement does not prohibit Herbalife from rewarding members and distributors for their recruiting efforts. (*See* Dkt. No. 121 at 44.) The Court has already found, however, that Plaintiffs' endless chain scheme claim was far from certain. Accordingly, a fair and reasonable settlement agreement need not require Herbalife to entirely upend its business model.

The objectors also contest the lack of an enforcement mechanism for ensuring that Herbalife in fact abides by the reforms. (*See id.* at 45.) The Court does not find this argument to be persuasive. The Settlement Agreement vests the Court with continuing jurisdiction to enforce its terms. (*See* Settlement Agreement ¶ 8.4) Additionally, Plaintiffs' counsel represent that they will oversee the reforms even though they have not requested any fees for their potential future efforts.[27] (Mot. for Final Approval at 40.) And as to any alleged "judicial imprimatur," (*see* Dkt. No. 121 at 44), the Court notes that its approval and enforcement of the proposed Settlement Agreement does not bear on the ultimate merits of Plaintiffs' claims and allegations, nor amount to an endorsement of the thirteen corporate reforms' comprehensiveness. The Court's role at this stage is

---

[27] Plaintiffs' counsel affirmed as much at the hearing.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

limited to assessing whether the proposed settlement represents a fair, reasonable, and adequate resolution of this case free from collusion, fraud, or overreaching.[28]

Although the objectors attack the substance of the proposed reforms, the Court finds them to be fair and reasonable.  The settlement requires Herbalife to include its Statement of Average Gross Compensation in the membership application, ensure that new members acknowledge receipt and review of the statement, and disclose in the statement the total number and percentage of its members who receive no compensation.  (*See* Settlement Agreement ¶¶ 5.1.11–5.1.13.)  These reforms adequately address Plaintiffs' allegation that Herbalife failed to disclose the fact that many members and distributors generated no income from their participation in the program.  The agreement also requires Herbalife to prohibit both: (1) current members from requiring new recruits to purchase Herbalife products as a condition to membership, and (2) current members from selling leads to other members or purchasing leads from any source.  (*See id.* ¶¶ 5.1.8, 5.1.9.)  These requirements go to the core of Plaintiffs' endless chain scheme claim and help ensure that current members do not take advantage of other members or new recruits.  Additionally, the agreement provides for several broad-based reforms aimed at mitigating the losses members may incur in investing in Herbalife as a business venture.  To that end, the settlement requires Herbalife to: (1) discourage members from incurring debt, (2) require members to serve a minimum time and receive training before opening a nutrition club, and (3) maintain procedures for enforcing its internal rules and regulations.  (*See id.* ¶¶ 5.1.5, 5.1.7, 5.1.10.)

The objectors assert that these reforms are inadequate, as Herbalife has already initiated some in response to the filing of this lawsuit.  The objectors also contend that the limited duration of the reforms renders them unreasonable and inadequate.  That Herbalife instituted some of the reforms before the parties reached the proposed Settlement Agreement does not render the relief illusive or incomplete.  Pursuant to the

---

[28] Additionally, as Plaintiffs' counsel argued at the hearing, the objectors' concerns regarding the substantive adequacy of the proposed corporate reforms are internally inconsistent.  On the one hand, the objectors assert that the reforms do not require meaningful change and will not provide real class relief.  At the same time, however, the objectors argue that the Court should not approve the reforms because doing so may discourage government regulators from investigating Herbalife.  The notion that the reforms are meaningless, and yet at the same time substantial enough to halt investigations into Herbalife's business practices, is purely speculative and lacks a logical basis.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | |

settlement, Herbalife will be required to maintain the reforms for a period of three years. Absent a judicially-enforceable settlement agreement, Herbalife would be free to revert to its old policies, practices, and procedures. Accordingly, the Court is satisfied that the proposed injunctive relief will confer a real benefit on the class as a whole.

### c.  The Method of Distribution

In assessing the overall fairness and reasonableness of the amount offered in settlement, the Court must also consider the method of distribution. "A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable." *See In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001). The proposed method of distribution here will fairly compensate class members according to their injuries.

Class members who joined Herbalife to pursue a business opportunity are entitled to monetary compensation from the $15 million business opportunity fund. Those claimants who purchased at least $750 in Herbalife products will receive a pro rata award equal to the lesser of 100% of his or her total losses or 75% of the total value of the products he or she purchased. Those claimants who purchased less than this threshold amount will receive a flat $20 award. Although the objectors and amici aver that this system unfairly favors claimants who purchased greater values and quantities of Herbalife products, the differential treatment appears reasonable in light of the facts and circumstances of this case. Survey evidence suggests that a majority of all Herbalife members and distributors joined to obtain a product discount and not to pursue a business opportunity. Given the product purchase requirements for becoming a supervisor, members who purchased less than $750 worth of Herbalife product in one year are likely to be among those who joined primarily for self-consumption purposes and who suffered no loss. To the extent these individuals affirm that they did join for a business purpose, however, they are still entitled to $20, as well as full relief from the product return fund. Conversely, those members who purchased at least $750 worth of product in one year are likely to have joined Herbalife to pursue a business opportunity. And these individuals will be compensated for the full value of their estimated loss, or 75% of the value of the products they purchased. Thus, although it is possible some class members qualifying for

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | |

only a flat rate award would have been entitled to greater compensation if they qualified for a pro rata award, the likelihood of this occurrence is low.[29]

Class members who did not join Herbalife to pursue a business opportunity cannot obtain monetary relief from the $15 million business opportunity fund, but they may seek compensation from the product return fund. To do so, they need only return unopened, unused products to the company; they will receive a refund for the full retail value of the products and will not be charged for return shipping. Although the Settlement Agreement limits refund awards to products purchased over one year ago, this limitation is reasonable in light of Herbalife's policy permitting members to return unopened, unused products within one year of purchase.

Given that the reason why an individual joined Herbalife impacts whether or not he or she is likely to have suffered any damages, the Settlement Agreement's distinction between Business Opportunity and non-Business Opportunity Claimants is reasonable. Further, the distinction between pro rata and flat rate Business Opportunity Claimants is based upon reasonable assumptions regarding the likelihood and scope of their potential losses. Finally, the method of distribution among the pro rata claimants is logically tied to each claimant's loss or investment. Overall, these parameters ensure that the business opportunity awards are fair and reasonable. That every class member, regardless of his or her reason for joining or level of investment in Herbalife, may return unused, unopened products for a full refund and stands to benefit from the corporate reforms provides additional relief to which the class members would not otherwise be entitled. Based on the forgoing, the Court finds the plan of allocation fair, adequate, and reasonable.

### 5.  The Extent of Discovery Completed and the Stage of the Proceedings

The fifth factor looks to the extent of discovery and the stage of the proceedings. These considerations may reflect the parties' knowledge of the case and are therefore relevant to the overall fairness of a settlement. *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527. Where the parties have conducted extensive discovery, this factor favors final approval "because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Id.* (internal quotation marks omitted). "A settlement following sufficient discovery and genuine

---

[29] Indeed, none of the eighteen objectors claim to have been prejudiced in this manner.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

arms-length negotiation is presumed fair." *Id.*; *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), as amended (June 19, 2000) (noting that a court may consider both formal and informal methods of discovery, investigation, and research).

The parties began conducting formal discovery soon after Mr. Bostick filed the original Complaint. In late 2013, the parties exchanged initial disclosures and served requests for production. (*See* Joint Decl. ¶ 15.) The parties resolved a discovery dispute regarding Herbalife's refusal to produce certain documents, pursuant to which Herbalife agreed to produce over 18,500 physical documents totaling over 148,000 pages, as well as 2.4 million pages of electronic text files. (*Id.* ¶¶ 16–17.) These documents contained information regarding, among other matters, distributor and member levels as well as purchase information. (*Id.* ¶ 18.) Plaintiffs reviewed and analyzed the documents with the aid of a documents expert. (*Id.*) Both parties conducted numerous depositions and served interrogatories, requests for admissions, and further requests for production. (*Id.* ¶ 19.) Plaintiffs also investigated Herbalife nutrition clubs and fit camps; interviewed current and former Herbalife members, distributors, and consumers; sampled Herbalife products; interviewed Herbalife senior executives and managers; and inspected the company's quality control facilities, research and development offices, and corporate headquarters. (*Id.* ¶¶ 20–21.)

In addition to these discovery and investigatory efforts, Plaintiffs also conducted extensive legal research and consulted with experts regarding the question of class certification. (*Id.* ¶ 22.) Beginning in February 2014 and continuing through August 2014, the parties engaged in extensive negotiations, including attending six formal mediation sessions before Judge Weinstein and his co-mediator. (*Id.* ¶ 26.) The parties also conducted direct settlement negotiations, and Plaintiffs retained an independent evaluator to value the case in light of the claims, facts, and Herbalife's factual and legal defenses. (*Id.* ¶¶ 27, 31–32; *see also* Larson Decl.)

Based on the foregoing, it is clear that both parties have a comprehensive understanding of the underlying facts, the strengths and weaknesses of their case, and the risks of further litigation. The information known to the parties was sufficient to permit a competent and informed decision regarding the propriety of the proposed settlement. Additionally, although the objectors disagree with class counsel's ultimate evaluation of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

the strength of Plaintiffs' case, they do not appear to attack class counsel's knowledge of the facts and legal issues presented.  This factor thus strongly favors final approval.

### 6.  The Experience and Views of Class Counsel

A district court should also consider the experience and views of class counsel, as "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation."  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Here, the record clearly reflects Plaintiffs' counsel's competency and experience.  (*See* Joint Decl. ¶¶ 1–10.)  Together, Plaintiffs' counsel have over fifty-nine years of representative experience.  (*Id.* ¶¶ 5, 8.) Mr. Foley has significant class action litigation experience and has served as lead or co-lead in at least thirteen class actions, including cases involving alleged consumer fraud and Ponzi schemes.  (*Id.* ¶ 6.)  Mr. Petersen has prosecuted class actions involving unfair business practices and consumer fraud under the UCL and FAL.  (*Id.* ¶ 9.)

Based on this experience and their knowledge of the facts and issues involved in this case, class counsel believe that the Settlement Agreement represents a fair, adequate, and reasonable resolution that is preferable to what is sure to be lengthy, contentious, and uncertain litigation.  (*Id.* ¶ 33.)  Judge Weinstein, the mediator who helped the parties resolve this dispute, agrees that the proposed settlement "represents a well-reasoned and sound resolution of this complex and highly uncertain litigation."  (Weinstein Decl. ¶ 3.) Both Judge Weinstein and the independent evaluator Plaintiffs' hired to value their case believe that the settlement's monetary and non-monetary components reasonably reflect the parties' factual, legal, and damages positions.  (*Id.* ¶¶ 12, 14, 18; *see also* Larson Decl. ¶ 11 (noting that the proposed settlement is within the range he suggested).)  Thus, this factor also favors approval.

### 7.  The Presence of a Governmental Participant

Although no government entities or agencies are a party to this action, Plaintiffs complied with the notice requirement of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, by providing notice to the requisite state and federal government officials. The Court has not received any objections from state or federal entities in connection with these proceedings.  Nevertheless, Plaintiffs' counsel represent that the parties met

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | | |

and conferred with the representatives of several state Attorneys' General's offices in response to notice of the proposed settlement.  (*See* Mot. for Final Approval at 21.)  These discussions led to an amendment to the scope of the settlement release to ensure that the released claims "shall not be deemed to include any claims asserted against any of the Released Parties by any federal, state, or local governmental agency or similar authority, arising out of any statutes, rules, regulations or ordinances over which such entity has jurisdiction, provided that such claims shall not result in or allow a double recovery for any Class Member."  (*See* Dkt. Nos. 108, 109.)  This amendment appears to have cured the concerns raised by state Attorneys' General, some of whom have publicly announced investigations into Herbalife's business practices.  (*See* Joint Decl. ¶ 62.)  Given that the lack of objections by government entities does not necessarily amount to an endorsement of a class action settlement, the Court considers this factor to be neutral.

### 8.  The Reaction of the Class Members to the Proposed Settlement

The eighth factor considers the class reaction to the proposed settlement.  The proposed settlement class consists of approximately 1.5 million individuals.  As of April 13, 2015, 687 individuals have requested exclusion from the settlement.  (Robin Notice Decl. ¶ 14.)  This equates to approximately one out of every 2,183 class members.  Eighteen individuals—or approximately one out of every 8,333 class members—have filed objections with the Court.[30]  (*Id.* ¶ 15.)  Courts generally consider a low number of requests for exclusion or objections to weigh strongly in favor of settlement approval.  *See Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529; ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms . . . are favorable to the class members."); *see also Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) ("Where a settlement agreement enjoys overwhelming support from the class, this lends weight to a finding that the settlement agreement is fair, adequate, and reasonable.").

Here, the Court finds that the overall class reaction to the settlement is favorable.  Although some class members have raised vociferous objections, the number of objectors is quite small in comparison to the total class size.  Courts have approved settlements where the objector-class ratio is similar to the ratio here and even higher.  *See, e.g.,*

---

[30] As noted above, the two other individuals who filed objections have since withdrawn them.  (*See* Dkt. Nos. 115, 116; *see also* Robin Notice Decl. ¶ 15.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming district court's grant of final settlement approval for a class of 90,000 where forty-five class members objected to the settlement and 500 opted out); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118–119 (3d Cir. 1990) (affirming final settlement approval where there were twenty-nine objectors in a class of 281 members); *In re TD Ameritrade Acc't Holder Litig.*, Nos. CV 07-02852 SBA, CV 07-04903 SBA, 2011 WL 4079226, at *7 (N.D. Cal. Sept. 13, 2011) (finding a positive class reaction where, in a class of six million, there were only twenty-three objections and less than 200 requests for exclusion). The Court has addressed some of the objectors' arguments already and will address any remaining arguments below in Part IV.C. Having considered these arguments and finding them unpersuasive, the Court finds that the overall class response, both in numbers and rationale, favors the proposed Settlement Agreement.

### C. The Remaining Objections to the Settlement Agreement

The Court has already considered some of the arguments advanced by the eighteen objectors and amici TINA.org and NCL. The Court will address the remaining objections below.

#### 1. Notice and the Claims Forms

The objectors challenge the adequacy of the class settlement notice and assert that the claims form is confusing and prevented numerous class members from filing a valid, timely claim for relief. (*See* Dkt. No. 121 at 58–63.) The Court first addresses the objections to the notice and claims forms. The Court then considers the class response.

##### a. Objections to the Class Notice and Claims Forms

First, the objectors point out that the notice form "fails to provide class members with any information concerning what they might receive under the settlement." (*Id.* at 59.) The full notice form, however, clearly details the product return fund and the business opportunity cash settlement fund. (*See* Robin Notice Decl. Ex. C.) With respect to business opportunity awards, the notice details the method of distribution among individuals who purchased at least $750 worth of Herbalife products and individuals who did not. (*Id.* Ex. C at 5.) Given that each class member's potential recovery depends on

LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | **CV 13-2488 BRO (SHx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | |

the amount of Herbalife product he or she purchased, as well as the amount of his or her projected loss, it is not possible for the notice form to estimate what each individual class member might receive. As the notice clearly apprises class members of the method by which their awards will be calculated, the fact that it does not estimate an individual's potential recovery is immaterial. Moreover, the claims administrator has notified all claimants of the actual value of their settlement awards. (*Id.* ¶ 23.)

The objectors also contend that the claims form fails to apprise Business Opportunity Claimants that their award may be subject to a pro rata deduction. (Dkt. No. 121 at 60.) The full notice form, however, expressly states as much, (*see* Robin Notice Decl. Ex. C at 5), and the claims form directs class members to refer to the full notice form for an explanation of how each award will be calculated, (*see id.* Ex. D at 4). Further, the claims form states that all business opportunity awards "may be reduced based on the amount of funds available to satisfy all claims (see the Class Notice for more details)." (*Id.* Ex. D. at 4.) Accordingly, this objection lacks merit. It is also irrelevant given that no business opportunity awards will be subject to pro rata deduction.

The objectors next assert that the notice improperly implied that class members could not file both an objection to the settlement and a claim for payment. (Dkt. No. 121 at 59.) At least ten of the eighteen objectors have filed declarations demonstrating their confusion on the issue. The Court is mindful that the notice form does not expressly state that a class member may both object to the settlement and file a claim. Nevertheless, some confusion among class members is to be expected. Given that each page of the class notice directs members to a toll-free questions line, as well as the settlement website, class members seeking further clarification could readily resolve the issue.

Finally, the objectors believe that the class notice failed to reach Herbalife's Latino members and distributors. (Dkt. No. 121 at 60–63.) They believe that the email and postcard notices were insufficient, and that a greater outreach effort should have been made to ensure these class members properly understood their rights under the Settlement Agreement. Although the Court agrees in theory that a broader notice campaign could have benefited the class, the notice procedures approved here comport with due process and Rule 23. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (explaining that Rule 23 does not require actual notice to each class member). The objectors do not dispute that the combined email and postcard notices reached approximately 92.91% of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

the class.  (*See* Robin Notice Decl. ¶ 11.)  Nor do they dispute that the claims administrator distributed the notices and claims forms in both English and Spanish. (*Id.* ¶ 3, Exs. A–D.)  Under the circumstances, the notice was sufficient.

**b. Objections to the Class Response**

        In addition to challenging the propriety of the class notice and claims forms, the objectors assert that the notice procedures have "proven to be an abject failure."  (Dkt. No. 134 at 3.)  They point to the low claims rate and the short claims period as evidence that the class notice failed to reach a majority of the class members.  (*Id.* at 3–11.)  The Court recognizes that the class response rate is low, as only 7,457 class members have filed a claim for relief.  (*See* Supplemental Robin Notice Decl. ¶ 4.)  This equates to a response rate of less than 1%.

        Many courts have found that the class response rate is not the touchstone of the adequacy of the class notice.  For example, the court in *In re Packaged Ice Antitrust Litigation*, a case involving a class response of less than 1% of the total number of mailed notices, explained that "this ratio is not dispositive" and "should not be given great significance" because "many factors affect response rates."  No. CV 08-MDL-01952, 2011 WL 6209188, at *14 (E.D. Mich. Dec. 13, 2011) (finding a positive class reaction where few class members sought exclusion and no objections were filed).  The court in *In re Serzone Products Liability Litigation* expressed a similar view in stating that "the adequacy of notice is measured by whether notice reached [c]lass [m]embers and gave them an opportunity to participate, not by actual participation."  231 F.R.D. 221, 236 (S.D. W. Va. 2005).  Here, the settlement notice reached 92.91% of the class.  More importantly, however, the facts and circumstances of this case reasonably suggest a low response rate.  As has been discussed throughout this Order, survey evidence suggests that most Herbalife members and distributors joined to obtain a product discount.  These members are unlikely to have unopened and unused Herbalife products they wish to return for a refund, as they are most likely to have purchased the products for personal consumption.  Further, these individuals are unlikely to have suffered any financial losses on a failed business opportunity, as their reason for joining the company was not to generate income or pursue an entrepreneurial enterprise.  Under these circumstances, and given the low number of objections and requests for exclusion, the Court finds that the

LINK:

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

low response rate here comports with Rule 23 and does not per se demonstrate the Settlement Agreement's inadequacy.

### 2. The Scope of the Release

The Settlement Agreement's release extends to Herbalife's "present and former, direct and indirect, subsidiaries, parents, affiliates, unincorporated entities, divisions, groups, officers, directors, shareholders, partners, partnerships, joint ventures, employees, agents, servants, assignees, successors, insurers, indemnitees, attorneys, transferees, and/or representatives." (Settlement Agreement ¶ 8.1.) The objectors assert that the release is overbroad and will unfairly deprive class members of the right to sue lead generators or third parties who solicited class members to join Herbalife and caused them harm. (Dkt. No. 121 at 55–58.) According to the objectors, the scope of the release will be interpreted by future courts according to its plain terms, such that the parties' subjective intent that the release not include third party claims will not be effected. Even assuming the scope of the release may extend to Herbalife's officers and directors who engaged in lead generation, however, by its plain terms it does not extend to third party lead generation businesses unassociated with Herbalife. As a result, class members believing these businesses harmed them may still file separate lawsuits to recover damages and consequential losses.

### 3. Propriety of the *Cy Pres* Fund

TINA.org and NCL object to the *cy pres* award for unclaimed portions of the $15 million business opportunity settlement fund. (*See* Dkt. Nos. 114, 117.) A *cy pres* remedy "is a settlement structure wherein class members receive an indirect benefit (usually through defendant donations to a third party) rather than a direct monetary payment." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012). The doctrine allows a court to distribute unclaimed portions of a class action settlement "to the 'next best' class of beneficiaries." *Id.* (internal quotation marks omitted) (citing *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011). "The district court's review of a class-action settlement that calls for a *cy pres* remedy is not substantively different from that of any other class-action settlement except that the court should not find the settlement fair, adequate, and reasonable unless the *cy pres* remedy 'accounts for the nature of the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|----------|----------------------|------|--------------|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members.'" *Id.* at 819–20 (citing *Nachshin*, 663 F.3d at 1036).

The Settlement Agreement here provides that any unclaimed portions of the business opportunity cash settlement fund will be distributed to the Consumer Federation of America pursuant to the *cy pres* doctrine. Amici TINA.org and NCL primarily assert that this distribution is unfair to those Business Opportunity Claimants who only qualify for a $20 flat rate award. For the reasons detailed above, however, the Court finds the method of distribution here to be fair, adequate, and reasonable based upon the facts and circumstances of this case.

Additionally, the *cy pres* award comports with the reasonableness factors set forth by the Ninth Circuit. The Consumer Federation of America is a nonprofit organization founded to advance consumer interests through research, education, and advocacy. (*See* Decl. of Stephen Brobeck in Supp. of Mot. for Preliminary Approval ("Brobeck Decl.") ¶ 3.)[31] The organization is frequently invited to give congressional testimony on issues related to consumer interests, and the organization maintains several education and outreach initiatives. (*Id.* ¶¶ 5–7.) The organization has represented that it will use the *cy pres* award to further its existing education initiatives or, if sufficient funds exist, develop a new one focused specifically on multi-level marking programs like Herbalife. (*Id.* ¶ 8.) Given the nature of this case and Plaintiffs' claims, the Consumer Federation of America is an appropriate *cy pres* recipient.

### 4. Exclusion of Members and Distributors Subject to the Arbitration Clause

The objectors next contend that the Settlement Agreement unfairly excludes Herbalife members and distributors who signed membership agreements after September 2013 containing an arbitration provision. (Dkt. No. 121 at 28–34.) Some of the bases for this objection do not bear on the overall fairness and reasonableness of the proposed settlement. For example, the objectors argue that Herbalife waived the right to enforce the arbitration provision by failing to assert it at any time during the litigation, and that the provision is illusory and unenforceable. (*See id.* at 33–34.) The enforceability of the

---

[31] A copy of this declaration is available at Docket No. 97.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|----------|----------------------|------|--------------|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

arbitration clause is not at issue here.  The relevant inquiry is whether it is fair and reasonable to exclude individuals subject to the clause from the settlement class.

To that end, the objectors have argued that the Settlement Agreement unfairly excludes these individuals from the Rule 23(b)(3) class while including them in the Rule 23(b)(2) class.  (*See id.* at 31–33.)  The parties' second stipulation to amend the agreement, however, cures this potential defect.  The amendment changes the class definition to exclude from the settlement class "all Herbalife members or distributors who have agreed to be subject to the arbitration provisions of the Arbitration Agreement for Disputes Between Members and Herbalife contained in the Membership Application Agreement revised during or after September 2013."  (*See* Dkt. No. 127 (amending Settlement Agreement ¶ 1.13.2).)  The amendment further clarifies that the scope of the release "shall not include any individual claims asserted by any Settlement Class Member who is excluded from the Settlement Class pursuant to Paragraph 1.13.2 and who has agreed to be subject to the arbitration provisions of the Arbitration Agreement for Disputes Between Members and Herbalife contained in the Member Application Agreement revised during or after September 2013."  (*Id.* (amending Settlement Agreement ¶ 8.6).)  These amendments clearly exclude individuals subject to the arbitration provision from the settlement class and ensure that such individuals' claims will not be released pursuant to the settlement.  Thus, these individuals will not suffer any disparate treatment or prejudice.  In fact, they are likely to benefit to the same degree as settlement class members from the proposed corporate reforms, without any accompanying waiver of the right to sue Herbalife individually for damages or further non-monetary relief.

Finally, the objectors argue that the arbitration agreement likely covers all Herbalife members and distributors who have remained active since Herbalife instituted the agreement in September 2013.  (Dkt. No. 121 at 30–31.)  To support this argument, the objectors point to Herbalife's Agreement of Distributorship, which states that "the Rules of Conduct and Distributor Policies, the Sales and Marketing Plan, Ordering Procedures and Sample Forms" along with "such other rules and policies as Herbalife has published, or in the future may publish, together with such modifications and amendments as Herbalife shall make from time to time in its sole and absolute discretion (collectively, the "Rules"), are each hereby incorporated into this Agreement of Distributorship."  (*See* FAC Ex. C at 39.)  To the extent the objectors contend that all

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

current Herbalife members and distributors are subject to the September 2013 arbitration agreement via this clause, the Court disagrees. The objectors have cited no authority for the proposition that these members and distributors could be subject to an arbitration provision contained within an agreement they neither agreed to nor signed at the time they joined Herbalife simply because the company retains the right to amend its rules and policies. Nor is it clear to the Court that a binding contract such as an arbitration agreement could be included within the definition of a corporate "rule or policy." Accordingly, the objectors have identified no basis for their contention that the Settlement Agreement's exclusion of individuals expressly subject to the arbitration agreement renders the settlement unfair, unreasonable, or inadequate.

In sum, the Court finds that the majority of the relevant factors favor a finding that the Settlement Agreement is fair, adequate, and reasonable. The Court also finds the arguments advanced by a small number of objectors to be unpersuasive. Accordingly, Plaintiffs' Motion for Final Approval is **GRANTED**.

## D. Plaintiffs' Motion for Fees

Plaintiffs' Motion for Fees requests (1) an award of attorneys' fees equal to $5.25 million, or 30% of the $17.5 million combined total value of the business opportunity settlement fund and the product return fund;[32] (2) reimbursement for class counsel's costs and expenses equal to $212,862.64; and (3) incentive awards for the named plaintiffs, including a $10,000 award for Mr. Bostick and $5,000 awards for the remaining class representatives. The Court will address each request in turn.

### 1. Class Counsel's Request for Attorneys' Fees

#### a. Whether an Award of Attorneys' Fees from the Gross Settlement Sum is Appropriate

Plaintiffs' counsel seeks a percentage method fee award based upon the $17.5 million gross settlement sum. As discussed above, an award of attorneys' fees from a common fund is appropriate only where the court can: "(1) sufficiently identify the class

---

[32] For purposes of clarity and efficiency, the Court will refer to this sum as the gross settlement sum.

LINK:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

of beneficiaries; (2) accurately trace the benefits; and (3) shift the fee to those benefitting with some exactitude." *Staton*, 327 F.3d at 972 (citing *Van Gemert*, 444 U.S. at 478–79). These criteria are not met when the litigants "simply vindicate a general social grievance." *Van Gemert*, 444 U.S. at 479. But so long as each class member has "an undisputed and mathematically ascertainable claim" to a sum recovered on his or her behalf, a fee award from the sum is appropriate. *Id.*

The objectors assert that the proposed fee method is inappropriate because the $2.5 million product return fund is reversionary and has not been exhausted by the existing class claims. (*See* Dkt. No. 134 at 5 n.2.) According to the objectors, any fee award should be based upon the aggregate value of the actual claims for product returns rather than the $2.5 million fund. The United States Supreme Court and the Ninth Circuit specifically addressed this issue in *Van Gemert* and *Williams v. MGM-Pathe Communications Co.* In *Van Gemert*, the Supreme Court explained that a defendant's "latent claim against unclaimed money in the judgment fund may not defeat each class member's equitable obligation to share the expenses of litigation." 444 U.S. at 482. And in *Williams*, the Ninth Circuit, relying on the reasoning in *Van Gemert*, held that where class counsel seek a fee award based on the percentage method, the percentage should be applied to the entire common fund. 129 F.3d 1026, 1026–27 (9th Cir. 1997) (reversing district court's fee award where the court based the fee on class members' actual claims against the common fund rather than the entire value of the common fund).

Thus, a percentage method fee award based upon the $17.5 million gross settlement sum here is appropriate so long as the *Staton* criteria are met. The first requirement is satisfied, as the class definition is clear and the parties have identified a class of approximately 1.5 million individuals. The Court can also accurately trace the benefits of the settlement and shift the fee with some exactitude, as the method for apportioning each class member's business opportunity award, product return award, or both is fair and readily calculable. *See Van Gemert*, 444 U.S. at 479. The Court thus approves class counsel's request to base the fee award upon the $17.5 million gross settlement sum.

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

### b.  Whether Class Counsel's Requested Fee is Fair and Reasonable

The Court next considers whether the particular fee request is fair and reasonable. Here, Plaintiffs' counsel request a fee equal to 30% of the $17.5 million gross settlement sum, or $5.25 million.  This request diverges from the Ninth Circuit's 25% benchmark for percentage method fee recovery.  *See Hanlon*, 150 F.3d at 1029.  Nevertheless, the Ninth Circuit has emphasized that although the benchmark is "a starting point for analysis," it "may be inappropriate in some cases."  *Vizcaino*, 290 F.3d at 1048.

In evaluating a percentage method fee request that diverges from the benchmark, the relevant inquiry is whether, under all the facts and circumstances of the case, the percentage is reasonable.  *Id.*  Factors to consider include: (1) the results achieved; (2) the risk undertaken by class counsel in pursuing the case; (3) whether the settlement generated benefits beyond a cash payment; (4) the market rate for similar representations; and (5) the nature of the representation, including whether it was executed on a contingency basis.  *Id.* at 1048–50.  Some of these factors overlap with those relevant to a fee award's overall fairness and reasonableness.  *Compare In re Omnivision Techs.*, 559 F. Supp. 2d at 1046, *with Vizcaino*, 290 F.3d at 1048–50.  Accordingly, the Court will simultaneously consider the factors relevant to fee requests in general, as well as those relevant to requests above the 25% benchmark.

### i.  The Results Achieved

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award."  *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046.  Here, class counsel obtained a total of $17.5 million to be distributed among the class members, with $2.5 million reserved for product returns and $15 million reserved for class members who joined Herbalife to pursue a business opportunity and suffered a loss.  The average business opportunity award is $1,101.48, and the largest award is $98,588.36. (*See* Supplemental Robin Notice Decl. ¶ 5.)  All class members with unopened and unused Herbalife products will receive a full refund.  (Robin Notice Decl. ¶ 22.)  Thus, the settlement will provide a real and immediate benefit to class members, and this result is clearly favorable in light of the complex factual and legal issues involved in the case. This factor favors an increase from the 25% percentage method benchmark.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

### ii.    The Benefits Generated Beyond Cash Payment

In addition to the $17.5 million gross settlement sum, Plaintiffs' counsel obtained injunctive relief by negotiating for thirteen separate corporate reforms. As detailed above, these reforms will benefit all class members, regardless of why they joined Herbalife or whether they suffered any actual monetary loss. In considering the fairness and reasonableness of a fee request, a district court should recognize the value of non-monetary relief, *see Vizcaino*, 290 F.3d at 1049, and may increase an award "to reflect the benefits to the public flowing from th[e] litigation," *see Bebchick v. Washington Metropolitan Area Transit Commission*, 805 F.2d 396, 408 (D.C. Cir. 1986). The corporate reforms Plaintiffs' counsel achieved suggest that an award higher than the benchmark is appropriate in this case.

### iii.    The Risks of Litigation

The risk that further litigation might result in no recovery is a "significant factor" in assessing the fairness and reasonableness of an award of attorneys' fees. *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046–47; *see also Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance."). In evaluating the risk of the litigation, a court may consider the complexity of the legal issues involved. *In re Omnivision*, 559 F. Supp. 2d at 1046–47. Throughout this Order, the Court has detailed the various risks involved in this litigation. For example, the parties did not litigate the issue of class certification before reaching the proposed settlement. Additionally, extensive fact discovery revealed weaknesses with respect to each of Plaintiffs' claims. Given the uncertainty that Plaintiffs would prevail on a motion for class certification, a full trial on the merits, and a likely appeal, this factor favors an upward adjustment from the benchmark.

### iv.    The Skill Required and the Quality of Class Counsel's Work

The Court may also consider the skill required to prosecute and manage this litigation, as well as Plaintiffs' counsel's overall performance. *See In re Omnivision*, 559 F. Supp. 2d at 1047. As the *In re Omnivision* court noted, complex national class actions such as this one "require[] unique legal skills and abilities." *Id.* (internal quotation marks omitted). The Court has detailed the factual and legal complexities in this case, as well as

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | | Date | May 14, 2015 |
|---|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | | |

Plaintiffs' counsel's skill and experience, in connection with the Motion for Final Approval. The Court will not repeat these findings here. Overall, the Court finds that this factor generally favors Plaintiffs' counsel's fee request given the large size of the class, the legal uncertainties, and the amount recovered in settlement.

> **v.    The Contingent Nature of the Fee and the Financial Burden Carried By Class Counsel**

The contingent nature of the representation bears on the overall fairness and reasonableness of a fee request. The risk that counsel will not recover, as well as the financial burden accompanying the contingent nature of the representation, may justify a higher percentage fee award. *See In re Omnivision*, 559 F. Supp. 2d at 1047 (awarding 28% fee where class counsel spent three years and over 7500 hours litigating on a contingency basis); *see also Vizcaino*, 290 F.3d at 1050 (affirming district court's 28% fee award where class counsel litigated the case for eleven years, and, as a result, declined other work and suffered a decrease in annual income).

Plaintiffs initiated this case just over two years ago. Throughout the litigation, Plaintiffs' counsel worked on a contingency basis, with a combined total investment of 6,479.75 hours. (*See* Decl. of Scott Petersen in Supp. of Mot. for Fees ("Petersen Fee Decl.") ¶ 7; Decl. of Thomas G. Foley in Supp. of Mot. for Fees ("Foley Fee Decl.") ¶ 64.) During this time, Plaintiffs' counsel received no compensation, advanced approximately $212,862.64 in expenses, and had to decline other legal work for which they would have been paid on an hourly basis. (*See* Mot. for Fees at 21–22.) And all of this effort was at the risk that they would not receive any compensation if Plaintiffs lost at trial. Under the circumstances, the Court finds that class counsel's significant investment of time and effort into this case on a contingency basis warrants an upward adjustment from the 25% benchmark for fee awards.

> **vi.    The Awards Made in Similar Cases**

Plaintiffs' counsel cite to numerous cases awarding fee awards in excess of the 25% benchmark, ranging from 26.6% to 37.1%, with common awards of 30% and 33.33%. (*See* Mot. for Fees at 19–21.) These cases generally support class counsel's request for an upward adjustment from the benchmark. The Court notes, however, that

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | |

many of these cases involved securities litigation, more prolonged proceedings than this one, successful appeals, and larger settlement sums.  *See, e.g.*, *In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04-02147 PHX, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012) (approving 33.33% fee award in a securities class action lasting seven years); *In re Heritage Bond Litig.*, No. CV 02-1475 DT, 2005 WL 1594389, at *17 (C.D. Cal. June 10, 2005) (awarding 33.33% in a securities case involving a $27.78 million settlement).

**vii.    The Reaction of the Class**

Finally, the reaction of the class is relevant in determining the overall fairness and reasonableness of an award of attorneys' fees.  *In re Heritage Bond Litig.*, 2005 WL 1594389, at *15 ("The presence or absence of objections from the class is also a factor in determining the proper fee award.").  The Court has already discussed the class reaction to the Settlement Agreement at length.  In sum, the Court finds the reaction to be favorable, but not overwhelmingly so.  That a more favorable reaction is theoretically possible does not persuade the Court that class counsel's requested fee is unfair or unreasonable.  But the finding that the class has not clearly and significantly responded in favor of the settlement suggests that a more appropriate award may require a percentage less than the requested 30%.

**viii.    The Balance of the Factors**

In sum, the Court finds that all of the relevant factors favor an upward adjustment from the Ninth Circuit's 25% benchmark for percentage method fee awards.  Nevertheless, after considering the amount in settlement, the class reaction, the number of claims, and the fact that the parties did not proceed past the pleadings stage, the Court finds that a fee award of 28% of the gross settlement fund, or $4.9 million, will more than adequately compensate Plaintiffs' counsel for their time and efforts while ensuring that sufficient funds remain to fully compensate all claimants, without a pro rata deduction, and to assess a *cy pres* award that may allow the Consumer Federation of America to establish an educational initiative directed at multi-level marketing schemes.  The Court will compare the 28% fee award it finds most appropriate, as well as Plaintiffs' counsel's requested 30% fee award, to the lodestar as an additional measure of the fairness and reasonableness of the Court's proposed fee award.

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

### c.  The Lodestar Method Cross-Check

Courts may apply the lodestar method as a "cross-check" on the reasonableness of a percentage-based fee award.  *Vizcaino*, 290 F.3d at 1050.  The lodestar "is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).  A court may adjust the lodestar figure upward or downward by an appropriate multiplier to reflect "a host of 'reasonableness' factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment."  *Id.* at 941–42 (internal quotation marks omitted).  Where class counsel's investment of time in the litigation is minimal, such as in the case of an early settlement, the lodestar calculation may favor a lower percentage.  *Vizcaino*, 290 F.3d at 1050.

Here, Plaintiffs' counsel calculate their attorneys' fees under the lodestar method to be $3,076,403.50, based upon 6,479.75 working hours at rates ranging from $75 to $600 per hour.  (*See* Petersen Fee Decl. ¶¶ 7–9, Ex. A; Foley Fee Decl. ¶¶ 62–67, Ex. E.)  Counsel has reasonably supported this figure with evidence of the hours worked on this case, (*see generally* Petersen Fee Decl.; Foley Fee Decl.), and case law supporting the reasonableness of the hourly rates, (*see* Mot. for Final Approval at 23–24).  Counsel's suggested multiplier of 1.7 equates the attorneys' fees with the $5.25 million class counsel has requested.  A multiplier of 1.59 equates the attorneys' fees with the $4.9 million the Court finds more appropriate.  Both of these multipliers are well within the range courts have approved as fair and reasonable.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1050–51 (affirming district court's approval of a 3.65 multiplier).  For the reasons discussed above, however, the Court finds an award of $4.9 million, based upon the lower 1.59 multiplier, to be most appropriate and reasonable in this case.

### 2.  Class Counsel's Request for Reimbursement is Reasonable

Class counsel also request reimbursement for the $212,862.64 they advanced in costs and expenses in connection with the litigation.  (*See* Mot. for Fees at 24.)  At least $175,609.62 of these expenses includes fees for legal research, court filings, transcripts, expert witness consultation, mediation, photocopying, postage, and other necessary costs.  (*See* Petersen Fee Decl. Ex. B; Foley Fee Decl. Ex. F.)  Class counsel has adequately

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 13-2488 BRO (SHx)** | Date | May 14, 2015 |
|---|---|---|---|
| Title | **DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL.** | | |

documented these expenses, all of which may be reimbursed.  *See Odrick v. UnionBancal Corp.*, No. CV 10-05565 SBA, 2012 WL 6019495, at *6 (N.D. Cal. Dec. 3, 2012) (approving expenses "for a retained expert, mediation, travel, copying, mailing, legal research, and other litigation-related costs"); *Rutti v. Lojack Corp.*, No. CV 06-00350 DOC, 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012) ("Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable.").  The Court therefore approves reimbursement for these costs.

The Court declines to award reimbursement for two categories of expenses at this time.  Plaintiffs' counsel request $590.98 for "miscellaneous" expenses.  (*See* Petersen Fee Decl. Ex. B.)  Because counsel has not apprised the Court as to the nature or use of these expenses, the Court cannot reasonably conclude whether they were necessary for this litigation.  Class counsel also request $36,662.04 for "travel/meals."  (*See id.* Ex. B; Foley Fee Decl. Ex. F.)  This Court does not find meal expenses to be a necessary cost of litigation that should be borne by the class.  Accordingly, Plaintiffs' counsel's request for reimbursement for these expenses is **DENIED**, as the Court cannot segregate travel costs from meal costs based upon the existing record.  This denial is without prejudice, and the Court will review a renewed request should class counsel wish to file supplemental declarations or documentation appropriately identifying which costs were attributable to travel, which costs were attributable to meals, and why the costs were necessary.

### 3.  Class Counsel's Request for Incentive Awards is Reasonable

In the context of class action cases, incentive awards for the named representatives are discretionary but nevertheless "fairly typical."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  Incentive awards are designed "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Id.* at 958–59.  Factors to consider in determining whether to approve an incentive award include:

1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class

LINK:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 13-2488 BRO (SHx) | Date | May 14, 2015 |
|---|---|---|---|
| Title | DANA BOSTICK ET AL. V. HERBALIFE INTERNATIONAL OF AMERICA, INC. ET AL. | | |

representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Plaintiffs' counsel request an incentive award of $10,000 for Mr. Bostick and awards of $5,000 for the remaining named plaintiffs. (*See* Mot. for Fees at 24–25.) All of the relevant factors favor the proposed incentive awards. The named plaintiffs have all contributed their time and resources to this case, aided class counsel's discovery efforts and litigation strategy, provided supporting declarations, and assisted with the settlement negotiations. (*See generally* Joint Decl. Exs. B–F.) And given that Mr. Bostick was the only plaintiff named in the original Complaint, it is appropriate to compensate him for the extra time and effort he expended on the litigation.

## V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Final Approval, including the parties' second stipulation to amend the Settlement Agreement and Plaintiffs' Motion to Increase Awards. The Court also **GRANTS in part** Plaintiffs' Motion for Fees, as set forth below:

1. The Court approves class counsel's request for attorneys' fees in the amount of $4.9 million as fair and reasonable.
2. The Court approves class counsel's request for reimbursement for costs and expenses in the amount of $175,609.62.
3. The Court approves class counsel's request for incentive awards and directs payment of $10,000 to Mr. Bostick and $5,000 each to Ms. Vasko, Ms. Trotter, Ms. Molnar, and Mr. Cote.

The parties shall file a proposed judgment in accordance with this order **by no later than Friday, May 29, 2015 at 5:00 p.m.** Should class counsel wish to file additional documentation regarding the denied expenses, these documents shall be filed by not later than the same date and time.