Philip D. Dracht (SBN 219044)
 pdracht@fabianlaw.com
Scott M. Petersen (*pro hac vice*)
 spetersen@fabianlaw.com
Jason W. Hardin (*pro hac vice*)
 jhardin@fabianlaw.com
Fabian & Clendenin
215 South State Street, Suite 1200
Salt Lake City, UT 84151-0210
Telephone: (801) 531-8900

Thomas G. Foley, Jr., SBN 65812
 tfoley@foleybezek.com
Robert Curtis, SBN 203870
 rcurtis@foleybezek.com
Justin P, Karczag, SBN 223764
 jkarczag@foleybezek.com
Foley Bezek Behle & Curtis, LLP
15 West Carrillo Street
Santa Barbara, CA 93101
Telephone: (805) 962-9495

Attorneys for Plaintiffs Dana Bostick, Anita Vasko, Judi Trotter, Beverly Molnar, and Chester Cote

# IN THE UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DANA BOSTICK, a California citizen, *et al.*,<br><br>PLAINTIFFS,<br><br>vs.<br><br>HERBALIFE INTERNATIONAL OF AMERICA, INC., a Nevada Corporation, *et al.*,<br><br>DEFENDANTS. | Case No.: 2:13-cv-02488-BRO-RZ<br><br>**PLAINTIFFS' OPPOSITION TO OBJECTORS' MOTION FOR RECONSIDERATION**<br><br>Hon. Beverly Reid O'Connell<br><br>Hearing Date:   August 24, 2015<br>Time:                  1:30 p.m.<br>Courtroom:        14<br><br>Complaint filed: April 8, 2013 |

**CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... 2

I.   INTRODUCTION ............................................................................................... 1

II.  BACKGROUND AND FACTS .......................................................................... 2

III. THE NOTICE PROGRAM WAS FAIR AND ADEQUATE AND HAD A 92.91% REACH ..................................................................................................... 4

    A. Over Half of the Class Received U.S. Mail Notice ..................................... 4

    B. The Class Notice Program Used Email Appropriately ................................ 5

    C. The Class Notice Program Targeted Herbalife Members ........................... 6

    D. The Claims Period Was Sufficient .............................................................. 7

    E. No Notice Expert Is Necessary .................................................................... 8

IV. CLASS DEFINITION; STANDING TO ENFORCE CORPORATE REFORM 9

V.  THE SETTLEMENT VALUE ALIGNED WITH POTENTIAL CLAIMS ....... 10

VI. OBJECTOR'S "NEW EVIDENCE" PROVES NOTHING .............................. 10

VII. CONCLUSION ................................................................................................ 11

# TABLE OF AUTHORITIES

**CASES**

*Alvarado v. Nederend*, No. 1:08-CV-01099 OWW, 2011 WL 90228
 (E.D. Cal. Jan. 11, 2011) ..................................................................................9

*Cohorst v. BRE Properties, Inc.*, No. 3:10-CV-2666-JM-BGS, 2011
 WL 7061923 (S.D. Cal. Nov. 14, 2011) ...........................................................6

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40
 L.Ed.2d 732 (1974) ...........................................................................................4

*In Re Black Farmers Discrimination Litigation*, 856 F.Supp. 2d 1
 (D.D.C. 2011) ...................................................................................................7

*In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110
 (S.D.N.Y. 2009) ................................................................................................9

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir.
 2015) .................................................................................................................5

*Kaufman v. Am. Exp. Travel Related Servs., Inc.*, 283 F.R.D. 404
 (N.D. Ill. 2012) .................................................................................................9

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) ..............................................6

*Lane v. Facebook, Inc.*, No. C 08-3845 RS, 2010 WL 9013059 (N.D.
 Cal. Mar. 17, 2010) ..........................................................................................5

*Marshall v. Holiday Magic, Inc*., 550 F.2d 1173 (9th Cir. 1977) .............................8

*Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. Cal. 1991) ...............................................6

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*,
 No. CV 07-3072 AHM FMMX, 2009 WL 9112416 (C.D. Cal.
 June 24, 2009) ..................................................................................................7

*Murillo v. Pac. Gas & Elec. Co.*, No. 2:08-1974 WBS GGH, 2010
 WL 2889728 (E.D. Cal. July 21, 2010) ............................................................9

Priceline.com, Inc. v. Silberman, 405 F. App'x 532 (2d Cir. 2010) ........................10

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) .............................8

*Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478,
 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988) ...........................................................5

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114 (E.D.
 Cal. 2009) .........................................................................................................9

**STATUTES**

Federal Rule of Civil Procedure 23(B)(2) ..........................................................1, 2

## I. INTRODUCTION

A motion for reconsideration under Rule 59(e) seeks an "extraordinary remedy" that is appropriate under only three strictly-limited circumstances: (1) discovery of new evidence that could not with reasonable diligence have been discovered earlier; (2) a change in controlling law contravenes the decision at issue; or (3) clear error, meaning the decision "must be dead wrong." *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB SHX, 2015 WL 1746406, at *3 (C.D. Cal. Mar. 6, 2015). Objectors lack any objectively reasonable basis for contending that any of these necessary factors apply for the Court to (a) reverse its findings made in its thoughtful Minute Order [Dkt. No. 153]; and (b) reconsider the Final Judgment and Order of Dismissal [Dkt. No. 154]. Each of Objectors' arguments fails.

First, the Court was not "dead wrong" on adequacy of notice. The Class Notice was state-of-the-art, combining email and direct mail notice, with sophisticated direct emailing processes to reduce and eliminate notices being categorized by recipients as spam. The Ninth Circuit has found that email notice is an appropriate form of notice. Even if notices were received by some of the class members as "spam," other District Courts in this Circuit have found an email notice program to be adequate, even though some class members might have settings on their email account that could filter the Notice to the spam folder. Email notices were only sent to individuals that had provided their email addresses to Herbalife, and presumably knew how to operate and receive emails (considering that Herbalife communicated to them through email). And, the claims period of thirty-five (35) days was sufficient, and has been found by the Ninth Circuit to be "more than adequate."

Second, the Court was not "dead wrong" on standing. Plaintiff Beverly Molnar and Anita Vasko, as current Herbalife distributors, have standing to represent a Rule 23(B)(2) injunctive class (as argued in the underlying motion and

at oral argument). Objectors have provided absolutely no new facts or law that would cause the Court to change its finding that "facts . . . do not support [the] contention" that Molnar and Vasko lack standing.

Third, the Court was not "dead wrong" for relying on objective third party evaluations of the case value at preliminary approval. Objectors' contention that the Court did not independently assess the value of Plaintiffs' claims at the final approval hearing ignores that the Court relied on "objective third party evaluations" in determining the fairness and reasonableness of the settlement. This valuation has been validated by the Class Members' claims on the settlement fund.

And fourth, none of the allegations presented by Objectors as "new evidence" change the analysis of the fairness and reasonableness of the settlement and none of the allegations violate the Rule 23(B)(2) injunctive class corporate reforms agreed to in the Settlement Agreement.

## II.   BACKGROUND AND FACTS

On April 8, 2013, Plaintiff Dana Bostick filed a class action complaint against Defendants. (Dkt. No. 22.) Defendants moved to dismiss that Complaint; the Court denied that motion. (Dkt No. 41.)

After extensive discovery and mediation, including valuations by the mediator, the Hon. Daniel J. Weinstein (Ret.) and an independent valuation by the Hon. James Larson (Ret.), as detailed in Plaintiffs' Memorandum in Support of the Joint Motion for Preliminary Approval of Settlement, the parties settled the case. (Dkt No. 94, p. 10-12.)

On November 2, 2014, days after the parties moved for Preliminary Approval, Brent Wilkes, the executive director of the League of United Latin American Citizens' executive director, promised "We plan to object to the settlement because it won't begin to pay for the true damages that Herbalife has caused this class." (Declaration of Philip Dracht, Exh. A).

But Mr. Wilkes and Objectors did not move to intervene or otherwise object prior to the Court preliminarily approving the Settlement Agreement. The Court appointed KCC the settlement administrator (Dkt No. 105, p. 6) and approved the proposed Notice Program for giving notice to the Settlement Class directly (using e-mail and post cards). (Dkt No 105, p. 7.)

As explained in the Declaration of Eric Robin Re: Notice Procedures, filed in conjunction with Defendants' Opposition to the Motion for Reconsideration, KCC, through the use of a vender, Quad/Graphics, used industry-standard methods for minimizing the likelihood that email notices will be flagged as spam. (Decl. of Eric Robin Re: Notice Procedures, ¶6.) This includes vetting the language used in the notice. (Robin Decl. ¶7.) For this case, the vender used a range of 8 IP addresses to send out emails to allow the vender to know if, in the aggregate, email notices were being flagged as spam by internet service providers. (Robin Decl. ¶9-11.) As Robin declares, "[t]he email notices in the *Bostick v. Herbalife* settlement were sent and monitored consistent with Quad/Graphic's standard practices, and we encountered no unusual problems." (Robin Decl. ¶11.)

For the 1,533,339 Class Members, (Dkt No. 130-5, p. 3 ¶6) on December 30, 2014, KCC mailed Postcard Notices to 481,883 Class Members and emailed notices to 1,051,342 Class Members. (Dkt No. 130-5, p. 3 ¶¶7-8.) Because of email bounce-backs, KCC sent out supplemental Postcard Notices to 314,711 Class Members whose email notice was undeliverable. (Dkt No. 130-5, p. 3 ¶¶7-8.) Direct notice was sent via U.S. Mail to 796,544 Class Members—*over half the class*. Direct notice by email and regular mail was provided to 92.91% of Class Members. (Dkt No. 130-5, p. 3 ¶¶11.) By May 12, 2015, KCC received 7,457 Claim Forms from Class Members. (Dkt No. 143, p. 2 ¶4.) The settlement also got extensive press coverage. (Dkt No. 130, 14:5-9.)

The deadline to file a claim on the settlement was February 3, 2015, although the parties have continued to accept late claims. (Dkt No. 130-5, p. 5

¶20); and the deadline to file an objection was on March 24, 2015. True to Brent Wilkes' vow, eighteen (18) different objections were organized through and made with the support of Julie Contreres, the President of LULAC of Lake County. (Dkt. No. 121-3, p. 60 ¶2.) Choosing perhaps to orchestrate the objections behind the curtains, however, Mr. Wilkes—a Class Member—did not join in the LULAC objections.

On June 5, 2015, the Court issued a Minute In Chamber Orders granting final approval of the Settlement. (Dkt No. 153). This order explained, in great detail, the Court's rationale and basis for exercising its discretion over of this settlement, including the notice program, the standing of Plaintiffs, the verification of the independent valuations based on the valid claims made on the settlement fund, and the difficulties and risks of litigation, both at the certification level and on the merits.

### III. THE NOTICE PROGRAM WAS FAIR AND ADEQUATE AND HAD A 92.91% REACH

#### A. Over Half of the Class Received U.S. Mail Notice

First, Objectors argue that the response rate of the Class demonstrates that the class notice program was not the best practicable notice under the circumstances. But over half of the Class Members—796,544 —were sent notice via direct U.S. Mail. And, 736,556 Class Members were sent notice via e-mail. Given the nearly even distribution of email/direct mail notice, the manner of delivering the notice does not explain the claims rate. Rather, as explained in Plaintiffs' Motion for Final Approval and Reply and as recognized by the Court, not every Herbalife distributor joined for the business opportunity and not every distributor lost money:

> Survey evidence suggests that most Herbalife members and distributors joined to obtain a product discount. These members are unlikely to have unopened and unused Herbalife products they wish to return for a refund…Further, these individuals are unlikely to have

1    suffered any financial losses on a failed business opportunity.
2 (Dkt No. 145, p. 49.)

### B. The Class Notice Program Used Email Appropriately

The Supreme Court has declared that Rule 23(c)(2) includes an "unambiguous requirement" that "individual notice must be provided to those class members who are identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175–176, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The hallmark of the notice inquiry in cases before and after *Eisen* is reasonableness. *See Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988).

Email notice was reasonable here, as Herbalife (like most businesses today) routinely communicates with its distributors via e-mail. Even Brent Wilkes's email acknowledges this: "I also receive daily messages from Herbalife since I am a current distributor." (Dkt. No. 159-1, p. 2.) It was well within the sound discretion of the Court to approve the notice plan to allow for email, which is widely used for notice throughout this Circuit. In recently approving a notice plan involving mail and email, the Ninth Circuit stated "[t]he notice provided in this settlement, in both mail and email form, was sufficient under the Constitution and Rule 23(e)." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 940 (9th Cir. 2015)

That an email ended up in Mr. Wilkes' "spam" folder does not change that finding. In *Lane v. Facebook, Inc.*, No. C 08-3845 RS, 2010 WL 9013059, at *2 (N.D. Cal. Mar. 17, 2010) aff'd, 696 F.3d 811 (9th Cir. 2012) , an objector complaining that the email notice he was given was intercepted by his email program's "spam filter." The court found:

> Although it is not entirely clear how or why this may have occurred, the Court is satisfied that the possibility that some Class members have activated settings on their email accounts that might filter the email notices does not undermine the overall adequacy of the notice

1     given. Indeed, even the objector appears to have received actual notice
2     via email, albeit only because he checked the contents of his spam
3     filter, which not all Class members may have done.

4 *Id.* The Ninth Circuit did not address the "spam filter" objection in *Lane*—but it
5 affirmed the court's finding that the notice was adequate. *Lane v. Facebook, Inc.*,
6 696 F.3d 811, 826 (9th Cir. 2012).

7     In *Cohorst v. BRE Properties, Inc.*, No. 3:10-CV-2666-JM-BGS, 2011 WL
8 7061923, at *10 (S.D. Cal. Nov. 14, 2011) *report and recommendation adopted as*
9 *modified*, No. 10CV2666 JM BGS, 2012 WL 153754 (S.D. Cal. Jan. 18, 2012), an
10 objector submitted a declaration explaining that her e-mail notice was found on her
11 computer's "spam" folder. The special master judge struck that declaration, finding
12 the "testimony lacks any foundation or expert opinion regarding the control exerted
13 over her e-mail by her internet service provider or her personal exertion of control
14 over her 'spam' filter at the times recited in her declaration. Without such
15 foundation, said testimony is irrelevant." *Id.* Here, the Court does not even have the
16 benefit of a Declaration from Mr. Wilkes, much less any foundation or expert
17 opinion regarding the control exercised over his email or his personal exertion of
18 control over his "spam" filter.

19     But the Court knows: (a) by November 3, 2014, Mr. Wilkes had received
20 actual notice of the settlement—because on that day he referred to the settlement in
21 the New York Post, vowing to object to the settlement; (b) Mr. Wilkes read and
22 received the email after December 30, 2014; and (c) Mr. Wilkes failed to timely
23 object to the settlement on the argument freshly raised on reconsideration, even
24 though he was likely working in concert (if not directing) counsel for Objectors.
25 Failure to file objections within the specified time may waive the right to appeal the
26 district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. Cal. 1991).

27     **C.**    **The Class Notice Program Targeted Herbalife Members**
28     Objectors, without citing to any authority with even remotely comparable

1  facts, again claim there should have been some "special" outreach to the Latino
2  community. This same argument was raised by Objectors in their objections and
3  opposition, (Dkt. No. 121, p. 60-63; Dkt. No. 121-3, p. 61-62), and at the hearing,
4  (Transcript, 32:11-21, and rejected by the Court (Dkt No. 145, p. 47; Dkt No.154, p.
5  4, ¶6). The cases cited by Objectors in this motion (and previously cited in their
6  objection and oppositions) do not hold it was "clear error" for the Court to not have
7  a "special" outreach for the Latino community. Objectors do not establish that the
8  Herbalife Class comprises a distinct minority, like the class in *In Re Black Farmers*
9  *Discrimination Litigation*, 856 F.Supp. 2d 1, 36-37 (D.D.C. 2011), or brought by or
10 a class of individuals that was difficult to identify or ascertain, like in *Multi-Ethnic*
11 *Immigrant Workers Org. Network v. City of Los Angeles*, No. CV 07-3072 AHM
12 FMMX, 2009 WL 9112416, at *5 (C.D. Cal. June 24, 2009). And requiring counsel
13 to provide class notice via graphic fotonovelas (i.e., comic books), as suggested by
14 Objectors (Dkt 158, Memorandum, 13:2-4) is not "reasonable."
15       Again, where Class Members provided Herbalife with email addresses,
16 (Spanish or English speaking), those Class Members received email notice. Those
17 who did not provide Herbalife with emails received notice by U.S. Mail. Any
18 "digital divide" was eliminated at the point *the Class Member* provided Herbalife
19 with an email address. The Court properly exercised its discretion in determining
20 that the method of providing notice was adequate.
21       D.    The Claims Period Was Sufficient
22       Objectors claim, again, that the claims period was too short. The Class had a
23 thirty-five (35) day claims period, from the date of notice until the first deadline
24 (i.e., email and mail on December 30, 2014 and deadline to file claim on February
25 3, 2015). In practice, Class Members had many more days to submit claims, as
26 counsel for Herbalife at the request of counsel for the Class accommodated late
27 claimants. (Dkt No. 130-5, p. 5 ¶¶20.) And for the deadline to object or to opt-out,
28 Claimants had 84 days. The hearing was set 132 days from December 30, 2014,

allowing Class Members sufficient time to make a claim, view the amount that they would receive on the website, and can opt-out or to object to the Settlement if they were unhappy with their actual award amount.

Thirty-five days is well within the FJC Checklist, and within the time allowed by controlling law in the Ninth Circuit. In *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993), objectors claimed that where notice was mailed to shareholders 31 days before the deadline for objections and 45 days before the hearing, that due process was not satisfied. The Ninth Circuit disagreed, finding that "we have no difficulty concluding the notice was timely." *Id.* In analyzing this issue, the Ninth Circuit cited, with approval to *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977), which involved a class action settlement arising out of an alleged pyramid scheme: "There were 26 days between the mailing of the notice and the deadline for opting out. All of the class members were participants in the … pyramid scheme and knew the issues involved. Thus, the month's time seems more than adequate." *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). Other courts in this circuit have allowed shorter claim/opt-out/objection periods. See *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1127 (E.D. Cal. 2009) (30-day deadline for objections/opt-out/claims); *Alvarado v. Nederend*, No. 1:08-CV-01099 OWW, 2011 WL 90228, at *8 (E.D. Cal. Jan. 11, 2011) (30-day deadline for objections/opt-out/claims); *Murillo v. Pac. Gas & Elec. Co.*, No. 2:08-1974 WBS GGH, 2010 WL 2889728, at *5 (E.D. Cal. July 21, 2010) (33-day deadline to opt-in/opt-out, or object). It was not clear error to approve the notice plan.

### E. No Notice Expert Is Necessary

Objectors present no evidence that the claims administrator, KCC, had any incentive to cut corners or cover-up any gaps in the notice program. The Declaration of Eric Robin submitted in support of the Motion for Final Approval and the Declaration of Eric Robin Re: Notice Procedures demonstrates that KCC

1  did a thorough job, using industry-standard state of the art notice procedures,
2  including email, skip tracing regular mail addresses, and working with counsel to
3  ensure that all claimants' claims were processed. The cases cited by Objectors to
4  support the appointment of an expert all had initial claims that resulted in large
5  undistributed funds. See *Kaufman v. Am. Exp. Travel Related Servs., Inc.*, 283
6  F.R.D. 404, 406 (N.D. Ill. 2012) (because of the low claims rate, 99% of the
7  available funds in that case would have gone unused); *In re Currency Conversion
8  Fee Antitrust Litig.*, 263 F.R.D. 110, 119 (S.D.N.Y. 2009) aff'd sub nom.
9  Priceline.com, Inc. v. Silberman, 405 F. App'x 532 (2d Cir. 2010) (80,000 claims
10 with 25 million notices, which "raised the specter of a large undistributable residual
11 fund.").

## IV.   CLASS DEFINITION; STANDING TO ENFORCE CORPORATE REFORM

Objectors reargue that Plaintiffs Beverly Molnar and Anita Vasko lacked standing to sue for injunctive relief. The Court already has found that the "facts, however, do not support this contention." Both Molnar and Vasko are and were Herbalife distributors at the time of the settlement.

Objectors want the Court to adopt an impractical standard for named plaintiffs in consumer class actions that would nearly eliminate the ability of a plaintiff to obtain injunctive relief: the only party that might have standing to challenge an unfair or unlawful practice under Objector's standard would be a consumer in the middle of determining whether he or she wanted to join the Herbalife organization or mid-purchase of the offending product. Under Objectors' theory of standing, no one except a potential Herbalife recruit would have standing to bring a claim for injunctive relief requiring Herbalife to (a) include its Statement of Average Gross Compensation as part of its member application, (b) have new members acknowledge they have received and reviewed the Statement, and (c) disclose compensation paid to all members in their Statement of Average Gross

Compensation.[1]  Plaintiffs have briefed this issue extensively for final approval. Objectors provide the Court no new controlling law or evidence.

## V. THE SETTLEMENT VALUE ALIGNED WITH POTENTIAL CLAIMS

Objectors claim that the Court clearly erred by not independently assessing the value of Plaintiffs' claims at final approval. (Dkt No. 158, Mot. at 24.) That's not true. The Court relied on "objective third party evaluations" (experienced mediators) in evaluating the settlement's fairness and reasonableness. (Dkt No. 145, p. 37.)  Furthermore, the claims process has amply demonstrated that the settlement fairly and reasonably valued the Class' claims. The Class has weighed in on the value of their claims and, based on the claims made, the settlement was more than fair and reasonable. (Dkt. 130-5 at ¶ 21)

## VI. OBJECTOR'S "NEW EVIDENCE" PROVES NOTHING

Objectors point to what they contend is "new evidence" to support their argument that the Court should reverse itself from approving a very successful class action settlement. This includes a video from 2005 with the Herbalife CEO which they characterize as castigating some of the high-level Herbalife distributors for engaging in high-pressure sales tactics and sales methods that threatened the viability of Herbalife. This is not new evidence; Plaintiffs' Complaint made similar allegations regarding this type of behavior. Nor does it change the Court's analysis regarding the strengths and weaknesses of Plaintiffs' case. This video was purportedly taken in 2005, well before the Class Period of this case (but during Objectors' counsel's own class action lawsuit with Herbalife (*Minton v. Herbalife et. al.*, BC 338305 (L.A. Sup. Ct.))).

This alleged "new" evidence does not change Plaintiffs' counsel's analysis of the strengths and weaknesses of Plaintiffs' case or the settlement. Notably, many of the corporate reforms (that Objectors do not want implemented), such as a more

---

[1] Dkt No. 95, pp. 16-17, Stipulation of Settlement.

transparent statement of average gross compensation and prohibition of lead sales, address the conduct being challenged in the video.

Finally, objectors also cite to reports from an Herbalife "Extravaganza" where the term "future Millionaire" was used. This term of art within the Herbalife organization was not a part of any corporate reform agreed to by Herbalife. This is not a matter of Herbalife "policing" itself to comply with the Court's Order.

## VII. CONCLUSION

Objectors bring no new evidence and cite to no controlling law indicating that the Court was in "clear error" when it granted the Motion for Final Approval.

DATED: August 3, 2015              FABIAN & CLENDENIN, P.C.

                                   FOLEY BEZEK BEHLE & CURTIS, LLP


                                   /s/Philip D. Dracht
                                   Philip D. Dracht
                                   Scott M. Petersen
                                   Jason W. Hardin

                                   Thomas G. Foley, Jr.
                                   Robert Curtis
                                   Justin P. Karczag

                                   *Attorneys for Plaintiffs*