A. Howard Matz – State Bar No. 55892
  ahm@birdmarella.com
Mitchell A. Kamin – State Bar No. 202788
  mak@birdmarella.com
Mark T. Drooks – State Bar No. 123561
  mtd@birdmarella.com
Gopi K. Panchapakesan – State Bar No. 279586
  gkp@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Jonathan D. Schiller (*pro hac vice*)
  jschiller@bsfllp.com
Joseph F. Kroetsch (*pro hac vice*)
  jkroetsch@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

David L. Zifkin – State Bar No. 232845
  dzifkin@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
Telephone: (310) 752-2400
Facsimile: (310) 752-2490

Attorneys for Defendants Herbalife
International of America, Inc.; Herbalife
International, Inc.; and Herbalife Ltd.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DANA BOSTICK, *et al.*,<br><br>  Plaintiffs,<br><br>  vs.<br><br>HERBALIFE INTERNATIONAL OF AMERICA, INC., *et al.*,<br><br>  Defendants. | CASE NO. 2:13-cv-02488-BRO-RZ<br><br>**DEFENDANTS' OPPOSITION TO OBJECTORS' MOTION FOR RECONSIDERATION**<br><br>*[Filed concurrently with Declaration of Gopi K. Panchapakesan and Declaration of Eric Robin]*<br><br>Date:   August 24, 2015<br>Time:   1:30 P.M.<br>Crtrm.: 14<br><br>Assigned to Hon. Beverly Reid O'Connell<br><br>Complaint Filed:   April 8, 2013 |

3170652.1

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I. INTRODUCTION ............................................................................................ 1

II. RELEVANT FACTUAL BACKGROUND ...................................................... 3

III. ARGUMENT .................................................................................................. 3

     A.    Legal Standard: A Rule 59(e) Motion Seeks an "Extraordinary Remedy" and Is Not a Vehicle for Re-arguing a Lost Motion. .............. 3

     B.    Objectors' Motion Does Not Present New Evidence. ............................ 4

     C.    Objectors' Motion Does Not Cite Intervening Changes in Controlling Law. ..................................................................................... 7

     D.    Objectors Cite No Instances of Clear Error. ......................................... 8

     E.    Objectors Improperly Seek to Reargue Their Failed Objection. .......... 12

     F.    Objectors' Motion Should be Stricken for Failure to Comply with Local Rule 7-3 ...................................................................................... 13

IV. CONCLUSION ................................................................................................ 13

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**Page(s)**

4

**Cases**

5

*Backlund v. Barnhart*,
6
   778 F.2d 1386 (9th Cir. 1985) ..................................................................12-13

7

*Beal v. Lifetouch, Inc.*,
   No. CV 10-8454-JST ............................................................................... 11
8

9

*Boon Rawd Trading Inter. Co. v. Paleewong Trading Co. Inc.*,
   No. C 09-05617 WHA, 2011 WL 1627981 (N.D. Cal. Apr. 29,
10
   2011) ...................................................................................................... 8

11

*Carroll v. Nakatani*,
12
   342 F.3d 934 (9th Cir. 2003) ................................................................ 11

13

*Costello v. U.S. Gov't*,
14
   765 F. Supp. 1003 (C.D. Cal. 1991) .................................................. 3, 12

15

*Feldman v. Allstate Ins. Co.*,
   322 F.3d 660 (9th Cir. 2003) ................................................................ 13
16

17

*Ginsberg v. Nw., Inc.*,
   No. 09-CV-28 JLS NLS, 2009 WL 9523734 (S.D. Cal. Oct. 13,
18
   2009) ...................................................................................................... 9

19

*Gonzalez v. USF Reddaway, Inc.*,
20
   Case No. 5:10-CV-01514-AHM-OP (C.D.Cal.) .................................. 12

21

*Goodworth Holdings Inc. v. Suh*,
22
   239 F. Supp. 2d 947 (N.D. Cal. 2002), *aff'd*, 99 F. App'x 806 (9th
   Cir. 2004)......................................................................................... 4, 5, 7
23

24

*Johnson v. U.S. Dep't of the Treasury*,
   No. C 11-06684 WHA, 2012 WL 5269620 (N.D. Cal. Oct. 24,
25
   2012) ...................................................................................................... 8

26

*Kona Enterprises, Inc. v. Estate of Bishop*,
27
   229 F.3d 877 (9th Cir. 2000) .............................................................. 1, 3

28

*Lane v. Facebook, Inc.*,
  2010 WL 9013059 (N.D. Cal. Mar. 17, 2010) *aff'd*, 696 F.3d 811
  (9th Cir. 2012) ........................................................................................ 6

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000), *as amended* (June 19, 2000) .................... 8

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) .................................................................. 6

*United States v. Ladeau*,
  2012 WL 5838125 (M.D. Tenn. Nov. 15, 2012) ...................................... 9

*Weeks v. Bayer*,
  246 F.3d 1231 (9th Cir. 2001) ........................................................ 3, 12

*Zimmerman v. City of Oakland*,
  255 F.3d 734 (9th Cir. 2001) .................................................................. 3

**Other Authorities**

Fed. R. Civ. Proc. 59(e) ....................................................................*passim*

Federal Judicial Center, "Judges' Class Action Notice and Claims
  Process Checklist and Plain Language Guide" ...................................... 5

Local Rule 7-3 ............................................................................... 2, 13

Local Rule 7-18 ...................................................................................... 4

iii

# I.

## INTRODUCTION

In their Motion for Reconsideration ("Motion"), Objectors improperly invoke Rule 59(e)'s "extraordinary remedy"[1] to re-argue points already considered and rejected by this Court in its order granting final approval of the class action settlement (the "Order"). Objectors cite no intervening change in controlling law or newly-available evidence to justify their motion and the burden it places on this Court. Nor do Objectors cite any instances where the Order misapprehended facts or contravened controlling law. Rather, Objectors simply argue—again—that the Court should apply undisputed law to undisputed facts to arrive at conclusions advocated by Objectors and rejected by this Court. This is not a proper use of a Rule 59(e) motion. Instead, this is an ill-conceived motion that, despite Objectors' pious reference to the best interests of the class, will only prejudice the class by delaying the issuance of settlement payments as well as the ability of class members to return product. The motion should be denied.

Objectors' supposed justification for filing this motion largely rests upon evidence that is neither admissible nor new. Objectors cite an unsworn email from Brent Wilkes, the National Executive Director of the League of United Latin American Citizens ("LULAC"), to Objectors' counsel; a newspaper article describing a 2005 speech by Herbalife's CEO; and an article describing a 2015 Herbalife conference. All are inadmissible hearsay and none support Objectors' positions. The Wilkes email, offered as proof that notice emails were captured by class members' "spam" filters, on its face concedes that the recipient received notice and does not contradict the Settlement Administrator's use of state-of-the-art techniques for ensuring delivery of email notices. The newspaper articles'

---

[1] *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (quoting 12 James Wm. Moore et al., Moore's Federal Practice § 59.30[4] (3d ed. 2000)).

descriptions of Herbalife events in 2005 and 2015 are likewise irrelevant as neither speaks to the Court's reasons for approving the settlement and the corporate policy changes set forth therein. Moreover, Objectors do not meet the high burden of showing that this "evidence" is new; indeed, as described below, none of the evidence describes facts not known or knowable to Objectors long before they filed their objection.

Objectors cite no new controlling law meriting reconsideration of the Court's decision and judgment. In fact, Objectors cite no law post-dating the final approval hearing, controlling or otherwise.

Nor do Objectors properly identify any "clear error" in the Court's Order. Objectors cite no controlling law contrary to the Court's decision or facts misapprehended by the Court. Objectors' disagreement with the Court's weighing of the facts and exercise of discretion is not, and cannot be, clear error.

Ultimately, through this motion, Objectors are rehashing arguments that the Court has already considered and rejected. Objectors' Rule 59(e) motion is a poorly-disguised motion for a "do-over." Despite the Court's well-reasoned Order, Objectors again argue that: (1) the notice program was inadequate, (2) the class representatives lack standing to sue for injunctive relief, and (3) the Court should have estimated the value of Plaintiffs' claims even after all claims were made (despite there being no objection to the settlement amount). Rule 59(e) does not provide Objectors an avenue for asking the Court to revisit issues it has already thoroughly analyzed and decided.

Finally, Objectors' Motion should be stricken for failure to comply with Local Rule 7-3. Counsel for Objectors did not meet and confer with either Herbalife or Plaintiffs' counsel in anticipation of filing this Motion, let alone even inform them that the Motion would be filed.

**II.**

**RELEVANT FACTUAL BACKGROUND**

On May 14, 2015, the Court granted final approval of the class action settlement reached by Plaintiffs and Herbalife International of America, Inc.; Herbalife International, Inc.; and Herbalife Ltd. (collectively, "Herbalife"). (Dkt. 145) (Order.)  On June 17, 2015, the Court entered a Final Judgment and Order of Dismissal ("Final Judgment").  (Dkt. 154, 155.)  In granting final approval, the Court considered the briefs filed by the parties as well as the objection filed by eighteen objectors ("Objectors") (Dkt. 121).  Furthermore, at the final approval hearing held on May 11, 2015, the Court heard oral argument from both parties, as well as counsel for Objectors.  Objectors' Motion was filed on July 15, 2015.

**III.**

**ARGUMENT**

**A.    Legal Standard: A Rule 59(e) Motion Seeks an "Extraordinary Remedy" and Is Not a Vehicle for Re-arguing a Lost Motion.**

On a motion for reconsideration, "[a]mendment or alteration is appropriate under Rule 59(e) if (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001).  A motion under Rule 59(e) is not a vehicle to re-argue a lost motion. *Costello v. U.S. Gov't*, 765 F. Supp. 1003, 1009 (C.D. Cal. 1991).  Rather, Rule 59(e) offers an "***extraordinary remedy***, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (quoting 12 James Wm. Moore et al., Moore's Federal Practice § 59.30[4] (3d ed. 2000)) (emphasis added); *see also Weeks v. Bayer*, 246 F.3d 1231, 1236 (9th Cir. 2001) ("Judgment is not properly reopened absent highly

1   unusual circumstances.") (citations and quotation marks omitted).[2]

2   **B.**    **Objectors' Motion Does Not Present New Evidence.**

3        Objectors' motion does not present "newly discovered evidence" upon which

4   a motion for reconsideration may be justified.  "To justify reconsideration based on

5   'newly discovered evidence,' [Objectors] must show 'that (1) the evidence was

6   discovered after [the judgment], (2) the exercise of due diligence would not have

7   resulted in the evidence being discovered at an earlier stage and (3) the newly

8   discovered evidence is of such magnitude that production of it earlier would likely

9   have changed the outcome of the case.'"  *Goodworth Holdings Inc. v. Suh*, 239 F.

10  Supp. 2d 947, 966 (N.D. Cal. 2002), *aff'd*, 99 F. App'x 806 (9th Cir. 2004) (quoting

11  *Defenders of Wildlife v. Bernal,* 204 F.3d 920, 928-29 (9th Cir. 2000)).  None of the

12  evidence described in Objectors' motion satisfies these requirements.

13       Objectors point to three types of allegedly "new evidence": (1) an unsworn

14  May 18, 2015 email from Brent Wilkes to Objectors' counsel, Douglas Brooks; (2)

15  a newspaper's description of excerpts from a 2005 video of Herbalife's CEO; and

16  (3) a newspaper's description of a July 2015 Herbalife event.

17       First, Objectors' critique of the class notice process relies upon an unsworn

18  _____

19  [2] Additionally, Local Rule 7-18 provides: "A motion for reconsideration of the

20  decision on any motion may be made only on the grounds of (a) a material
    difference in fact or law from that presented to the Court before such decision that in

21  the exercise of reasonable diligence could not have been known to the party moving
    for reconsideration at the time of such decision, or (b) the emergence of new

22  material facts or a change of law occurring after the time of such decision, or (c) a
    manifest showing of a failure to consider material facts presented to the Court

23  before such decision. No motion for reconsideration shall in any manner repeat any

24  oral or written argument made in support of or in opposition to the original motion."
    Seeking reconsideration of the Final Judgment, which is entirely consistent with the

25  Court's Order granting final approval, is a transparent attempt at an end-run on

26  Local Rule 7-18.  For the same reasons laid out in this Opposition, Objectors'
    Motion fails to meet the standard laid out in Local Rule 7-18 even more so than the

27  Motion fails to meet the standard laid out in Local Rule 7-18 even more so than the

28  standard for motions brought under Rule 59(e).

email from LULAC executive director Brent Wilkes contending that his email system flagged his class notice as "spam." The email to Objectors' counsel, dated May 18, 2015, reads in relevant part: "I meant to send this to you earlier. I received the [class] notice in my spam folder and it is a miracle that I noticed it." Objectors cite the email as evidence that there were "problems with email notice" because "Mr. Wilkes cannot be the only class member who experienced this problem." (Mot. at 9.)[3] However, Wilkes concedes receiving the email notice and further concedes that he "meant to send" the email earlier. This evidence—if it can be called such—is therefore not "newly discovered," nor was it undiscoverable earlier through an exercise of due diligence. *See Goodworth*, 239 F. Supp. 2d at 966. Taking Wilkes at his word, he simply forgot about the "new" evidence. Forgetting about evidence, however, does not make it "new."

Objectors cite no reason why the "spam" issue could not have been discovered with reasonable diligence prior to the final approval hearing in May 2015. Indeed, the fact that *none* of the Objectors claims to have experienced this problem suggests it is not in fact a real problem.[4] Nor should it be: the Settlement

---

[3] Indeed, he might be unique. Wilkes is the executive director of the United States' largest and oldest Latino organization, has his own Wikipedia page, and writes for the Huffington Post. As a prominent public figure, it is likely that Mr. Wilkes has chosen to have his email system employ more robust spam filters than the average Herbalife member.

[4] It bears mentioning that while five out of 18 objectors claimed not to have received the class notice, the other 13 (i.e., 72%) do not deny receiving notice. Even using this highly skewed sample, the class notice reach would be within the scope of acceptable rates according to the Federal Judiciary Center Checklist and Plain Language Guide relied upon by Objectors in their Motion. *See* Federal Judicial Center, "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" at 3 ("The lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70-95%."), *available at* http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf.

Administrator employed state-of-the art techniques for minimizing the risk that email notices would be labeled as spam by the recipients' email systems. Declaration of Eric Robin (filed concurrently) at ¶¶ 6-11. Were these techniques "inadequate," email notice would not be permitted, yet the Ninth Circuit has held that it is. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 941, 946 (9th Cir. 2015) ("The notice provided in this settlement, in both mail and email form, was sufficient under the Constitution and Rule 23(e)" where notice was mailed to class members for whom email notice bounced back). Courts have furthermore rejected Objectors' "spam" argument. *Lane v. Facebook, Inc.*, 2010 WL 9013059, at *2 (N.D. Cal. Mar. 17, 2010) *aff'd*, 696 F.3d 811 (9th Cir. 2012) ("[T]he Court is satisfied that the possible that some Class members have activated settings on their email accounts that might filter the email notices does not undermine the overall adequacy of the notice given.").

Objectors also cite supposedly "new evidence" that enforcement mechanisms for the corporate policies mandated by the settlement will be inadequate. In approving the settlement, the Court held that the settlement had an adequate enforcement mechanism because: (1) the settlement agreement and Final Judgment vest the court with continuing jurisdiction to implement and enforce the settlement and (2) Plaintiffs' counsel represented that they will oversee the corporate policies. (Order at 39; Final Judgment at ¶ 16 [Dkt. 155].) In their motion, Objectors cite a newspaper's description of excerpts from a ten-year-old video of a speech given by Herbalife's CEO, which Objectors contend shows that in 2005, Herbalife was "experiencing considerable frustration in policing its high level distributors." (Mot. at 27.)[5] This "evidence" has no bearing on the reasons given by the Court for finding that the enforcement mechanisms were adequate; it is therefore not "likely

---

[5] Objectors' memorandum states, "Undersigned counsel have not seen the video." (Mot. at 27.) These hearsay descriptions of cherry-picked excerpts of a video are inadmissible.

[to] have changed the outcome of the case." *See Goodworth*, 239 F. Supp. 2d at 966.  Furthermore, in approving the settlement, the Court held that the corporate policies contained in the settlement "go to the core of Plaintiffs' endless chain scheme claim and help ensure that current members do not take advantage of other members or new recruits."  (Order at 40.)  Evidence concerning Herbalife's purported policies a decade ago has no bearing on the Court's decision.

Finally, Objectors point to a newspaper article's description of Herbalife using the term "Future Millionaire" at a recent Herbalife convention as evidence that "Herbalife has already demonstrated that it cannot or will not police itself."  (Mot. at 28.)  Objectors do not offer any rationale for this statement.  Even if the newspaper's description were accurate (*it is not*),[6] Objectors do not contend that the "new evidence" shows a violation of the stipulation of settlement, much less one that the enforcement mechanisms approved by the Court are incapable of addressing.

## C.   Objectors' Motion Does Not Cite Intervening Changes in Controlling Law.

Objectors' motion does not cite any changes in controlling law to justify

---

[6]   The actual term used at the Herbalife event was "Future Millionaire Team member," a reference to the level an Herbalife member may reach in the marketing plan that Herbalife has long maintained in its system and which is well known to Objectors.  *See* Declaration of Gopi K. Panchapakesan ("Panchapakesan Decl."), Ex. A (flyer for the referenced event); First Am. Compl. at ¶ 82 [Dkt. 78] ("The top seven categories are Supervisors, World Team, Global Expansion Team, ***Millionaire's Team***, President's Team, Chairman's Club, and Founders Circle") (emphasis added).  Objectors' counsel referenced the "Millionaire Team" in a class action lawsuit he filed and settled over a decade ago.  *Jacobs, et al. v. Herbalife International, Inc., et al.*, No. CV-02-1431 SJO (RCx) (C.D. Cal. May 2, 2003), Second Am. Compl. at ¶ 39 (attached as Ex. B to Panchapakesan Decl.) ("By meeting various volume and recruitment targets, Supervisors can ascend in the Herbalife hierarchy from "World Team,' 'Global Expansion Team,' and '***Millionaire Team***' to 'President's Team.'") (emphasis added).

1  reconsideration of the Final Judgment.  None of the cases cited in Objectors' motion

2  post-date the final approval hearing on May 11, 2015.

3  **D.**      **Objectors Cite No Instances of Clear Error.**

4          Objectors seek to justify resurrecting arguments already rejected by this Court

5  by terming the Court's rulings "clear error."  (*See, e.g.,* Mot. at 6.)  This rote

6  recitation of the legal standard as a mantra for reconsideration is insufficient.  In

7  evaluating whether the district court has committed clear error, the Ninth Circuit

8  "will find clear error only upon 'a definite and firm conviction that a mistake has

9  been committed.'  If a court 'got the law right' and 'did not clearly err in its factual

10  determinations,' then clear error was not committed—even if another reasonable

11  judicial body 'would have arrived at a different result.'"  *Johnson v. U.S. Dep't of*

12  *the Treasury,* No. C 11-06684 WHA, 2012 WL 5269620, at *2 (N.D. Cal. Oct. 24,

13  2012) (quoting, *United States v. Ruiz–Gaxiola,* 623 F.3d 684, 693 (9th Cir. 2010);

14  *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011)).[7]

15          Merely reviving the same arguments in the hope that the Court will reconsider

16  them, as Objectors do throughout their motion, does not come close to establishing

17  that clear error has been committed.  *See Boon Rawd Trading Inter. Co. v.*

18  *Paleewong Trading Co. Inc.*, No. C 09-05617 WHA, 2011 WL 1627981, at *2

19  (N.D. Cal. Apr. 29, 2011) ("[Defendant] asserts that the order granting summary

20  judgment was manifestly unjust or contained clear errors . . . . All of [Defendant]'s

21  arguments, however, were raised or could have been raised before judgment was

22  _____

23  [7]   *Cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *as*

24  *amended* (June 19, 2000) ("Review of the district court's decision to approve a class
   action settlement is extremely limited.  The district court's decision to approve or

25  reject a settlement is committed to the sound discretion of the trial judge because he
   [or she] is exposed to the litigants, and their strategies, positions, and proof.  Thus,

26  we will affirm if the district court judge applies the proper legal standard and his [or

27  her] findings of fact are not clearly erroneous.") (citations and quotation marks

28  omitted).

entered.  Accordingly, they do not form a proper basis for a Rule 59(e) motion, and the motion must be denied."); *Ginsberg v. Nw., Inc.*, No. 09-CV-28 JLS NLS, 2009 WL 9523734, at *1 (S.D. Cal. Oct. 13, 2009) ("Rather than cite any clear errors by the Court, Plaintiff attempts to raise points of law he argued earlier . . . and he brings no new arguments that could not reasonably have been brought in the initial litigation.").

Objectors claim the following decisions were "clear error":

1. "This Court's judgment that the notice met [Rule 23(c)(2)(B)'s] standard, despite the claims rate of less than ½ of 1% and its own finding that a broader notice campaign would have been better, was clear error."  (Mot. at 7.)

2. "This Court rejected Objectors' standing arguments on the strength of" two affidavits attesting that named plaintiffs remained Herbalife members.  "In doing so, the Court committed a clear error of law which merits reconsideration."  (*Id.* at 17.)

3. "This Court's failure to make an independent evaluation of [the monetary value] of Plaintiffs' claims was clear error."  (*Id*. at 24.)

In each of these instances, Objectors do not identify any controlling law contradicting the Court's decision or cite any facts misapprehended by the Court. They simply disagree with the Court's exercise of its discretion in weighing the facts and applying the law.  This is not—and *cannot be*—clear error.  *See United States v. Ladeau*, 2012 WL 5838125, at *4 (M.D. Tenn. Nov. 15, 2012) ("Because there is no case directly on point, the Court's holding . . . was not clear error.  Where no controlling precedent exists, the Court's decision necessarily creates a novel result.") and *8 ("The Court's finding was reasonable and supported by precedent. Therefore it was not a clear error of law.") (denying Rule 59(e) motion for reconsideration).

First, with respect to the adequacy of the notice program, Objectors do not

contend that the Court erred in accepting the *undisputed* evidence from the
Settlement Administrator that the notice program reached 92.91% of the class.[8]  Nor
do Objectors contend it was clear error to find such a rate to be adequate; indeed,
Objectors' own authority states that a rate as low as 70% may be appropriate.[9]
Objectors also selectively cite the Court's statement that "in theory . . . a broader
notice campaign could have benefited the class," omitting the Court's conclusion
that "the notice procedures approved here comport with due process and Rule 23."
(Order at 47.)[10]

Furthermore, Objectors cite no law, much less controlling law, holding that a
low claims rate bars approval of a notice program.  The Court noted in its Order—
and Objectors do not contest—that "[m]any courts have found that the class
response rate is not the touchstone of the adequacy of class notice."  (Order at 48.)
Thus, it could not be clear error for the Court to hold that notice was adequate
"despite the claims rate" (*see* Mot. at 7.)[11]  Objectors' lengthy theorizing as to how
notice could be improved is likewise off base: because "better" notice may have
been conceivably possible does not render "clearly erroneous" the Court's ruling
that "*[u]nder the circumstances*, the notice was sufficient."  (Order at 47) (emphasis

---

[8] Objectors argue that Mr. Wilkes' email, discussed above, contradicts the
Settlement Administrator's figures (Mot. at 10 n.3), but that evidence was not before
the Court and therefore could not be the basis for clear error.  Furthermore, as
discussed above, the email is not "new evidence" properly before the Court now.
*See supra* pp. 4-6.

[9] *See supra* note 4.

[10]  Objectors' misguidedly point to cases involving worldwide Holocaust victims as
well as migrant workers, (Mot. at 10-11), in an attempt to show that more outreach
to the Latino community was warranted here.  Objectors' contention, however, is
belied by the nearly 93% notice reach rate here.

[11] Similarly, Objectors' argument that "District courts in the Ninth Circuit have been
increasingly inclined to find that 30 days [*sic*] notice is too short" falls far short of
the "clear error" standard.  (*See* Mot. at 14.)

1   added.)  Objectors cite no law to the contrary.  Objectors' views as to how the notice

2   program could have been improved are not valid bases for a Rule 59(e) motion for

3   reconsideration.

4        Objectors also contend that the Court "committed a clear error of law" in

5   holding that two named plaintiffs who attested that they remained Herbalife

6   members had standing to seek prospective relief concerning Herbalife's corporate

7   policies.  (Mot at 17.)  Specifically, Objectors argue that because the plaintiffs were

8   not actively buying Herbalife products when they filed their complaint, they lack

9   standing.  (Mot. at 22.)  A plaintiff does not lack standing, however, because she, for

10  example, claims that judicial relief is necessary before she purchases Herbalife

11  products[12]—Objectors' cite no law to the contrary.  The Court's decision cannot be

12  a "clear error of law" when there are no cases supporting Objectors' position.

13  Moreover, Objectors' argument disregards the very purpose of including the

14  corporate policies in the settlement: to make the Herbalife business opportunity one

15  that class members would be willing to participate in, if they so choose.

16       Finally, Objectors claim that the Court clearly erred by not independently

17  assessing the value of plaintiffs' claims at final approval.  (Mot. at 24.)  Objectors,

18  however, cite no cases (controlling or otherwise) holding that the Court's evaluation

19  may not rely on mediators' evaluations; the Court's decision therefore cannot be

20  clear error.  Moreover, Objectors do not claim that the settlement amount was unfair

21  _____

22  [12] Were that not the law, declaratory judgments would not exist.  Furthermore, the
    cases relied upon by Objectors are readily distinguishable.  In *Carroll v. Nakatani*,

23  342 F.3d 934, 941-42 (9th Cir. 2003), the Court found that plaintiff lacked standing

24  to challenge the constitutionality of a race-conscious government loan program
    where plaintiff was not "able and ready" to compete for a loan in light of his

25  incomplete loan application.  In *Beal v. Lifetouch, Inc.*, No. CV 10-8454-JST

26  MLGX, 2012 WL 3705171, at *3 (C.D. Cal. Aug. 27, 2012), the court found that
    plaintiff lacked standing to pursue injunctive relief in a wage and hour class action

27  as a *former* employee—Objectors concede that Vasko and Molnar are current

28  Herbalife members.

1    or inadequate, nor could they: the settlement paid as much as $98,588.36 to a

2    claimant and the settlement fund was more than adequate to satisfy all claims.  (Dkt.

3    130-5 at ¶ 21) (Declaration of Eric Robin in support of Final Approval).  Objectors

4    also do not argue that they were unable to assess the value of their claims; to the

5    contrary, each Objector submitted a declaration with such an assessment.  In effect,

6    Objectors seek reconsideration premised upon the Court's supposed failure to assess

7    settlement amounts that Objectors did not challenge as unfair or inadequate.[13]

8    **E.    Objectors Improperly Seek to Reargue Their Failed Objection.**

9          Aside from the pro forma assertions of "clear error" discussed above,

10   Objectors' Motion reiterates arguments that were already made in their original

11   Objections [Dkt. 121], and rejected by this Court.  Rule 59(e), however, does not

12   allow a litigant to repeat contentions that have already been rejected by the Court.

13   *Costello v. U.S. Gov't*, 765 F. Supp. 1003, 1009 (C.D. Cal. 1991) ("courts avoid

14   considering Rule 59(e) motions where the grounds for amendment are restricted to

15   either repetitive contentions of matters which were before the court on its prior

16   consideration or contentions which might have been raised prior to the challenged

17   judgment . . . .  This position reflects district courts' concerns for preserving

18   dwindling resources and promoting judicial efficiency.")[14]  Rather than burden the

19

20   [13]   In support of its contention that the Court should have independently evaluated
     Plaintiffs' claims, Objectors now misguidedly rely on *Gonzalez v. USF Reddaway,*
21   *Inc.*, Case No. 5:10-CV-01514-AHM-OP (C.D. Cal.), a case involving *preliminary*
     *approval*, in which the court required that the parties provide further detail regarding
22   the anticipated claims so as to estimate claim amounts.  Any issues pertaining to
23   preliminary approval are moot at this stage given that the monetary component of
     the settlement has proven to adequately compensate the class.
24

25   [14] *See also Weeks v. Bayer*, 246 F.3d 1231, 1236 (9th Cir. 2001) ("[C]ourts avoid
     considering Rule 59(e) motions where the grounds for amendment are restricted to
26   either repetitive contentions of matters which were before the court on its prior
     consideration or contentions which might have been raised prior to the challenged
27   judgment."); *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985) ("The

28

Court with a repetition of arguments already made and ruled upon, Defendants submit a chart (attached as Appendix A to this Opposition) listing Objectors' arguments in their initial objection, the Court's decision rejecting these arguments, and the reiteration of these arguments in the Motion.

**F.     Objectors' Motion Should be Stricken for Failure to Comply with Local Rule 7-3.**

Local Rule 7-3 requires that "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution."  Counsel for Objectors did not meet and confer with counsel for Herbalife or Plaintiffs, request a meet-and-confer discussion, or even inform the parties of their intent to file this Motion.  Objectors' motion should therefore be stricken for failure to comply with the Local Rules.  *See Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 665 (9th Cir. 2003) (Noting that the district court initially rejected the Rule 59(e) motion for failure to comply with local rule requiring pre-motion meet-and-confer.).

## IV.

## CONCLUSION

Herbalife respectfully urges the Court to deny Objectors' Motion for Reconsideration and/or Strike Objectors' Motion for failure to comply with Local Rule 7-3.

---

motion was properly denied here because . . . it presented no arguments that had not already been raised in opposition to summary judgment.").

1   DATED:  August 3, 2015          Respectfully submitted,

2                                   A. Howard Matz
3                                   Mitchell A. Kamin
                                    Mark T. Drooks
4                                   Gopi K. Panchapakesan
                                    Bird, Marella, Boxer, Wolpert, Nessim,
5                                   Drooks, Lincenberg & Rhow, P.C.
6

7

8                                   By:    _/s/ Mark T. Drooks_____
9                                              Mark T. Drooks
                                        Attorneys for Defendants Herbalife
10                                      International of America, Inc.; Herbalife
                                        International, Inc.; and Herbalife Ltd.
11

12

13  DATED:  August 3, 2015          Jonathan D. Schiller
14                                  David L. Zifkin
                                    Joseph F. Kroetsch
15                                  BOIES, SCHILLER & FLEXNER LLP.
16

17                                  By:    _/s/ Jonathan D. Schiller___
18                                             Jonathan D. Schiller
                                        Attorneys for Defendants Herbalife
19                                      International of America, Inc.; Herbalife
                                        International, Inc.; and Herbalife Ltd.
20

21

22

23

24

25

26

27

28

3170652.1                          14

DEFENDANTS' OPPOSITION TO OBJECTORS' MOTION FOR RECONSIDERATION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SIGNATURE CERTIFICATION

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to Jonathan D. Schiller of Boies, Schiller & Flexner LLP, co-counsel for Defendants Herbalife International of America, Inc.; Herbalife International, Inc.; and Herbalife Ltd., and that I have obtained Mr. Schiller's authorization to affix his electronic signature to this document.

DATED:  August 3, 2015

By:     */s/ Mark T. Drooks*
Mark T. Drooks

**APPENDIX A: CHART COMPARING OBJECTORS' ORIGINAL ARGUMENTS, COURT'S REJECTION OF THESE ARGUMENTS, AND OBJECTORS' RENEWAL OF THESE ARGUMENTS**

| Original Argument in Objections to Class Action Settlement [Dkt. 121] | Court's Order on Argument [Dkt. 145] | Renewed Argument in Objectors' Motion for Reconsideration [Dkt. 158] |
|---|---|---|
| 1) Objectors contended that the named plaintiffs lack standing to represent the injunctive relief class: "The Rule 23(b)(2) injunctive relief class was improperly defined to include former distributors who have no interest or stake in whatever injunctive relief is imposed against Herbalife.  None of the named Plaintiffs are current Herbalife distributors. ***Representation of the injunctive relief class is therefore not only inadequate, but non-existent***."  Dkt. 121 at 4. (emphasis added). | The Court rejected this argument: "Objectors contend that all of the named plaintiffs are no longer Herbalife distributors and that, accordingly, no named plaintiff has standing to enforce the thirteen proposed corporate reforms. The facts, however, do not support this contention. As recently as April 27, 2015, Ms. Molnar affirmed that she currently remains an Herbalife distributor or member. (*See* Dkt. No. 138-2, ¶ 4.) Additionally, Ms. Vasko declared on April 25, 2015 that since she joined Herbalife in September 2012, she has 'remained continuously' a distributor of Herbalife products. (*See* Dkt. No. 138-1.)  ***Accordingly, the standing objections lack merit, and certification under Rule 23(b)(2) is appropriate***."  Dkt. 145 at 25-26. (emphasis added). | Objectors again contend that the named plaintiffs lack standing to represent the injunctive relief class.  *See* Dkt. 158 at 17-24 ("In June of 2014 the Amended Complaint was filed, adding four named plaintiffs. ***There is no dispute that two of the newly named plaintiffs have no standing to seek injunctive relief***. Plaintiff Chester Cote's Herbalife distributorship has expired, and he has product he wishes to return.  Amended Complaint (Dkt 78), ¶ 10; Declaration of Chester Cote (Dkt. 90-3), ¶ 3. Plaintiff Judi Trotter resigned from her Herbalife distributorship in the Fall of 2012. Amended Complaint, ¶ 68.  ***There should be no dispute that the other two named plaintiffs also have no standing to seek injunctive relief***.") (emphasis added). |

**APPENDIX A: CHART COMPARING OBJECTORS' ORIGINAL ARGUMENTS, COURT'S REJECTION OF THESE ARGUMENTS, AND OBJECTORS' RENEWAL OF THESE ARGUMENTS**

| Original Argument in Objections to Class Action Settlement [Dkt. 121] | Court's Order on Argument [Dkt. 145] | Renewed Argument in Objectors' Motion for Reconsideration [Dkt. 158] |
|---|---|---|
| 2) Objectors contended that e-mail and postcard notice was insufficient, arguing that more outreach to the Latino community should have been made: "***The class notice program was limited to sending emails and post cards.*** Settlement Stipulation, Exhibit 6. ***There was no advertising in any media, either English or Spanish, and no effort at outreach***. A number of courts have recognized that ***class notice programs should be tailored to address the communities affected by the alleged wrongdoing***, and in some cases traditional notice by mail is simply not sufficient." *Id.* at 62-63. (emphasis added). | The Court rejected this argument: "Finally, the objectors believe that the class notice failed to reach Herbalife's Latino members and distributors. (Dkt. No. 121 at 60–63.) They believe that the email and postcard notices were insufficient, and that a greater outreach effort should have been made to ensure these class members properly understood their rights under the Settlement Agreement. ***Although the Court agrees in theory that a broader notice campaign could have benefited the class, the notice procedures approved here comport with due process and Rule 23***. See *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (explaining that Rule 23 does not require actual notice to each class member). ***The objectors do not dispute that the combined email and postcard notices reached*** | The Objectors again contend that the notice program (a) "overrelied" on email notice and (b) failed to adequately reach out to the Latino community. *See id.* at 7-14 ("In this case, for example, the notice program should have addressed the 'digital divide' between whites and Hispanics, and between English-dominant Hispanics, Spanish-Dominant Hispanics and foreign born Hispanics, especially considering the notice program's overreliance on email notice as discussed above.") |

**APPENDIX A: CHART COMPARING OBJECTORS' ORIGINAL ARGUMENTS, COURT'S REJECTION OF THESE ARGUMENTS, AND OBJECTORS' RENEWAL OF THESE ARGUMENTS**

| Original Argument in Objections to Class Action Settlement [Dkt. 121] | Court's Order on Argument [Dkt. 145] | Renewed Argument in Objectors' Motion for Reconsideration [Dkt. 158] |
|---|---|---|
| | *approximately 92.91% of the class. (See Robin Notice Decl. ¶ 11.) Nor do they dispute that the claims administrator distributed the notices and claims forms in both English and Spanish.  (Id. ¶ 3, Exs. A–D.) Under the circumstances, the notice was sufficient.*" *Id*. at 47-48. (emphasis added). | |
| 3) Objectors contended that the claims period was too short.  *See id*. at 63 ("For the same reasons, the brief, 35-day claims period (Preliminary Approval Order, ¶ 44),was inadequate").   During the May 11, 2015 hearing, Objectors' counsel requested that the Court retain a notice expert.  May 11, 2015 Hearing Tr. at 43:7-8. | The Court rejected the argument that the length of the claims period is "evidence that the class notice failed to reach a majority of the class members."  *Id*. at 48.  In its Order, the Court stated: "*Here, the settlement notice reached 92.91% of the class. More importantly, however, the facts and circumstances of this case reasonably suggest a low response rate.*  As has been discussed throughout this Order, survey evidence suggests that most | Objectors again contend that the claims period was too short, and that because of the relatively low claims rate, the Court should have appointed a Notice Expert to "assess the adequacy of the class notice program." *Id*. at 14-16. |

**APPENDIX A: CHART COMPARING OBJECTORS' ORIGINAL ARGUMENTS, COURT'S REJECTION OF THESE ARGUMENTS, AND OBJECTORS' RENEWAL OF THESE ARGUMENTS**

| Original Argument in Objections to Class Action Settlement [Dkt. 121] | Court's Order on Argument [Dkt. 145] | Renewed Argument in Objectors' Motion for Reconsideration [Dkt. 158] |
|---|---|---|
| | Herbalife members and distributors joined to obtain a product discount. These members are unlikely to have unopened and unused Herbalife products they wish to return for a refund, as they are most likely to have purchased the products for personal consumption. Further, these individuals are unlikely to have suffered any financial losses on a failed business opportunity, as their reason for joining the company was not to generate income or pursue an entrepreneurial enterprise. ***Under these circumstances, and given the low number of objections and requests for exclusion, the Court finds that the low response rate here comports with Rule 23 and does not per se demonstrate the Settlement Agreement's inadequacy***." *Id.* at 48-49. (emphasis added). | |

**APPENDIX A: CHART COMPARING OBJECTORS' ORIGINAL ARGUMENTS, COURT'S REJECTION OF THESE ARGUMENTS, AND OBJECTORS' RENEWAL OF THESE ARGUMENTS**

| Original Argument in Objections to Class Action Settlement [Dkt. 121] | Court's Order on Argument [Dkt. 145] | Renewed Argument in Objectors' Motion for Reconsideration [Dkt. 158] |
|---|---|---|
| 4) Objectors contended that the financial compensation afforded by the settlement is inadequate: "The financial compensation for the Rule 23(b)(3) damages class is grossly inadequate, by at least an order of magnitude. The parties failed to provide the Court with any information from which the Court could determine the range of possible recovery on any of the claims in the Complaint. The parties have provided no data concerning the composition of the class or the range of damages suffered by class members." Dkt 121 at 2-3. | The Court rejected this argument, noting that it did not need to independently estimate the value of Plaintiffs' case given the existence of evaluations by former judges: "The objectors contend that the $15 million business opportunity fund will not provide fair or adequate class compensation. (*See* Dkt. No. 121 at 7–24.) They first attack Plaintiffs' estimation of the case's total value, asserting that Plaintiffs have offered no evidence of the potential range of recovery. This objection is somewhat misguided, however, as Plaintiffs have provided declarations from the mediator who helped resolve this case, retired Judge Daniel Weinstein, as well as the independent evaluator, Judge Larson. Both affirm that the proposed settlement represents a reasonable recovery in light of the | Objectors again contend that the Court should have independently estimated the value of Plaintiffs' case. *Id.* at 24 ("While the parties' use of mediators may be helpful, it does not excuse this Court from making its own evaluation of the value of plaintiffs' claims."). |

**APPENDIX A: CHART COMPARING OBJECTORS' ORIGINAL ARGUMENTS, COURT'S REJECTION OF THESE ARGUMENTS, AND OBJECTORS' RENEWAL OF THESE ARGUMENTS**

| Original Argument in Objections to Class Action Settlement [Dkt. 121] | Court's Order on Argument [Dkt. 145] | Renewed Argument in Objectors' Motion for Reconsideration [Dkt. 158] |
|---|---|---|
| | facts and the parties' claims and defenses. (*See* Weinstein Decl. ¶¶ 3, 12, 14, 18; *see also* Larson Decl. ¶ 11 (noting that the proposed settlement is within the range he suggested).) ***Although Plaintiffs' failure to provide the Court with other documentary evidence prevents the Court from arriving at its own independent estimate of the value of Plaintiffs' case, the Court does not find this failure to be fatal given the objective third-party evaluations supporting the settlement's fairness and reasonableness*****.**" *Id.* at 37. (emphasis added). | |

APPENDIX A