Douglas M. Brooks (*pro hac vice*)
dmbrooks@brooks-law.net
60 Thoreau Street, No. 219
Concord, MA  01742
Telephone: (781) 424-6737

Michael L. Cohen (SBN: 206253)
cohen@cohenmckeon.com
Heather M. McKeon (SBN: 186414)
mckeon@cohenmckeon.com
Cohen McKeon LLP
1910 West Sunset Boulevard, Suite 440
Los Angeles, CA  90026
Telephone: (213) 413-6400
Fax:  ((213) 403-6405


*Attorney for Objectors*

# IN THE UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

|  |  |
|---|---|
| DANA BOSTICK, *et al.,*<br><br>          Plaintiffs,<br><br>     vs.<br><br>HERBALIFE INTERNATIONAL OF AMERICA, INC., *et al.*,<br><br>          Defendants. | Case No. 2:13-CV-02488-BRO-RZ<br><br>**OBJECTORS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION**<br><br>Hon. Beverly Reid O'Connell<br><br>Hearing Date:<br>Time: 1:30 pm<br>Courtroom 14 |

# TABLE OF CONTENTS

I.      INTRODUCTION…………………………………………………………2

II.     THE COURT'S FAILURE TO

        REQUIRE THE PARTIES TO

        SUBMIT EVIDENCE CONCERNING

        THE ADEQUACY OF SETTLEMENT

        AMOUNT WAS CLEAR ERROR……………………………………...4

III.    THIS COURT'S FINDING THAT

        VASKO AND MOLNAR HAVE

        STANDING TO SUE FOR

        INJUNCTIVE RELIEF WAS

        CLEAR ERROR……………………………………………………7

IV.     IN LIGHT OF THIS COURT'S

        FINDING THAT A BROADER

        NOTICE PROGRAM COULD

        HAVE BENEFITTED THE

        CLASS, IT WAS CLEAR

        ERROR TO FIND THAT THE

        CLASS NOTICE PROGRAM MET

        THE "BEST PRACTICABLE" STANDARD…………………………12

A. The Class Notice Program

   Over-Relied on email……………………………………………..13

B. There Was No Justification

   For The Brief Claims Period………………………………...16

V.   THERE WAS NEW EVIDENCE

     RELEVANT TO THE ENFORCEMENT

     OF INJUNCTIVE RELIEF…………………………………….18

VI.  THIS COURT SHOULD NOT

     DENY OBJECTORS' MOTION

     FOR NON-COMPLIANCE WITH

     LOCAL RULE 7-3…………………………………………..20

# TABLE OF AUTHORITIES

## FEDERAL CASES:

*Allen v. Bedolla* (9th Cir. 2015)

    787 F.3d 1218 at \*13……………………………………………………..5

*Alvarado v. Nederend* (E.D,. Cal. 2011)

    2011 U.S. Dist. LEXOS 2326, \* 20-21……………………………………16

*Bates v. United Parcel Service, Inc.,* (9th Cir. 2007)

    511 F.3d 974……………………………………………………..11

*Cohorst v. BRE Properties, Inc.* (S.D. Cal. 2011)

    2011 U.S. Dist. LEXIS 151719…………………………………………14,15

*Dennis v. Kellogg Co.,* (9th Cir. 2012)

    697 F. 3d 858………………….................................................5

*Ellis v. Costco Wholesale Corp.,* (9th Cir. 2011)

    657 F.3d 970……………………………………….............................7,9

*Eubank v. Pella* (7th Cir. 2014)

    753 F.3d 718………………………………….....................................4

*Gator.com Corp. v. L.L. Bean, Inc.* (9th Cir. 2005)

    398 F.3d 1125…………………………………………………11

*In re Online DVD-Rental Antitrust Litig.,* (9th Cir. 2015)

    779 F.3d 934……………………………………………………..13

*Lane v. Facebook, Inc.* (9th Cir. 2012)

    696 F.3d 811…………………………………………………………..14

*Ling Tie v. Peng Chan* (C.D.Cal. 2014)

    2014 U.S. Dist. LEXIS 172440……………………………………………20

*Marshall v. Holiday Magic, Inc.* (9th Cir. 1977)

    550 F.2d 1173……………………………………………………………17

*Murillo v. Pacific Gas & electric Co.,* (E.D.Cal. 2010)

    2010 U.S. Dist. LEXIS 73427…………………………………………...18

*Rodriguez v. West Publishing Corp.,* (9th Cir. 2009)

    563 F.3d 948……………………………………………………….....5

*Slayman v. Fedex Ground Package System, Inc.* (9th Cir. 2014)

    765 F.3d 1033……………………………………………………...7,8

*Torrisi v. Tuscan Elec. Power Co.* (9th Cir. 1993)

    8 F.3d 1370…………………………………………………..12,16,17

*Vazquez v. Coast Valley Roofing, Inc.* (E.D.Cal. 1977)

    670 F.Supp.2d 1114……………………………………………..17

*Wal-Mart Stores, Inc. v. Dukes* (2011)

    131 S. CT. 251………………………………………………….2

TABLE OF CONTENTS

## **RULES AND STATUTES**

Rule 23 (b)(2)………………………………………………………………....8

Rule 23(c)(2)(B)………………………………………………………...3,12

## I.   INTRODUCTION

On December 2, 2014, this Court granted preliminary approval of a $17.5 million settlement for a class of 1.5 million Herbalife distributors, despite the fact that the neither the parties nor their mediators provided the Court with any evidence concerning the value of Plaintiffs' claims.   Plaintiffs and Herbalife have failed to cite any authority for the proposition that this Court can defer the examination of one of the crucial elements of evaluating a class action settlement to a third party mediator, or wait to see what happens when the claims come in (or not).   The parties have ignored the authorities cited by Objectors that compel a finding that this procedure was clear error.

In its preliminary approval order the Court certified an injunctive relief class which clearly violated the Supreme Court's instructions in *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011), as it included both current and former Herbalife distributors.   Moreover, none of the named plaintiffs have standing to sue for injunctive relief.  By their own testimony, the two named plaintiffs who are now proffered by the parties as representatives for the injunctive relief class ceased operating as Herbalife distributors long before the order certifying the class, making their claims moot and certification improper.   The fact that these two plaintiffs may still be "registered" Herbalife distributors does not give them

standing.  The parties have ignored the authorities cited by Objectors and have failed to cite any authorities that support their flimsy arguments on standing.

Following preliminary approval the parties executed a class notice program which resulted in an abysmally low claims rate of less than ½ of 1%.  This Court stated that it "agrees in theory that a broader notice campaign could have benefitted the class," a finding which is inconsistent with the mandate of Rule 23(c)(2)(B) that the class receive the "best notice that is practicable under the circumstances." Applying an incorrect standard is clear error.  A "broader notice campaign" would have been practicable.  Objectors have pointed to several factors which may explain the low claims rate, including the overreliance on email, the brief, 35-day claims period and the failure to include any outreach or even consider the characteristics of the Hispanic community which has been aggressively targeted by Herbalife's marketing.   Objectors do not claim that any single one of these factors explains the poor results of the notice program or compels reconsideration.  Rather, Objectors claim that *looking at the notice program as a whole*, and in light of this Court's finding that a broader notice program would have benefitted the class, it was clear error to find that it was the best practicable notice under the circumstances.

## II.      THE COURT'S FAILURE TO REQUIRE THE PARTIES TO SUBMIT EVIDENCE CONCERNING THE ADEQUACY OF SETTLEMENT AMOUNT WAS CLEAR ERROR

Objectors seek reconsideration of the Court's finding concerning the adequacy of the settlement amount, based on the Court's acknowledgment that Plaintiffs had failed to provide it with <u>any</u> evidence concerning the value of the claims that the class is giving up.  Neither Plaintiffs nor Herbalife cite to any case in which a District Court has relied entirely and exclusively on the judgment of the parties' private mediator concerning the adequacy of the amount of the settlement. Pl. Opp. at 10; Herbalife Opp. at 11-12.

Herbalife makes the remarkable – and false – assertion that Objectors have not cited authority for the proposition that the Court's reliance was clear error. Herbalife Opp. at 11.   In fact Objectors have cited numerous cases that support the proposition that while the use of mediators to facilitate settlement discussions is appropriate, the court must make its own, independent judgment as to the adequacy of a class settlement, including the amount of the settlement.  [Obj. Mem. At 24-25; Objections to Class Action Settlement (Dkt. 121), at 7-8.]   For example, in Objectors' initial Objection they cited *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014), in which the Seventh Circuit reversed the district court's approval of a class settlement where, among other flaws, the judge "didn't estimate the likely outcome of a trial, as he should have done in order to evaluate the adequacy of the

settlement."   753 F.3d at 727.  In *Eubank* the parties used mediators, but this did not excuse the district court from exercising its own, independent judgment concerning the amount of the settlement.  753 F.3d at 727.  Similarly, in approving the class settlement in *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth Circuit noted that the district court had before it the "amount of the alleged overcharge, the estimated recovery ranges by both parties and their experts, and the results of a mediated resolution."  563 F.3d at 966.

The Ninth Circuit has recently explained that while the substantive review of a district court's settlement approval is deferential, it holds "district courts to a higher *procedural* standard when making that determination of substantive fairness: 'To survive appellate review, the district court must show it has explored comprehensively all factors, and must give a reasoned response to all non-frivolous objections.'"  *Allen v. Bedolla*, 787 F.3d 1218 at *13 (9th Cir. June 2, 2015), *quoting Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012).  Here, this court cannot show that it has "comprehensively explored" the amount offered in settlement, because the parties have failed to provide it with any evidence concerning the value of Plaintiffs' case.

Plaintiffs state that Objectors "ignore" that the Court relied on "objective third party evaluations" in approving the settlement.  Pl. Opp. at 2 and 10.   Not so.  In fact, Objectors' point is precisely that the Court committed clear error in

relying *entirely* on the judgment of the third party mediators, without even seeing the evidence the mediators relied on.  While the use of mediators to assist in settling cases is entirely appropriate, the opinion of the mediator has never been held to be a substitute for the Court's required exercise of discretion in evaluating the fairness, adequacy and reasonableness of a class action settlement.

Plaintiffs also argue that the results of the claims process justify the settlement amount.  Pl. Opp. at 10.   Plaintiffs do not offer any authority for the proposition that the district court can defer evaluating the reasonableness of the amount of a settlement until after the claims are in.  In this case, moreover, where the Court has acknowledged that the claims rate was very low, it would not be reasonable to rely on the relatively small number of claims as the sole justification for the amount of the settlement.

Herbalife tries to confuse the issue by referring to the valuation of individual claims and states that "each Objector submitted a declaration with such an assessment." Herbalife Opp. at p. 12.   But that argument misses the point by a mile.  Objectors are not saying that individual class members do not know the extent of their own individual losses.   Objectors are saying – and this Court has agreed – that the parties provided no evidence as to the amount of the aggregate losses of the class.   Without such evidence the Court had no basis for concluding that the Settlement Fund was fair, reasonable and adequate.

**III.   THIS COURT'S FINDING THAT VASKO AND MOLNAR HAVE STANDING TO SUE FOR INJUNCTIVE RELIEF WAS CLEAR ERROR**

Plaintiffs and Herbalife fail to address Objectors' argument that the claims for injunctive relief by Class Representatives Vasko and Molnar were moot by the time of this Court's Order certifying the injunctive relief class.  Standing is a "threshold matter central to [the court's] subject matter jurisdiction." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011).   The issue of standing is not discretionary; appellate review of the district court's standing determination is *de novo*.  *Id.*  It is well settled – and neither Plaintiffs nor Herbalife cite any contrary authority – that when the claims of the class representatives become moot prior to class certification, the class cannot be certified.  *Slayman v. Fedex Ground Package System Inc.*, 765 F.3d 1033, 1047-48 (9th Cir. 2014).   In *Slayman*, the Ninth Circuit explained the impact of mootness on class certification as follows:

> Leighter, however, stopped driving for FedEx in August 2007, almost two years before the MDL Court's class-certification decision. Leighter was the only named plaintiff with standing to seek prospective relief. When he stopped driving for FedEx, his claims for prospective relief became moot because he could no longer benefit from such relief. … Under these

circumstances, the Leighter class's claims for prospective relief should not have been certified.

*Slayman,* 765 F.3d at 1048.   The result is different if the class representative's claim becomes moot *after* the order certifying the class.   *Id.*   But that is not what happened here.

The Court's finding that Vasko and Molnar had standing to seek injunctive relief was contrary to the evidence, which indicated that Vasko and Molnar were not "current" Herbalife distributors in any reasonable meaning of the word.   Vasko and Molnar had each previously averred and alleged that they had ceased operating as Herbalife distributors by the time this Court certified the Rule 23(b)(2) class on December 2, 2014, and had not been operating as Herbalife distributors since January of 2014 (Vasko) or June of 2013 (Molnar).   Objectors' Memo ISO Motion for Reconsideration (Dkt. 158) ("Obj. Mem."), pp. 19-23.   Accordingly, they did not have standing to represent the injunctive relief class because their claims were moot.

This Court's finding that Molnar and Vasko had standing to represent the injunctive relief class was based on the declarations that Plaintiffs' submitted with their Reply in support of their motion for final approval. Notwithstanding their prior testimony and pleadings, Molnar and Vasko each claimed that they had "remained continuously" as Herbalife distributors.   The only way to reconcile their

most recent declarations with their prior declarations and testimony is to assume

that they mean that they are still "registered" Herbalife distributors.   Obj. Mem.,

pp. 22-23.   Neither Plaintiffs nor Herbalife offer any evidence clarifying this issue.

The Court appears to have assumed that being a "registered" Herbalife

distributor is equivalent for standing purposes to being a "current employee."  In

fact, this is what Herbalife argues.   Herbalife Opp. at p.11 n.12.   Current

employees unquestionably have standing to seek injunctive relief against, for

instance, their employer's discriminatory practices.   *See, e.g. Ellis, supra*, 657

F.3d at 979.

By definition, "current employees" are persons who are actually working for

their employers and receiving compensation for that work.   They therefore have a

stake in the outcome of a claim for injunctive relief seeking to reform their

employer's practices.[1]   In contrast, Molnar and Vasko ceased working as Herbalife

distributors long before this Court's order certifying the injunctive relief class on

---

[1] In *Ellis,* the Ninth Circuit explained as follows:
Sasaki has been employed as an AGM for twelve years. Despite her
expressed interest in becoming a GM, coupled with numerous relocations to
avail herself of that opportunity, Sasaki has been passed over for promotion
at least eight times. Because Costco's challenged promotion practices for
GM and AGM positions have not changed, there is a likelihood that Costco
will continue to fail to promote Sasaki. Finally, if Costco's allegedly
discriminatory policies are enjoined, Sasaki's claimed threat of being passed
over for promotion due to her gender is likely to be redressed.
657 F.3d at 979.]

December 2, 2014.  Their declarations are notable for the questions they do not answer:

- When was the last time either of them purchased a product from Herbalife?

- When was the last time either of them sold a Herbalife product?

- When was the last time either of them received a commission or royalty from Herbalife?

- When was the last time either of them recruited a new Herbalife distributor?

- When was the last time either of them attended a Herbalife training or motivational event?

- When was the last time either of them did anything that could possibly be construed as currently operating a Herbalife distributorship?

- Do either of them intend to resume operations as a Herbalife distributor?

The answers to these questions are known only to Plaintiffs and Herbalife, but Plaintiffs and Herbalife remain silent.

Herbalife avoids dealing with the standing issue by evading it.  First, Herbalife argues that "a plaintiff does not lack standing, however, because she, for example, claims that judicial relief is necessary before she purchases Herbalife products."  Herbalife Opp. at p. 11.  But neither Molnar nor Vasko have made this claim.  Neither of them have testified that they would purchase Herbalife products, or attempt to revive their Herbalife distributorships, if judicial relief were granted.

Finally, Herbalife makes a cryptic reference to declaratory judgments, as if this were a talisman that could magically confer standing on Vasko and Molnar. Herbalife Opp. at p. 11 n. 12.   In fact, the Ninth Circuit has held that "[t]he limitations that Article III imposes upon federal court jurisdiction are not relaxed in the declaratory judgment context." *Gator.com Corp. v. L.L. Bean, Inc.* 398 F.3d. 1125, 1129 (9th Cir.  2005).   As with injunctive relief, the requisite case or controversy is absent when the plaintiff no longer wishes to engage in the activity concerning which she is seeking declaratory relief. *Id.*  Here there is zero evidence that either Molnar or Vasko wishes to engage in the activity of being a Herbalife distributor or to buy Herbalife products.

Plaintiffs assert that if Objectors are correct then only "potential Herbalife recruits" would have standing to bring claims for injunctive relief as to Herbalife's "Statement of Average Gross Compensation."   Pl. Opp., pp. 9-10.   Of course, Objectors do not make this argument – Objectors are simply pointing out that persons who have ceased operating as Herbalife distributors do not have a "real and immediate threat of repeated injury" that could be redressed by injunctive relief. *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).

**IV.    IN LIGHT OF THIS COURT'S FINDING THAT A BROADER NOTICE PROGRAM COULD HAVE BENEFITTED THE CLASS, IT WAS CLEAR ERROR TO FIND THAT THE CLASS NOTICE PROGRAM MET THE "BEST PRACTICABLE" STANDARD**

Objectors' primary basis for seeking reconsideration of this Court's approval of the class notice program is the Court's statement that it "agrees in theory that a broader notice campaign could have benefitted the class."    Order, p. 47.   This statement cannot be squared with the mandate of Rule 23(c)(2)(B) that the class must receive the "best notice that is practicable under the circumstances."

The district court's determination concerning the adequacy of the class notice program is not discretionary; appellate review of a class notice program is *de novo*. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993). The Court must find that the class notice is the "best notice that is practicable under the circumstances."   Fed.R.Civ.P. 23(c)(2)(B).   Based on this Court's acknowledgement that a broader notice program could have benefitted the class, the Court was not applying the correct standard.   There is no evidence that a "broader notice campaign" would have been either ineffective or impracticable – in fact, the evidence is that better notice would have been rather easy.   The parties could have provided a longer claims period at the outset, provided notice by first class mail to all class members, provided multiple email "blasts" or reminder notices during the claims period, or engaged in some form of outreach to class

members, particularly those with cultural barriers like the poor and undocumented

Hispanic class members who have been targeted by Herbalife's marketing efforts.

Moreover, there is over $1.8 million in undistributed funds in the Settlement Fund,

some of which could be used for an additional, broader notice campaign rather

than conferring a windfall on the *cy pres* recipient.[2]

Objectors are fully justified in appealing to this Court's discretion to

reconsider its rulings on notice.  While Objectors have pointed to many flaws in

the notice program, Objectors do not contend that any one of these flaws standing

alone would necessarily justify a finding that the notice program was inadequate.

Rather, Objectors contend that considering all of the notice issues as a whole,

including the extremely low claims rate, the very brief claims period, the use of

email for a large portion of the class, and the failure to address the cultural barriers

for a large segment of the class, the class did not receive the "best notice that is

practicable under the circumstances."

## A.   The Class Notice Program Over-Relied on email

Plaintiffs defend the overreliance on email in the class notice by citing to

several cases in which the defendants' businesses were conducted entirely or

primarily electronically.   For instance, in *In re Online DVD-Rental Antitrust Litig.*,

---

[2] The *cy pres* recipient will be receiving approximately $1.86 million, about 12.4% of the Settlement Fund, after payment of class claims of $7,396, 407.90, plaintiffs' attorney fees of $4,900,000, litigation expenses of $211,662.63, incentive awards of $30,000 and notice and administration expenses of approximately $600,000.

779 F.3d 934, 940 (9th Cir. 2015),  the class consisted of persons who rented DVDs

on-line.   779 F.3d at 940.   Notably, the objections in that case were to the content

of the notice rather than whether it should have been done via mail or email.  779

F.3d at 945-47.  Similarly, *Lane v. Facebook, Inc.*, 2010 U.S.Dist LEXIS 24762

(N.D.Cal.), *aff'd* 696 F.3d 811 (9th Cir. 2012), involved a class of members of

Facebook, an internet web site; obviously the exclusive mode of contact between

class members and the defendant was electronic.

Plaintiffs also cite *Cohorst v. BRE Properties, Inc.*, 2011 U.S.Dist. LEXIS

151719 (S.D.Cal. November 14, 2011), *report and recommendation adopted as*

*modified*, 2012 U.S.Dist. LEXIS 5387 (S.D.Cal. January 18, 2012), in which the

court approved the use of email for the class notice because the defendant had

approximately 1.1 million email addresses for class members but only 32,000

mailing addresses, and of those persons with mailing addresses the defendant also

had 16,500 email addresses.   Clearly, if the parties have email addresses but no

mailing addresses, then notice by email is the "best practicable" form of notice.[3]

After a hearing that was held to address the low number of claims received, the

---

[3] In *Cohorst* there were three email "blasts" over the course of the claims period,
plus three publications in USA Today. *Id.,* 2011 U.S. Dist. LEXIS 151719 at *5-9
& n.1.  The email blasts commenced on May 28, 2011.   *Id.* at *8-9 & n.1.   Class
members had until September 8, 2011 to file claims.  *Cohorst v. BRE Properties,*
*Inc.*, 2011 U.S.Dist. LEXIS 95374 at *3 (S.D.Cal. August 25, 2011), *report and*
*recommendation adopted, Cohorst v. BRE Properties, Inc.,* 2011 U.S. Dist. LEXIS
95284 (S.D.Cal. August 25, 2011).   Accordingly, the claims period was over 100
days, almost three times as long as the claims period in the instant case.

Special Master initially found that mailing the notice was not necessary because the mailing addresses would likely be outdated or invalid due to the "highly transitory" nature of the class, and did not order mailing the class notice. *Id.,* 2011 U.S.Dist. LEXIS 151719 at *20.   The Court overruled this portion of the Master's report and held that given that the initial notice program resulted in a very low claims rate (1338 claims out of over 1.1 million class members), due process required notice by mail be sent to the approximately 15,500 persons for whom the defendant had only mailing addresses and no email addresses, and provided them with an additional 45 days to file claims. *Cohorst v. BRE Properties, Inc.*, 2012 U.S. Dist. LEXIS 5387 at *6-9 (S.D.Cal. January 18, 2012).   The mailed notice resulted in 345 additional claims, an increase of 25% in the total number of claims. *Cohorst v. BRE Properties, Inc.*, 2012 U.S. Dist. LEXIS 78010 at *3 (S.D.Cal. June 5, 2012).

The issue of whether Brent Wilkes, the executive director of LULAC, waived his right to object to the settlement, Pl. Opp. at 5-6, is a red herring.   Mr. Wilkes is not one of the objectors.[4]   The significance of his email is that it

_____

[4] Undersigned counsel does not represent and never has represented Mr. Wilkes, Ms. Contreras, LULAC or any of the regional LULAC organizations. Brooks Decl. ISO Reply Memorandum to Motion for Reconsideration, ¶2. Undersigned counsel represents only the 18 individuals who have objected to this settlement.   Id. at ¶¶1-2.   Undersigned counsel does not and has never taken direction from Mr. Wilkes, Ms. Contreras, LULAC or any of the regional LULAC

represents yet another possible explanation for the extremely low claims rate in this action, namely, that emails were intercepted by class members' spam filters.

## B. There Was No Justification For The Brief Claims Period

Plaintiffs argue that "in practice" the claims period was longer than 35 days, because parties agreed to accept late claims.   Pl. Opp. at 7.   Plaintiffs fail to acknowledge, however, that there was no supplemental notice of any kind that late claims would be accepted, so there was no way for most class members to learn of the extended claims period.   Consequently, the parties only received a few hundred late claims.   Neither Plaintiffs nor Herbalife have explained why they imposed a claims period at the lowest end of what is considered permissible by the FJC checklist, and below the recommended 60-90 days.

The authorities Plaintiffs cite at page 8 of their memorandum do not support the use of a very brief claims period here.   In *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993), the Ninth Circuit's opinion concerned the deadline for opting out or objecting to the settlement, and did not mention the deadline for making claims. 8 F.3d at 1374-75.   Even though many of the notices in *Torrisi* were not mailed until *after* the opt out or objection deadline, the objectors did not assert that class members did not have enough time to file claims. *Id.*   It is therefore safe to assume that the claims deadline was much longer than the opt

organizations or any other third party. Id. at ¶4. There is no evidence to the contrary and it is irresponsible for Plaintiffs and Herbalife to suggest otherwise.

out/objection deadline.   It is important to note that in *Torrisi* the parties had good reason to impose an accelerated settlement approval schedule: the defendant was subject to an involuntary bankruptcy proceeding filed against it and was negotiating with creditors at the same time as it was negotiating with the class; the court found that "it was critical that the settlement be presented to the district court promptly for its consideration."   8 F.3d at 1375-76.   In contrast, in the instant case there there were no exigent circumstances justifying a brief claims deadline.

In *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977), the Ninth Circuit's decision refers only to the deadline for objecting or opting out, not the claims deadline, and there is no indication that the objectors argued that class members did not have enough time to file claims, as opposed to deciding whether to object or opt out.   550 F.3d at 1176, 1178.   Accordingly, as with *Torrisi,* it is safe to assume that the claims deadline  was longer than the very brief objection/opt out deadline.

While the court in *Vazquez v. Coast Valley Roofing, Inc.,* 670 F.Supp.2d 1114 (E.D.Cal. 1977) did approve a 30 day claims notice, the notice program called for the sending of an additional "reminder" notice 14 days before the expiration of the claims period.   670 F.Supp.2d at 1126-27.   Similarly, in *Alvarado v. Nederend*, 2011 U.S.Dist. LEXIS 2326, *20-21 (E.D.Cal. January 11, 2011) the court required a reminder notice 14 days before the expiration of the claims period.

OBJECTORS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR
RECONSIDERATION- 17

Finally, in *Murillo v. Pacific Gas & Electric Co.*, 2010 U.S. Dist. LEXIS 73427 (E.D.Cal. July 21, 2010) the court approved a 33-day claims deadline, where there were no objections and a 32% claims rate (358 claims out of 1,116 class members).

V.    **THERE WAS NEW EVIDENCE RELEVANT TO THE ENFORCEMENT OF INJUNCTIVE RELIEF**

In their motion, Objectors identified two media articles that were published after the final approval hearing that impact this Court's finding concerning the enforcement of the corporate policies that constitute the relief for the injunctive relief class.

Taking advantage of the Court's understandable lack of familiarity with the subtleties of Herbalife's argot, Herbalife disingenuously conflates the terms "millionaire team" and "future millionaire team."   Herbalife Opp., p.7 & n.6.   In fact these terms refer to entirely different concepts.  The "millionaire team" is indeed a level in the Herbalife compensation plan, which, as Herbalife notes, has existed for years, including when undersigned counsel litigated the *Jacobs v. Herbalife* case.   A Herbalife distributor can reach the "Millionaire Team" by achieving 4,000 "Royalty Points" each month for three consecutive months. Amended Complaint, Exhibit C (Dkt. 78-3), p. 15 (Herbalife compensation plan). The "Future Millionaire Team" which is mentioned in the St Louis Post-Dispatch article attached to Objectors' motion for reconsideration is not a level in the

Herbalife system.  As explained in the document Herbalife submitted with its

Opposition, Panchapakesan Decl. (Dkt. 162-2), Exhibit A, the "2015 Future

Millionaire Team Experience" is a special event that took place during the

Herbalife "extravaganza" in St. Louis on July 9, 2015.  The "Experience" was only

available to Herbalife distributors who had reached the ranks of Presidents' Team

or Millionaire Team, or who were Supervisors who met a special, one-time only

qualification by achieving 2500 Royalty Points worth of Herbalife products in one

month between December 2014 and June 2015.  Id.  The "Future Millionaire

Team Experience" was therefore an inducement to Herbalife Supervisors to make

additional purchases in advance of the Extravaganza with the intended effect of

bumping up Herbalife's gross sales during the second quarter.

Objectors did not introduce these articles to prove the truth of the matters

stated; accordingly they are not hearsay.  Rather, Objectors cited them as examples

of the futility of expecting Herbalife to police itself.   Plaintiff states that the

"Future Millionaire" term did not violate the Settlement.  Pl. Opp. at 11.  But that

is not the point.  Plaintiffs are taking the position that their lawyers – without any

compensation – and this very busy Court – will affirmatively monitor and enforce

Herbalife's compliance with the settlement agreement over the next three years.

Even if the matters reported in the St. Louis Post Dispatch article did not amount to

a violation, they are matters that someone needs to investigate.  There is no

mechanism in the settlement agreement that provides for the affirmative monitoring of the ever-churning corps of hundreds of thousands of Herbalife distributors.

## VI.   THIS COURT SHOULD NOT DENY OBJECTORS' MOTION FOR NON-COMPLIANCE WITH LOCAL RULE 7-3

Herbalife argues that Objectors' motion for reconsideration should be stricken for failure to comply with Local Rule 7-3.  Herbalife Opp. at 13. Undersigned counsel admits that he did not confer with either Herbalife's or Plaintiffs' counsel concerning this motion.   Undersigned counsel did have several discussions with Plaintiffs counsel following this Court's Order granting final approval, which covered a number of the issues raised in this motion.   Based on those conversations, undersigned counsel does not believe that a Local Rule 7-3 conference would have resolved anything, but understands that this does not excuse his failure to follow the rule.   The Rule does not prescribe any remedy for non-compliance.   Undersigned counsel respectfully requests that the Court excuse his non-compliance and consider the merits of Objectors' motion.  *See Ling Tie v. Peng Chan*, 2014 U.S. Dist. LEXIS 172440 (C.D.Cal.  December 12, 2014) (O'Connell, J.) (deciding motion on merits despite non-compliance with Local Rule 7-3 while admonishing the party to strictly comply with the local rules as the matter proceeds).

Dated:  August 10, 2015

                              s/Douglas M. Brooks
                              Douglas M. Brooks
                              60 Thoreau Street, No. 219
                              Concord, MA  01742
                              (781) 424-6737
                              dmbrooks@brooks-law.net

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that I am over the age of eighteen (18) and not a party to the within action. I am employed in the law firm of Cohen

McKeon LLP, 1910 West Sunset Boulevard, Suite 440, Los Angeles, California 90026.

On August 10, 2015, I used the Central District of California's Electronic Case Filing System, with the ECF account registered to Michael L. Cohen, to file the following document(s):

OBJECTORS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION

The ECF system is designed to send an e-mail message to all parties in the case, which constitutes service. The Parties served by e-mail in this case are found on the Court's Electronic Mail Notice List.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 10, 2015, at Los Angeles, California.

/S/ ROBIN GRIER
Robin Grier